JEFFREY MARGULIES, Bar No. 126002
JOSEPH H. PARK, Bar No. 175064
STEPHANIE STROUP, Bar No. 235071
**FULBRIGHT & JAWORSKI L.L.P.**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jmargulies@fulbright.com
jpark@fulbright.com
stroup@fulbright.com

Attorneys for Defendants
STANDARD HOMEOPATHIC COMPANY
and HYLANDS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KIM ALLEN and DANIELE XENOS, on behalf of themselves, all others similarly situated, and the general public,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HYLANDS INC., a California Corporation; and STANDARD HOMEOPATHIC COMPANY,<br><br>　　　　　Defendants. | Case No. CV-12-1150 DMG (MANx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT FIRST MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing<br>Date: April 27, 2012<br>Time: 9:30 a.m.<br>Ctrm: 7<br>Judge: Dolly Gee |

　　　　Defendants Hyland's Inc. ("Hyland's") and Standard Homeopathic Company ("SHC") (collectively "Defendants") hereby submit their Memorandum of Points and Authorities In Support of their Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Kim Allen ("Allen") and Daniele Xenos ("Xenos") (collectively "Plaintiffs").

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

SUMMARY OF ALLEGATIONS .............................................................................. 3

    I.    THE PARTIES ................................................................................. 3

    II.   PLAINTIFFS' CLAIMS ................................................................. 3

ARGUMENT ............................................................................................................. 4

    I.    LEGAL STANDARD ...................................................................... 4

    II.   EACH OF PLAINTIFFS' CLAIMS FAIL AS A
        MATTER OF LAW ......................................................................... 6

        A.   Plaintiffs Lack Standing to Assert Claims
            Under the California Consumer Protection laws. ........................... 6

            1.   The Governmental Interest Test ....................................... 6

            2.   Plaintiffs' Claims for Violations of the UCL,
                CLRA, and FAL Must Be Dismissed. ............................... 8

        B.   Plaintiffs Have Not Pleaded Any Express or
            Implied Warranties. ...................................................................... 9

            1.   Plaintiffs' Breach of Express Warranty Claim Fails ................. 9

                a.   Plaintiffs Have Failed To Identify Any False
                    "Affirmation of Fact or Promise". ...................... 10

                b.   FDA Regulations Require Indication of Use Labeling
                    and Do Not Require Drugs to be 100% Effective
                    To Be Marketed ................................................. 12

            2.   Plaintiffs' Breach of the Implied Warranty of
                 Merchantability Claim Also Fails. .................................. 15

        C.   Plaintiffs' Sixth Cause of Action, for Common Counts/
            Unjust Enrichment, Also Fails. .................................................... 16

        D.   Plaintiffs Lack Standing to Assert Claims as to "All" of
            Defendants' Homeopathic Products. ............................................ 17

    III.  PLAINTIFFS' CLASS CLAIMS CANNOT BE MAINTAINED. ....... 18

        A.   Plaintiffs Cannot Certify A Nationwide Class. ............................. 19

        B.   Plaintiffs Lack Standing to Represent a California-Only Class. .... 22

        C.   Plaintiffs Lack Standing To Assert Claims For *All* Of
            Defendants' Products. ................................................................... 22

CONCLUSION ....................................................................................................... 23

Document Prepared on Recycled Paper

# TABLE OF AUTHORITIES

## STATE CASES

*Am. Suzuki Motor Corp. v. Superior Court,*
 37 Cal. App. 4th 1291 (1995)............................................................15

*Consumer Advocates v. Echostar Satellite Corp.,*
 113 Cal. App. 4th 1351 (2003)...........................................................11

*Dinosaur Dev., Inc. v. White,*
 216 Cal. App. 3d 1310 (1989)............................................................16

*Hoffman v. Smithwoods RV Park, LLC,*
 179 Cal. App. 4th 390 (2009)..............................................................9

*Isip v. Mercedes-Benz USA,*
 155 Cal. App. 4th 19 (2007)...............................................................15

*McCann v. Foster Wheeler LLC,*
 48 Cal. 4th 68 (2010).........................................................................6

*McKell v. Wash. Mut., Inc.,*
 142 Cal. App. 4th 1457 (2006)...........................................................16

*Melchior v. New Line Prods., Inc.,*
 106 Cal. App. 4th 779 (2003).............................................................16

*Mocek v. Alfa Leisure, Inc.,*
 114 Cal. App. 4th 402 (2003).............................................................15

*National Council Against Health Fraud v. King Bio Pharma,*
 107 Cal. App. 4th 1336 (2003)...........................................................18

*Philpott v. Superior Court,*
 1 Cal.2d 512, (1934)..........................................................................16

*Schulz v. Neovi Data Corp.,*
 152 Cal. App. 4th 86 (2007)...............................................................17

*Weinstat v. Dentsply Int'l,*
 180 Cal. App. 4th 1213 (2010).............................................................9

*Williams v. Beechnut Nutrition Corp.,*
 185 Cal. App. 3d 135 (1986)................................................................9

## FEDERAL CASES

*Ashcroft v. Iqbal,*
 129 S. Ct. 1937 (2009)........................................................................5

*Bailey v. Patterson,*
 369 U.S. 31 (1962)............................................................................22

DOCUMENT PREPARED ON RECYCLED PAPER

1

## <u>TABLE OF AUTHORITIES (cont'd)</u>

2

3    *Banks v. Nissan North Am., Inc.,*
     2012 U.S. Dist. LEXIS 37754 (N.D. Ca. Mar. 20, 2012) ................................20

4    *Bell Atl. Corp. v. Twombly,*
5        550 U.S. 544 (2007)...........................................................................5, 19

6    *cf. Jackson v. Motel 6 Multipurpose, Inc.,*
         130 F.3d 999 (11th Cir. 1997) ...................................................................19

7    *Cipollone v. Liggett Group, Inc.,*
8        505 U.S. 504 (1992)...................................................................................9

9    *Crosby v. Soc. Sec. Admin.,*
         796 F.2d 576 (1st Cir. 1986)......................................................................18

10   *Gen. Tel. Co. of Sw v. Falcon,*
         457 U.S. 147 (1982)..................................................................................18
11

12   *Gianino v. Alacer Corp.,*
         2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) ..........................passim

13   *Hana Fin., Inc. v. Hana Bank,*
         500 F. Supp. 2d 1228 (C.D. Cal. 2007) ........................................................5
14

