1  **LAW OFFICES OF RONALD A. MARRON, APLC**
2  RONALD A. MARRON (175650)
   *ron@consumersadvocates.com*
3  MAGGIE K. REALIN (263639)
   *maggie@consumersadvocates.com*
4  SKYE RESENDES (278511)
   *skye@consumersadvocates.com*
5  3636 4th Avenue, Suite 202
   San Diego, California 92103
6  Telephone: (619) 696-9006
7  Facsimile: (619) 564-6665
8
9  *Attorneys for Plaintiffs and the Proposed Class*
10

11              **UNITED STATES DISTRICT COURT**
12
              **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| 14  KIM ALLEN and DANIELE XENOS, individually, and on behalf of all others similarly situated and the general public, | CASE NO. 2-12 CV-1150 DMG (MANx) |
| 15 | CLASS ACTION |
| 16 | Action Filed: Feb. 9, 2012 |
| 17       Plaintiffs, | |
| 18  v. | **PLAINTIFFS KIM ALLEN AND DANIELE XENOS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 19  HYLAND'S, INC., a California corporation; and STANDARD HOMEOPATHIC COMPANY, | |
| 20 | |
| 21       Defendants. | |
| 22 | Judge:      Hon. Dolly M. Gee |
| 23 | Courtroom:  7 |
|    | Date:       May 4, 2012 |
| 24 | Time:       9:30 a.m. |

25
26
27
28

# **TABLE OF CONTENTS**

I.     BACKGROUND FACTS AND SUMMARY ............................................ 1

II.    ARGUMENT .................................................................................. 1

       A. Legal Standard ...................................................................... 1

       B. The First Amended Complaintmeets Rule 8(a)(2) and 9(b) Standards ............... 2

       C. Plaintiffs have Standing Because they Suffered Injury in Fact, Caused by
          Relying on the Products' Advertising ................................... 3

       D. Choice of Law is Appropriately Decided on a Rule 23 Motion ........................ 4

       E. Defendants have not Alleged which Foreign State's Law Should Apply
          or How it Materially Differs, and Only Discovery will Reveal these
          Necessary Facts ..................................................................... 9

       F. The Class Definition Should be Analyzed under Rule 23 and not Standing ..... 11

       G. The UCL, FAL and CLRA do not Expressly Exclude Out-of-State
          Plaintiff Claims Against California Defendants ............................ 13

       H. Plaintiffs Sufficiently Allege the Existence of Express
          and Implied Warranties ........................................................ 14

              1.   Defendants are the Authors of the Products' Claims; not the FDA ........ 14

              2.   The Regulations Defendants Cite Do Not Pertain to the Products ......... 16

              3.   All of the Products' Representations are Actionable ............................. 17

              4.   Plaintiffs' Implied Warranty of Merchantability Claim is Valid ........... 20

       I. The FAC Sufficiently Alleges a Claim for Unjust Enrichment ...................... 21

III.   CONCLUSION ................................................................................ 25

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**CASES**</u>

3

*Aaronson v. Vital Pharms., Inc.*,
   2010 U.S. Dist. LEXIS 14160 (S.D. Cal. 2010) .......................................................... 18

4

*Badella v. Deniro Marketing, LLC*,
   2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) .......................................................... 7

5

*Bailey v. Patterson*,
   369 U.S. 31 (1962) ........................................................................................... 3, 4

6

*Banks v. Nissan North Am., Inc.*,
   2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012) .......................................... 8

7

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431, 444 (2005) ........................................................................... 14, 17

8

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   No. 06-0715 SC, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) .......................... 8, 9

9

*Bruno v. Eckhart Corp.*,
   Case No. SACV 11-0173, 2012 WL 752090 (C.D. Cal. Mar. 6, 2012) .................... 4, 7

10

*Bruno v. Quten Research Inst., LLC*,
   --- F.R.D. ---, Case No. SACV 11-00173 DOC (Ex),
   2011 U.S. Dist. LEXIS 132323 (C.D. Cal. Nov. 14, 2011) ................................. 11, 12

11

*Churchill Vill., LLC*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..................................................................... 13

12

*Coastal Phys. Services of Broward County v. Ortiz*,
   764 So. 2d 7 (Fla. App. 4th Dist. 1999) ..................................................................... 9

13

*Comm. on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal.3d 197 (1983) ..................................................................................................... 2

14

*Consumer Advocates v. Echostar Satellite Corp.*,
   113 Cal.App.4th 1351 (2003) ............................................................................. 18, 19

15

*County of Solano v. Vallego Redevelopment Agency*,
   75 Cal. App. 4th 1262 (1999) ................................................................................. 24

16

*Crosby v. Social Sec. Admin. of U.S.*,
   796 F.2d 576 (1st Cir. 1986) ..................................................................................... 5

17

*Delarosa v. Boiron, Inc.*,
   818 F. Supp. 2d 1177 (C.D. Cal. 2011) .............................................. 12, 14, 15, 16, 17

18

*Dinosaur Dev., Inc. v. White*,
   216 Cal. App. 3d 1310 (1989) ......................................................................... 23, 24

19

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir.1998) ..................................................................................... 11

20

*Federal Trade Comm'n v. Standard Ed. Soc.*,
   302 U.S. 112 (1937) ..................................................................................................... 21

21

*Fitzpatrick v. Gen. Mills*,
   635 F.3d 1279 (11th Cir. 2011) ................................................................................. 9

22

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) ..................................................................................................... 5

23

24

25

26

27

28

ii

*Ghirardo v. Antonioli,*
  14 Cal. 4th 39 (1996) .................................................................21, 22, 23, 24, 25

*Gianino v. Alacer,*
  2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) ..............................4

*Gilligan v. Jamco Dev. Corp.,*
  108 F.3d 246, 249 (9th Cir. 1997) ................................................................2

*Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.,*
  2007 WL 1994057 (S.D. Cal. Apr. 18, 2007)..........................................23, 24

*Goodman v. Schlesinger,*
  584 F.2d 1325 (4th Cir.1978) ........................................................................5

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .....................................................................11

*Hauter v. Zogarts,*
  14 Cal. 3d 104 (1975) ............................................................................19, 20

*Hirsch v. Bank of Am.,*
  107 Cal. App. 4th 708 (2003) ......................................................................24

*In re BCBG Overtime Cases,*
  163 Cal. App. 4th 1293 (2008) ......................................................................9

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ..................................................................................6

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.,*
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ........................................................8, 9

*John v. Nat'l Sec. Fire & Cas. Co.,*
  501 F.3d 443, 445 (5th Cir. 2007) ................................................................5

*Johnson v. General Mills,*
  --- F.R.D. ---, 2012 WL 32067 (C.D. Cal. Jan. 5, 2012) ..............................11

*Keith v. Buchanan,*
  173 Cal. App. 3d 13 (1985) ....................................................................18, 19

*Kidd v. Ashcroft,*
  580 F.3d 949 (9th Cir. 2009) ........................................................................2

*Kowalsky v. Hewlett-Packard Co.,*
  2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar. 14, 2012) ..............................6

*Kwikset Corp. v. Super. Ct.,*
  51 Cal. 4th 310, 328 (2011) ....................................................................19, 20

*Lauriedale Associates, Ltd. v. Wilson,*
  7 Cal. App. 4th 1439 (1992) ........................................................................24

*Lavie v. Procter & Gamble Co.,*
  105 Cal. App. 4th 496 (2003) ......................................................................21

*Lectrodryer v. SeoulBank,*
  77 Cal. App. 4th 723 (2000) ........................................................................25

*Leoni v. State Bar,*
  39 Cal. 3d 609 (1985) ...............................................................................9, 12

*Mazza v. American Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ............................................1, 3, 4, 5, 6, 7, 9, 10

iii

*McKell v. Wash. Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) ........................................................... 24

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ............................................................. 24

*Mills v. Foremost Ins. Co.*,
511 F.3d 1300 (11th Cir. 2008) ............................................................ 5

*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235 (2009) ........................................................... 13

