FILED

2012 MAY 14  PM 4: 03

CLERK U S DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY_____

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MAGGIE REALIN (SBN 263639)
*maggie@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**KREINDLER & KREINDLER, LLP**
GRETCHEN M. NELSON (SBN 112566)
*gnelson@kreindler.com*
STUART R. FRAENKEL (SBN 173991)
*sfraenkel@kreindler.com*
GABRIEL S. BARENFELD (SBN 224146)
*gbarenfeld@kreindler.com*
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KIM ALLEN, DANIELE XENOS, ROGER HUTCHINSON, MELISSA NIGH, SHERRELL SMITH, YUANKE XU, DIANA SISTI, and NANCY RODRIGUEZ on behalf of themselves, all others similarly situated, and the general public, | Case No.: 12-cv-1150-DMG-MAN |
| | Pleading Type:  CLASS ACTION |
| | Action Filed:  February 9, 2012 |
| | Judge:  Hon. Dolly M. Gee |
| Plaintiffs, | **SECOND AMENDED COMPLAINT FOR:** |
| v. | **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.*;** |
| HYLAND'S, INC., a California Corporation; and STANDARD | |

*Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
SECOND AMENDED COMPLAINT

| | |
|---|---|
| HOMEOPATHIC COMPANY, | **VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***;** |
| Defendants. | |
| | **VIOLATION OF THE FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500,** *et seq.***;** |
| | **BREACH OF EXPRESS WARRANTY;** |
| | **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY;** |
| | **VIOLATION OF MAGNUSON-MOSS ACT, 15 U.S.C. §§ 2301,** *et. seq.***;** |
| | **VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW, §§ 349;** |
| | **VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. Ann §§ 501 201,** *et seq.***;** |
| | **VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICE ACT, Ga. Code Ann. §§ 10-1-391(a),** *et seq.* |
| | <u>**DEMAND FOR JURY TRIAL**</u> |

*Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
SECOND AMENDED COMPLAINT

## INTRODUCTION

1.     Plaintiffs Kim Allen, Daniele Xenos, Roger Hutchinson, Melissa Nigh, Sherrell Smith, Yuanke Xu, Diana Sisti and Nancy Rodriguez on behalf of themselves, all others similarly situated, and the general public ("Plaintiffs"), allege against defendants Hyland's, Inc., and Standard Homeopathic Corporation (collectively, "Defendants") as follows:

2.     Defendants are the manufacturers and sellers of homeopathic products that are nothing more than placebos, as set forth herein.  This complaint concerns Defendants' homeopathic products known as Hyland's Calms Forté, Hyland's Teething Tablets, Hyland's Migraine Headache Relief, Hyland's ClearAc, Hyland's Poison Ivy/Oak Tablets, Hyland's Colic Tablets, Hyland's Leg Cramps PM with Quinine, Hyland's Leg Cramps, Hyland's Defend Cold & Cough, Hyland's Defend Cold & Cough Night, Hyland's Cough and Hyland's Seasonal Allergy Relief (collectively referred to herein as the "Products").

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the class are citizens of states different than Defendants.   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Further, greater than two-thirds of the class members reside in states other than the states in which Defendants are citizens.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendants (i) are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of

1

*Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
SECOND AMENDED COMPLAINT

its Products in this district; (ii) do substantial business in this district; (iii) advertise to consumers residing in this district, and (iv) are subject to personal jurisdiction in this district.

## THE PARTIES

5.    Plaintiff Kim Allen is a resident of Sarasota, Florida.

6.    Plaintiff Daniele Xenos is a resident of Decatur, Georgia.

7.    Plaintiff Roger Hutchinson is a resident of Long Beach, New York.

8.    Plaintiff Melissa Nigh is a resident of Morgan Hill, California.

9.    Plaintiff Sherrell Smith is a resident of Vista, California.

10.   Plaintiff Yuanke Xu is a resident of Oceanside, California.

11.   Plaintiff Diana Sisti is a resident of San Diego, California.

12.   Plaintiff Nancy Rodriguez is a resident of Ormond Beach, Florida.

13.   Defendant Hyland's, Inc. is a California corporation that maintains its principal place of business in the County of Los Angeles, California.

14.   Defendant Standard Homeopathic Company is a Nevada corporation and the parent corporation of Hyland's, Inc. that maintains its principal place of business in the County of Los Angeles, California.

15.   Defendants produce, market, and sell homeopathic Products throughout the United States.  Defendants have long maintained substantial manufacturing, distribution, marketing and warehousing operations in Los Angeles, California.

## INTRODUCTION

16.   Homeopathic medicine has been practiced in United States since the early 19th century.  Homeopathy seeks to stimulate the body's ability to heal itself by giving very small doses of highly diluted substances.  However, there is little evidence that homeopathy is effective, much less that people understand homeopathic principles.

17.   Homeopathy is premised on two main principles; the principle of similars and the principle of dilutions.  Under the "principle of similars" a disease can be cured

1    by a substance that produces similar symptoms in healthy people.    Under the

2    "principle of dilutions" the *lower* the dose of the medication, the *greater* its

3    effectiveness.

4        18.    However, it is paradoxical that through dilution an ingredient would reach

5    higher potency.    Further, in highly diluted remedies, there is a very low probability

6    that even a single molecule of the original substance is present in the Product.    For

7    example, a level of 12C dilution is the equivalent to a pinch of salt in both the North

8    and South Atlantic Oceans.[1]    Allegedly, the more diluted the ingredient, the more

9    effective it becomes.

10        19.    Homeopathic remedies are not marketed and sold in the United States in

11    the same manner as when they first originated, approximately 200 years ago.    When

12    homeopathic drugs first originated, people would typically consult with a licensed

13    homeopathic practitioner, who would compound his or her own homeopathic remedy,

14    or provide a prescription to the patient.    Food and Drug Administration Compliance

15    Policy Guide ("CPG") § 400.400.

16        20.    Historically, homeopathic drugs were also not labeled and there was no

17    direct-to-consumer advertising.    Instead, homeopathic remedies were primarily

18    marketed to licensed homeopathic practitioners.    "CPG" § 400.400.

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26

27    [1] *See* http://www.healthguidance.org/entry/12178/1/An-Introduction-to-Homeopathic-Remedies.html, last visited on May 9, 2012.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FACTS

## A. <u>Hyland's Calms Forté ("Calms Forté")</u>[2]

 

21.     During the Class Period defined herein, Plaintiff Allen purchased Calms Forté 32-caplet packages from various stores in Sarasota, Florida, including Walgreen's and Publix Supermarket.  Ms. Allen's individual purchases ranged from approximately $6.50 to $8.

22.     During the Class Period defined herein, Plaintiff Xenos purchased Calms Forté on at least one occasion from a drugstore located in Decatur Georgia, or online from her home in Georgia.  Ms. Xenos' individual purchases were approximately $10.00.

23.     Defendants advertise Calms Forté as a treatment and cure for "simple nervous tension and occasional sleeplessness."  Defendants claim Calms Forté is a "Sleep Aid," "For Restless or Wakeful Sleep from Exhaustion," "For Stress, Nervousness or Nervous Headache," "For Drowsiness with Incomplete Sleep," "For

---

[2] *See* Exhibit 1 ("Ex. 1") attached hereto for larger images of Calms Forté and other Products.

Nervous Irritability," has "Biochemic Phosphates for Enhancing Cellular Function," helps consumers "Wake up Rested & Refreshed," and "Relieves Stress to Help you Sleep."