15   *Horvath v. LG Electronics Mobilecomm U.S.A, Inc.,*
         2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ...............................9, 20

16   *In re Hitachi Tele. Optical Block Cases,*
         2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ........................................................7
17

18   *John v. Nat'l Sec. Fire & Cas. Co.,*
         501 F.3d 443 (5th Cir. 2007) ....................................................................18

19   *Kikos v. Procter & Gamble Co.,*
         2012 U.S. Dist. LEXIS 25104 (S.D. Ohio February 28, 2012)...........................20
20

21   *Kowalsky v. Hewlett-Packard Co.,*
         2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar. 14, 2012) ..............................20

22   *Mazza v. Am. Honda Motor Co.,*
         666 F.3d 581 (9th Cir. 2012)...................................................................passim
23

24   *Mills v. Foremost Ins. Co.,*
         511 F.3d 1300 (11th Cir. 2008) ................................................................18

25   *Stickrath v. Globalstar, Inc.,*
         527 F. Supp. 2d 992 (N.D. Cal. 2007)......................................................5, 11
26

27   *Walker v. USAA Cas. Ins. Co.,*
         474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................16

28

## <u>TABLE OF AUTHORITIES (cont'd)</u>

*Xavier v. Belfour Group USA, Inc.*,
  254 F.R.D. 281 (E.D. La. 2008) ........................................................... 19

## <u>STATUTES</u>

Business & Professions Code § 17200 ....................................................... 1

Business & Professions Code § 17204 ..................................................... 17

Business & Professions Code § 17500 ....................................................... 1

Business & Professions Code § 17535 ..................................................... 17

COMM. CODE § 2313 ................................................................................. 9

Civil Code § 1780(a) ............................................................................... 17

Civil Code § 1790 ..................................................................................... 9

Civil Code § 1791.1(a) ............................................................................ 15

Civil Code § 1791.1(a)(2) ........................................................................ 15

Civil Code § 1791.3 .................................................................................. 9

FED. R. CIV. P. 9(b) ................................................................................... 5

FED. R. CIV. P. 12(b)(6) ............................................................................. 4

## <u>OTHER AUTHORITIES</u>

21 C.F.R. § 201.66(c)(3), (4) .................................................................. 12

21 C.F.R. § 330.10(a)(4)(ii) .................................................................... 13

4 WITKIN, CALIFORNIA PROCEDURE (5TH ED), PLEADING, § 553 ............. 16

4 WITKIN, CALIFORNIA PROCEDURE (5TH ED), PLEADING, § 561 ............. 16

4 WITKIN, CALIFORNIA PROCEDURE (5TH ED), PLEADING, § 564 ............. 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# **INTRODUCTION**

1    This is a fatally defective putative class action brought by out-of-state

2  plaintiffs – a Florida resident (Allen) and a Georgia resident (Xenos) – against the

3  manufacturer of homeopathic products for alleged misrepresentations and false

4  advertising.[1]  Plaintiffs' claims are premised on the overbroad contention that all

5  homeopathic products, including Defendants' products, do not work.  Although

6  Plaintiffs purchased only several of Defendants' products, Plaintiffs seek to impose

7  liability on Defendants, as well as to certify a nationwide class, for alleged

8  violations of California's consumer protection laws as to *all* of Defendants'

9  homeopathic products.  Plaintiffs' FAC must be dismissed for several reasons.

10   First, out-of-state plaintiffs lack standing to assert claims under California's

11  consumer protection laws, whether for themselves or on behalf of a putative

12  nationwide class.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

13  Accordingly, Plaintiffs' 1st, 2nd, and 3rd Causes of Action – for alleged violations

14  of the Consumer Legal Remedies Act, Civil Code § 1750 *et seq.* ("CLRA"), the

15  Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL"),

16  and the False Advertising Law, Business & Professions Code § 17500, *et seq.*

17  ("FAL"), respectively – fail as a matter of law and must be dismissed.

18   Second, Plaintiffs' 4th and 5th Causes of Action, for alleged breach of

19  express warranty and implied warranty of merchantability, respectively, also fail

20  because Plaintiffs have failed to allege any statements that create express or implied

---

[1] / Homeopathy is one of the many recognized forms of non-traditional, non-Western alternative medicines, such as herbal medicine, acupuncture, and traditional Chinese medicine.  It is "a system of medical practice that treats a disease by the administration of minute doses of a remedy that would in larger amounts produce in healthy persons symptoms  similar to those of the disease." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/ dictionary/homeopathy; *see also* TABER'S CYCLOPEDIC MEDICAL DICTIONARY 18TH ED. (1997), at 909 ("The treatment or prevention of disease using a substance similar to the active causative agent, such as jennerian vaccination.")

1   warranties.  The statements identified in the FAC consist of indications of use for
2   the products, which are required by federal regulations, are not affirmations of fact
3   or promises that give rise to an express warranty.  Moreover, while Plaintiffs
4   complain of the effectiveness of Defendants' products, they provide no allegations
5   to support their claim that the products are not merchantable, *i.e.*, they do not allege
6   that the products are ***not*** fit for the ordinary purposes for which homeopathic drugs
7   are used.

8       Third, Plaintiffs lack standing to assert any claims with respect to any
9   products other than the products they allege they bought and used.  Plaintiffs do
10  not, and cannot, allege that they have suffered any injury-in-fact with respect to any
11  products that they did not themselves purchase or use.

12      Fourth, Plaintiffs' 6th Cause of Action, for money had and received, money
13  paid, and unjust enrichment, is improper.  Unjust enrichment is a remedy in the
14  nature of restitution, not a cause of action.  A claim for money had and received and
15  money paid is merely a variation of the common counts cause of action, which is
16  equitable in nature.  The claim fails because there are no allegations demonstrating
17  that Defendants have engaged in any inequitable conduct supporting a claim for
18  restitution.

19      Fifth, Plaintiffs' class claims fail as a matter of law.  Under *Mazza*, Plaintiffs
20  cannot certify a nationwide class for alleged violations of California's consumer
21  protection laws.  Moreover, Plaintiffs lack standing to represent or certify a class of
22  California consumers since they, as out-of-state plaintiffs, are not members of the
23  putative California class.  And, even if they could represent a class of consumers
24  who purchased products that Plaintiffs purchased, they lack standing to assert class
25  claims with respect to products that they did not themselves buy and use.