*MV Transp., Inc. v. Omne Staff Leasing, Inc.*,
378 F. Supp. 2d 1200 (E.D. Cal. 2005) .............................................. 25

*Nat'l Council Against Health Fraud v. King Bio Pharma*,
107 Cal. App. 4th 1336 (2003) ..................................................... 11, 12

*Parker v. Time Warner Entm't Co.*,
331 F.3d 13 (2d Cir.2003) ..................................................................... 5

*Parks v. Eastwood Ins. Services, Inc.*,
2002 WL 34370244 (C.D. Cal. July 29, 2002) .................................. 14

*Rikos v. Procter & Gamble Co.*,
2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012) ................... 6

*Shum v. Intel Corp.*,
499 F.3d 1272 (Fed. Cir. 2007) .......................................................... 23

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .............................................................. 3

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir.1998) ............................................................... 2

*Stickrath v. Globalstar, Inc.*,
527 F. Supp. 2d 992 (N.D. Cal. 2007) ................................................ 18

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
2 Cal.App.4th 153 (1991) ...................................................................... 2

*Thompson v. 10,000 RV Sales, Inc.*,
130 Cal. App. 4th 950 (2005) ............................................................. 21

*ViChip Corp. v. Lee*,
438 F.Supp.2d 1087 (N.D. Cal. 2006) ................................................ 23

*Villager Franchise Sys., Inc. v. Dhami, Dhami & Virk*,
CVF046393 RECSMS, 2006 WL 224425 (E.D. Cal. Jan. 26, 2006) ......... 23

*Vinole v. Countrywide Home Loans*,
571 F.3d 935 (9th Cir. 2009) .......................................................... 9, 11

*Walker v. USAA Cas. Ins. Co.*,
474 F.Supp.2d 1168 (E.D. Cal. 2007) ................................................ 23

*Wash. Mut. Bank, FA v. Super. Ct.*,
24 Cal. 4th 906 (2001) .......................................................................... 5

*Westways World Travel v. AMR Corp.*,
182 F. Supp. 2d 952 (C.D. Cal. 2001) ................................................ 23

*Williams v. Beechnut Nutrition Corp.*,
185 Cal. App. 3d 135 (1986) .............................................................. 18

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................... 2
*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir.1972) ..................................................................... 5

**FEDERAL STATUTES**

U.S. Const., art. III ........................................................................................ 3
21 U.S.C. § 321(p) ....................................................................................... 17
21 U.S.C. § 352(a) .................................................................................. 15, 17
21 U.S.C. §§ 355(a), (b), (d) ...................................................................... 17

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17500 .................................................................. 13
Cal. Civ. Code §§ 1782(a)(1)-(2) ................................................................ 10
Cal. Civ. Code § 1782(d) ............................................................................. 13
Cal. Com. Code § 2313 ................................................................................ 18
Cal. Com. Code § 2314(1) ........................................................................... 20
Cal. Com. Code §§ 2315(2)(c), (f) .............................................................. 20
Fla. Stat. § 501.204(1) ................................................................................. 10
Ga. Code Ann. § 10-1-373 ........................................................................... 10
Ga. Code Ann. § 10-1-373(a) ...................................................................... 10
Ga. Code Ann. § 10-1-391(b) ...................................................................... 10
Ga. Code Ann. § 10-1-392(3) ...................................................................... 10
Ga. Code Ann. § 10-1-393(a) ...................................................................... 10
Ga. Code Ann. § 10-1-393(b)(9) ................................................................. 10
Ga. Code Ann. § 10-1-399(a) ...................................................................... 10
Ga. Code Ann. § 10-1-399(b) ...................................................................... 10
Ga. Code Ann. §§ 10-1-391(a) .................................................................... 10

**RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................................... 1
Fed. R. Civ. P. 9(b) ....................................................................................... 2
Fed. R. Civ. P. 12(b)(6) ................................................................................. 2
Fed. R. Civ. P. 15(a)(2) ............................................................................ 1, 25
Fed. R. Civ. P. 23 ........................................................... 3, 4, 5, 8, 10, 11

1

## **REGULATIONS**

2

21 C.F.R. § 201.56 ........................................................................................22

3

21 C.F.R. § 201.57 ........................................................................................22

21 C.F.R. § 201.61(b) ..............................................................................15, 16

4

21 C.F.R. §§ 330.10(a)(1)-(4) .......................................................................17

5

21 C.F.R. § 330.10(a)(4)(ii) ..........................................................................16

6

## **OTHER AUTHORITIES**

7

8

Douglas L. Johnson, et al., What Happened to Unjust Enrichment in California -
      The Deterioration of Equity in the California Courts,

9

      44 Loy. L.A. L. Rev. 277 (2010) ...........................................................21

Restatement (Third) of Restitution and Unjust Enrichment § 1 ......................22

10

1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 97......................23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs Kim Allen and Daniele Xenos ("Plaintiffs") respectfully oppose Defendants Hyland's, Inc. ("Hyland") and Standard Homeopathic Company's ("SHC") Motion to Dismiss Plaintiffs' First Amended Complaint.[1]

## I.   BACKGROUND FACTS AND SUMMARY

This is a false and misleading advertising case, premised on uniform marketing claims made by California Defendants. Hyland and SHC manufacture, advertise and sell the Products from their headquarters in California to consumers throughout the United States.

The majority of Defendants' Motion is based on the belief that *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), precludes a complaint against California entities by out-of-state plaintiffs, as a matter of law. *Mazza* did not arise via a motion to dismiss, did not turn on a standing issue, and did not overturn California law that choice of law issues must be decided on a case-by-case basis, at the appropriate time. Defendants' Motion is premature because what law will apply to the class, and the range of products it shall encompass, are appropriately decided at the class certification stage. Discovery has not begun, and dismissal is overwhelmingly not supported under California law.

The remainder of Defendants' Motion concerns breach of warranty and unjust enrichment. But, Defendants are authors of their advertising statements, not the FDA; and unjust enrichment is a valid claim in California. The Court should deny Defendants' Motion to Dismiss. Alternatively, Plaintiffs request leave to amend.[2] Fed. R. Civ. P. 15(a)(2).

## II.   ARGUMENT

### A.   Legal Standard

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2). A complaint is sufficient if the facts

---

[1] Citations to plaintiffs' first amended complaint (Dkt. No. 17) are designated "¶ __."
[2] Plaintiffs' counsel has been retained by California purchasers of Defendants' products, who could serve as additional class representatives.

1

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

give rise to "a reasonable expectation that discovery will reveal evidence" of the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In a Rule 12(b)(6) motion, the trial court must accept all factual allegations of the complaint as true, "draw inferences from those allegations in the light most favorable to the plaintiff," and "construe the complaint liberally." *Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). *See also Bell Atl. Corp.*, 550 U.S. at 555. A complaint is sufficiently plausible when the facts rise "above mere speculative level." *Id.* at 570, 555. "Dismissal of claims that fail to meet this standard should be with leave to amend." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

Motions to dismiss are "viewed with disfavor" and "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The question of whether a reasonable consumer would have been deceived by advertising is properly a question of fact for the jury, not suitable for demurrer. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) (regarding allegedly deceptive advertising of sugary cereals); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("California courts … have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").

## B.  The First Amended Complaint ("FAC") meets Rule 8(a)(2) and 9(b) Standards

The FAC alleges plausible claims, and is pled with particularity. *See* Mot. 5:16-25. Plaintiffs allege sufficient facts as to 'who, what, when, and where,' so that Defendants are apprised of the basis of Plaintiffs' claims and can defend against them. *See Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991). The FAC identifies the parties, what Products were purchased, when, where, and the cost. ¶¶ 8, 19, 26, 32, 48, 44, 50. The FAC incorporates the advertising that Plaintiffs saw on the Products' packaging and online, and identifies specific claims that are false or deceptive, with quotation marks. *Id.* ¶¶ 10-11, 20-21, 27-28, 33-34, 45-46, 51-52. The FAC specifies why the Products' advertising statements are likely to deceive a reasonable consumer, even if true. ¶¶ 60-66 (alleging that

the Products are sugar pills that work no better than a placebo; lack of scientific studies supporting the Products' efficacy; and consumer deception due to the high dilution levels of the supposed "active ingredients").