24. Calms Forté is composed of nothing more than sugar pellets or tablets onto which minute quantities of water have been absorbed. The purported active ingredients in Calms Forté are: *Avena Sativa 1X Double Strength*, *Humulus Lupulus 1X Double Strength*, *Chamomilla 2X (Chamomile)*, *Passiflora 1X Triple Strength*, *Calcarea Phosphorica (purported cellular function enhancer)*, *Ferrum Phosphoricum*, *Kali Phosphoricum*, *Natrum Phosphoricum*, and *Magnesia Phosphoricum*. Calms Forté, at best, contains only trace amount of "active ingredients" and has no effect on sleeplessness.

25. In purchasing Calms Forté, Plaintiff Allen relied upon various representations Defendants made on the Product's label, such as the name of the Product itself and the statements that Calms Forté will relieve her and her minor daughter's sleeplessness due to stress.

26. Plaintiff Xenos purchased Calms Forté because she wanted a more natural alternative to traditional over-the-counter remedies. Plaintiff Xenos relied upon various representations Defendants made on the Product's label, such as the name of the Product itself, and that Calms Forté is effective in relieving symptoms related to sleeplessness or incomplete sleep.

27. Calms Forté did not work for Plaintiffs as advertised.

28. Absent the misstatements described herein, Plaintiffs would not have purchased Calms Forté.

29. To the detriment of Plaintiffs and similarly situated consumers, the substances listed as the "active ingredients" in Calms Forté, are not active in combating sleeplessness. Moreover, because of enormous dilutions used in its preparation, the "active ingredients" are not actually present in the Calms Forté

1  preparations sold to the Plaintiffs and other consumers.  *See* the Dilution Chart,

2  attached hereto as Exhibit 2 ("Ex. 2"), which describes the dilution levels of all

3  Products, including Calms Forté.

4       30.    The ingredients used in Calms Forté provide no health benefit.  Moreover,

5  at the stupendously high dilutions used to prepare the product, they can have no effect

6  of any kind in humans because the odds are astronomically high that even a single

7  molecule derived from the original "extract" of the "active ingredients" could be

8  present in the solution used to soak the tiny balls of lactose which constitute the

9  product sold to consumers.[3]

10      31.    Defendants know that there are, at best, traceable amounts of active

11 ingredients present in Calms Forté and therefore must be aware that Calms Forté

12 cannot relieve any symptoms for which Defendants advertise the Product.

13      32.    Calms Forté is nothing more than small balls or pellets of sugar (lactose)

14 packaged into capsules, with trace amounts of the claimed active ingredients.  Calms

15 Forté comes in 32, 50 and 100 caplet bottle sizes and the price depends on the package

16 size, starting at approximately $7.50 per 32-caplet package.  Hence, Defendants'

17 unfair and deceptive practices have enriched them by tens of millions of dollars, at the

18 expense of tens of thousands of Americans.

19      33.    Plaintiffs seek justice for themselves and for similarly-situated consumers

20 of Calms Forté by means of this action, among other things, to enjoin the ongoing

21 deceptive practices described herein.

22 / / /

23

---

24 [3] The final stage in the preparation of Calms Forté, as is the case for all homeopathic

25 "medicines," is the infusion of what is essentially water onto the surface of tiny balls

26 of sugar.  This effectuates an additional "dilution" of the water, imposing another

   layer of uncertainty upon the indeterminate but undeniably vast dilution in

27 Defendants' Products.

28

**B. Hyland's Teething Tablets ("Teething Tablets")**



34.    During the Class Period defined herein, Plaintiff Xenos purchased Teething Tablets on several occasions, from various drugstores located in Decatur, Georgia, or online from her home in Georgia.  Ms. Xenos' individual purchases were approximately $10.00.

35.    During the Class Period defined herein, Plaintiff Nigh purchased Teething Tablets from Target and Rite Aid stores in Morgan Hill, California.

36.    Defendants advertise Teething Tablets for the relief of symptoms associated with baby teething, such as "Relieve Pain and Irritability from Teething," "Simple Restlessness and Wakeful Irritability Due to the Cutting of Teeth," "Soft Tablets Dissolve Instantly," "100% Natural" and "Helps Reduce Redness and Inflammation of Gums."

37.    Plaintiff Xenos purchased Teething Tablets, because she wanted a more natural alternative to traditional over-the-counter remedies.  In purchasing Teething Tablets, Plaintiff Xenos and Nigh relied upon various representations Defendants made on the Product's label, such as the Product's name itself, and that Teething Tablets are effective in relieving symptoms associated with baby teething, such as,

1   "Relieve Pain and Irritability from Teething," "100% natural," among other
2   representations.

3       38.   Teething Tablets did not work for Plaintiffs as advertised.

4       39.   The purportedly active ingredients Teething Tablets include *Calcarea*
5   *Phosphorica* (6X HPUS), *Chamomilla Recutita* (Chamomile) (6X HPUS), *Coffee*
6   *Cruda* (6X HPUS) and *Belladonna* (12X HPUS).   However, as with Calms Forté, the
7   active ingredients, even if they were otherwise effective, are so greatly diluted as to be
8   effectively non-existent in the Product, such that the Product is ineffective for its
9   intended uses.  *See* Ex. 2, Dilution Chart, with regards to this Product.

10      40.   Absent the misstatements described herein, Plaintiff Xenos and Nigh
11  would not have purchased Teething Tablets.

12      41.   Plaintiffs seek justice for themselves and for similarly-situated consumers
13  of Teething Tablets by means of this action to enjoin the ongoing deceptive practices
14  described herein.

15  **C. Hyland's Migraine Headache Relief ("Migraine Headache Relief")**

16
17
18
19           
20
21
22
23
24

25      42.   During the Class Period defined herein, Plaintiff Xenos purchased
26  Migraine Headache Relief on more than one occasion, from a drugstore located in

27
28

8

*Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
SECOND AMENDED COMPLAINT

1   Decatur, Georgia, or online from her home in Georgia.   Ms. Xenos' individual

2   purchases were approximately $10.00.

3       43.   Defendants advertise Migraine Headache Relief as a natural remedy for

4   migraines, that "works fast to relieve migraine headache pain without aspirin, caffeine

5   or sedatives" and that the Product is "100% Natural," "Aspirin Free," "Quick

6   Dissolving Tablets," "Relieves Pressure, Throbbing, Light + Noise Sensitivity" and

7   "Temporarily Relieves the Symptoms of Migraine Pain."   One of the Migraine

8   Headache Relief's packaging depicts a happy, smiling woman.

9       44.   Plaintiff Xenos purchased Migraine Headache Relief, because she wanted

10   a more natural alternative to traditional over-the-counter remedies.   In purchasing

11   Migraine Headache Relief, Plaintiff Xenos relied upon various representations

12   Defendants made on the label of the Products, such as the Product's name itself,

13   "Migraine Headache Relief" and "100% Natural."

14       45.   The purported active ingredients in this Product are: *Glonoinum* (12X

15   HPUS), *Belladonna* (6X HPUS), *Gelsemium* (6X HPUS), *Nux Vomica* (6X HPUS),

16   *Iris Versicolor* (6X HPUS) and *Sanguinaria Canadensis* (6X HPUS).   However, as

17   with Calms Forté and Teething Tablets, the active ingredients, even if they were

18   otherwise effective, are so greatly diluted as to be effectively non-existent in the

19   Product, such that the Product is ineffective for its intended uses.   *See* Ex. 2, Dilution

20   Chart, with regards to this Product.

21       46.   Migraine Headache Relief did not work for Plaintiff Xenos as advertised.