26
27
28

# SUMMARY OF ALLEGATIONS

## I.  THE PARTIES

Plaintiffs are alleged purchasers of Defendants' homeopathic products who claim the products were falsely advertised as effective for relieving symptoms of various conditions.  Allen is a resident of Sarasota, Florida, and Xenos is a resident of Decatur, Georgia.  (FAC, ¶¶ 5, 6.)

Hyland's, a California corporation, is a subsidiary of SHC, a Nevada Corporation.   Defendants are alleged to be manufacturers and sellers of homeopathic products.  (FAC, ¶ 2.)

## II.  PLAINTIFFS' CLAIMS

Allen claims to have purchased one Hyland's product, Calms Forté, from retail stores in Florida.  (FAC, ¶ 9.)  Xenos claims to also have purchased Calms Forté and six other Hyland's products, either from drugstores in Georgia or online: Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, and Defend Cold & Cough Night, Cold & Cough, and Sinus (collectively, the "Products").  (FAC, ¶¶ 9, 19, 26, 32, 38, 44, 50.)

Plaintiffs claim to have purchased the Products based on representations made on the labels and elsewhere that the Products were effective in relieving various symptoms, including sleeplessness, symptoms associated with baby teething, migraine headache pain, and acne.  (*See, e.g.,* FAC, 11, 20, 27, 33.) Among the specific examples alleged in the FAC are statements such as: "relief of simple nervous tension and occasional sleeplessness," "sleep aid," "for drowsiness with incomplete sleep," "Relieve Pain and Irritability from Teething," "100% natural," "Quick Dissolving tablets," "Aspirin free," "Natural Treatment for Pimples, Acne, Blackheads, and Oily Skin," "No Messy Makeup," "Natural Relief for Itching, Burning and Crusting Skin Due to Exposure to Poison Ivy or Oak," "No Side Effects," "Symptomatic Relief for Colic in Children," and "non-habit forming Pain Relief with Restful Sleep." (*See, e.g.,* FAC, ¶¶ 10, 11, 21, 28, 34, 40, 46, 51.)

1    Plaintiffs have asserted six causes of action against Defendants: (1) violation

2    of the CLRA; (2) violation of the UCL; (3) violation of the FAL; (4) breach of

3    express warranty; (5) breach of implied warranty of merchantability; and (6) money

4    had and received, money paid, and unjust enrichment. (FAC, ¶¶ 75-118.) Each of

5    these claims is based on their assertion that the Products did not work and that they

6    were misled by the names of the Products and the purported misrepresentations on

7    the Products' labels. (*See, e.g.,* FAC, ¶¶ 12, 22, 29, 80.) Plaintiffs claim that the

8    Products have been falsely advertised for their efficacy and "are nothing more than

9    placebos." (FAC, ¶ 2.) Plaintiffs allege that the homeopathic active ingredients are

10   so diluted that they are no longer present in the Products and that Defendants are

11   selling nothing more that "sugar pills." (FAC, ¶¶ 10, 17.) Plaintiffs claim that

12   there are no "active ingredients" in any of these Products and thus, "they can have

13   no effect of any kind in humans." (FAC, at ¶ 16.)

14   Plaintiffs purport to represent a class of similarly situated individuals and

15   seeks to certify one of three potential classes:

16   • A *nationwide* class of purchasers of *any* of Defendants' homeopathic

17      products since *2000*;

18   • A *nationwide* class of purchasers, from any state with consumer

19      protection statues that do not materially differ from California's consumer

20      protection statutes, who purchased *any* of Defendants' homeopathic

21      products since *2000*; or

22   • A *California-only* class of purchasers of *any* of Defendants' homeopathic

23      products since *2000*.

24

25                                    **ARGUMENT**

26   I.    **LEGAL STANDARD**

27   Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to

28   state a claim upon which relief may be granted. "Dismissal can be based on the

1   lack of a cognizable legal theory or the absence of sufficient facts alleged under a

2   cognizable legal theory." *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228,

3   1232 (C.D. Cal. 2007) (internal quotations omitted).

4        In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court

5   has clarified what is necessary to state an actionable claim: "While a complaint

6   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

7   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

8   relief' requires more than labels and conclusions, and a formulaic recitation of the

9   elements of a cause of action will not do." *Id.*   The "[f]actual allegations must be

10  enough to raise a right to relief above the speculative level"; the complaint must

11  include "enough facts to state a claim to relief that is plausible on its face." *Id.*, at

12  555, 570.  The Supreme Court has provided further guidance: "Threadbare recitals

13  of elements of a cause of action, supported by mere conclusory statements, do not

14  suffice," nor do "unadorned, the-defendant-unlawfully-harmed-me" accusations.

15  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

16        Further, Federal Rule of Civil Procedure 9(b) requires that "[i]n allegations

17  of fraud or mistake, a party must state with particularity the circumstances

18  constituting fraud or mistake." FED. R. CIV. P. 9(b).  Plaintiffs' claims under the

19  consumer protection laws (UCL, FAL, and CLRA) are also subject to Rule 9(b)'s

20  heightened pleading requirements because the claims are based on alleged

21  misrepresentations and failures to disclose facts. *See Stickrath v. Globalstar, Inc.*,

22  527 F. Supp. 2d 992, 997-98 (N.D. Cal. 2007) (Rule 9(b) pleading requirement

23  applied to UCL and CLRA claims based on allegations of affirmative

24  misrepresentations and failure to disclose material information about quality of

25  services in advertisements).

26

27

28

## II.   **EACH OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.**

### A.   **Plaintiffs Lack Standing to Assert Claims Under the California Consumer Protection laws.**

Plaintiffs lack standing to assert claims under the UCL, FAL, and CLRA because, as the Ninth Circuit recently recognized in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), a plaintiff or class member's consumer protection claims must be brought under the laws of the state where the consumer received alleged misrepresentations or omissions which resulted in the consumer transaction at issue.

### 1.   **The Governmental Interest Test**

In *Mazza*, the Ninth Circuit undertook the three-step governmental interest test required for a choice of law analysis:

- "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different";

- "each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists"; and

- "the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state."

*Mazza*, 666 F.3d at 590, quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010).