**C.**   **Plaintiffs have Standing Because they Suffered Injury in Fact, Caused by Relying on the Products' Advertising**

Defendants misinterpret *Mazza*, by attempting to link its holding on choice of law to a standing issue.  Mot. 6:4 to 8:22.  Generally, standing exists where a plaintiff has suffered injury in fact that is fairly traceable to the defendant's conduct, whereby a favorable ruling will redress that injury.  *Mazza*, 666 F.3d at 596 (citing to U.S. Const., art. III).

*Mazza* did not decertify the class because applying foreign law would destroy standing; it decertified the class because applying foreign law would destroy predominance under Rule 23.  *Id.* at 585.  As to standing, the *Mazza* plaintiffs purchased their Hondas <u>in Florida and Maryland</u>.  *Id.* at 587.  The court ruled that the named plaintiffs had standing, but that absent class members who were not exposed to defendant's advertising did not.  *Id.* at 594-595 ("To the extent that class members were relieved of their money by [defendant's] deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'") (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011); *id.* at 596 (ruling that "the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading" for Article III standing to exist).

Thus, the fact that Plaintiffs in this case are from Florida and Georgia is not dispositive on standing.  Plaintiffs have standing under *Mazza* because they were exposed to the Products' advertising, and claim injury in fact (loss of purchase price of the Products), in reliance on Defendants' advertising.  ¶¶ 8-9, 11-15, 78-80, 94, 99-101, 105-107, 109-113, 115-118 (containing standing averments for each claim for relief).  *See Mazza,* 666 F.3d at 596.

Defendants' citation to *Bailey v. Patterson*, 369 U.S. 31, 33 (1962) is off-point because it held the named plaintiffs "lack[ed] standing to enjoin criminal prosecutions under

3

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   Mississippi's breach-of-peace statutes, since they do not allege that they have been prosecuted

2   or threatened with prosecution under them."   Unlike *Bailey*, which involved persons who did

3   not suffer injury, Plaintiffs in this case did suffered injury (loss of purchase price of Products),

4   in reliance on Defendants' advertising.   *See id.*; *Mazza*, 666 F.3d at 594, 596.   Plaintiffs

5   accordingly have Article III standing; further, Defendants are California companies that are

6   unquestionably subject to California law.

7        Defendants urge the Court to apply an overly broad reading of *Mazza*.   Mot. 2:19

8   (stating Plaintiffs cannot certify a nationwide class because they are out-of-state plaintiffs and

9   "are not members of the putative California class").   But, *Mazza* does not preclude, as a matter

10  of law, Plaintiffs' putative class action because choice of law depends on the facts of the case.

11  *Id.*; *Bruno v. Eckhart Corp.*, Case No. SACV 11-0173, 2012 WL 752090, at *1, 3, 7 (C.D.

12  Cal. Mar. 6, 2012).   Further, the scope and definition of the class is not before the Court and

13  will not be until a Rule 23 motion occurs.   Even *Mazza* held that "our opinion does not

14  foreclose in an appropriate case the use of smaller statewide classes of those purchasing in a

15  particular state, or the use of subclasses within a larger class."   666 F.3d at n.4; *see also id.* at

16  594 ("We express no view whether on remand it would be correct to certify a smaller class

17  containing only those who purchased or leased Acura RLs in California, or to certify a class

18  with members more broadly but with subclasses for class members in different states, with

19  different jury instruction for materially different bodies of state law.").

20  **D.**    **<u>Choice of Law is Appropriately Decided on a Rule 23 Motion</u>**

21       The overwhelming majority of case law, in this jurisdiction and outside of it, holds that

22  it is inappropriate to determine class certification issues, such as choice of law, until a Rule 23

23  motion is brought.

24       In *Bruno*, the Central District denied California defendants' motion to decertify a

25  nationwide class based upon *Mazza*.   *Id.* at *1.   The Honorable David O. Carter properly

26  refused to characterize *Mazza* as holding that a nationwide class can automatically never be

27  certified in California.   *Id.* at *3 (rejecting the argument that the court should "interpret *Mazza*

28

4

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  to hold that *as a matter of law* California and other states' consumer laws materially differ *in*

2  *all cases* and other states have a greater interest in the application of their law *in all cases*.")

3  (emphasis in original).   Judge Carter held that California law requires a case-by-case inquiry,

4  and *Mazza* did not change that requirement. *Id.* (citing to *Wash. Mut. Bank, FA v. Super. Ct.*,

5  24 Cal. 4th 906, 921 (2001)).   *Compare* Mot. 9:1-6 (contending, erroneously, that *Mazza*

6  means "as a matter of law" that Plaintiffs' claims must be dismissed).

7       All of the cases cited by Defendants from other jurisdictions on this point are similarly

8  distinguishable, or actually favor Plaintiffs' Opposition.  *See* Mot. 18:20 to 19:6 (citing to 5th

9  Cir., 1st Cir., 11th Cir., and E.D. La.).[3]  *General Telephone Co. of Southwest v. Falcon*, 457

10  U.S. 147, 151 (1982) concerned <u>a case that went to trial</u>, after several motions to decertify the

11  class.   The reason why the named plaintiffs in *General Telephone* could not serve as

12  representatives of the class was because they suffered <u>no injury</u>, not because the plaintiffs

13  were from a different state as other class plaintiffs. *Id.* at 156 (ruling that "at the time the class

14  was certified it was clear that the named plaintiffs were not qualified for line-driver positions,

15  they could have suffered no injury as a result of the allegedly discriminatory practices")

16  _____

17  [3] *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) is not on point because

18  it merely held that "the class must be susceptible of precise definition. There can be no class action if the proposed class is amorphous or imprecise;" and there was no objective means of

19  determining who would be a member of plaintiffs' first proposed class. *Crosby v. Soc. Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986) is not on-point because it concerned a class

20  that was decertified due to Supreme Court precedent exactly on the point of untimely disability determinations; and the attempt to recertify a class was too amorphous and vague because the

21  "description of [the] class must be sufficiently definite so that it is administratively feasible to determine whether a particular individual is a member". Finally, *Mills v. Foremost Ins. Co.*,

22  511 F.3d 1300, 1309 (11th Cir. 2008) <u>actually supports Plaintiffs' Opposition here</u>, because the Eleventh Circuit ruled that "the district court's class certification ruling was premature

23  under the particular circumstances of this case [, a Rule 12(b) motion to dismiss]". Further, "precedent also counsels that *the parties' pleadings alone are often not sufficient to establish*

24  *whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing* to determine whether a

25  class may be certified." *Id.* (emphasis added); *see also id.* at n.14 ("*Several of our sister circuits have reversed denials of class certification that were made without opportunity for*

26  *discovery, when the pleadings on their face did not show non-compliance with Rule 23 or when the satisfaction of the Rule 23 requirements may have depended on factual matters*

27  *within the knowledge or possession of the defendant. See Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21–22 (2d Cir. 2003); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir.1978); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir.1972).") (emphasis added).

28

(internal quotations omitted).  Here, Plaintiffs have suffered the same injury as the putative class – economic loss occasioned by false or misleading advertising.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

The majority of court decisions subsequent to *Mazza* observe this principle of not dismissing class allegations until a class certification motion is brought.  *Kowalsky v. Hewlett-Packard Co.,* 2012 U.S. Dist. LEXIS 34597, at *1 (N.D. Cal. Mar. 14, 2012) concerned a motion for class certification, as did *Mazza*, and not a motion to dismiss.  *Id.*  Thus, *Kowalsky* and *Mazza* do not stand for the proposition that a pre-discovery motion to dismiss is appropriate because both cases were decided at class certification.  Further, Kowalsky failed to meet his burden of presenting arguments why *Mazza* did not apply.  *Id.* at *21.