22       47.   Absent the misstatements described herein, Plaintiff Xenos would not

23   have purchased Migraine Headache Relief.

24       48.   Plaintiff seeks justice for themselves and for similarly-situated consumers

25   of Migraine Headache Relief by means of this action to enjoin the ongoing deceptive

26   practices described herein.

27   / / /

28

9

*Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
SECOND AMENDED COMPLAINT

**D. Hyland's ClearAc ("ClearAc")**



49.    During the Class Period defined herein, Plaintiff Xenos purchased ClearAc on at least one occasion, from a drugstore located in Decatur, Georgia, or online from her home in Georgia.    Ms. Xenos' individual purchases were approximately $10.00.

50.    Defendants advertise ClearAc for the management and symptomatic relief of symptoms of pimples, blackheads and blemishes associated with common acne (acne vulgaris).

51.    Plaintiff Xenos purchased ClearAc, because she wanted a more natural alternative to traditional over-the-counter remedies.    In purchasing ClearAc, Plaintiff Xenos relied upon various representations Defendants made on the Product's label and elsewhere, such as the Product's name itself, and: "Natural Treatment for Pimples, Acne, Blackheads, and Oily Skin," "Medicated Skin Cleanser," "Gentle on Skin No Harsh Chemicals," "Hyland's 100% Natural ClearAc Acne Tablets," and "No Messy Makeup," among other representations.

52.    The purported active ingredients in this Product include *Echinacea Ang.* (6X HPUS), *Berberis Vulg.* (6X HPUS), *Sulphur Iod* (6X HPUS) and *Hepar Sulph*

1  (6X HPUS). However, as with Calms Forté, Teething Tablets and Migraine Headache

2  Relief, the active ingredients, even if they were otherwise effective, are so greatly

3  diluted as to be effectively non-existent in the Product, such that the Product is

4  ineffective for its intended uses. *See* Ex. 2, Dilution Chart, with regards to this

5  Product.

6     53.    ClearAc did not work for Plaintiff Xenos as advertised.

7     54.    Absent the misstatements described herein, Plaintiff would not have

8  purchased Hyland's ClearAc.

9     55.    Plaintiff seeks justice for herself and for similarly-situated consumers of

10  ClearAc by means of this action to enjoin the ongoing deceptive practices described

11  herein.

12  **E. Hyland's Poison Ivy/Oak Tablets ("Poison Ivy/Oak Tablets")**

13
14
15                     
16
17
18
19
20
21
22

23     56.    During the Class Period defined herein, Plaintiff Xenos purchased Poison

24  Ivy/Oak Tablets on at least one occasion, from a drugstore located in Decatur,

25  Georgia, or online from her home is Georgia. Ms. Xenos' individual purchases were

26  approximately $10.00.

27
28

57.    Defendants advertise Poison Ivy/Oak Tablets as "A Homeopathic Combination for Symptomatic Treatment after Contact with Poison Ivy or Oak." To relieve the symptoms such as skin break outs, itching, burning and blisters.

58.    Plaintiff Xenos purchased Poison Ivy/Oak Tablets, because she wanted a more natural alternative to traditional over-the-counter remedies.    In purchasing Poison Ivy/Oak Tablets, Plaintiff Xenos relied upon various representations Defendants made on the label and elsewhere, such as the Product's name itself, that the Product provides a "Natural Relief for Itching, Burning and Crusting Skin Due to Exposure to Poison Ivy or Oak".

59.    The purported active ingredients in this Product include *Rhus Toxicodendron* (6X HPUS), *Croton Tiglium* (6X HPUS) and *Xerophyllum* (6X HPUS).  However, as with Calms Forté, Teething Tablets, Migraine Headache Relief and ClearAc, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the Product, such that the Product is ineffective for its intended uses.  *See* Ex. 2, Dilution Chart, with regards to this Product.

60.    Poison Ivy/Oak Tablets did not work for Plaintiff Xenos as advertised.

61.    Absent the misstatements described herein, Plaintiff Xenos would not have purchased Poison Ivy/Oak Tablet.

62.    Plaintiff seeks justice for herself and for similarly-situated consumers of Poison Ivy/Oak Tablets by means of this action to enjoin the ongoing deceptive practices described herein.

/ / /
/ / /
/ / /
/ / /
/ / /

**F. Hyland's Colic Tablets ("Colic Tablets")**



63.    During the Class Period defined herein, Plaintiff Xenos purchased Colic Tablets on at least one occasion, from a drugstore located in Decatur, Georgia, or online from her home in Georgia.    Ms. Xenos' individual purchases were approximately $10.00.

64.    Defendants represent that Colic Tablets are "Soft Tablets [that] Dissolve Instantly," "[without] Side Effects," that "Relieve[] Colic Gas Pain and Irritability."

65.    Plaintiff Xenos purchased Colic Tablets, because she wanted a more natural alternative to traditional over-the-counter remedies.    In purchasing Colic Tablets, Plaintiff Xenos relied upon various representations Defendants made on the Product's label and elsewhere, such as the Product's name itself and: "Symptomatic Relief for Colic in Children" and "100% Natural."

66.    The purported active ingredients in this Product include *Dioscorea* (3X HPUS), *Chamomilla* (3X HPUS) and *Colocynth* (3X HPUS).    However, as with Calms Forté, Teething Tablets, Migraine Headache Relief, ClearAc and Poison Ivy/Oak Tablets, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the Product, such that the Product is

1  ineffective for its intended uses.  *See* Ex. 2, Dilution Chart, with regards to this

2  Product.

3       67.    Colic Tablets did not work for Plaintiff Xenos as advertised.

4       68.    Absent the misstatements described herein, Plaintiff Xenos would not

5  have purchased Colic Tablets.

6       69.    Plaintiff seeks justice for herself and for similarly-situated consumers of

7  Colic Tablets by means of this action to enjoin the ongoing deceptive practices

8  described herein.

9  **G. Hyland's Leg Cramps with Quinine PM ("Leg Cramps with Quinine")**



24       70.    During the Class Period defined herein, Plaintiff Xenos purchased Leg

25  Cramps with Quinine on at least one occasion, from a drugstore located in Decatur,

26  Georgia, or online from her home in Georgia.  Ms. Xenos' individual purchases were

27  approximately $10.00.

28

71.   Defendants represent that Leg Cramps with Quinine is a "non-habit forming" "nighttime cramp relief," to "stop the pain!"  Leg Cramps with Quinine allegedly provides "pain relief with restful sleep," "relieves pain and cramps in lower body, legs, feet and toes with accompanying nighttime sleeplessness," and "provides effective pain relief that helps [the consumer] fall asleep and get back to sleep at night."

72.   Plaintiff Xenos purchased Leg Cramps with Quinine, because she wanted a more natural alternative to traditional over-the-counter remedies.  In purchasing Leg Cramps with Quinine, Plaintiff Xenos relied upon various representations Defendants made on the Product's label, such as the Product's name itself and: "Temporarily relieves the symptoms of pain and cramps in lower body, legs, feet and toes with accompanying sleeplessness and disrupted sleep," among other representations.