The court first determined that there is an actual conflict in the consumer protection laws of the various states in the United States, including on issues relating to: (1) scienter requirements; (2) necessity to demonstrate reliance; and

1   (3) available remedies.[2]  *Id.*, at 591.  The court's conclusion as to the first prong of

2   the governmental interest test is consistent with the conclusion of many other courts

3   that have routinely recognized that there are material variations in the consumer

4   protection statutes in the various states.  *See, e.g., In re Hitachi Tele. Optical Block*

5   *Cases*, 2011 WL 9403, at *6 (S.D. Cal. Jan. 3, 2011) ("there are material conflicts

6   between California's consumer protection laws and the consumer protection laws of

7   the other forty-nine states.")

8        In a recent post-*Mazza* decision, the Honorable Cormac J. Carney of this

9   Court considered a comprehensive nationwide analysis of the significant variations

10  in the states' consumer protection laws and identified six material differences in

11  consumer protection laws, some of which the *Mazza* court had also identified:

12  (1) differences in scienter requirements; (2) differences in reliance requirements;

13  (3) differences in pre-filing notice requirements; (4) differences in statutes of

14  limitations (from one year to ten years); (5) differences in the availability of

15  consumers to bring private causes of action or class actions under consumer

16  protection laws; and (6) significant variations in the available remedies, including

17  punitive damages.[3]  *Gianino v. Alacer Corp.*, 2012 U.S. Dist. LEXIS 32261, *6-*9

18  (C.D. Cal. Feb. 27, 2012).   *Mazza* and *Gianino* both recognized that these

19  differences were material and *not* trivial.  *Mazza*, 666 F.3d at 591; *Gianino*, 2012

20  U.S. Dist. LEXIS 32261, at *11.

21        After concluding that there were material differences in the various states'

22  consumer protection laws, the Ninth Circuit then decided the second prong of the

23  test, concluding that the state in which a consumer received a misrepresentation and

24

---

25  [2]/  The Court also found that "[t]he elements necessary to establish a claim for

26  unjust enrichment also vary materially from state to state." *Mazza*, 666 F.3d at 591.

    [3]/  For the Court's convenience and reference, the nationwide analysis of the

27  variations in the states' consumer protection laws on which Judge Carnac's opinion

28  is based has been submitted as Exhibit A to Defendants' Request for Judicial

    Notice ("RJN").

1    purchased a product has a strong interest in setting "the optimal balance between

2    protecting consumers and attracting foreign businesses...." *Id.*, at 592; *see also*

3    *Gianino*, 2012 U.S. Dist. LEXIS 32261, *13 ("Each state carefully balances its duty

4    to protect its consumers from injuries caused by out-of-state businesses with its

5    duty to shield those businesses from what the state may consider excessive

6    regulation or litigation.")

7        Finally, the Court determined that the interests of the consumer's home state

8    are most impaired by the application of one state's law to all jurisdictions at issue.

9    *Id.* This conclusion was based, in large part, on the Ninth Circuit's recognition that

10   "California considers the 'place of wrong' to be the state where the last event

11   necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593. And,

12   "California considers the geographic location of the omission or where the

13   misrepresentations were communicated to the consumer as the place of the wrong."

14   *Gianino*, 2012 U.S. Dist. LEXIS 32261, *15; *Mazza*, 666 F.3d at 593.

15       Based on the court's evaluation of, and conclusions as to, each of the three

16   prongs of the governmental interest test, the Ninth Circuit ultimately concluded that

17   "each class member's consumer protection claim should be governed by the

18   consumer protection laws of the jurisdiction in which the transaction took place."

19   *Mazza*, 666 F.3d at 594. Thus, under *Mazza*, where an out-of-state plaintiff claims

20   to have been deceived or harmed as a result of misrepresentations or omissions

21   received outside of California, that plaintiff's consumer protection claims must be

22   brought under that plaintiff's own state laws.

23       **2.    Plaintiffs' Claims for Violations of the UCL, CLRA, and**

24       **FAL Must Be Dismissed.**

25       Here, Plaintiffs are citizens of Florida and Georgia, not California. (FAC,

26   ¶¶ 5, 6.) As they allegedly bought and used the Products in Florida and Georgia,

27   not California, any of the alleged misrepresentations or omissions on which their

28   claims are based occurred in Florida and Georgia, not California. (FAC, ¶¶ 8, 9,

19, 26, 32, 38, 44, 50.)   Accordingly, under *Mazza*, any claims for alleged violations of consumer protection laws against Defendants must be brought under the laws of the state where customers purchased the Products – for Plaintiffs, Florida and Georgia, not California.  Plaintiffs' First, Second, and Third Causes of action, for alleged violations of the CLRA, UCL, and FAL, respectively, therefore fail as a matter of law and must be dismissed.[4]  *See Horvath v. LG Electronics Mobilecomm U.S.A, Inc.*, 2012 U.S. Dist. LEXIS 19215, *28-*29 (S.D. Cal. Feb. 13, 2012) (applying *Mazza*, dismissed out-of-state plaintiffs' UCL and CLRA claims).

**B.    Plaintiffs Have Not Pleaded Any Express or Implied Warranties.**

**1.    Plaintiffs' Breach of Express Warranty Claim Fails.**

The elements of a claim for breach of express warranty are: "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1213, 1227 (2010); *see also* CAL. COMM. CODE § 2313; CAL. CIV. CODE § 1791.3.  A claim for breach of express warranty requires the plaintiff to allege the "exact terms of the warranty." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992). In reviewing the claims made in the advertising of the Product, the Court must consider the actual advertising itself, not Plaintiffs' self-serving misrepresentations of the advertising.  *See Hoffman v. Smithwoods RV Park, LLC*, 179 Cal. App. 4th 390, 400 (2009).

---

[4]/  To the extent Plaintiffs bring their breach of warranty claims under the Song-Beverly Consumer Warranty Act, Civil Code § 1790, *et seq.*, such claims should also be dismissed under *Mazza*.

DOCUMENT PREPARED
ON RECYCLED PAPER

52023538.3

9

a.    <u>Plaintiffs Have Failed To Identify Any False "Affirmation</u>
<u>of Fact or Promise".</u>

The statements identified in the FAC fall into two general categories: (1) factual statements; and (2) statements regarding the indications of use of the Products. The factual statements consist of statements such as "Soft tablets dissolve instantly," "100% natural," "Quick dissolving tablets," "Aspirin free," "Gentle on Skin No Harsh Chemicals," and "non-habit forming." (FAC, ¶¶ 21, 28, 34, 46, 51.) Although Plaintiffs provide these quotes/statements and make the conclusory assertion that these types of statements are false, Plaintiffs complaint is simply that the Products did not work for them. Plaintiffs do *not* allege, for example, that the Products did not dissolve quickly, were not 100% natural or aspirin free, did not contain harsh chemicals. Accordingly, these factual statements do not support Plaintiffs' breach of express warranty claim.