*Rikos v. Procter & Gamble Co.,* 2012 U.S. Dist. LEXIS 25104, at *3-4 (S.D. Ohio Feb. 28, 2012), also does not support Defendants' Motion because it held, *on defendant's motion to dismiss*:  "With regard to Defendant's arguments that Plaintiff could not assert a nationwide class action for violations of the CLRA, and the UCL, . . . the Court has not yet been apprised of the members of the prospective class, and it is therefore premature to rule upon a factual issue that is not properly before the Court . . . rather than rule on the issues in the abstract, *the Court will withhold a decision until the Court is presented with a motion for class certification and related briefing*."  *Id.* at *6 (emphasis added).  While the court ultimately did grant a motion to strike *Rikos*' class claims as to California class members, it did so because Proctor & Gamble was not a California corporation, and plaintiff made "no allegations that any of the relevant marketing, packaging, or product development decisions about Align were made in California."  *Id.* at *12.  *Rikos* held that the UCL cannot apply for "conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operation are outside of California."  *Id.* at n.2.

Here, Hyland and SHC are, and have always have been, California-headquartered (and the state of incorporation for Hyland), and Defendants' marketing decisions were made in California.  *See* ¶ 7; Decl. of Skye Resendes in Opp'n to Mot. to Dismiss ("Resendes Decl.") ¶

6

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

5, Ex. 1 (each Product box stating, "Hyland's, Inc., Los Angeles, CA"), Ex. 2 (Defendants asserting in draft joint motion in an E.D.N.Y. case against them that "Defendants, and most relevant witnesses and evidence, are located in California").  As the Northern District has held, "extraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California."  *Badella v. Deniro Marketing, LLC,* 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011) (looking to "particular proof that the alleged misrepresentations emanated from California," such as "the businesses are run out of California . . . the marketing policies and decisions regarding the alleged misrepresentations emanated from the California").

*Gianino v. Alacer,* 2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) also concerned a motion for class certification.  *Gianino* does not support dismissal on a Rule 12(b) motion, in the absence of any discovery, much less a Rule 26(f) conference, or an answer to Plaintiffs' FAC.  *See id.*  While Defendants cite to *Gianino,* going so far as to include a detailed chart prepared by attorneys in that case, Defendants have not engaged in the three-step governmental interest analysis, as even *Gianino* requires.  *Id.* at *2.

Not only did *Mazza* limited itself to the facts and circumstances of the case before it, but it holds that Defendants have the burden of proving, on the facts of the case, that nationwide class certification applying California law is inappropriate.  *See* 666 F.3d at 587, 594, 595. Here, the Defendants merely attached a chart filed in another case.  Dkt. 41-1.  The chart is insufficient grounds for dismissal because Defendants bear the burden of proving why California law should not apply, under the facts of this case, at the appropriate time.  *Mazza*, 666 F.3d at 587, 594, 595; *Bruno*, 2012 WL 752090, at *1, 3, 7.

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.* concerned purchasers of cell phones that allegedly contained screen defects.  *See* 2012 US. Dist. LEXIS 19215, at *10 (S.D. Cal. Feb. 13, 2012).   *Horvath* is distinguishable because the phones were sold by individualized sales people in the out-of-state plaintiffs' home states, where those plaintiffs executed contracts containing warranties.  *See id.*  These facts are completely unlike Defendants' OTC Products, which were products on store shelves containing uniform

7

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

advertising emanating from within California.  *See* ¶ 7; Resendes Decl. Ex. 1.  Further, the Southern District of California did not dismiss *all* of the out-of-state plaintiffs' claims – as Defendants admit.  Mot. 20:13-15; *see also Rikos*, 2012 US. Dist. LEXIS 19215, at \*22-23, 31-33 (preserving all of the plaintiffs' warranty claims and common law claims for restitution).  Similarly, here, Plaintiffs claim breach of express and implied warranties and unjust enrichment.

*Banks v. Nissan North Am., Inc.,* 2012 U.S. Dist. LEXIS 37754, at \*2 (N.D. Cal. Mar. 20, 2012) also concerned contractual purchases of specialized goods, notably, vehicles with alleged brake defects.  This is unlike the non-contract purchase of goods off store shelves, each of which contained uniform advertising.  *See* Resendes Decl., Ex. 1.  Further, the *Banks* court held that "plaintiffs are entitled to proceed past the pleading stage," and could "continue to pursue their claims on behalf of a California class." *Id.*

In addition, California law holds that dismissal of class allegations is proper only after discovery has occurred.  *See*, *e.g.*, *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614-615 (N.D. Cal. 2007) (ruling that "*the granting of motions to dismiss class allegations before discovery has commenced **is rare** . . . because the shape and form of a class action evolves only through the process of discovery*") (internal quotations omitted) (emphasis added).  The Northern District of California in *In re Wal-Mart Stores*, refused to dismiss class allegations, despite the fact that plaintiffs' class definitions were "suspicious" and could likely have been improper. *Id.* at 615-616.  The court declined to strike or dismiss the complaint's class allegations because Wal-Mart had not answered, discovery had not commenced, and the plaintiffs had not filed a motion for class certification. *Id.*

Similarly, in *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715SC, 2006 WL 3422198, at \*1 (N.D. Cal. Nov. 28, 2006), the court denied a motion to amend the class definition per Rule 23(d)(4). *Id.* at \*3 (holding, "the bulk of Defendants' arguments in favor of its Motion are actually arguments against class certification. . . . *It would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class*

8

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   *certification before Plaintiffs have made such a motion and when discovery on the issue is still*

2   *on-going*") (emphasis added).  *See also In re BCBG Overtime Cases*, 163 Cal. App. 4th 1293,

3   1300 (2008) (granting motion to strike class allegations because discovery had been ongoing

4   for some time, as the complaint had been filed 22 months before the motion to strike).

5         The Ninth Circuit has agreed with the rulings in *Beauperthuy* and *In re Wal-Mart*

6   *Stores*.  *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 942 (9th Cir. 2009) (finding that

7   (1) a motion to deny class certification was timely brought three weeks prior to discovery

8   cutoff in "that Plaintiffs were provided with adequate time in which to conduct discovery

9   related to the question of class certification such that the district court did not abuse its

10  discretion by considering [defendant's] motion;" and (2) discussing *In re Wal-Mart Stores* and

11  *Beauperthuy* as properly decided because no discovery had occurred and defendants had not

12  answered).

13  **E.**   **Defendants have not Alleged which Foreign State's Law Should Apply or How it**

14  **Materially Differs, and Only Discovery will Reveal these Necessary Facts**

15        While a choice of law analysis is premature, Plaintiffs note that a difference in laws

16  does not present a problem unless those differences are material <u>and</u> California's interests are

17  outweighed.  *Mazza*, 666 F.3d at 590 (setting forth 3-step governmental interest test).  Here,

18  Florida law is almost identical to California's, whereby there may not be a material conflict,

19  and Georgia law is also substantially similar.[4]  Even still, this analysis cannot occur in the

20  absence of discovery into the facts of what foreign state's laws might apply.  *See id.*

21  _____
[4] California applies a 'likely to deceive' standard.  *Leoni v. State Bar*, 39 Cal. 3d 609, 626

22  (1985).  Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") is almost identical
    to the CLRA and UCL.  *Id.*; *compare Fitzpatrick v. Gen. Mills*, 635 F.3d 1279, 1283 (11th

23  Cir., Mar. 25, 2011) (ruling that "recovery under the FDUTPA [hinges on] . . . whether that
    allegedly deceptive conduct would deceive an objective reasonable consumer [, a] common

24  issue for all the putative class members, amenable to class wide proof") (internal quotations
    omitted).  The statute of limitations is the same (four years); damages and equitable relief are

25  available; as are attorney's fees and costs. See Dkt. 41-1 at 16.  The FDUPTA protects Florida
    consumers from the conduct of both in-state and out-of-state businesses.  *Coastal Phys. Servs.*

26  *of Broward County v. Ortiz*, 764 So. 2d 7 (Fla. App. 4th Dist. 1999).  As such, FDUPTA
    applies, and Allen could amend the FAC to include the statute, should the Court deem a choice

27  of law issue fatal to the FAC.  Georgia has its own version of the Uniform Deceptive Trade
    Practice Act ("GUDTPA"), and the Fair Business Practices Act ("FBPA").  See Dkt. 41-1 at

28

9

Plaintiffs have not had a chance to obtain discovery from Defendants, to determine what the likely parameters of the class would be.  *See id.* at 591; Resendes Decl. ¶¶ 9-15, Ex. 3 (Defendants refusing to even set a date for a Rule 26(f) conference, despite this Court's Standing Order).  Discovery is necessary, to determine what the parameters of the possible class might actually be; whether Defendants knew from customer complaints that the packaging claims were likely to deceive (for purposes of determining if scienter is at issue); which states contain potential members of the class, and the amount of sales in each.  *See Mazza*, 666 F.3d at n.1 (noting that "twelve states account for roughly 76% of class members: California accounts for 20%, Florida for 10%, and New York, Virginia, New Jersey, Texas, Pennsylvania, Washington, Illinois, Maryland, Massachusetts, and Ohio account for 3–6% each.")