73.   The purported active ingredients in this Product include *Calcarea Carbonica* (12X HPUS), *Causticum* (12X HPUS), *Chamomilla* (6X HPUS), *Cinchona Officinalis* (3X HPUS), *Cuprum Metallicum* (12X HPUS), *Lycopodium* (12X HPUS), *Magnesia Phosphorica* (6X HPUS), *Rhus Toxicodendron* (6X HPUS), *Silicea* (12X HPUS) and *Sulphur* (6X HPUS).   However, as with Calms Forté, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets and Colic Tablets, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the Product, such that the Product is ineffective for its intended uses.  *See* Ex. 2, Dilution Chart, with regards to this Product.

74.   Leg Cramps with Quinine did not work for Plaintiff Xenos as advertised.

75.   Absent the misstatements described herein, Plaintiff Xenos would not have purchased Leg Cramps with Quinine PM.

76.  Plaintiff seeks justice for herself and for similarly-situated consumers of Hyland's Leg Cramps with Quinine, by means of this action to enjoin the ongoing deceptive practices described herein.

**H. Hyland's Leg Cramps ("Leg Cramps")**



77.  During the Class Period defined herein, Plaintiff Smith purchased Leg Cramps from a Henry's/Sprouts store located in Vista and Oceanside, California.

78.  Defendants represent that Leg Cramps "temporarily relieves the symptoms of cramps and pains in lower back and legs," is "100% natural," "relax[es] calf and foot cramps," and "stop[s] the pain!"

79.  In purchasing Leg Cramps, Plaintiff Smith relied upon various representations Defendants made on the Product's label, such as the Product's name itself and that it relaxes calf and foot cramps.

80.  The purported active ingredients in this Product include *Cinchona Officinalis* (3X HPUS), *Viscum Album* (3X HPUS), *Gnaphalium Polycephalum* (3X

1  HPUS), *Rhus Toxicodendron* (6X HPUS), *Aconitum Napellus* (6X HPUS), *Ledum Pal*

2  (6X HPUS) and *Magnesia Phosphorica* (6X HPUS).

3      81.  However, as with Calms Forté, Teething Tablets, Migraine Headache

4  Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets and Leg Cramps with Quinine,

5  the active ingredients, even if they were otherwise effective, are so greatly diluted as

6  to be effectively non-existent in the Product, such that the Product is ineffective for its

7  intended uses.  *See* Ex. 2, Dilution Chart, with regards to this Product.

8      82.  Leg Cramps did not work for Plaintiff Smith as advertised.

9      83.  Absent the misstatements described herein, Plaintiff Smith would not

10  have purchased Leg Cramps.

11      84.  Plaintiff seeks justice for herself and for similarly-situated consumers of

12  Leg Cramps, by means of this action to enjoin the ongoing deceptive practices

13  described herein.

14  **I. Hyland's Defend Cold & Cough Night ("Defend Cold & Cough Night")**



86.   During the Class Period defined herein, Plaintiff Hutchinson purchased Defend Cold & Cough Night from a Rite Aid Drug Store, located in Long Beach, New York.

87.   During the Class Period defined herein, Plaintiff Sisti purchased Defend Cold & Cough Night from a CVS store located in San Diego, California.

88.   During the Class Period defined herein, Plaintiff Rodriguez purchased Defend Cold & Cough Night from Whole Foods store located in Ormond Beach, Florida, or online from her home in Florida.

89.   Defendants advertise that Defend Cold & Cough Night "Relie[ves] Sleeplessness, Congestion, Cough, Sore Throat, Sneezing," "Temporarily relieves the symptoms of the common cold," is "Dye Free," "Alcohol Free," and "Sugar Free."

90.   In purchasing Defend Cold & Cough Night, Plaintiffs relied upon various representations Defendants made on the Product's label and elsewhere, such as the Product's name itself and that the Product relieves "Sleeplessness, Congestion, Cough, Sore Throat, Sneezing."

91.   The purported active ingredients in this product include *Allium Cepa* (6X HPUS), *Coffea Cruda* (6X HPUS), *Chamomilla* (6X HPUS), *Hepar Sulph Calc* (12X HPUS), *Hydrastis* (6X HPUS), *Natrum Muriaticum* (6X HPUS), *Nux Vomica* (6X HPUS), *Phosphorus* (12X HPUS), *Pulsatilla* (6X HPUS) and *Sulphur* (12X HPUS). However, as with Calms Forté, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine and Leg Cramps, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the Product, such that the Product is ineffective for its intended uses.  *See* Ex. 2, Dilution Chart, with regards to this Product.

92.   Absent the misstatements described herein, Plaintiffs would not have purchased Defend Cold & Cough Night.

93.    Plaintiffs seek justice for themselves and for similarly-situated consumers of Defend Cold & Cough Night by means of this action to enjoin the ongoing deceptive practices described herein.

**J. Hyland's Defend Cold & Cough ("Defend Cold & Cough")**



94.    During the Class Period defined herein, Plaintiff Xu purchased Defend Cold & Cough from a Henry's/Sprouts store, located in Oceanside, California.

95.    Defendants advertise Defend Cold & Cough as a relief of nasal congestion, cough, sore throat and sneezing, that is "Dye Free," "Alcohol Free," "Sugar Free," and "Non-Habit Forming," has "100% Natural Ingredients," "No Known Drug Interactions" and "Works with your Body's Natural Healing Process."

96.    In purchasing Defend Cold & Cough, Plaintiff relied upon various representations Defendants made on the Product's label and elsewhere, such as the Product's name itself and that the Product relieves "Nasal Congestion, Cough, Sore Throat and Sneezing."

97.    The purported active ingredients in this Product include *Allium Cepa* (6X HPUS), *Hepar Sulph Calc* (12X HPUS), *Hydrastis* (6X HPUS), *Natrum Muriaticum* (6X HPUS), *Phosphorus* (12X HPUS), *Pulsatilla* (6X HPUS), *Sulphur* (12X HPUS).

98.    However, as with Calms Forté, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine, Leg Cramps and Defend Cold & Cough Night, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the Product, such that the Product is ineffective for its intended uses.  *See* Ex. 2, Dilution Chart, with regards to this Product.

99.    Absent the misstatements described herein, Plaintiff would not have purchased Defend Cold & Cough.

100.   Plaintiff seeks justice for himself and for similarly-situated consumers of Defend Cold & Cough by means of this action to enjoin the ongoing deceptive practices described herein.

**K. Hyland's Cough**



101. During the Class Period defined herein, Plaintiff Xu purchased Hyland's Cough from a Henry's/Sprouts store, located in Oceanside, California.

102. Defendants advertise Hyland's Cough as a "natural relief for coughs due to colds" "especially coughs where assistance is raising mucous is necessary."

103. In purchasing Hyland's Cough, Plaintiff relied upon various representations Defendants made on the Product's label and elsewhere, such as the Product's name itself and that the Product relieves symptoms of cough due to common cold.

104. The purported active ingredients in this Product include *Bryonia* (3X HPUS), *Causticum* (3X HPUS), *Hepar Sulph Calc.* (3X HPUS) and *Antimonium Tartaricum* (6X HPUS).

105. However, as with Calms Forté, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine, Leg Cramps, Defend Cold & Cough Night and Defend Cold & Cough, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the Product, such that the Product is ineffective for its intended uses. *See* Ex. 2, Dilution Chart, with regards to this Product.

106. Absent the misstatements described herein, Plaintiff would not have purchased Hyland's Cough.

107. Plaintiff seeks justice for himself and for similarly-situated consumers of Hyland's Cough by means of this action to enjoin the ongoing deceptive practices described herein.