The second category of statements alleged in the FAC consist of statements that describe the symptoms for which the Products may be used, such as: "relief of simple nervous tension and occasional sleeplessness," "sleep aid," for "restless or wakeful sleep from exhaustion," "for stress, nervousness or nervous headache," "Relieve Pain and Irritability from Teething," "Migraine Headache Relief," "Natural Relief for Itching, Burning and Crusting Skin Due to Exposure to Poison Ivy or Oak," "Symptomatic Relief for Colic in Children," and "Temporarily relieves the symptoms of pain and cramps in lower body...." (FAC, ¶ 80.)

The first category of statements (the factual statements) may constitute "affirmations of fact or promise," *e.g.*, that the Products are in fact 100% natural. The second category of statements (indications of use statements), however, do *not* constitute "affirmations of fact or promise," *i.e.*, an express warranty, guarantee, or promise that a product will work *all* the time for *everyone*. These statements do *not* imply, much less claim as an affirmation of fact or promise, that the Products are guaranteed "cures" for any ailments or illnesses.

Rather, the statements represent that the Products are homeopathic remedies for "relief" from specific ailments and symptoms.  Terms such as "relief" or "effective" do not provide any guarantee of the actual results that may be obtained by using the Products, nor do they imply that the Products will cure anyone's illnesses.  The factual and indications of use statements inform consumers that the Products are quick-dissolving all-natural homeopathic remedies that should be used to treat specified symptoms.  These representations do not amount to promises or affirmations that the Products will work without fail for everyone, every time.

The analysis of the difference between actionable factual representations and non-actionable statements in the analogous context of CLRA claims is instructive. In *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003), the court determined that while the terms "digital signal," "50 channels" and "7 day schedule" were verifiable factual statements, statements such as "crystal clear" and "CD quality" were not:

> "Crystal clear" and "CD quality" are not factual representations that a given standard is met. Instead, they are boasts, all-but-meaningless superlatives....After all, how clear is any given crystal?  How good are the speakers on the CD player? The common experience of television watchers since the beginning of television is that no television delivery system is perfect.... Neither "crystal clear" nor "CD quality" can reasonably be understood as a promise of perfection.

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360-1361 (2003).[5]  As in *Echostar*, the indications of use on the Products' labels

---

[5]/ *See also Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998-999 (N.D. Cal. 2007) ("terms such as 'high quality,' 'reliable,' 'high performance,' and 'latest technology' are non-actionable puffery whereas 'brand-name components' and 'most stringent quality control tests' are actionable factual representations that can be proved or disproved during discovery.")

1   "can[not] be reasonably understood as a promise of perfection," *i.e.*, that the

2   Products would work all the time for everyone in relieving symptoms. As anyone

3   who has taken a drug to treat symptoms knows, no drug is 100% effective for

4   everyone, all the time.

5       b.  <u>FDA Regulations Require Indication of Use Labeling and</u>

6           <u>Do Not Require Drugs to be 100% Effective To Be</u>

7           <u>Marketed</u>

8    Moreover, the indications for use statements are required by U.S. Food and

9   Drug Administration ("FDA") regulations, which require labels for over-the-

10   counter ("OTC") drugs to contain "the general pharmacological category(ies) or the

11   principal intended action(s) of the drug" as well as "the indication(s) for the specific

12   drug product." 21 C.F.R. § 201.66(c)(3), (4). An indication for use statement

13   required under federal law in order for consumers to understand the conditions for

14   which the drug is intended is ***not*** an express or implied promise or guarantee that

15   the drug will, in fact, relieve the symptom. If it were otherwise, every drug maker

16   would breach a warranty every time the drug (e.g., headache or cold medications)

17   failed to relieve a consumer's symptom, turning the manufacturer into a guarantor

18   of its product's effectiveness.

19    Since the enactment of the Federal Food, Drug, and Cosmetic Act ("FDCA"),

20   the FDA has adopted further guidance on the sale of homeopathic drugs via its

21   Compliance Policy Guide ("CPG"), which sets forth the requirements for the legal

22   marketing of homeopathic products, to which Defendants in this case have adhered.

23   *See* FDA Compliance Policy Guide Sec. 400.400 (formerly CPG 7132.15),

24   "Conditions Under Which Homeopathic Drugs May Be Marketed."[6] CPG 400.400

25   "delineates those conditions under which homeopathic drugs may ordinarily be

26   marketed in the U.S." If a homeopathic drug "is being offered for use (or

27   promoted) significantly beyond recognized or customary practice of homeopathy,"

28

---

[6] *See* http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074360.htm.

then "the agency's policy on health fraud would apply."[7]   The CPG states that products "must comply with the labeling provisions of Sections 502 and 503 of the Act and Part 201 Title 21 of the Code of Federal Regulations . . . . The labeling for those products offered for OTC retail sale must bear at least one major OTC indication for use, stated in terms likely to be understood by lay persons."[8]   Thus, homeopathic products *must* provide to consumers at least one use for which they are indicated, in order to be legally marketed under the CPG.

In fact, although Plaintiffs' breach of warranty (and all of their other claims) are premised on the implicit proposition that any drug with less than a 100% effectiveness rate is mislabeled, the guidelines governing the sale of drugs does not support this proposition.   The FDA regulates the safety and effectiveness of all drugs, whether prescription or over-the-counter.   The FAC, insofar as it alleges that the Products must be effective for *everyone* who takes it, misrepresents the standard for "effectiveness" as it pertains to drugs because there is no requirement that a drug be 100% effective to be marketed as a remedy for an illness or symptom. Indeed, the FDA states that for OTC drugs, "[e]ffectiveness means a reasonable expectation that, in a ***significant proportion of the target population***, the pharmacological effect of the drug, when used under adequate directions for use and warning against unsafe use, will provide clinically significant relief of the type claimed."   21 C.F.R. § 330.10(a)(4)(ii) (emphasis added).   100% effectiveness is neither required nor expected, for a drug manufacturer to represent that an OTC drug is effective.