Further, as this Court is aware, the potential class here contains at least three absent California class members (*Sandoval v. Hyland's, Inc.*, *Acuna v. Hylands, Inc.*, and *Zabala v. Hyland's, Inc.*, now pending before the San Bernardino Superior Court).  *See* Dkt. 12 at 6:7-24, Sandoval's Mot. to Intervene.  Even Rule 23 arguments were appropriate at this stage of the case, Defendants have not met their burden of establishing material variations of law, and the greater interests of other states, *in this case*, to warrant dismissal.

---

17.  The FBPA protects consumers from in-state or out-of-state businesses that engage in "[u]nfair or deceptive acts or practices in the conduct of consumer transactions," including the sale of goods "for personal, family or household purposes."  Ga. Code Ann. §§ 10-1-391(a), 393(a), 392(3).  Among other unfair business acts, the FBPA prohibits "advertising goods with intent not to sell them as advertised."  *Id.* at § 10-1-393(b)(9).  This is identical to the CLRA.  Cal. Civ. Code § 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised").  These similarities are not surprising since Florida and Georgia intend for their consumer statutes to track and mirror the Federal Trade Commission's interpretation of unfair business acts and practices.  Fla. Stat. § 501.204(1) (citing to section 5(a)(1) of Federal Trade Commission Act ["FTCA"]); Ga. Code Ann. § 10-1-391(b) (also citing to section 5(a)(1) of the FTCA).  The FBPA requires 30-day pre-lawsuit notice (Ga. Code Ann. § 10-1-399(b)), as does the CLRA (Cal. Civ. Code § 1782(a)(1)-(2)), before damages may be sought.  The statute of limitations, which runs from discovery (same as California), is either two years or four years (same as UCL); and the applicable standard is also sufficiently similar to California – "likely to be damaged."  Dkt. 41-1 at 17 (citing Ga. Code Ann. § 10-1-373).  A representative action is not permitted under the FBPA, while a private right of action for injunctive relief exists under the GUDTPA; the GUDTPA neither permits nor precludes a representative action.  Ga. Code Ann. §§ 10-1-373(a), 399(a).

**F.** **The Class Definition Should be Analyzed under Rule 23 and not Standing**

Defendants' arguments on standing, whether it relates to Plaintiffs' state of citizenship or the products they purchased, poses a simple question of appropriate class definition. That question is properly answerable on class certification and does not present a basis for a motion to dismiss in this case. *See, e.g., Vinole*, 571 F.3d at 942. While the class definition as alleged may be slightly overbroad, *at the appropriate time*, Plaintiffs may argue that they can represent purchasers of other products because the Products are sufficiently typical to Defendants' other highly-diluted homeopathic products. *See Bruno v. Quten Research Inst., LLC*, --- F.R.D. ---, 2011 WL 5592880, at *3 (C.D. Cal. Nov. 14, 2011):

> District courts in California routinely hold that the issue of *whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests* **depends not on standing, but on an assessment of typicality and adequacy of representation**. [Citations omitted.] . . . *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, *his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing*.) (emphasis added).

*See also Johnson v. Gen. Mills*, --- F.R.D. ---, 2012 WL 32067, at *3 (C.D. Cal. Jan. 5, 2012) (finding that named plaintiff's claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical" [citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)]) (internal quotations omitted).

Defendants' citation to *National Council Against Health Fraud v. King Bio Pharma*, 107 Cal. App. 4th 1336, 1348 (2003), as to the FAC's inclusion of other products, does not support the contention that "a false advertising claim over a homeopathic drug product cannot be sustained" by alleging homeopathy does not work. Mot. 18:4-10. The court was not even considering the underlying claim of deceptive advertising; it was only considering who bore

11

the burden of proving that the advertising was false or deceptive. 107 Cal. App. 4th at 1342 (ruling that private plaintiffs and prosecuting government officials bear that burden).

At conclusion of the plaintiff's case-in-chief <u>at trial</u>, the court granted judgment, finding that plaintiff had not met its burden of proving false advertising based on the evidence it submitted. *Id.* 1340, 1347 (submitting expert's generalized statements that homeopathy does not work, but no expert evidence as to the actual products at issue). The court noted that "there is nothing in the nature of a false advertising action that makes it difficult for a plaintiff to prove the allegations of the complaint. The homeopathic remedies are marketed and readily available for testing by a plaintiff." *Id.* at 1348. Here, Plaintiffs will be able to prove that Defendants advertising is false or deceptive, *at the appropriate time*. *See id.* at 1347 (noting falsity can be "established by testing, scientific literature, or anecdotal evidence"); *Bruno v. Quten*, 2011 WL 5592880, at *3 (stating Fed. R. Civ. P. 23 is the appropriate rule for analyzing scope of class definition).

Moreover, *National Council* has been called into question by *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189 (C.D. Cal. 2011):

> The Court is not persuaded by the reasoning set forth in *King Bio Pharmaceuticals* that inclusion in the HPUS is sufficient to guarantee the efficacy and safety of a homeopathic OTC drug. As previously noted, unlike with non-homeopathic OTC drugs, the FDA has not set up a comprehensive process to evaluate the safety or efficacy of homeopathic OTC remedies. *See* CPG § 400.400. More importantly, the FDA explicitly acknowledges that '[a] product's compliance with requirements of the HPUS ... does not establish that it has been shown by appropriate means to be safe, effective, and not misbranded for its intended use.' *Id.*

Further, under the CLRA, UCL and FAL, Plaintiffs need not prove actual falsity, they only need prove that Defendants' advertising about the Products is likely to deceive an average consumer. *See Leoni*, 39 Cal. 3d at 626 (the UCL and FAL "have been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either

12

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (internal quotations omitted).

## G.    The UCL, FAL and CLRA do not Expressly Exclude Out-of-State Plaintiff Claims Against California Defendants

The FAC sufficiently pleads that Hyland and SHC are California companies, making them subject to California law.   ¶ 7.   Defendants admit their long-standing presence in California, maintaining their headquarters in the state, where advertising decisions are made. Resendes Decl. at Ex. 2.   Under the FAL, it is unlawful, in the course of selling personal property, "*to make or disseminate* or cause to be made or disseminated *from this state before the public in any state*, in any . . . advertising device, . . . any statement . . . which is untrue or misleading.*"   Bus. & Prof. Code § 17500 (emphasis added).   The CLRA also does not expressly preclude an out-of-state plaintiff action against a California defendant.   "An action . . . may be commenced *in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business*, or in the county where the transaction or any substantial portion thereof occurred."   Cal. Civ. Code § 1782(d) (emphasis added).