/ / /

/ / /

/ / /

/ / /

/ / /

*Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
SECOND AMENDED COMPLAINT

**L. Hyland's Seasonal Allergy Relief ("Seasonal Allergy Relief")**



108.  During the Class Period defined herein, Plaintiff Xu purchased Seasonal Allergy Relief from a Henry's/Sprouts store, located in Oceanside, California.

109.  Defendants advertise Seasonal Allergy Relief as a "Non-Drowsy Formula" "For Indoor & Outdoor Allergies" that relieves "Itchy Watery Eyes," "Sneezing," "Runny Nose," and "Itchy Nose and Throat," is "100% Natural" and "Quick-Dissolving Tablets."

110.  In purchasing Seasonal Allergy Relief, Plaintiff relied upon various representations Defendants made on the Product's label and elsewhere, such as the Product's name itself and that the Product "temporarily relieves the symptoms of hay fever or other upper respiratory allergies from mold, animal dander, pollen, ragweed, and grasses."

111.  The purported active ingredients in this Product include *Allium Cepa* (6X HPUS), *Natrum Muriaticum* (6X HPUS), *Histaminum Hydrochloricum* (12X HPUS),

1 | *Luffa Operculata* (12X HPUS), *Galphimia Glauca* (12X HPUS) and *Nux Vomica* (^X
2 | HPUS).

3 |     112. However, as with Calms Forté, Teething Tablets, Migraine Headache
4 | Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine,
5 | Leg Cramps, Defend Cold & Cough Night, Defend Cold & Cough and Hyland's
6 | Cough, the active ingredients, even if they were otherwise effective, are so greatly
7 | diluted as to be effectively non-existent in the Product, such that the Product is
8 | ineffective for its intended uses.  *See* Ex. 2, Dilution Chart, with regards to this
9 | Product.

10 |     113. Absent the misstatements described herein, Plaintiff would not have
11 | purchased Seasonal Allergy Relief.

12 |     114. Plaintiff seeks justice for himself and for similarly-situated consumers of
13 | Seasonal Allergy Relief by means of this action to enjoin the ongoing deceptive
14 | practices described herein.

15 |                 **SPECIFIC MISREPRESENTATIONS,**
16 |   **MATERIAL OMISSIONS, AND DECEPTIVE FACTS**
17 |     **(As to All Causes of Action Against all Defendants)**

18 |     115. Defendants' advertising of the Products are and have been the subject of
19 | an extensive and comprehensive, nationwide marketing campaign in various media
20 | including the internet.

21 |     116. Defendants primarily advertise and promote the Products through labeling
22 | claims on the front of the product packages.  Among other things, the Products' names
23 | clearly state what the ailments and symptoms the Products are designated for.  For
24 | example the Products which bear the names "Teething Tablets," "Migraine Headache
25 | Relief," "Poison Ivy/Oak Tablets," "Colic Tablets," "Leg Cramps," "Defend Cold &
26 | Cough," "Cough," and "Seasonal Allergy Relief" provide a clear representation to
27 | consumers that the Product is designed to alleviate the symptoms identified in the

28 |

1  name.  Label descriptions on the Product packaging, taken as a whole, further clarify

2  what each Product is supposed to do.  *See* Misrepresentation Chart, attached hereto as

3  Ex. 3 for the challenged statements regarding the Products.  Plaintiffs relied on the

4  Products' names and label statements in purchasing the Products.

5       117.  Defendants also use the web site, http://www.hylands.com/, to advertise

6  and promote the Products.

7       118.  Defendants advertise their Products as effective in relieving various

8  symptoms and ailments, such as "simple nervous tension and occasional

9  sleeplessness," "restless or wakeful sleep from exhaustion," "stress, nervousness or

10  nervous headache," "drowsiness with incomplete sleep," "nervous irritability, "pain

11  and irritability from teething," "pressure, throbbing and light and noise sensitivity

12  associated with migraines," "pimples, acne, blackheads, and oily skin," "itching,

13  burning and crusting skin due to exposure to Poison Ivy or Oak," "colic in children, "

14  "pain and cramps in lower body, legs, feet and toes with accompanying nighttime

15  sleeplessness," "calf and foot cramps," "sleeplessness, congestion, cough, sore throat,

16  sneezing," "coughs to due to colds" and "for indoor and outdoor allergies." *See* Ex. 3.

17       119.  Defendants represent that "Hyland's Homeopathic Medicines are

18  manufactured according to the standards set forth in the Homeopathic Pharmacopoeia

19  of the United States," but do not explain to consumers what the dilution levels of X,

20  C, K and similar dilution levels mean, in a language understandable to an average

21  consumer.  See 21 C.F.R. § 201.10(d)(i).  In fact, because of the dilutions of the

22  purported "highest quality materials," Defendants' Products are nothing more than a

23  placebo.

24       120.  Defendants' labeling and advertising claims are false and deceptive

25  because Hyland's Products are composed of nothing more than sugar pellets and/or

26  tablets onto which minute quantities of water have been absorbed.  The Products thus

27  contain, at best, trace amounts of "active" ingredients, have no effect on ailments and

28

1  symptoms they are advertised for, and in fact did not alleviate the ailments or

2  symptoms for which Plaintiffs purchased them.

3      121.  Defendants' labeling and advertising claims are further false and

4  deceptive because there is no credible scientific evidence that Hyland's Products have

5  any effect on various symptoms and ailments they purport to relieve and Defendants

6  are free to indicate uses without any regulatory oversight, a fact that is not disclosed to

7  consumers.

8

9              **CLASS ACTION ALLEGATIONS**

   **A.    The Nationwide Consumer Class**

10

11     122.  Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil

12  Procedure, Plaintiffs bring this action on behalf of themselves and a nationwide

13  consumer class (hereinafter referred to as the "Class") initially defined as follows::

14        • All purchasers of Hyland's, Inc. and Standard Homeopathic Company's

15            homeopathic Products entitled Calms Forte, Teething Tablets, Migraine

16            Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg

17            Cramps with Quinine PM, Leg Cramps, Defend Cold & Cough Night,

18            Defend Cold & Cough, Hyland's Cough and Seasonal Allergy Relief for

19            personal or household use and not for resale, in the United States from

20            period February 9, 2008 to the present (the "Class Period").  Excluded

21            from the nationwide consumer class are governmental entities,

22            Defendants, any entity in which Defendants have a controlling interest,

23            their employees, officers, directors, legal representatives, heirs,

24            successors and wholly or partly owned subsidiaries or affiliated

25            companies, class counsel and their employees; and the judicial officers

26            and their immediate family members and associated court staff assigned

27            to this case.

28

123. The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiffs believe the total number of Class members is at least in the hundreds of thousands and members of the Class are numerous and geographically dispersed across the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

124. Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to Calms Forte, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine, Leg Cramps, Defend Cold & Cough Night, Defend Cold & Cough, Hyland's Cough and Seasonal Allergy Relief, appropriate with respect to the Class as a whole. In particular, Defendants have failed to disclose the true nature of the Products being marketed and that the Products are nothing more than sugar pill.

125. There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiffs and the Class and these common questions of fact and law include, but are not limited to, the following:

    a. Whether the claims discussed above are true, misleading, or reasonably likely to deceive;

    b. Whether Defendants' alleged conduct violates public policy;

    c. Whether the alleged conduct constitutes violations of the laws asserted herein;

    d. Whether Defendants engaged in false or misleading advertising;

    e. Whether Plaintiffs and Class members have sustained monetary loss and

the proper measure of that loss;

    f.  Whether Plaintiffs and Class members are entitled to an award of punitive damages; and;

    g.  Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

126.  Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning the homeopathic Products and purchased the Products based on those representations.