---

[7] "Health Fraud" is defined in the CPG as "[t]he deceptive promotion, advertisement, distribution or sale of articles intended for human or animal use, that are represented as being effective to diagnose, prevent, cure, treat, or mitigate disease (or other conditions), or provide a beneficial effect on health, but which have not been scientifically proven safe and effective for such purposes."

[8] *See* http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074360.htm.

Additionally, the FDA has approved drugs as "effective" whose overall effectiveness falls far short of the 100% standard urged by Plaintiffs.  For example, Ferriprox, a prescription drug to treat transfusion-dependent iron overload in certain patient populations, was deemed effective by the FDA because clinical trials showed that 50% of the test patients experienced at least a 20% reduction in serum ferritin.[9]  Zostavax, a vaccine used for the prevention of herpes zoster (shingles), was approved for use in patients aged 50 to 59 years old based on a showing that it worked for 69.8% of the trial subjects.[10]  Chantix, a prescription drug used to help smokers quit smoking, was approved based on clinical trials that showed that it was effective in between 40 and 51% of the trial subjects.[11]  Finally, Monistat3 was approved by FDA for the OTC treatment of vaginal yeast infections on the basis of two clinical trials that showed that the product's efficacy ranged from 63 to 69%.[12]

Despite clear guidance from the FDA that no drug is required to be 100% effective, Plaintiffs' legal position appears to be that if one person experiences a treatment failure, then statements that the Product relieves a symptom must be false or misleading and that express and implied warranties purportedly created by indication of use labeling have been breached.  Because Plaintiffs have only represented that the Products did not work for them, in order to find that Plaintiffs properly pleaded claims for breaches of warranty, the Court must necessarily find that *any* drug marketed as effective must satisfy a 100% efficacy standard.   There is simply no legal basis for such a finding.   In the absence of allegations demonstrating that the FDA-required indications of use labels are warranties and

---

[9] *See* http://www.accessdata.fda.gov/drugsatfda_docs/label/2011/021825lbl.pdf
[10] *See* http://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM249230.pdf
[11]/   http://www.accessdata.fda.gov/drugsatfda_docs/nda/2006/021928_s000_Chantix_MedR.pdf.
[12]/ *See* http://www.accessdata.fda.gov/drugsatfda_docs/nda/98/20827_Monistat3_medr_P2.pdf

1    that the Products are wholly ineffective in relieving any symptoms for anyone,

2    Plaintiffs have not pleaded facts demonstrating that Defendants' have breached any

3    warranties.

4              **2.    Plaintiffs'   Breach   of   the   Implied   Warranty   of**

5                       **Merchantability Claim Also Fails.**

6              "Unlike an express warranty, the implied warranty of merchantability arises

7    by operation of law and provides for a minimum level of quality."  *Isip v.*

8    *Mercedes-Benz USA*, 155 Cal. App. 4th 19, 26 (2007), quoting *Am. Suzuki Motor*

9    *Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1295-1296 (1995).  The implied

10   warranty of merchantability for consumer goods is codified in Civil Code

11   § 1791.1(a), which provides: "'Implied warranty of merchantability' or 'implied

12   warranty of that goods are merchantable' means that the consumer goods meet each

13   of the following: (1) Pass without objection in the trade under the contract

14   description. (2) Are fit for the ordinary purposes for which such goods are used.

15   (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises

16   or affirmations of fact made on the container or label." CAL. CIV. CODE § 1791.1(a).

17   "Thus, a breach of the implied warranty of merchantability means the product did

18   not possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa*

19   *Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

20             As with their express warranty claim, Plaintiffs' implied warranty of

21   merchantability claim is premised simply on the assertion that the Products did not

22   work for them.   Based on their allegations, it appears that Plaintiffs' implied

23   warranty claim is premised on Civil Code § 1791.1(a)(4) – that the Products did not

24   "[c]onform to the promises or affirmations of fact made on the container or label."

25   (*See*, FAC, ¶¶ 111, 112.)  Any such claim, however, fails for the same reasons their

26   express warranty claim fails. To the extent Plaintiffs' implied warranty claim is

27   premised on Civil Code § 1791.1(a)(2) – that the homeopathic Products are not "fit

28   for the ordinary purposes for which such goods are used" – Plaintiffs' allegations

1  fail to support such a claim.   This is because there are *no* allegations that the
2  Products are not fit for their intended use – as homeopathic drugs.   Plaintiffs'
3  complaint is that the Products do not work for them – *because* they are
4  homeopathic drugs.

5  **C.   Plaintiffs' Sixth Cause of Action, for Common Counts/Unjust**
6  **Enrichment, Also Fails.**

7      For their Sixth Cause of Action, Plaintiffs purport to assert a claim for
8  "Money Had and Received, Money Paid and Unjust Enrichment."   This "claim" –
9  which is nothing more than a catch-all equitable "claim" premised on the faulty and
10  unsupported assumption that Defendants have engaged in some type of wrongdoing
11  and have been unjustly enriched as a result – also fails.

12      First, as the Court of Appeal has recognized, "[t]here is *no cause of action* in
13  California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal.
14  App. 4th 779, 794 (2003) (emphasis added); *see also McKell v. Wash. Mut., Inc.*,
15  142 Cal. App. 4th 1457, 1490 (2006).   Unjust enrichment is merely a remedy
16  "synonymous with the remedy of restitution." *Walker v. USAA Cas. Ins. Co.*, 474 F.
17  Supp. 2d 1168, 1174 (E.D. Cal. 2007) (dismissing claim for unjust enrichment),
18  *quoting Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1314-15 (1989).

19      Second, Plaintiffs' claims for money had and received and money paid are
20  merely iterations of common counts, the common law action of general assumpsit.
21  *See* 4 WITKIN, CALIFORNIA PROCEDURE (5TH ED), PLEADING, §§ 553, 561, 564.   The
22  common counts of money had and received and money paid are equitable quasi-
23  contract claims premised on the general principles of restitution and unjust
24  enrichment, *i.e.*, where one person has received money belonging to another that
25  "in equity and good conscience" should be returned, such as where a person obtains
26  another's money by wrongful or fraudulent means.   *See generally Id.*, §§ 553, 561,
27  564; *Philpott v. Superior Court*, 1 Cal.2d 512, 519-520, 521 (1934) (reviewing the
28  history of the common counts).