The presumption against applying California law outside its borders only applies where an out-of-state defendant's conduct lacks any nexus to California.   *Churchill Vill., LLC*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000) (finding that FAL *would apply* to "written or oral communications made in California [] directed to consumers outside the state").   Where a defendant is headquartered in California, and defendant's wrongful conduct is ratified, authorized or directed by its California headquarters, then the "*alleged wrongdoing, while injuring non-Californian and Californian [citizens] alike, occurred in California and is actionable under the UCL*."   *Parks v. Eastwood Ins. Services, Inc.*, 2002 WL 34370244, at

13

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*2 (C.D. Cal. Jul. 29, 2002) (involving defendant that maintained 23 of 40 corporate offices in California) (emphasis added).

Here, Hyland is incorporated in California, Defendants maintain their headquarters in California and advertising decisions are made in California. *See* ¶ 7; Resendes Decl. Exs. 1 & 2. Plaintiffs therefore can claim violations of the UCL, FAL and CLRA because Defendants' false and misleading advertising claims were developed in, authorized, and ratified in California, and disbursed from California throughout the United States. *See Parks*, 2002 WL 34370244, at *2.

## H.   Plaintiffs Sufficiently Allege the Existence of Express and Implied Warranties[5]

Defendants make two challenges to the FAC's express warranty claims:  (1) that the FDA does not require 100% effectiveness, and (2) that the statements are not factual assertions.  Mot. 10:3-5.  Neither challenge survives.

### 1. Defendants are the Authors of the Products' Claims; not the FDA

Warranties arise out of voluntary conduct in making public assertions about a product and the product fails to live up to those claims. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005) ("a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product").  The FDCA does not require defendants to give a warranty regarding the Products to purchasers. *See id.* at 439 (concluding that breach of express warranty and other common law claims were not "labeling or packaging requirements" and therefore not preempted under the Federal Insecticide, Fungicide, and Rodenticide Act). Defendants attempt to link the Products' claims to the FDCA, as an attempted shelter from a breach of express warranty claim, contending the FDA does not require 100% efficacy.[6]  Mot. 12:5 to 15:3.  This assertion is not borne out by the applicable law.

---

[5] Plaintiffs do not allege Song-Beverly claims because the Products are not subject to repair. *See* Mot. n.4.
[6] Preemption is not claimed in Defendants' Motion.

14

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants cite to the FDA's CPG, as evidence the Products need not be 100% effective.  Mot. 13:1-7.  But, the FDA does not control what Indications of Use Defendants put on the Products:  Defendants are free to make those choices by themselves.  *Delarosa*, 818 F. Supp. 2d at n.3.  By its own terms, the CPG is not a rule or a regulation that could preempt state claims.  *Id.*; Resendes Decl. ¶ 16, Ex. 4 at 21 ("The statements made in the CPG are not intended to create or confer any rights, privileges, or benefit on or for any private person, but are intended for internal guidance.").  The CPG also expressly warns manufacturers that meeting the provisions of the FDCA or HPUS "does not establish that [a homeopathic drug] has been shown by appropriate means to be safe, effective, and not misbranded for its intended use."  *Id.* ¶ 20 & Ex. 4 at 24; *Delarosa*, 818 F. Supp. 2d at 1189 ("the Court concludes that Plaintiff's claims, if proven to be true, would simply require Defendant to truthfully state its efficacy or not sell its products").

Here, the FAC alleges that Defendants' statements about the Products constituted affirmations of facts or promises that formed part of the basis of the bargain, and Defendants breached those warranties.  ¶¶ 104-107.  Contending that the Products do not contain affirmations of fact or promises, Defendants cite to the FDCA's implementing regulation - "Indications for Use" (meaning, what the product does, by general category).  Mot. 10:4.  This regulation does not support Defendants' Motion because the FDCA requires that Defendants' claims not be false or misleading "in any particular."  *See* 21 U.S.C. § 352(a); Resendes Decl., Ex. 4 at 24.  Further, for a drug *without* a FDA approved monograph (such as the Products), these indications for use are left to the discretion of the OTC drug manufacturer.  *See* 21 C.F.R. § 201.61(b) (manufacturer must include text describing the "principal intended action(s) [of the drug] in terms that are meaningful to the layman" and "employ terms descriptive of general pharmacological category(ies)"); *compare* Mot. 12:8-18.

Defendants are free to compose advertising claims of their own choosing, and free to indicate a use for any illness they desire – all without FDA approval.  *See* 21 C.F.R. § 201.61(b).  Defendants are also free to indicate a therapeutic use without HPUS approval since

15

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

the HPUS does not list homeopathic drugs as appropriate for any particular symptom or illness, but leaves those decisions to the homeopathic practitioner or manufacturer. *Delarosa*, 818 F. Supp. 2d at 1183 (finding that the HPUS "does not list the drugs as fit to treat specific symptoms, ailments, or conditions. … Instead, the HPUS allows the practitioner or manufacturer to set forth the substance's indications for use").

Similar to what the Honorable Josephine Stanton Tucker noted in *Delarosa*, Defendants' reading of the FDCA would mean that Defendants could claim the Products "relieve symptoms of allergies, lessen headaches and back pain, improve a person's visage, and eliminate the occurrence of body odor, regardless of whether the drug did any of these things, without violating the FDCA. . . . This reading of the regulations is contradictory to Congress' purpose—in this instance, to give truthful and helpful information to consumers about OTC drugs." *Id.* at 1189 (upholding CLRA and UCL claims against homeopathic drug manufacturer on motion for judgment on the pleadings). The FAC alleges that the Products' claims constituted affirmations of fact, and nothing in case law, the FDCA, or its implementing regulations suggests that Defendants cannot be held to those promises, if they were deceptive, untruthful, or breached. *See id.*

### 2. The Regulations Defendants Cite Do Not Pertain to the Products

Defendants' citation to highly-regulated, prescription drugs (Ferriprox, Zostavas, Chantix, Monistat3) are not on point to homeopathic drugs. Mot. 14:1 to 15:3. Prescription drugs are subject to exceedingly strict requirements, including years of progressively intense tests, starting with animal studies, and proceeding to human clinical trials if sufficient safety and efficacy is proven; and submission of a package label that must be *FDA approved*. 21 U.S.C. §§ 355(a), (b), (d). Also, prescription drugs are not just generally approved—their safety and effectiveness for each medical condition must be established, in advance. 21 U.S.C. § 321(p).

Further, 21 C.F.R. § 330.10(a)(4)(ii) does not apply to the Products because the "Advisory review panels" indicated in that section oversee OTC *non*-homeopathic drugs. The

16

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Products do not have approved "OTC drug monographs," obtained after review by the "Advisory review panels" and submission of the OTC labels for public comment. *See* 21 C.F.R. § 330.10(a)(1)-(4); *compare* Mot. 13:16-22.

Simply put, the FAC properly alleges breach of warranty claims because the FDA does not oversee the effectiveness of homeopathic drugs, or the veracity of homeopathic drug labeling. *Delarosa*, 818 F. Supp. 2d at 1189. The FDA has delegated that authority to the HPUS, a private entity. *Id.* The Central District has held that false or deceptive labeling claims regarding OTC homeopathic drugs are not preempted by the FDCA, nor by the FDA's regulatory powers. *Id.*:

> [T]he FDA has explicitly acknowledged that compliance with requirements of the HPUS does not establish that a product is either effective or correctly labeled . . . . the Court concludes that the FDA has largely abdicated any role it might have had in creating standards for homeopathic OTC drugs, and has instead attempted to delegate this authority to the non-governmental organization that determines whether homeopathic substances should be included in the HPUS. In addition, the FDA explicitly states that it makes no guarantee about the safety or efficacy of homeopathic OTC drugs, even if they meet the unknown standards for inclusion in the HPUS.

Thus, the contention that the Products' claims do not constitute affirmations of fact or promises because the FDA does not require 100% effectiveness is off-point entirely. The FDA provides no oversight or approval of Defendants' label statements. *Id.* Defendants created the advertising claims, and can be held to them. *See Bates*, 544 U.S. at 439, 444; 21 U.S.C. § 352(a); Resendes Decl., Ex. 4 at 24.