127.  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for homeopathic drugs, in particular. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

128.  Plaintiffs and the members of the Class suffered, and will continue to suffer harm as a result of the Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class

1   action conserves the resources of the parties and of the judicial system and protects the

2   rights of the class members.  Furthermore, for many, if not most, a class action is the

3   only feasible mechanism that allows an opportunity for legal redress and justice.

4        129.  Adjudication of individual Class members' claims with respect to

5   Defendants would, as a practical matter, be dispositive of the interests of other

6   members not parties to the adjudication, and could substantially impair or impede the

7   ability of other class members to protect their interests.

8   **B.    Alternate State Law Classes**

9        130.  In the event that the Court does not apply California law on a nationwide

10  basis, Plaintiffs allege a separate class for the following states based on the applicable

11  laws set forth in the alternate state law claims.  Each class is defined as follows for the

12  claims asserted under a particular jurisdiction's laws:

13       • All purchasers of Defendants' Products who reside in California and who

14         purchased any of Defendants' Products for personal or household use and

15         not for resale at any time on or after February 9, 2008, through and

16         including the present (the "California Class").

17       • All purchasers of Defendants' Products who reside in Florida and who

18         purchased any of Defendants' Products for personal or household use and

19         not for resale at any time on or after February 9, 2008, through and

20         including the present (the "Florida Class").

21       • All purchasers of Defendants' Products who reside in Georgia and who

22         purchased any of Defendants' Products for personal or household use and

23         not for resale at any time on or after February 9, 2008, through and

24         including the present (the "Georgia Class").

25       • All purchasers of Defendants' Products who reside in New York and who

26         purchased any of Defendants' Products for personal or household use and

27

28

1    not for resale at any time on or after February 9, 2008, through and

2    including the present (the "New York Class").

3    ### FIRST CAUSE OF ACTION

4    **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

5    *California Civil Code §§ 1750, et seq.*

6    **(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

7    131. Plaintiffs repeat, reallege and incorporate by reference each and every

8    allegation contained above as if fully set forth herein.

9    132. This cause of action is brought pursuant to the Consumers Legal

10    Remedies Act, California Civil Code § 1750, *et seq.* (the "Act"). Plaintiffs and the

11    members of the Class are consumers as defined by California Civil Code § 1761(d).

12    The Products are goods within the meaning of the Act.

13    133. Defendants violated and continue to violate the Act by engaging in the

14    following practices proscribed by California Civil Code §1770(a) in transactions with

15    Plaintiffs and the Class which were intended to result in, and did result in, the sale of

16    the Products:

17    Representing that [the Products have] … characteristics … uses [or]

18    benefits … which [they do] not have … (Civ. Code, § 1770, subd. (a) (5).)

19    Representing that [the Product] is of a particular standard, quality or

20    grade… if it is of another. (Civ. Code, § 1770, subd. (a) (7).)

21    Advertising a good… with intent not to sell it as advertised. (Civ. Code,

22    § 1770, subd. (a) (9).)

23    Representing that [the Product has] been supplied in accordance with a

24    previous representation when [it has] not. (Civ. Code, § 1770, subd. (a) (16).)

25    134. Defendants' violated the Act by representing through advertising of the

26    Products as described above, when they knew, or should have known, that the

27    representations and advertisements were false or misleading.

28

135. Plaintiffs and members of the Class reasonably relied upon the Defendants' representations as to the quality and attributes of their Products.

136. Plaintiffs and other members of the Class were deceived by Defendants' representations about the quality and attributes of their Products, including but not limited to the purported benefits of their Products, taken as a whole, that their Products provide, *inter alia*, "relief of simple nervous tension and occasional sleeplessness," and that it can be used as a "sleep aid" or "for restless or wakeful sleep from exhaustion," "for stress, nervousness or nervous headache," "for drowsiness with incomplete sleep," "for nervous irritability," "Relieve Pain and Irritability from Teething," "Soft tablets dissolve instantly," "100% natural "Migraine Headache Relief," "Quick Dissolving tablets," "Aspirin free," "Natural Treatment for Pimples, Acne, Blackheads, and Oily Skin" "Medicated Skin Cleanser," "Gentle on Skin No Harsh Chemicals," "Natural Relief for Itching, Burning and Crusting Skin Due to Exposure to Poison Ivy or Oak," "Symptomatic Relief for Colic in Children," "Temporarily relieves the symptoms of pain and cramps in lower body, legs, feet and toes with accompanying sleeplessness and disrupted sleep," "Relax[es] Calf & foot Cramps,"       "Relie[ves]       Sleeplessness,       Congestion,       Cough,       Sore Throat [and] Sneezing," "Relie[ves] Nasal Congestion, Cough, Sore Throat [and] Sneezing," "Relie[ves] Coughs Due to Colds," and relieves "Indoor and Outdoor Allergies." *See* Ex. 3, for other false claims. Plaintiffs and other Class members would not have purchased the Products had they known the Defendants' claims were untrue, and had they known the true nature of the Products.

137. Pursuant to section 1782 *et seq.* of the Act, Plaintiffs Allen, Xenos and Hutchinson notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act as to Calms Forte, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak, Colic Tablets, Leg Cramps with Quinine and Defend Cold & Cough Night and demanded that Defendants rectify the problems associated with

1  the actions detailed above and give notice to all affected consumers of its intent to so

2  act.  Defendants' wrongful business practices regarding these Products constituted,

3  and constitute, a continuing course of conduct in violation of the California's

4  Consumers Legal Remedies Act since Defendants are still representing that these

5  Products have characteristics, uses, benefits, and abilities which are false and

6  misleading, and have injured Plaintiffs and the Class.  Copies of Plaintiffs Allen,

7  Xenos and Hutchinson's letters are attached as Ex. 4 hereto.

8      138.  Pursuant to California Civil Code § 1780(a), Plaintiffs Allen, Xenos and

9  Hutchinson and the Class seek an order of this Court enjoining Defendants from

10  continuing to engage in unlawful, unfair, or deceptive business practices and any other

11  act prohibited by law, and awarding Plaintiffs and the Class restitution and

12  disgorgement and, with respect to Calms Forte, Teething Tablets, Migraine Headache

13  Relief, ClearAc, Poison Ivy/Oak, Colic Tablets, Leg Cramps with Quinine and Defend

14  Cold & Cough Night, awarding Plaintiffs and the Class damages and punitive

15  damages.

16      139.  Pursuant to California Civil Code § 1782(d), Plaintiff Smith, Xu and the

17  Class seek a Court order enjoining the above-described wrongful acts and practices of

18  the Defendants with respect to Leg Cramps, Defend Cold & Cough, Hyland's Cough

19  and Seasonal Allergy Relief.

20  ## SECOND CAUSE OF ACTION

21  ## VIOLATION OF THE UNFAIR COMPETITION LAW

22  ### *California Business and Professions Code §§ 17200, et seq.*

23  **(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

24      140.  Plaintiffs repeat, reallege and incorporate by reference each and every

25  allegation contained above as if fully set forth herein.

26      141.  California's Unfair Competition Law, Business and Professions Code §

27  17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading

28

1  advertising."   For the reasons discussed above, Defendants have engaged in unfair,

2  deceptive, untrue and misleading advertising in violation of the UCL.

3     142. The UCL also prohibits any "unlawful… business act or practice."