1    Restitution and disgorgement are among the equitable remedies permitted
2    available under the UCL, a claim Plaintiffs may not maintain due to their lack of
3    standing.  In any case, Plaintiffs allegations merely demonstrate that the Products
4    did not work.   That allegation, coupled with the indication of use statements
5    required by federal law, does not adequately plead a basis for the conclusion that
6    that Defendants have done anything wrong and have been unjustly enriched.
7    Plaintiffs have alleged no facts demonstrating that Defendants have acquired
8    anyone's money through wrongful or fraudulent means.  Thus, there is no factual
9    basis for Plaintiffs' common counts claim.

10   **D.     Plaintiffs Lack Standing to Assert Claims as to "All" of**
11   **Defendants' Homeopathic Products.**

12   Plaintiffs claim to have purchased and used seven of Defendants' products
13   and were dissatisfied with the Products.   (FAC, ¶¶ 9, 19, 26, 32, 38, 44, 50.)
14   Plaintiffs' claims, however, are not limited to the seven Products.    Instead,
15   Plaintiffs purport to assert each of their claims for *all* of Defendants' homeopathic
16   products, *i.e.*, products that Plaintiffs never purchased or used and have no basis to
17   allege whether all other products worked for them.  As to these products that they
18   never purchased or used, Plaintiffs lack standing to assert any claims relating to
19   such products. This is because, as a non-purchaser of such products, Plaintiffs have
20   *not* relied on any misrepresentations or omissions as to such products *nor* have they
21   suffered any injury-in-fact as a result of any conduct by Defendants as to such
22   products Plaintiffs did *not* buy.  *See, e.g.,* Bus. & Prof. Code §§ 17204, 17535;
23   Civil Code § 1780(a); *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86 (2007)
24   (plaintiff lacked standing to assert UCL claims against defendants with whom
25   plaintiff had no dealings or transactions).

26   Indeed, Plaintiffs have acknowledged that a plaintiff only has standing as to
27   products that the plaintiff purchased and used.  In their recently filed Motion to
28   Intervene in a related state court action, *Acuna v. Hyland's*, Plaintiffs argue that the

1   plaintiff in *Acuna*, cannot adequately represent Plaintiffs because she did not buy or
2   use six of the seven Products Plaintiffs allege to have bought and used. *See*, RJN,
3   Ex. B at 8.

4        Any claim as to any potential product must be asserted, and stand on, its own
5   because each product has different formulations with different ingredients for
6   different indications of use. As the California Court of Appeal noted in *National*
7   *Council Against Health Fraud v. King Bio Pharma*, 107 Cal. App. 4th 1336, 1348
8   (2003), a false advertising claim over a homeopathic drug product cannot be
9   sustained simply by alleging (as have Plaintiffs in this case) that homeopathy
10  doesn't work. Consequently, any determination of the falsity of any alleged
11  misrepresentations as to any particular product must be undertaken independently
12  for each product.

13  **III.     PLAINTIFFS' CLASS CLAIMS CANNOT BE MAINTAINED.**

14       Even assuming, *arguendo*, that Plaintiffs have adequately pled facts
15  supporting their claims *as individuals* – which they have not, for the reasons
16  discussed above – Plaintiffs' FAC demonstrates that all of their class claims fail to
17  meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

18       This case exemplifies the Supreme Court's prediction that "[s]ometimes the
19  issues are plain enough from the pleadings." *Gen. Tel. Co. of Sw v. Falcon*, 457
20  U.S. 147, 160 (1982); *see also, John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443,
21  445 (5th Cir. 2007) (upholding the dismissal of class allegations pursuant to a Rule
22  12(b)(6) motion and noting that where it is "facially apparent from the pleadings
23  that there is no ascertainable class, a district court may dismiss the class allegation
24  on the pleadings."); *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986)
25  (upholding dismissal of class claims on the pleadings because the controlling
26  precedent precluded class-wide relief); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300,
27  1309 (11th Cir. 2008) ("In some instances, the propriety *vel non* of class
28  certification can be gleaned from the face of the pleadings."); *cf. Jackson v. Motel 6*

1  *Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (noting that failure of class

2  allegations was "readily apparent from a reading of the" complaint).

3       In *Xavier v. Belfour Group USA, Inc.*, 254 F.R.D. 281, 289-91 (E.D. La.

4  2008), the district court dismissed class claims against an employer brought under

5  both Rule 23(b)(2) and 23(b)(3) because, like here, the pleading itself demonstrated

6  the lack of compliance with the rule's requirements for these types of certification.

7  The burdens of massive discovery for a nationwide class of individuals who bought

8  Defendants' products for subjective and individualized reasons at retail outlets

9  throughout the United States, many of whom were undoubtedly happy with their

10  purchase, are precisely the types of "potentially enormous expense[s]" that the

11  Supreme Court has sought to prevent in the absence of an adequate pleading. *See*

12  *Twombly*, 550 U.S. at 559.

13       Here, Plaintiffs propose three alternative putative classes they seek to certify

14  and represent:

15      • A *nationwide* class of purchasers of *any* of Defendants' homeopathic

16        products since *2000*;

17      • A *nationwide* class of purchasers, from any state with consumer

18        protection statues that do not materially differ from California's consumer

19        protection statutes, who purchased *any* of Defendants' homeopathic

20        products since *2000*; or

21      • A *California-only* class of purchasers of *any* of Defendants'

22        homeopathic products since *2000*.

23  For the reasons discussed below, Plaintiffs can certify neither a nationwide nor a

24  California-only class in this action.

25      A.    **Plaintiffs Cannot Certify A Nationwide Class.**

26       Under the Ninth Circuit's holding in *Mazza, supra*, Plaintiffs cannot certify a

27  nationwide class for alleged violations of California's consumer protection laws.