### 3. All of the Products' Representations are Actionable

Both categories of statements highlighted in Defendants' Motion at 10:5-8 ("factual statements") and 10:15-21 (FDCA "Indications of Use"), are actionable, when considered under the theory of relief presented. Defendants unexplainably cite to challenged statements

17

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   from Plaintiffs' claim for violation of the CLRA, in an attempt to dismiss the FAC's express

2   warranty theory.  *Id.* (citing to ¶ 80).

3       Any affirmation of fact made by a seller about its goods is an express warranty and

4   becomes part of the basis of the bargain.  Cal. Com. Code § 2313.  "[O]ne must allege the

5   exact terms of the warranty, plaintiffs' reasonable reliance thereon, and a breach of that

6   warranty which proximately causes plaintiff injury."  *Williams v. Beechnut Nutrition Corp.*,

7   185 Cal. App. 3d 135, 142 (1986).  A complaint satisfies these requirements where it "alleges

8   [defendant] 'utilized the advertising media to urge the use and application of [the product] and

9   expressly warranted to the general public . . . that said product was effective, proper and safe

10  for its intended use. '"  *Id.*; *see also Aaronson v. Vital Pharms., Inc.*, 2010 U.S. Dist. LEXIS

11  14160, at *17 (S.D. Cal. 2010) ("Statements made by a manufacturer through its advertising

12  efforts can be construed as warranty statements.") (citing *Keith v. Buchanan*, 173 Cal. App. 3d

13  13, 21-22 (1985)).  Plaintiffs have met these requirements.

14      Defendants cite to only two cases on warranty, but the first concerned whether a

15  warranty applies to a service, and whether "crystal clear" and "CD quality" constituted non-

16  actionable puffery under the UCL and CLRA.  Mot. at 11:11 to 12:4 (citing *Consumer*

17  *Advocates v. Echostar Satellite Corp.*).  On the issue of warranty, *Consumer Advocates* held

18  that "plaintiff has failed to rebut defendants' contention that his complaints concerning satellite

19  transmission are a 'service' and not 'goods.'"  113 Cal. App. 4th 1351, 1358 (2003).  Here, the

20  Products could never be considered a service.  *See id.* at 1360-1361, n.3.  The same is true for

21  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 994 (N.D. Cal. 2007), which does not

22  discuss warranty at all.  Mot. n.5.

23      In a warranty context, the court should consider whether the claim is a fact or an

24  opinion.  *Keith*, 173 Cal. App. 3d at 21.  "[E]ven statements of opinion can become warranties

25  under the code if they become part of the basis of the bargain."  *Hauter v. Zogarts*, 14 Cal. 3d

26  104, 115 (1975).  An opinion is indicated by "(1) a lack of specificity …, (2) a statement that

27  is made in an equivocal manner, or (3) a statement which reveals that the goods are

28

18

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

experimental in nature." *Keith,* 173 Cal. App. 3d at 21.  Here, "100% natural," "Aspirin free" and the other claims that Defendants pull out from ¶ 80 are specific, unequivocal, and do not reveal an experimental nature.  *See id.*  None of the challenged statements are opinions, and they formed part of the basis of the bargain as affirmations of fact or promises.  *See id.*

*Consumer Advocates*' analysis of "the difference between actionable factual representations and non-actionable statements in the analogous context of CLRA claims," Mot. 11:9-10, is not helpful because *Consumer Advocates* was abrogated by the California Supreme Court in *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011).  *Kwikset* held that the CLRA and UCL do not look to whether a statement is opinion, puffery, or prediction of future events:  These statutory claims are not based on reliance on specific representations alleged to be false, but instead on the allegedly deceptive effect on consumers that results from Defendants' marketing.  *See Kwikset Corp.*, 51 Cal. 4th at 328 ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.")  The Court also held that "processes and places of origin matter," such as, the manner in which a good is produced, its source, its safety, whether it is food harvested by Union workers, a good produced by child labor, is Kosher, or hails from a conflict-free zone or war-torn area (as to diamonds).  *Id.* at 328-329.

Here, the challenged statements involve processes, safety, and other intangible qualities because Defendants market the Products as effective curative remedies that are safe and natural alternatives to prescription or other OTC non-homeopathic drugs.  Thus, "100% natural," "aspirin free," "quick dissolving," "non-habit forming" and similar, constitute actionable statements, in the context of the overall marketing message Defendants wished to convey about their Products.  *See id.*  Further, none of the statements that Defendants claim are "Indications of Use" are opinions, hyperlatives or puffery.  *E.g.*, ¶¶ 10-11, 104-105 (as to Calms Forte: "relief from simple nervous tension and occasional sleeplessness," a "sleep aid,"

19

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

"for restless or wakeful sleep from exhaustion," "for nervous irritability," etc.).  The FDA did not approve or even review these claims, and they are actionable as warranties and under the CLRA, UCL, and FAL.

### 4.  Plaintiffs' Implied Warranty of Merchantability Claim is Valid

The FAC alleges that an implied warranty of merchantability existed and the Products "did not conform to the promises and affirmations made" on the Products' label.  ¶ 112. Under California Commercial Code § 2314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale."  The California Supreme Court has explained that "[m]erchantability has several meanings, two of which are relevant to the instant case: the product must '[conform] to the promises or affirmations of fact made on the container or label, and must be 'fit for the ordinary purposes for which such goods are used.'" *Hauter*, 14 Cal. 3d at 117 (citing Cal. Com. Code §§ 2315(2)(c), (f)).

Defendants argue that the Products are fit for their ordinary purpose of homeopathic remedies, but this is an attempt to limit or exclude the implied warranty of an OTC product, to an implied warranty only covering OTC homeopathic products.  "No warranty, express or implied, can be modified or disclaimed unless a seller clearly limits his liability." *Id.* at 119. The FAC alleges that Defendants sell the Products in the OTC aisle in major retail stores, next to other OTC *non*-homeopathic products whose label claims are approved by the FDA, which location of sale forms part of the alleged deception. *See* ¶¶ 8-9, 19, 26, 32, 38, 44, 50 (noting Allen purchased Calms Forte at Walgreen's and Publix Supermarket; and Xenos purchased Calms Forte and other Products at drugstores); RJN, Ex. 4.  Consumer fraud statutes exist to protect the educated and the unwary; thus, Defendants' claim that the Products lived up to other homeopathic products is flawed. *See Thompson v. 10,000 RV Sales, Inc.*, 130 Cal. App. 4th 950, 976, (2005):

> The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the

20

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

honesty of those with whom he [or she] transacts business. Laws are made to protect the trusting as well as the suspicious. [T]he rule of caveat emptor should not be relied upon to reward fraud and deception. *Federal Trade Comm'n v. Standard Ed. Soc.*, 302 U.S. 112, 116 (1937); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 509 (2003).

Accordingly, the Court should not dismiss Plaintiffs' claim for breach of implied warranty of merchantability because the FAC alleges that Plaintiffs expected the Products to live up to other OTC remedies, and were unaware of the ineffectiveness or method of preparation of homeopathic drugs. *See* ¶¶ 60-66.

## I.   The FAC Sufficiently Alleges a Claim for Unjust Enrichment

Unjust enrichment is an independent cause of action in California, with restitution as its corresponding remedy.[7]   The California Supreme Court has recognized a cause of action for unjust enrichment in connection with unsecured obligations. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54 (1996) ("a common count 'for payment of money' that rests on a theory of unjust enrichment" is an acceptable stand-alone cause of action under the common law). In *Ghirardo*, a seller of real property who mistakenly understated the payoff demand on a promissory note subsequently demanded payment of the remaining sum from the purchaser. *Id.* at 46-47. The Court held that the seller was "entitled to seek relief under traditional equitable principles of unjust enrichment." *Id.* at 50. "Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another." *Id.* at 51 (citing Rest., Restitution, § 1). The benefit may only be disgorged when it would be unfair to allow the person who collected the benefit to retain it. *Id.*

---

[7] *See also* Douglas L. Johnson, et al., What Happened to Unjust Enrichment in California - The Deterioration of Equity in the California Courts, 44 Loy. L.A. L. Rev. 277 (2010), *available at* http://digitalcommons.lmu.edu/llr/vol44/iss1/11. Unjust enrichment and restitution "are not the same: unjust enrichment focuses on the individual who received a benefit, whereas restitution focuses on the provider of the benefit. . . . An individual cannot make restitution unless he or she has first been unjustly enriched. This principle does not work in reverse." *Id.* at 288.