4  Defendants have violated the UCL's prohibition against engaging in unlawful acts and

5  practices by, *inter alia*, making the representations and omissions of material facts, as

6  set forth more fully herein, and by violating among others, California Civil Code §§

7  1572, 1573, 1709, 1710, 1711, 1770, California Health and Safety Code §§ 109875, *et*

8  *seq.*, Cal. Bus. & Prof. Code §§ 12601, *et seq.* ("Fair Packaging and Labeling Act"),

9  California Commercial Code § 2313(1), and the common law.   Such conduct is

10  ongoing and continues to this date. *See* Exs. 2 and 3.

11     143.  Plaintiffs and the Class reserve the right to allege other violations of law

12  which constitute other unlawful business acts or practices.

13     144.  California Business and Professions Code § 17200 also prohibits any

14  "unfair"… business act or practice."

15     145. Defendants'   acts,   omissions,   misrepresentations,   practices   and

16  nondisclosures as alleged herein also constitute "unfair" business acts and practices

17  within the meaning of the UCL in that its conduct is substantially injurious to

18  consumers, offends public policy, and is immoral, unethical, oppressive, and

19  unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable

20  to such conduct.  Such conduct is ongoing and continues to this date.

21     146.  Plaintiffs allege violations of consumer protection, unfair competition and

22  truth in advertising laws in California and other states resulting in harm to consumers.

23  Plaintiffs assert violation of the public policy of engaging in false and misleading

24  advertising, unfair competition and deceptive conduct towards consumers.   This

25  conduct constitutes violations of the unfair prong of the UCL.   Such conduct is

26  ongoing and continues to this date.

27

28

147.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

148.  The UCL also prohibits any "fraudulent business act or practice."

149.  Defendants' claims, nondisclosures (i.e., omissions), and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of the UCL.  Such conduct is ongoing and continues to this date.

150.  Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other members of the Class.  Plaintiffs have suffered injury in fact as a result of Defendants' unfair conduct.

151.  Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiffs to injunctive relief against Defendants, as set forth in the Prayer for Relief.

152.  Pursuant to Business and Professions Code § 17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign.

153.  Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE FALSE ADVERTISING LAW

*California Business and Professions Code §§ 17500, et seq.*

**(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

154.  Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

155. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased the Products in reliance upon Defendants' marketing claims. Plaintiffs used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

156. Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code §§ 17500, *et seq.* because Defendants have advertised their Products in a manner that is untrue or misleading, or that is known to Defendants to be untrue or misleading.

157. Defendants' wrongful business practices have caused injury to Plaintiffs and the Class.

158. Pursuant to section 17535 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

159. Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of Defendants' Products, which were unjustly acquired through acts of unlawful, unfair, deceptive and/or fraudulent competition.

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of Plaintiffs and all Class Members, as Against All Defendants)**

160. Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

161. On the Products' labels and through their marketing campaign as described above, Defendants made affirmations of fact or promises, or description of

1  goods, which formed "part of the basis of the bargain" at the time of purchase. *See*
2  Ex. 3.

3      162.  The warranties were breached because the Products did not live up to their
4  warranties, and that breach caused injury in the form of the lost purchase price for the
5  Products. *See* Cal. Com. Code § 2313(1); *see also Zwart v. Hewlett-Packard Co.*,
6  2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can
7  create warranties).

8      163.  As a result of Defendants' breach of their warranties, Plaintiffs and the
9  Class have been damaged in the amount of the purchase price of the Products they
10  purchased.

11  **FIFTH CAUSE OF ACTION**

12  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
13  **(On Behalf of Plaintiffs and the Class, as Against All Defendants)**

14      164.  Plaintiffs repeat, reallege and incorporate by reference each and every
15  allegation contained above as if fully set forth herein.

16      165.  Defendants, through their acts and omissions as set forth herein, in their
17  sale, marketing and promotion of the Products, made representations to Plaintiffs and
18  the Class that the Products provide the claimed health benefits, among other
19  representations. *See* Ex. 3.

20      166.  Plaintiffs and the Class bought the Products manufactured, advertised and
21  sold by Defendants.

22      167.  Defendants are merchants with respect to the goods of this kind which
23  were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and other
24  members of the Class an implied warranty that those goods were merchantable.

25      168.  However, Defendants breached that warranty implied in the sale of goods
26  in that the Products do not provide the purported claimed health benefits, as set forth
27  in detail herein.

28

169. As a result of Defendants' conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

170. Plaintiffs and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE MAGNUSSON-MOSS ACT,

### 15 U.S.C. §§ 2301, *et. seq.*;

**(On Behalf of Plaintiffs and the Class, as Against All Defendants)**

171. Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

172. Plaintiffs bring this claim individually and on behalf of the members of the Class.

173. Defendants' Products are consumer products as defined in 15 U.S.C. § 2301(1).

174. Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

175. Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

176. In connection with the sale of the Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the Products offer relief from various ailments and symptoms as listed in Ex. 3., when in fact, these Products do not provide relief for any of these ailments or symptoms.

177. By breaching the express written warranties stating that the Products relieve ailments and symptoms as listed in Ex. 3, Defendants have violated the statutory rights of Plaintiffs and Class members pursuant to the Magnuson-Moss

Warranty Act, 15 U.S.C. §§ 2301 et seq., thereby damaging Plaintiffs and Class members.

178. Plaintiffs notified the Defendants in writing of their claims and that the Plaintiffs were acting on behalf of a Class. *See* Ex. 4.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW, SECTION 349 AND 350

### (On Behalf of Plaintiff Hutchison and the New York Class, as Against All Defendants)

179. Plaintiff Hutchison repeats, realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

180. Defendants' conduct constitutes deceptive acts or practices and/or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. §§ 349-350.

181. As fully alleged above, by advertising, marketing, distribution and/or selling of the Products to Plaintiff and other members of the New York Class, Defendants engaged in, and continue to engage in, deceptive acts and practices.

182. Defendants' conduct was materially misleading to Plaintiff and the New York Class.

183. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was consumer oriented.

184. As a direct and proximate result of Defendants' violation of this statute, Plaintiff and the New York Class were injured and suffered damages.

185. The injuries to Plaintiff and the New York Class were further foreseeable to Defendants and, thus the Defendants' actions were unconscionable and unreasonable.

186.   Defendants are liable for damages sustained by Plaintiff and the New York Class to the maximum extent allowable under N.Y. Gen. Bus. L. §§ 349-350.

187.   Pursuant to section 349 (h) of the New York General Business Law, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful act or practice, false advertising, and any other act prohibited by law, including those set forth in the complaint.

## EIGHT CAUSE OF ACTION

### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,

**Fla. Stat. Ann § 501 201 *et seq.***

**(On Behalf of Plaintiffs Allen and Rodriquez and the Florida Class, as Against All Defendants)**

188.   Plaintiffs Allen and Rodriguez repeat, re-allege and incorporate by reference each and every allegation contained above as if fully set forth herein.

189.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA").  The purpose of FDUPTA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade of commerce.  Fla. Stat. Ann § 501 202(2).

190.   Plaintiffs Allen and Rodriguez and the members of the Florida Class are consumers as defined by Fla. Stat. § 501.203.  Hyland's homeopathic Products are goods within the meaning of FDUPTA.  Defendants are engaged in trade or commerce within the meaning of FDUPTA.

191.   Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce."