28  As discussed above, in *Mazza*, the Ninth Circuit ruled that out-of-state plaintiffs

could not pursue claims under California's consumer protection laws.   After reaching this conclusion, the court turned to the issue on appeal – whether the district court erred in certifying a national class – and held that, because the laws of multiple jurisdictions would apply to any nationwide class of purchasers, the "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Mazza*, 666 F.3d at 596.   Accordingly, the court reversed the district court's certification of a nationwide class for violations of the UCL, FAL, CLRA, and unjust enrichment.   *Id.*

In the few months since *Mazza*, district courts have generally applied *Mazza* to: (1) dismiss the UCL, CLRA, and FAL claims of out-of-state plaintiffs; (2) dismiss nationwide class allegations for claims under California's consumer protection laws; and/or (3) deny certification of nationwide classes.   *See, e.g., Horvath v. LG Electronics Mobilecomm U.S.A, Inc.*, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) (declining to apply California consumer protection laws to out-of-state plaintiffs, dismissed out-of-state plaintiffs' California consumer protection law claims); *Kowalsky v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar. 14, 2012) (denying class certification of national class of HP printer purchasers for UCL and CLRA claims) (*Mazza* "precludes the certification of a nationwide class asserting claims under the UCL and the CLRA"); *Kikos v. Procter & Gamble Co.*, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio February 28, 2012) (applying California law, denying class certification of national class of food product purchasers for UCL, CLRA, and breach of warranty claims); *Gianino*, 2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) (denying class certification of national class of Emergen-C buyers for claims under California consumer protection laws); *Banks v. Nissan North Am., Inc.*, 2012 U.S. Dist. LEXIS 37754 (N.D. Ca. Mar. 20, 2012) (granting motion to dismiss class action allegations with respect to UCL and CLRA claims to the extent asserted on behalf of a nationwide class).

1       Here, application of the rationale and analysis underlying *Mazza* precludes

2   Plaintiffs from maintaining this action as a nationwide class action.   Just as in

3   *Mazza*, the variances in state laws overwhelm any common issues and, as a result,

4   neither the predominance of common issues nor the superiority requirements for

5   class certification under F.R.C.P. 23(b)(3) can be met.   *See*, § II.A., *supra*; *Mazza*,

6   666 F.3d at 596; *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *16-*18.   As Judge

7   Carney noted in *Gianino*:

8           The trial [of a nationwide class] "would devolve quickly into an

9           unmanageable morass of divergent legal issues.   Certain evidence

10           would be admissible for some class members but not others.   Fifty

11           different sets of jury instructions and verdict forms would have to be

12           crafted . . . .   Needless to say, the trial would be incredibly time-

13           consuming, unnecessarily disjointed, hopelessly confusing, and

14           unfairly prejudicial to [defendant] and many, if not all, members of

15           the class.   Justice demands that this case not be adjudicated as a class

16           action.

17   *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *17-*18.   Given that the class issues in

18   this case are analogous to those in *Mazza* and *Gianino*, it is evident that the same

19   "unmanageable morass of divergent legal issues" would result here.

20       Plaintiffs' attempt to plead around *Mazza* – by proposing a class of

21   purchasers from states with consumer protection laws similar to those of California

22   – is to no avail.   This is because even among the three jurisdictions at issue –

23   California and Plaintiffs' states, Georgia and Florida – there are important

24   differences, including: (1) the availability of class actions (not permitted in

25   Georgia); (2) different statutes of limitations under different statutes (2, 3, and 4-

26   year statutes); (3) available remedies (different statutes provide different limitations

27   on available remedies – e.g., injunction only, damages, restitution, punitive

28   damages, and attorney's fees); and (4) pre-filing demands (required in Georgia).

1   (*See* RJN, Ex. A.)   Given the differences among even the laws of Plaintiffs' two

2   home states and California, Plaintiffs inevitably would be required to seek the

3   certification of multiple sub-classes, which would suffer from the same superiority

4   issues posed by a nationwide class of 50 states. *See Gianino*, 2012 U.S. Dist.

5   LEXIS 32261, at *18, n2 (in denying certification of nationwide class, also rejected

6   plaintiffs' arguments for subclasses in lieu of a single nationwide class).

7   **B.**      **Plaintiffs Lack Standing to Represent a California-Only Class.**

8          Plaintiffs also cannot certify a California-only class of purchasers.   As the

9   United States Supreme Court long ago held, a proposed class representative "cannot

10   represent a class of whom they are not a part" – the named plaintiff must be a

11   member of the class he or she proposes to represent. *Bailey v. Patterson*, 369 U.S.

12   31, 32-33 (1962). Here, because Plaintiffs are not California residents, they are not

13   members of the California-only class they propose to represent.   (FAC, ¶¶ 5, 6.)

14   Consequently, Plaintiffs cannot seek to represent and certify a California class of

15   which they are not members.

16   **C.**      **Plaintiffs Lack Standing To Assert Claims For *All* Of Defendants'**

17              **Products.**

18          As discussed in § II.D., above, Plaintiffs lack standing to assert individual

19   claims for products they did not purchase and use.   The same is true for their class

20   claims – they lack standing to represent any class of consumers as to any products

21   that Plaintiffs did not buy and use.    This is because, as with their proposed

22   California class, Plaintiffs are not members of the class of purchasers who bought

23   and used any of Defendants' products other than the seven Products specifically

24   identified in their FAC. *Bailey*, 369 U.S. at 32-33 (1962).

25

26

27

28

1

## CONCLUSION

2      For the foregoing reasons, Defendants respectfully request that the Court

3 grant this Motion and dismiss Plaintiffs' FAC.

4 Dated:    March 30, 2012                    JEFFREY MARGULIES
                                              JOSEPH H. PARK
5                                             **FULBRIGHT & JAWORSKI L.L.P.**

6

7                                                 /S/ Joseph H. Park
                                              JOSEPH H. PARK
8                                             Attorneys for Defendants
                                              STANDARD HOMEOPATHIC
9                                             COMPANY and HYLANDS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 555 S. Flower Street, 41st Floor, Los Angeles, California  90071.

On March 30, 2012, I served the foregoing document(s) described as: *DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT* on the interested parties in this action as follows:

Ronald A. Marron, APLC
LAW OFFICES OF RONALD A. MARRON, APLC
3636 4th Avenue, Suite 202
San Diego, California  92103
Tel:  (619) 696-9006
Fax:  (619) 564-6665

*Attorney for Plaintiff and Proposed Class*

☒       (BY CM/ECF) I am readily familiar with the practice for collection and processing of documents through CM/ECF and on March 30, 2012, I caused a true and correct copy of the above listed document(s) to be filed and served electronically through CM/ECF, by uploading the electronic files for each of the above listed document(s).  CM/ECF then notified registered parties via e-mail.

Executed on March 30, 2012 at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Rhonda M. Cole

DOCUMENT PREPARED
ON RECYCLED PAPER

52044377.1

- 1 -

PROOF OF SERVICE