21

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, Plaintiffs have shown unfairness and inequitable enrichment of Defendants at their expense.  The FAC alleges an average consumer is likely to be deceived by the Products' efficacy claims because an objective consumer is unaware of the extent of homeopathic dilution, much less what the dilutions levels of X, C, and K mean.  *See* ¶ 64.  Even using Latin denotations, X stands for 10 and not 100; but Hyland's 12X dilution of the first ingredient in its the Migraine Product, for example, equates to 1 part "active ingredient" to 1 trillion parts sugar water.  Resendes Decl., Ex. 5.

Defendants have admitted in press releases that the average consumer lacks knowledge of the principles of homeopathy.  Plaintiffs' Request for Judicial Notice ("RJN"), Ex. 1 (stating Hyland is aware that consumers in drug stores tend to have no knowledge of homeopathy; and even in natural food stores, those shoppers only have rudimentary knowledge).  "In the natural food store [notes Doug Vespa, President of Hyland], shoppers tend to be better educated and have a rudimentary knowledge of homeopathy. . . . 'In a chain drug store,' Nepsa says, 'you don't have the same type of shopper or the same personnel. It's more of a self-service environment.'"  *Id.*

Defendants also bypassed the traditional method of selling its industry-specific products through homeopathic practitioners, instead marketing them as efficacious directly to an unsuspecting public, in the OTC aisles of drug stores.  ¶¶ 8-9, 64.  *See* CPG § 400.400 (requiring homeopathic drugs to contain "a package insert bearing complete labeling information *for the homeopathic practitioner*") (citing to 21 C.F.R. §§ 201.56, 201.57) (emphasis added).  Defendants also sought to capitalize on recent FDA recalls of other OTC children's cold medicines that are non-homeopathic.  RJN, Ex. 1 (noting "recalls and safety concerns have caused several traditional products to be pulled off store shelves during the past few years, leading shoppers to seek out other methods to treat their cold symptoms;" and J.P. Borneman, CEO of Hyland, admitting company has reaped economic benefit as a result).  In fact, Mr. Borneman admits Hyland has no problem in bypassing the homeopathic practitioner. *Id.* (stating "the company's success is grounded in providing consumers with unprecedented

22

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   over-the-counter access to the natural alternatives they are seeking."). All of these facts
2   support Plaintiffs' claim that Defendants' enrichment at their expense has been unjust.

3       Defendant cites *Walker v. USAA Cas. Ins. Co*., 474 F. Supp. 2d 1168, 1174 (E.D. Cal.
4   2007), but in *Walker*, the Eastern District of California held that unjust enrichment is not a
5   cause of action as a stand-alone claim, without alleging infringement of other rights, such as
6   fraud. *Id.* (holding that "plaintiffs who [] claim[] unjust enrichment based on rights arising out
7   of other law" is permissible). In this respect, *Walker* is in accord with California's binding
8   precedent under *Ghirardo*. *See Ghirardo*, 14 Cal. 4th at 54. Plaintiffs allege additional causes
9   of action arising out of other law, including the CLRA, the UCL and breach of warranty. One
10  basis of their CLRA and UCL claims is fraud or misrepresentation. *See Dinosaur Dev., Inc. v.
11  White*, 216 Cal. App. 3d 1310, 1316 (1989) (noting that separate causes of action for fraud,
12  unilateral mistake, coercion and others can give rise to a separate cause of action for unjust
13  enrichment [citing to 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 97, p. 126]).

14      *Ghirardo* has been recognized and utilized by numerous federal district and appellate
15  courts, including all four federal districts in California. *See Villager Franchise Sys., Inc. v.
16  Dhami, Dhami & Virk*, CVF046393RECSMS, 2006 WL 224425, at *7 (E.D. Cal. Jan. 26,
17  2006) ("California law recognizes a cause of action for unjust enrichment" – citing *Ghirardo*);
18  *Gonzales Commc'ns, Inc. v. Titan Wireless, Inc*., 2007 WL 1994057 at *2-3 (S.D. Cal. Apr.
19  18, 2007) (listing the elements of unjust enrichment claim); *see also ViChip Corp. v. Lee*, 438
20  F. Supp. 2d 1087, 1097 (N.D. Cal. 2006) (listing requirements for an unjust enrichment
21  counterclaim); *Westways World Travel v. AMR Corp.,* 182 F. Supp. 2d 952, 964 (C.D. Cal.
22  2001); *Shum v. Intel Corp*., 499 F.3d 1272, 1279 (Fed. Cir. 2007) (holding that in California
23  unjust enrichment claims exist as a separate cause of action when based on equity).

24      Defendant also cites to *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794
25  (2003), but *Melchior* concerned an unjust enrichment claim that was preempted by the
26  Copyright Act. *Id.* at 791. This case does not involve the Copyright Act. *Melchior* also relied
27  on two cases that pre-date *Ghirardo* and which were accordingly abrogated at the time the
28

23

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Melchior* cited them: *Lauriedale Associates, Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992) (holding that person who breached fiduciary responsibilities to others cannot sue for unjust enrichment); and *Dinosaur Development, Inc.*, 216 Cal. App. 3d at 1313 (involving conditional approval of a subdivision plan by a local government agency). *Dinosaur* itself was limited: "Our holding, *which is limited to the peculiar situation presented* . . . [is that] the issue of whether defendants have been benefited at plaintiff's expense must be subordinated to the cold hard fact of governmental power that has been deployed to safeguard defendants' right of access to the nearest public thoroughfare." *Id.* at 1319 (emphasis added). Even if *Ghirardo* did not overturn *Dinosaur*'s holding on unjust enrichment, *Dinosaur* was limited to the peculiar situation of eminent domain and is inapplicable to this action.

McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1468, 1490 (2006) does not disprove an independent cause of action because the court ruled that "*unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust*;" yet, McKell "pled a cause of action for breach of [express] contract." (Emphasis added.) Unjust enrichment cannot lie where an enforceable agreement exists because there cannot be an express and implied contract at the same time (parole evidence rule would bar use of one to supplement the other). *See id.*; *Gonzales Commc'ns, Inc.*, 2007 WL 1994057 at *2-3. Plaintiffs allege breach of warranty but do not allege the existence of an express contract. ¶¶ 104-107.

Overall, more courts have recognized that unjust enrichment is a separate cause of action than the number of courts that have confused the distinction between a remedy and a cause of action. *See, e.g., Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721-722 (2003) (applying *Ghirardo* and holding that plaintiffs pled a valid cause of action for unjust enrichment); *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726–27 (2000); *County of Solano v. Vallego Redev. Agency*, 75 Cal. App. 4th 1262, 1278 (1999) (applying *Ghirardo* and Rest. Restitution); *MV Transp., Inc. v. Omne Staff Leasing, Inc.*, 378 F. Supp. 2d 1200, 1207

24

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1 | (E.D. Cal. 2005).   The facts as pled, and all reasonable inferences therefrom, support
2 | Defendants' unjust enrichment at Plaintiffs' expense.

3 | 

### III.   CONCLUSION

4 | For the aforementioned reasons, the Court should deny Defendants' Motion to Dismiss
5 | in its entirety.   In the alternative, Plaintiffs request the Court grant them leave to amend
6 | pursuant to Rule 15(a)(2), to include additional representative plaintiffs and/or additional
7 | causes of action, if necessary.

8 | Dated: April 13, 2012                    Respectfully submitted,

9 |

10 |                                         /s/ Ronald A. Marron
                                            Ronald A. Marron
11 |                                         ***Attorney for Plaintiffs and the Proposed Class***
                                            ron@consumersadvocates.com

12 |