192.   Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal

1  courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

2  193. Federal decisions provide that "a deceptive practice is one that is likely to

3  mislead consumers." *Jovine v. Abbott Labs., Inc.,* 2011 U.S. Dist. LEXIS 39702,

4  2011 WL 1376029 (S.D. Fla. Apr. 12, 2011) (quoting *Davis v. Powertel,* 776 So.2d

5  971, 974 (Fla. Dist. Ct. App. 2000)). The Fourth District Court of Florida has held that

6  an unfair practice is one that "offends established public policy and one that is

7  immoral, unethical, oppressive, unscrupulous, or substantially injurious to

8  consumers." *Yachting Promotions, Inc. v. Broward Yachts, Inc.,* 792 So.2d 600, 664

9  (Fla. 4th DCA 2001).

10  194. Defendants' unfair and deceptive practices are likely to mislead, and have

11  misled, Plaintiffs Allen and Rodriguez and Florida Class who purchased them.

12  195. Further, Defendants have violated the FDUPTA by engaging in the unfair

13  and deceptive practices as described herein which offend public policies and are

14  immoral, unethical, unscrupulous and substantially injurious to consumers.

15  196. Plaintiffs Allen and Rodriguez and the Florida Class have been aggrieved

16  by Defendants' unfair and deceptive practices in that they paid for the Products.

17  197. The damages suffered by Plaintiffs Allen and Rodriguez and the Florida

18  Class were directly and proximately caused by the deceptive, misleading and unfair

19  practices of the Defendants, as more fully described above.

20  198. Pursuant to Fla. Stat. § 501.211(1), Plaintiffs Allen and Rodriguez and the

21  Florida Class seek a declaratory judgment and the court order enjoining the above-

22  described wrongful acts and practices of Defendants and for restitution and

23  disgorgement.

24  199. Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs

25  Allen and Rodriguez and the Florida Class make claims for damages, attorneys' fees

26  and costs.

27  / / /

28

## NINTH CAUSE OF ACTION

**VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICE ACT,**

**Ga. Code Ann. §§ 10-1-391(a),** *et seq.*

**(On Behalf of Plaintiff Xenos and the Georgia Class, as Against All Defendants)**

200.  Plaintiff Xenos repeats, re-alleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

201.  This cause of action is brought pursuant to Georgia Uniform Deceptive Trade Practice Act, O.C.G.A. §§ 10-1-370 to -375 (the "OCGA").  Plaintiff Xenos and members of the Georgia Class are consumers under the OCGA because they purchased the Products for personal or household use and not for resale.  *See* OCGA section 10-1-372(b).

202.  Defendants violated and continue to violate the OCGA by engaging in the following deceptive trade practices proscribed by section 10-1-372, in transactions with Plaintiff and the Georgia Class which were intended to result in, and did result in, the sale of the Products:

Represent[ing] that the goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have … ***

Represent[ing] that [the] goods . . . are of a particular standard, quality, or grade . . . , if they are of another; ***

Advertis[ing] goods . . . with intent not to sell them as advertised. ***

Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

203. Defendants' violated the OCGA, in the course of their business, by representing through their advertisements about the Products that the Products were as advertised, when Defendants knew or should have known, that the representations and advertisements were false, potentially misleading, or potentially confusing, in

1    violation of the OCGA; or any other conduct by Defendants that is likely to create

2    confusion or misunderstanding about the Products.

3        204. Plaintiff Xenos and members of the Georgia Class, having joint or

4    common interests, were "person[s] likely to be damaged" from Defendants' deceptive

5    trade practices (OCGA 10-1-371(5), -373(a)) because their monetary losses from

6    purchasing the Products flows from actually false, potentially misleading, or

7    potentially confusing misrepresentations.  *See* Ex. 3 attached hereto.

8        205.  Plaintiff Xenos and other members of the Georgia Class reasonably relied

9    upon the Defendants' deceptive or potentially confusing trade practices as to the

10    quality and attributes of their Products because Defendants manufacture the Products

11    and are the persons most knowledgeable about the Products' qualities in comparison

12    to the Products' advertising; because Defendants sell the Products in the OTC aisle of

13    retail stores, directly to consumers, by which it was reasonable for consumers to rely

14    on the Products' package statements; and because Plaintiffs and other Georgia Class

15    members would not have purchased the Products had they known that Defendants'

16    claims about the Products were either false, potentially confusing or potentially

17    misleading.  *See also* Ex. 3.

18        206.  Defendants' advertising regarding the Products was standard and uniform

19    in that all packages of the Products bear the same representations and alleged

20    misrepresentations. *See* Exs. 1 and 3.

21        207. Defendants' deceptive business practices regarding the Products is

22    ongoing, and constitutes a continuing course of conduct in violation of the OCGA

23    because Defendants are still representing that the Products have characteristics, uses,

24    benefits, and abilities that are false, misleading, or confusing, despite Plaintiff's

25    previous notice to Defendants (*see* Ex. 4 attached hereto). *See also Village Auto Ins.*

26    *Co. v. Rush*, 286 Ga. App. 688 (2007) (classwide treatment appropriate for OCGA

27    claims).

28

208.  Pursuant to OCGA § 10-1-373(a), Plaintiff Xenos and the Georgia Class seek an order of this Court enjoining Defendants from continuing to engage in deceptive business practices with respect to Calms Forte, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak, Colic Tablets and Leg Cramps with Quinine.  Plaintiff Xenos and the Georgia Class also request costs under OCGA 10-1-373(b), and attorney's fees pursuant to OCGA 10-1-373(b), in the court's discretion, if an offer of proof of knowledge of deception is made as to Defendants at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against all Defendants as to each and every cause of action, including:

A. An order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of Class notice;

B. An order awarding Plaintiffs and the proposed Class members damages in the amount to be determined at trial;

C. An order awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

D. An order awarding restitution and disgorgement of Defendants' revenues from the Products to Plaintiffs and the proposed Class members.

E. An order compelling Defendants to engage in a corrective advertising campaign to inform the public concerning the true nature of their Products;

F. An order awarding attorneys' fees and costs to Plaintiffs;

G. An award of punitive damages;

1    H. An order providing for all other such equitable relief as may be just

2    and proper.

3                              **JURY DEMAND**

4    Plaintiffs hereby demand a trial by jury on all issues so triable.

5

6    Dated:        May 14, 2012              /s/ Ronald A. Marron

7                                           By: Ronald A. Marron
                                            **LAW OFFICES OF RONALD A.**
8                                           **MARRON, APLC**
                                            RONALD A. MARRON
9                                           MAGGIE REALIN
                                            SKYE RESENDES
10                                          3636 4th Avenue, Suite 202
                                            San Diego, California 92103
11                                          Telephone: (619) 696-9006
                                            Facsimile: (619) 564-6665
12

13

14                                          **KREINDLER & KREINDLER, LLP**
                                            GRETCHEN M. NELSON
15                                          STUART R. FRAENKEL
                                            GABRIEL S. BARENFELD
16                                          707 Wilshire Blvd., Suite 4100
                                            Los Angeles, California 90017
17                                          Telephone: (213) 622-6469
                                            Facsimile: (213) 622-6019
18                                          ***Attorneys for Plaintiffs and the Proposed***
19                                          ***Class***

20

21

22

23

24

25

26

27

28

---

### Table of Exhibits

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit 1 | Product Labels | 1-12 |
| Exhibit 2 | Hyland's Inc. Product Dilution Chart | 13-18 |
| Exhibit 3 | Hyland's Challenged Advertising Claims | 19-25 |
| Exhibit 4 | CLRA Letters for Allen, Xenos, and Hutchinson | 26-43 |