JEFFREY B. MARGULIES, BAR NO. 126002
jmargulies@fulbright.com
JOSEPH H. PARK, BAR NO. 175064
jpark@fulbright.com
STEPHANIE A. STROUP, BAR NO. 235071
sstroup@fulbright.com
MATTHEW M. GURVITZ, BAR NO. 272895
mgurvitz@fulbright.com
**FULBRIGHT & JAWORSKI L.L.P.**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494

Attorneys for Defendants
HYLAND'S, INC. and STANDARD
HOMEOPATHIC COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM ALLEN, DANIELE XENOS, RODGER HUTCHINSON, MELISSA NIGH, SHERRELL SMITH, YUANKE XU, DIANA SISTI, and NANCY RODRIGUEZ, on behalf of themselves and all others similarly situated and the general public,<br><br>          Plaintiffs,<br><br>          v.<br><br>HYLAND'S, INC., a California corporation; and STANDARD HOMEOPATHIC COMPANY,<br><br>          Defendants. | Civil Action No.  2:12-CV-1150 DMG (MANx)<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL**<br><br>Date:        July 13, 2012<br>Time:        9:30 a.m.<br>Location:   Courtroom 7 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................... 1

II.     PLAINTIFFS' OWN TESTIMONY DEMONSTRATES THAT
        MANY OF THEIR CLAIMS ARE NOT VIABLE .................................. 2

III.    PLAINTIFFS ARE REQUIRED TO INTRODUCE EVIDENCE
        SUPPORTING CLASS CERTIFICATION ............................................. 5

IV.     IT IS INAPPROPRIATE TO APPLY CALIFORNIA LAW TO THE
        NATIONAL CLASS UNDER MAZZA ................................................... 9

        A.      The Governmental Interest Test Under Mazza ............................. 9

        B.      Mazza Prevents Application Of California Law To Plaintiffs'
                Claims ........................................................................................ 11

V.      PLAINTIFFS HAVE NOT SATISFIED THE RULE 23(A)
        FACTORS ............................................................................................. 12

        A.      There Are No Questions Common To The Class ....................... 12

                1.      Efficacy of the Products Cannot Be Challenged on a
                        Classwide Basis ............................................................... 13

                2.      Reliance on Defendants' Representations Cannot Be
                        Established on a Classwide Basis .................................... 16

                3.      Plaintiffs Have Failed to State a "Common" Basis for
                        Monetary Relief, Much Less One That Could
                        Predominate ...................................................................... 17

        B.      The Class Representative's Claims Are Not Typical ................. 20

        C.      Named Plaintiffs And Proposed Class Counsel Do Not
                Adequately Represent The Interests Of The Class .................... 21

                1.      The Class Representatives Are Not Adequate .................. 21

                2.      Class Counsel Are Not Protecting The Class ................... 22

VI.     PLAINTIFFS HAVE NOT SATISFIED RULE 23(B) ......................... 24

        A.      Plaintiffs Have Not Met The Requirements Of Rule 23(b)(3) ........... 24

                1.      Common Issues Do Not Predominate ............................. 25

                        a.      Common Issues Will Not Predominate for One
                                Nationwide Class .................................................. 25

                        b.      Common Issues Do Not Predominate Because
                                There are Numerous Disparate Factual Issues ............... 26

                2.      A Class Action Is Not Superior ...................................... 27

                        a.      Individualized Factual Issues Render the Proposed
                                Class Unmanageable ............................................ 27

                        b.      The Class Cannot be Certified Because the Laws of
                                Multiple States Must be Applied .......................... 28

DOCUMENT PREPARED
ON RECYCLED PAPER

**TABLE OF CONTENTS**
(continued)

|  |  |  | Page |
|---|---|---|---|
|  | c. | Defendants Already have a Complaint System That Addresses Grievances of any Putative Class Members | 30 |
| B. | | Plaintiffs Have No Basis for Certification Under Rule 23(b)(2) | 30 |
|  | 1. | The Rule 23(b)(2) Relief Is Not Primarily Injunctive | 30 |
|  | 2. | Congress Has Committed Homeopathic Labeling Decisions to the FDA | 31 |
|  | a. | Plaintiffs' Requested Injunction Impermissibly Invade the FDA's Labeling Authority | 33 |
|  | b. | The FDA Has Primary Jurisdiction Over This Matter | 34 |
| VII. | CONCLUSION | | 35 |

DOCUMENT PREPARED
ON RECYCLED PAPER

-ii-

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aaronson v. Vital Pharms., Inc.*,
    2010 U.S. Dist. LEXIS 14160 (S.D. Cal. Feb. 17, 2010) ................................. 34

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................... 25

*Andres v. AT&T*,
    95 F.3d 1014 (11th Cir. 1996) .......................................................................... 28

*In re Aqua Dots Prods. Liab. Lit.*,
    270 F.R.D. 377 (N.D. Ill. 2010) ....................................................................... 30

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ...................................................................... 21, 22

*Bernhardt v. Pfizer, Inc.*,
    2000 U.S. Dist. LEXIS 16963 (S.D.N.Y. 2000) .............................................. 34

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................. 6

*Buckland v. Threshold Enters.*,
    155 Cal. App. 4th 798 (2007) ........................................................................... 16

*In re Cendant Corp. Prides Litig.*,
    243 F.3d 722 (3d. Cir. 2001) ............................................................................ 23

*Davis v. Powertel, Inc.*,
    776 So. 2d 971 (Fla. Ct. App. 2000) ................................................................ 29

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) ..................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................ 21

*Far East Conference v. United States*,
    342 U.S. 570 (1952) .......................................................................................... 34

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 ................................................................................................ 6, 22

- i -

DOCUMENT PREPARED
ON RECYCLED PAPER

1

## TABLE OF AUTHORITIES
(continued)

2                                                                                          **Page**

3

*Gianino v. Alacer Corp.*,
    2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) ............................ 10, 11, 26, 28

*Gordon v. Church & Dwight Co.*,
    2010 U.S. Dist. LEXIS 32777 (N.D. Cal. Apr. 2, 2010) ..................................................... 34

*Green v. BDI Pharms.*,
    803 So. 2d 68 (La. Ct. App. 2001) ..................................................................................... 35

*Guzman v. Bridgepoint Educ.*,
    2012 U.S. Dist. LEXIS 74767 (S.D. Cal. May 30, 2012) ..................................................... 5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 21

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................................. 20

*Henley v. FDA*,
    77 F.3d 616 (2d Cir. 1996) ................................................................................................. 31

*In re Hitachi Tele. Optical Block Cases*,
    2011 U.S. Dist. LEXIS 135 (S.D. Cal. Jan. 3, 2011) ......................................................... 10

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ............................................................................................... 12

*Kowalsky v. Hewlett-Packard Co.*,
    2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar. 14, 2012) ............................................... 25

*Lierboe v. State Farm Mut. Auto. Inc. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ............................................................................................. 3

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................... 1, 9, 10, 11, 12, 25, 26, 28

*Mills v. Foremost Ins.*,
    511 F.3d 1300 (11th Cir. 2008) ........................................................................................... 5

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
    107 Cal. App. 4th 1336 (2003) .......................................................................................... 32

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ....................................................................................... 11, 25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Premo Pharm. Lab., Inc. v. United States*,
    629 F.2d 795 (2d Cir. 1980) ............................................................. 32

*Public Citizen Health Research Group v. Comm'r, Food & Drug Admin.*,
    740 F.2d 21 (D.C. Cir. 1984) ........................................................... 31

*Ralston v. Mortgage Investors Group, Inc.*,
    2012 U.S. Dist. LEXIS 45545 (N.D. Cal. Mar. 30, 2012) .............. 26

*Rikos v. Procter & Gamble Co.*,
    2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012) .............. 26

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) .............................................. 18, 19, 20

*Sullivan v. Chase Investment Servs. of Boston, Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978) ....................................................... 23

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008) ............................................................. 12

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..................................................................... 16

*In re Toyota Motor Corp.*,
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ........................................... 16

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ........................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................... 5, 6, 12, 18, 19, 24, 31

*Weinberger v. Bentex Pharm., Inc.*,
    412 U.S. 645 (1973) ......................................................................... 31

*Weisman v. Darneille*,
    78 F.R.D. 669 (S.D.N.Y. 1978) ....................................................... 22

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................... 12, 25, 27, 28, 31

## RULES AND STATUTES

21 U.S.C. § 321(g)(1) ............................................................................ 33

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES
(continued)

Page

21 U.S.C. § 379r ............................................................................................ 33, 34,35

CAL. CIV. CODE § 1780 ...................................................................................... 18, 29

FEDERAL RULES OF CIVIL PROCEUDRE 23 ......... 2, 5, 6, 7, 12, 18, 19, 24, 25, 26, 27, 30, 31, 32, 35

FLA. STAT. ANN. § 95.11(3)(f) ................................................................................ 29

FLA. STAT. ANN. § 501.211 ............................................................................... 18, 29

GA. CODE. ANN. § 9-3-31 ..................................................................................... 29

GA. CODE ANN. § 10-1-372(b) ............................................................................. 29

GA. CODE ANN. § 10-1-373 ................................................................................. 29

**OTHER AUTHORITIES**

21 C.F.R. § 201.5 (2011) ..................................................................................... 33

21 C.F.R. § 201.6 (2011) ..................................................................................... 33

21 C.F.R. § 201.10 (2011) ................................................................................... 33

21 C.F.R. § 201.60 (2011) ................................................................................... 33

21 C.F.R. § 201.62 (2011) ................................................................................... 33

21 C.F.R. § 201.66 (2011) ................................................................................... 33

Food and Drug Administration Compliance Policy Guide 400.400, "Conditions Under Which Homeopathic Drugs May Be Marketed" ............................................... 33

S. Rep. No. 105-43 (1997) ................................................................................... 34

DOCUMENT PREPARED
ON RECYCLED PAPER

## I.    INTRODUCTION

Defendants Hyland's, Inc. and Standard Homeopathic Company ("Defendants") oppose Plaintiffs' Kim Allen, Daniele Xenos, Rodger Hutchinson, Melissa Nigh, Sherrell Smith, Yuanke Xu, Diana Sisti, and Nancy Rodriguez (collectively, "Plaintiffs") Motion for Class Certification and Appointment of Lead Class Counsel ("Motion").

As a threshold matter, Plaintiffs' Second Amended Complaint ("SAC") – which contains allegations significantly different from what Plaintiffs now argue in an attempt to certify a class – is rife with misstatements, such as misidentifying the ***actual products*** the individual Plaintiffs purchased.  These deficiencies have come to light through Plaintiffs' ***own testimony*** and significantly reduce the scope of the claims for which a class could potentially be certified.  Second, the Motion is not supported by any evidence, relying instead on conclusory allegations in the SAC and the brief itself, which Plaintiffs attempt to justify by claiming that their allegations must be presumed true.  That is not the law, as the Supreme Court has irrefutably stated that class allegations must be supported by actual ***evidence***.

Plaintiffs' urging that the Court apply California law to this nationwide putative class should also be rejected, as the Ninth Circuit's recent decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), demonstrates that consumer protection claims must be brought under the laws of the state where the consumer made the purchase.  Applying the laws of the 50 states to Plaintiffs' claims renders the putative class unworkable and uncertifiable.

When their unsubstantiated rhetoric is stripped away, Plaintiffs have nothing to support their certification bid.  Plaintiffs have not identified a ***single*** issue that is susceptible to common proof, which is the touchstone of a proper class.  Instead, Plaintiffs' sworn testimony shows that many of the so-called "common" issues they advance are really quite individualized, also demonstrating that their claims are not typical.  Moreover, Plaintiffs were solicited to be part of this lawsuit and have not

been participants in the process, which explains why the SAC is replete with misstatements by Plaintiffs' counsel.  This misinformation, coupled with Plaintiffs' counsel's actions in openly competing with other class counsel, raises a legitimate concern about their ability to put the class's interests first.

Plaintiffs also fail to satisfy Rule 23(b)(3).  Even if they could show common issues, those issues do not predominate.  Individualized issues regarding the 12 separate products, their different ingredients, labeling, packaging, methods of manufacturing, manner in which they are taken, and differences in effectiveness for different individuals all rise above any (as yet unclear) common issue Plaintiffs could muster.  Further, a class action is not superior because Plaintiffs propose combining the laws of several states into a multistate class – either a nationwide class, requiring consideration of the laws of 50 states or, alternatively, a series of three subclasses, involving the application of the laws of three different states.  Neither could be effectively managed on a classwide basis.  The class vehicle is also not superior because Defendants have a complaint and refund mechanism in place that would have fully compensated Plaintiffs, had they only asked.

Plaintiffs' proposed alternative, Rule 23(b)(2), will also not allow certification.  Rule 23(b)(2) requires that the primary relief sought be injunctive.  Plaintiffs' action fails in this respect on two counts.  First, the primary relief sought is *not* injunctive, but individualized monetary relief, requiring that Plaintiffs meet the exacting standards of Rule 23(b)(3).  Under Supreme Court precedent, Rule 23(b)(2) is simply not available.  Second, injunctive relief is not available because it would force the Court to tread upon ground firmly in the FDA's jurisdiction.

## II.   PLAINTIFFS' OWN TESTIMONY DEMONSTRATES THAT MANY OF THEIR CLAIMS ARE NOT VIABLE

Since Plaintiffs filed their Motion, Defendants have discovered a number of facts *negating* a majority of the claims Plaintiffs currently attempt to certify.  The SAC was filed on May 14, 2012, asserting claims as to the following 12 products:

Calms Forté (¶¶ 21-33); Teething Tablets (¶¶ 34-41); Migraine Headache Relief (¶¶ 42-48); ClearAc (¶¶ 49-55); Poison Ivy/Oak Tablets (¶¶ 56-62); Colic Tablets (¶¶ 63-69); Leg Cramps with Quinine PM (¶¶ 70-76); Leg Cramps (¶¶ 77-84); DEFEND Cold & Cough Night (¶¶ 86-93); DEFEND Cold & Cough (¶¶ 94-100); Cough (¶¶ 101-107); and Seasonal Allergy Relief (¶¶ 108-114).   Based on Plaintiffs' testimony, at least five of these products were never purchased, or were purchased outside any applicable statute of limitations: 1) **ClearAc**: Plaintiff Xenos (only plaintiff alleged to have purchased the product), purchased ClearAc in 2005, outside of the 4-year statute of limitations period (6/8/12 Deposition of Daniele Xenos ("Xenos Depo."), at Appx 3000:10-25, 3009:17-18);[1] 2) **Poison Ivy/Oak Tablets**: Plaintiff Xenos (only plaintiff alleged to have purchased the product), purchased it in 2005, outside of the 4-year limitations period (Xenos Depo., at Appx 3000:10-25, 3009:11-13); 3) **Leg Cramps with Quinine PM**: Plaintiff Xenos (only plaintiff alleged to have purchased the product) admitted she never purchased this product (Xenos Depo., at Appx 3032:16-23); 4) **Colic Tablets:** Plaintiff Xenos (only plaintiff alleged to have purchased the product) admitted she never purchased this product (Xenos Depo., at Appx 3029:3-25); 5) **DEFEND Cold & Cough**: Plaintiff Xu (only plaintiff alleged to have purchased the product) admitted he never purchased this product (6/9/12 Deposition of Yuanke Xu ("Xu Depo."), at Appx 3095:2-21).   As these products were never purchased by any of the named Plaintiffs, Plaintiffs lack standing to include them in this lawsuit.  *See Lierboe v. State Farm Mut. Auto. Inc. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("If the individual plaintiff lacks standing, the court need never reach the class action issue.") (internal quotations omitted); *see also* 5/12/12 Order re Enzo Forcellati's

---

[1]   In support of this Opposition, Defendants are submitting evidence in the form of 11 declarations, each of which is an exhibit to the concurrently filed Appendix of Declarations and Evidence ("Appendix").   Deposition excerpts are attached as exhibits to the Declaration of Matthew Gurvitz (Appendix, Ex. 10).   The citations to deposition excerpts are to the pages and lines of the Appendix, e.g., Appx 3000:10-25.

Motion for Consolidation and Defendants' Motion to Dismiss, Dkt. 59, at 6 ("Order") ("Given the lack of redressable injury, Plaintiffs lack standing to assert claims arising out of any alleged false or misleading statements that Defendants made about their homeopathic products that Plaintiffs have not purchased.").

Plaintiffs' depositions further narrowed their claims because they confirmed that not all proposed class representatives purchased all of Defendants' products. As explained below at Part IV, Plaintiffs cannot sustain a nationwide class through the application of California law, and so their only hope is to certify their alternative proposal of four subclasses under California, Florida, Georgia, and New York law.  Thus, for each subclass, the products complained of must match the purchases made by the sub-class representative.   Remarkably, Plaintiff Hutchinson—the only New York plaintiff—admitted that he did not purchase ***any*** of the products at issue.  (6/5/12 Deposition of Roger Hutchinson ("Hutchinson Depo."), at Appx 3042:3-15; 3048:15-25).   Therefore, he must be dismissed for lack of standing, and the New York sub-class concomitantly has no standing.[2]

As to the other three states, the proposed class representatives for each state are limited to pursuing the particular products they purchased: 1) **Calms Forté**: only Florida plaintiff (Allen) has purchased within applicable statute of limitations (SAC, ¶ 21; Xenos Depo., at Appx 3017:15-3019:2 (last purchase was sometime in 2007 to 2008)); 2) **Teething Tablets**: only California plaintiff (Nigh) alleged to have purchased within applicable statute of limitations (SAC, ¶ 35; Xenos Depo., at Appx 2993:21-2994:9 (last purchase was sometime in 2007 to 2008)); 3) **Migraine Headache Relief**: only Georgia plaintiff (Xenos) alleged to have purchased (SAC, ¶ 42); 4) **Leg Cramps**: only California plaintiff (Smith) alleged to have purchased (SAC, ¶ 77); 5) **DEFEND Cold & Cough Night**: only California (Sisti) and

---

[2]By letter dated June 12, 2012, Plaintiffs' counsel recognized this fact and withdrew Plaintiff Hutchinson's claims and any attempt to certify a New York subclass. Declaration of Matthew M. Gurvitz ("Gurvitz Decl."), Exhibit K.  Accordingly, we will not discuss Hutchinson or the New York claims further.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Florida (Rodriguez) plaintiffs alleged to have purchased (SAC, ¶¶ 87-88;
2   Hutchinson Depo., at Appx 3042:3-15; 3048:15-25); 6) **Cough**: only California
3   plaintiff (Xu) alleged to have purchased (SAC, ¶ 101); 7) **Seasonal Allergy Relief**:
4   only California plaintiff (Xu) alleged to have purchased (SAC, ¶ 108).

5       Because not all Plaintiffs purchased all products in all states, they lack
6   standing to bring sub-classes under California, Florida, and Georgia law for all
7   products. *See Guzman v. Bridgepoint Educ.*, 2012 U.S. Dist. LEXIS 74767, at *10-
8   11 (S.D. Cal. May 30, 2012) (standing requires an injury-in-fact as a result of the
9   defendant's violation of the UCL, FAL, or CLRA); *Mills v. Foremost Ins.*, 511 F.3d
10   1300, 1307 (11th Cir. 2008) ("[E]ach claim must be analyzed separately, and a
11   claim cannot be asserted on behalf of a class unless at least one named plaintiff has
12   suffered the injury that gives rise to that claim.").   Here again, Plaintiffs lack
13   standing as to the products they did not purchase because "they have suffered no
14   monetary injury with respect to homeopathic products that they did not buy."
15   Order at 7.  At best, Plaintiffs could only certify a sub-class in each state as to the
16   specific products purchased in that state.

17       Plaintiffs' depositions thus prove: 1) 4 out of the 12 products at issue in this
18   case were never purchased or are disqualified by limitations; and 2) Plaintiffs lack
19   standing to certify sub-classes of all 12 products in California, Georgia, or Florida
20   because not all 12 products were purchased in those states.  These developments
21   severely limit the scope of Plaintiffs' proposed classes.[3]

22   ## III.   PLAINTIFFS ARE REQUIRED TO INTRODUCE EVIDENCE
23   SUPPORTING CLASS CERTIFICATION

24       A party seeking to certify a class must meet all four requirements of Rule
25   23(a) and at least one of the requirements of Rule 23(b).  *Wal-Mart Stores, Inc. v.*
26   *Dukes*, 131 S. Ct. 2541, 2548 (2011).As the Supreme Court recently reaffirmed,

27

28   [3]For ease of reference, the foregoing effects of discovery on Plaintiffs' claims are
summarized in the table attached as Exhibit L to the Gurvitz Decl.

DOCUMENT PREPARED
ON RECYCLED PAPER

52088788.8

- 5 -

"actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Id.* at 2551 (internal quotations and citation omitted).  "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Id.* at 2548.

Contrary to Plaintiffs' assertion, the Court is not "bound to take the substantive allegations of the complaint as true."  Motion at 8.[4] As the Supreme Court explained, a plaintiff must present evidence – not allegations – establishing each fact necessary to meet the requirements of Rule 23:

> A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to **prove** that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.  We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied . . . ."
>
> *          *          *
>
> Frequently th[e district court's] "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's  cause of action.'"

*Dukes*, 131 S. Ct. at 2551-52 (italics in original; other emphasis added) (*citing Gen.*

---

[4] The authority cited by Plaintiffs for this proposition, *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975), predates *Dukes*.  Moreover, while stating that a full evidentiary showing is not required for class certification, the *Blackie* court confirmed that a judge ruling on class certification must have "***sufficient material*** before him to determine the nature of the allegations, and rule on compliance with the Rule's requirements…."  *Id.* at 901 (emphasis added).  Plaintiffs' Motion does not even meet this lower standard.

1   *Tel. Co. of Sw. v. Falcon,* 457 U.S. 147. 160-61 (1982)).

2      Despite this clear admonition, Plaintiffs' Motion is devoid of ***any*** evidence or

3 factual support satisfying Rule 23 requirements.  Conspicuously absent from the

4 Motion are any declarations from the Plaintiffs themselves, presumably because

5 their deposition testimony actually refutes the class bid in this case.

6      Remarkably, Plaintiffs also do not submit any expert declarations supporting

7 their erroneous allegations that "at the current dilution levels, very little, if any, of

8 the advertised 'active ingredients' are present in the Products." Motion at 2.

9 Plaintiffs state only that they "will also present evidence on the lack of efficacy of

10 the products," (Motion at 19), but never indicate when or how.  To be entitled to

11 certification, Plaintiffs must affirmatively demonstrate that efficacy can be proven

12 on a classwide basis.  Without knowing what evidence they may rely upon, it is

13 impossible to conclude that Plaintiffs' efficacy proof will operate for one and all

14 class members in precisely the same way.  Promises to "connect the dots" at some

15 later point are entirely ineffective to assist the Court's rigorous class certification

16 analysis.   Further, as demonstrated below, the evidence filed in support of

17 Defendants' opposition amply demonstrates the impropriety of class certification.

18      Plaintiffs' only attempt to introduce evidence is the declaration of their

19 counsel, Skye Resendes.  As set forth in the objections filed concurrently, Ms.

20 Resendes's declaration contains inadmissible "expert" opinion and hearsay that

21 does not support findings necessary to satisfy Rule 23.  Even if credited, Ms.

22 Resendes provides only her summary of the class theories of recovery and a

23 "dilution" chart for each product that is neither properly authenticated nor

24 supported.  Neither of these materials counsels in favor of class certification.  If

25 anything, the charts demonstrate how varied the putative claims based on the 12

26 products in this lawsuit are and how many individual issues must be decided before

27 any relief could be afforded class members.

28      Additionally, although the main thrust of the SAC is that the active

ingredients in the products are so diluted as to effectively be non-existent and, therefore, ineffective in relieving the symptoms advertised (*see, e.g.,* SAC at ¶¶ 16, 30-32, 38-39, 45-46, 52-53, 59-60, 66-67, 73-74, 81-82, 91, 98, 105, 112), the issues briefed Plaintiffs' Motion are significantly different.   Shifting focus, Plaintiffs instead argue, for the first time, that Defendants have made false and misleading statements in the following three ways: 1) Defendants do not explain to consumers that the dilution levels mean there is "very little, if any of the advertised 'active ingredients'" in the products; 2) Defendants sell the products next to other over-the-counter ("OTC") products that carry FDA-approved monographs; and 3) no regulatory body evaluates the efficacy statements made in the product labeling.  *See* Motion at 1-2.  In so arguing, Plaintiffs are transparently attempting to side-step their lack of proof in the face of significant, credible evidence demonstrating that homeopathic remedies are in fact effective in relieving a variety of symptoms.  Declaration of Iris Bell, M.D. ("Bell Decl."), at ¶¶ 7-9; Declaration of Peter Fisher ("Fisher Decl."), at ¶¶ 7-24.

Their new argument that the labeling is misleading begs a number of questions: If the Products are actually effective in relieving the symptoms they advertise, can a consumer be misled by dilution levels?  And can consumers be deluded by Hyland's if its products are placed by the retailer next to FDA-approved products?  Finally, if the statements on the packaging are true, does it matter that Defendants made these statements entirely within their discretion?[5]  The short answer to these questions is "No."  More to the point, none of the Plaintiffs testified that these aspects of Hyland's products misled them.  Instead, they complained that the products did not work for them.[6]  Because they have no proof

---

[5] As discussed below, the FDA does in fact regulate the content and appearance of labeling for homeopathic remedies. *See* Part VI(B), *infra*.

[6] *See* 6/7/12 Deposition of Kim Allen ("Allen Depo."), at Appx 2974:25-2975:4; 6/7/12 Deposition of Sherrell Smith ("Smith Depo."), at Appx 3075:8-24, 3078:18-3079:8; 6/6/12 Deposition of Nancy Rodriguez ("Rodriguez Depo."), at Appx 3141:14-3142:3; Xu Depo., at Appx 3101:11-18, 3106:2-4; 6/9/12 Deposition of

1   to support either theory, they cannot demonstrate that these claims can be proven on

2   a classwide basis, which is fatal to their attempt to certify a class.

3   **IV.   IT IS INAPPROPRIATE TO APPLY CALIFORNIA LAW TO THE**

4   **NATIONAL CLASS UNDER *MAZZA***

5          Plaintiffs' argument that California law should be applied uniformly to all

6   claims in a nationwide class action essentially ignores recent Ninth Circuit

7   precedent.  Although Plaintiffs make a cursory attempt to distinguish *Mazza*, 666

8   F.3d 581, that decision demonstrates that application of California law uniformly to

9   national class members is inappropriate in this case.  As the *Mazza* court held, a

10  class member's consumer protection claims must be brought under the laws of the

11  state where the consumer received the alleged misrepresentations or omissions that

12  resulted in the transaction at issue.  Here, certification of a single nationwide class

13  based on the application of California law is inappropriate because there are marked

14  differences between the laws of the 50 states, other states have an interest in

15  applying their own laws, and the appropriate law is the law of the state of purchase.

16  Notably, Plaintiffs cannot cite a single authority to support their contrary argument.

17         **A.   The Governmental Interest Test Under *Mazza***

18         In *Mazza*, the Ninth Circuit undertook the three-step governmental interest

19  test required for a choice of law analysis: (1) "whether the relevant law of each of

20  the potentially affected jurisdictions with regard to the particular issue in question is

21  the same or different"; (2) "each jurisdiction's interest in the application of its own

22  law under the circumstances of the particular case to determine whether a true

23  conflict exists"; and (3) "the nature and strength of the interest of each jurisdiction

24  in the application of its own law to determine which state's interest would be more

25  impaired if its policy were subordinated to the policy of the other state."  *Mazza*,

26  666 F.3d at 590 (citation omitted).

27

28  Diana Sisti ("Sisti Depo."), at Appx 3120:14-3121:10; Xenos Depo., at Appx
    3016:4-10; 6/11/12 Deposition of Melissa Nigh ("Nigh Depo."), at Appx 3056:1-8.

1   The court first determined that there is an actual conflict in the consumer
2   protection laws of the various states in the United States, including on issues
3   relating to: (1) scienter requirements; (2) necessity to demonstrate reliance; and
4   (3) available remedies. *Id.* at 591. This conclusion is consistent with findings of
5   many other courts recognizing material variations in consumer protection statutes in
6   the various states. *See, e.g., In re Hitachi Tele. Optical Block Cases*, 2011 U.S.
7   Dist. LEXIS 135, at *6 (S.D. Cal. Jan. 3, 2011); *see also Gianino v. Alacer Corp.*,
8   2012 U.S. Dist. LEXIS 32261, at *6-9 (C.D. Cal. Feb. 27, 2012) (identifying six
9   material differences in requirements of consumer protection laws, some of which
10  the *Mazza* court had also identified: (1) scienter; (2) reliance; (3) pre-filing notice;
11  (4) statutes of limitations; (5) availability of consumers to bring private causes of
12  action or class actions under consumer protection laws; and (6) available remedies,
13  including punitive damages).[7] *Mazza* and *Gianino* both recognized that these
14  differences are ***not*** trivial. *Mazza*, 666 F.3d at 591; *Gianino*, 2012 U.S. Dist.
15  LEXIS 32261, at *11.

16      The Ninth Circuit also addressed the second prong of the test, concluding
17  that the state in which a consumer received a misrepresentation and purchased a
18  product has a strong interest in setting "the optimal balance between protecting
19  consumers and attracting foreign businesses...." *Id.* at 592; *see also Gianino*, 2012
20  U.S. Dist. LEXIS 32261, at *13.

21      Finally, the court determined that the interests of the consumer's home state
22  are most impaired by the application of one state's law to all jurisdictions at issue.
23  *Mazza*, 666 F.3d at 593-94. This conclusion was based, in large part, on the
24  recognition that "California considers the 'place of wrong' to be the state where the
25  last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593.

26
27  [7] For the Court's convenience and reference, the nationwide analysis of the
    variations in the states' consumer protection laws on which Judge Carnac's opinion
28  is based has been submitted as Exhibit A to Defendants' Request for Judicial
    Notice ("RJN").

1   And, "California considers the geographic location of the omission or where the

2   misrepresentations were communicated to the consumer as the place of the wrong."

3   *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *15; *Mazza*, 666 F.3d at 593.

4        Based on these conclusions, the Ninth Circuit ultimately held that "each class

5   member's consumer protection claim should be governed by the consumer

6   protection laws of the jurisdiction in which the transaction took place."  *Mazza*, 666

7   F.3d at 594.  Thus, under *Mazza*, where an out-of-state plaintiff claims to have been

8   deceived or harmed as a result of misrepresentations or omissions received outside

9   of California, that plaintiff's consumer protection claims must be brought under that

10  plaintiff's own state laws.   Plaintiffs have provided no compelling reason for

11  concluding otherwise in this case.

12  **B.    *Mazza* Prevents Application Of California Law To Plaintiffs'**

13  **Claims**

14       Named Plaintiffs reside in Florida, Georgia, and California (SAC, ¶¶ 5-12),

15  yet ask that the Court certify a class of consumers in all fifty states.  The consumer

16  laws of the 50 states are markedly different (and Plaintiffs have made no effort to

17  show otherwise[8]), and Plaintiffs must, therefore, justify why California law should

18  be applied to these class claims.  They have failed to do so under *Mazza*, which is

19  factually indistinguishable from the present case. Application of the laws of the 50

20  states prevents any finding that common issues predominate.  *See, e.g., Pilgrim v.*

21  *Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (common questions

22  cannot predominate when the laws of multiple states apply to one class because

23  "each class member's claim would be governed by the law of the State in which he

24  made the challenged purchase, and the differences between the consumer-

25

26  [8]Plaintiffs spend a significant amount of time arguing that the laws of California,
    Florida, and Georgia have few material differences.  *See* Motion pp. 5-7.  It is
27  telling that they never attempt to discuss, much less substantiate, any purported
    similarities of the laws of these three states (which Defendants contest, *infra*) and
28  the rest of the country.

protection laws of the many affected States would cast a long shadow over any common issues of fact plaintiffs might establish.").[9]

## V.   PLAINTIFFS HAVE NOT SATISFIED THE RULE 23(A) FACTORS

Under Federal Rule of Civil Procedure 23, Plaintiffs must affirmatively demonstrate that the class meets the requirements of Federal Rule of Civil Procedure 23, which is subject to a rigorous analysis by the Court. *Dukes*, 131 S. Ct. at 2551; *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001). Plaintiffs must prove each of the Rule 23 factors by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

### A.   There Are No Questions Common To The Class

Under Rule 23(a), Plaintiffs must demonstrate that there are questions of fact and law common to the class. *Mazza*, 666 F.3d at 595-596. Common questions mean common answers, such that the determination of a question's "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Here, there are no questions capable of one answer for the entire class, nor have Plaintiffs introduced any evidence establishing such commonality. Plaintiffs propose one class of purchasers that purchased 12 different products. That means 12 different sets of ingredients, 12 different labels, and 12 different sets of symptoms that the products are designed to relieve, not to mention an analysis of the symptoms for those who purchased the products. The effectiveness of each of these products (which bears directly on whether Defendants' representations

---

[9]As discussed below at Part VI(A), Plaintiffs' alternative proposal that three separate sub-classes under Florida, Georgia, and California law be certified also fails, due to variances in these state's laws that render the action unmanageable and therefore preclude a finding of superiority.

regarding their efficacy are false or misleading) cannot be answered by one common answer.  Moreover, there are numerous variations in the experiences of the class members as to any particular product.   As Plaintiffs' own testimony demonstrates, each class member (or their dependents) took different amounts of the products for different lengths of time, at different points in the progression of the illness, and had different results.[10] Additionally, there is not one common injury, nor can a single injury be "presumed" as Plaintiffs erroneously allege.  *See* Part V(A)(3), below.    Ultimately, the reliance of the class on Defendants' representations cannot be answered in "one stroke" because, as the record evidence establishes, consumers purchase the products for many different reasons, the majority of which have nothing to do with product packaging and advertising, or Plaintiffs' three after-the-fact arguments.

### 1. Efficacy of the Products Cannot Be Challenged on a Classwide Basis

Whether or not the Products are effective is not subject to common proof.  Although Plaintiffs' SAC asserts that homeopathic remedies are ineffective because "at the stupendously high dilutions used to prepare the product[s], they can have no effect of any kind in humans…" (SAC, ¶ 30), Plaintiffs have not offered any evidence to support this claim.  Plaintiffs have simply submitted a brief, supported by a lawyer's declaration with a chart of so-called "dilutions," which does not show that the active ingredients are so diluted as to be useless.[11]

In sharp contrast to Plaintiffs' dearth of proof, Defendants have introduced significant evidence demonstrating the efficacy of homeopathic remedies.   As discussed in the declarations of Drs. Fisher and Bell, the fact that homeopathic

---

[10] *See* Allen Depo., at Appx 2974:25-2975:12; Xenos Depo., at Appx 3015:17-3017:8; Nigh Depo., at Appx 3055:5-25; Smith Depo., at Appx 3073:3-3075:21; Xu Depo., at Appx 3104:25-3106:25; Sisti Depo., at Appx 3121:4-5; Rodriguez Depo., at Appx 3139:15-3140:14, 3153:24-3154:2.

[11] *See* Objections to Decl. of Skye Resendes, filed concurrently and fully incorporated by reference.

remedies are diluted does not render them ineffective.  Bell Decl., at ¶¶ 8-9; Fisher Decl., at ¶¶ 8-10.  Modern homeopathy is based on a non-linear dose response, explained by a theory known as hormesis, whereby a substance can produce an effect on an organism at both high doses and extremely low doses, with no measured response in between.  Bell Decl., at ¶ 8; Fisher Decl., at ¶ 7.  Though advocates for conventional medicine may dispute the efficacy of homeopathic treatments generally, a variety of clinical trials and studies of homeopathic remedies have shown that homeopathic medicines can produce real and measurable effects.  Bell Decl., at ¶¶ 8-9; Fisher Decl., at ¶¶ 11-24.  Moreover, Plaintiffs' claim that these remedies are so diluted that not "even a single molecule derived from the original 'extract' of the 'active ingredients' could be present in the solution" is pure hyperbole; each of the 12 products at issue in this litigation has dilutions ranging from 1X to 12X, all of which result in measurable amounts of ingredient in each product.   Bell Decl., at ¶¶ 10-20.  In fact, two of the Plaintiffs admitted to experiencing relief from taking other homeopathic remedies, including the product Oscillococcinum, a homeopathic remedy that is significantly more diluted than any of the products at issue in this litigation.  *See* Rodriguez Depo., at Appx 3145:17-3146:20; Xenos Depo., at Appx 3022:24-3023:24; Bell Decl., at ¶ 21.

Without any evidence to establish that homeopathic remedies are ineffective due to dilution, Plaintiffs have not established that the question of efficacy of the products is common to the entire class.  Responding to this question would naturally devolve into an assessment of the effectiveness of each of the products for the individuals taking it.  When the ingredients in the 12 individual products are examined, it also becomes clear that Plaintiffs do not have any evidence that they are ineffective, nor would any such evidence be common as to all products.  As indicated in the Declarations of Drs. Bell, Johnson, Rowe, Punzo and Merizalde, each of the active ingredients in these products is known to treat the symptoms they are advertised as relieving.  Bell Decl., at ¶¶ 10-20; Declaration of Christopher

Johnson, N.D. ("Johnson Decl."), at ¶ 8; Declaration of Todd Rowe, M.D. ("Rowe Decl."), at ¶ 9; Declaration of Amalia Punzo, M.D. ("Punzo Decl."), at ¶ 11; Declaration of Bernardo Merizalde, M.D. ("Merizalde Decl."), at ¶ 15.  Defendants confirmed as much when they assembled the Proof of Claims (a collection of the HPUS excerpts and Materia Medica for each product which support the indications for usage on Defendants' packaging) for the formulations for all products. Declaration of Thao Minh Le ("Le Decl."), Exs. M-X.  In order to dispel the efficacy of each product, Plaintiffs would be required to challenge the literature and studies for each of the active ingredients; this is not a common question.  For 12 separate products, an analysis would need to be made regarding the symptoms of individual plaintiffs (i.e., were they taking the correct remedy for the correct symptoms), how long the symptoms persisted, whether the product was taken correctly, any underlying ailments that plaintiff may have had, and other health conditions, to name but a few of the considerations.

Contrary to Plaintiffs' allegations, these products *are* effective for many people.  *See* Johnson Decl., at ¶ 6; Rowe Decl., at ¶ 7; Merizalde Decl., at ¶ 15; Punzo Decl., at ¶ 11; Declaration of David Cristofaro ("Cristofaro Decl."), at ¶ 15. As individuals throughout the medical community recognize, no medicine (conventional or homeopathic) is effective 100% of the time.  Johnson Decl., at ¶ 7; Rowe Decl., at ¶ 8; Merizalde Decl., at ¶ 16; Punzo Decl., at ¶ 12.  The fact that these products may not have worked at times for Plaintiffs does not mean they do not work for everyone.  Defendants have a comprehensive complaint system in place for each of these products, yet there are very few complaints from consumers about the efficacy of these products.  Declaration of Daniel M. Krombach ("Krombach Decl."), at ¶¶ 2-6.  The testimonials provided on consumer websites show that many customers are satisfied with these products.  Gurvitz Decl., at Exs. O-X.  Moreover, at least one of the Plaintiffs has admitted that homeopathic remedies with *the same* active ingredients as products at issue in this case (with

DOCUMENT PREPARED
ON RECYCLED PAPER

1   similar dilution levels) worked to alleviate her symptoms.  *See* Rodriguez Depo., at
2   Appx 3134:20-3136:10 (identifying other homeopathic product Rodriguez has
3   used); Gurvitz Decl., at ¶¶ 26-33.  Still other plaintiffs admit experiencing relief
4   from homeopathic products and would purchase homeopathic products in the
5   future.  *See* Rodriguez Depo., at Appx 3145:17-3146:20; Xenos Depo., at Appx
6   2997:16-24, 3022:24-3023:24; Sisti Depo., at Appx 3124:16-23.  Such testimony
7   defeats any allegation by Plaintiffs that the efficacy of homeopathic products can be
8   determined in "one stroke."

9          **2.     Reliance on Defendants' Representations Cannot Be**
10                **Established on a Classwide Basis**

11         As discussed above, Plaintiffs improperly urge the Court to apply California
12   consumer laws to a nationwide class.  Assuming, *arguendo*, that Plaintiffs' request
13   is granted, Plaintiffs must establish actual reliance on any alleged
14   misrepresentations by Defendants regarding the uses for the products.[12] This is also
15   not susceptible to common proof.

16         Plaintiffs boldly assert that "there is essentially a single misrepresentation
17   []that the product is effective for a health problem," creating a common question of
18   fact because "each Class member's claims depend on the same representations
19   made by the Defendants on the Products' packaging…."  Motion at 11.  However, a
20   majority of consumers do not typically rely on the packaging of Hyland's products
21   when making their purchasing decisions.

22         In March 2012, Defendants commissioned the "Hyland's Advertising
23   Awareness Study," to understand the primary method by which consumers decide
24   to purchase Hyland's homeopathic products.  Cristofaro Decl., at ¶ 5.  The survey,

25

26   _____
   [12]*See Buckland v. Threshold Enters.*, 155 Cal. App. 4th 798, 809 (2007) (actual
27   reliance required for CLRA claim); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326
   (2009) (actual reliance required for UCL fraud prong.); *In re Toyota Motor Corp.*,
28   790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011) (UCL and FAL claims based on
   fraudulent conduct require showing of actual reliance).

which was conducted pursuant to generally-accepted methodological standards, found that packaging and advertising (which contain the alleged misrepresentations Plaintiffs assert **all** class members relied upon) are two of the methods consumers are **least likely** to rely upon when making a purchasing decision.  *Id.* at ¶ 12; *see also* Declaration of David Stewart, Ph.D. ("Stewart Decl."), at ¶ 10.  Roughly 73% of consumer purchasing decisions were made without reference to any advertising at all, but based on past positive experiences and referrals from other individuals.  Cristofaro Decl., at ¶ 13.

Moreover, Plaintiffs' own testimony establishes the variety of ways in which consumers decide to purchase homeopathic products.  For example, Mr. Hutchinson testified that his decision to purchase Hyland's Cold & Cough for Kids was because the store was out of Tylenol and Motrin and there was nothing else left.  Hutchinson Depo., at Appx 3038:25-3039:8.

Contrary to their own allegations that the positioning of the product with other allopathic "OTC Products" misled them in their purchasing decisions (Motion at 14) – which are absent from the SAC– several Plaintiffs testified they had no idea what products were next to the products they purchased, nor could they remember where in the aisle the products were located.  *See, e.g.,* Xu Depo., at Appx 3098:15-3099:10.  Ms. Nigh testified that her most recent purchase of the product was not based on the packaging specifically, but because of her desire for a natural product and her curiosity to see if it would work for her son.  *See* Nigh Depo., at Appx 3059:2-22.  Ms. Xenos indicated that she purchased Hyland's Teething Tablets because it got the "number one recommendation" on mothering websites she visited.  Xenos Depo., at Appx 2987:13-2988:3, 2990:1-21.  The fact that there is so much variation in the purchase decisions of the named Plaintiffs demonstrates that there can be no one common basis for proving classwide reliance.

3.    **Plaintiffs Have Failed to State a "Common" Basis for Monetary Relief, Much Less One That Could Predominate**

In order for the Court to find commonality under Rule 23(a), Plaintiffs must demonstrate that class members have suffered the same injury.  *See Dukes*, 131 S. Ct. at 2551.  Plaintiffs attempt to presume an identical injury based on their interpretation of California law, (Motion at 11-12), and never even attempt to define that supposedly collective injury for each class member.  Remarkably, they do not articulate a single injury.[13] They also do not address monetary relief— presumably because they cannot do so without confirming that the issue is divisive to the class.

Plaintiffs quote a truncated version of footnote 13 of *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011), to suggest that California has created a conclusive presumption of injury. *See* Memo at 12. The cited footnote reference related to standing, not commonality or predominance, and the Ninth Circuit did not apply any presumption of injury in its subsequent discussion of the propriety of class certification.  *Stearns*, 655 F. 3d at 1021 n.13.  Moreover, a number of the statutes on which Plaintiffs rely require a showing of actual injury by the consumer—presumptions cannot fill in the gap. *See, e.g.,* CAL. CIV. CODE § 1780;[14] FLA. STAT. ANN. § 501.211.[15]

---

[13] In their commonality argument, Plaintiffs make a veiled reference to "a single injury" being inherent in any false or deceptive advertising claim, which they define as "loss of money for a product that did not work as represented."  Motion at 11 (*citing Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011)).  Even if a uniform injury could be defined by the lost purchase price, there would still be a host of individualized questions, as explained above.  The *Delarosa* court never addressed the issues of class-wide injury or damages in its predominance analysis, finding them to be "incidental" to the injunctive relief sought and so properly certified under Rule 23(b)(2).  *Delarosa*, 275 F.R.D. at 592.

[14] This provision requires plaintiffs to demonstrate "not only that a defendant's conduct was deceptive but that the deception caused them harm."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009).

[15] Florida's consumer protection statute, FLA. STAT. ANN. § 501.211, permits a private right of action for "a person who has suffered a loss as a result of a violation…."

Actual harm will necessarily vary by individual class member.  As noted above, the "false and misleading" statements Plaintiffs attribute to Defendants fall into three categories: (i) the failure to adequately explain dilutions; (ii) the placement of homeopathic products in the over-the-counter aisles of the retail stores; and (iii) the lack of disclaimers regarding federal approval.  Motion at 1-2.  Assuming that these representations were actionably deceptive, what injury would the class members have suffered?  The answer to that purportedly common question will likely be different for each class member, defeating commonality.  *See Dukes*, 131 S. Ct. at 2551.  For example, the survey discussed above demonstrates that 94% of the respondents were satisfied with Defendants' products (Cristofaro Decl., at ¶ 15), which raises a question as to whether many class members suffered any injury *even if* Plaintiffs can show that the labeling was misleading, as they now claim.  *See, e.g.*, *Stearns*, 655 F.3d at 1024 (upholding denial of certification where overbroad class likely included persons who were not misled into joining fee-based rewards program).  If class members felt the product worked for them, they probably did not care what the levels of dilution were, where the product was placed in the retail store, or whether the FDA approved the product.  At the very least, injury cannot be determined without reference to the individual circumstances of each class member.

Moreover, the fact that Plaintiffs seek "restitution" or other equitable forms of recovery under some theories does not relieve them of Rule 23(b)(3)'s strict requirements of predominance and superiority for any monetary recovery.  Whether such claims are characterized as "equitable" or damages, they must satisfy the predominance and superiority requirements of Rule 23(b)(3).  *Dukes*, 131 S. Ct. 2558 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3).").  To recover any monetary relief, Plaintiffs will have to establish what they paid for the product(s) purchased, which will require consideration of any coupons, rebates, sales, refunds, or credits.  It is not a mere formula.  Although

California courts are willing to tolerate "[s]ome variations in damages," certification is inappropriate when a large percentage of the class members may not be able to prove "that the claimed actual damages were 'as a result of' the statutory violation." *Stearns*, 655 F.3d at 1026.

### B.    The Class Representative's Claims Are Not Typical

Plaintiffs' individual experiences with Defendants' products are not typical of the putative class.  In fact, considering all the individualized factors inherent in the class claims, there may be no "typical" class member.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct.'"   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

An examination of the scenarios under which each of the Plaintiffs purchased and used the products reveal that they are not typical of the putative class members:

- Ms. Xenos had chronic migraines that did not respond to other medications, indicating that she was not the typical user of Migraine Headache Relief.  Xenos Depo., at Appx 3012:7-25.  She also testified that the majority of the products she purchased were bought through a cooperative, and she did not view the packaging in the store.  *Id.* at Appx 3001:7-18, 3004:18-22.  She also described other atypical and potentially confounding medical conditions she had, such as scoliosis and extreme nervousness.  *Id.* at Appx 3007:24-3008:4, 3018:4-5.

- Ms. Allen testified that prescription medication was needed to ease her daughter's sleeplessness.  Allen Depo., at Appx 2977:15-2978:6.  This is not typical of the average consumer buying an over-the-counter sleep aid, such as Calms Forté.  Ms. Allen has also filed a number of lawsuits regarding homeopathic products, activities in which a typical member of the class would not be engaged.  Gurvitz Decl., Exs I & J.

- Ms. Sisti testified that she only took Defend Cold & Cough Night once, not

1    following the indications on the box.  Sisti Depo., at Appx 3121:4-5.

2    •    Mr. Xu testified that his allergy symptoms persisted for more than a month and a
3        half, indicating that his condition was serious and potentially required the
4        consultation of a medical professional rather than over-the-counter products.
5        *See* Xu Depo., at Appx 3106:22-25.  He also testified that he did not follow the
6        indications for use on the box.  *Id.* at Appx 3109:8-3110:16.

7    •    Ms. Smith testified that she continues to have leg cramps, and was prescribed a
8        prescription muscle relaxant by a doctor, indicating that her condition also
9        warranted more significant medical intervention than an over-the-counter
10       remedy.  Smith Depo., at Appx 3069:20-3070:15.

11   •    Ms. Rodriguez testified that she purchased numerous homeopathic remedies
12       online, in bulk, and a store-placed advertisement caught her eye in purchasing
13       DEFEND Cold & Cough Night.  Rodriguez Depo., at Appx 3149:19-3150:8,
14       3156:5-16.

15   •    Ms. Nigh testified that she purchased Teething Tablets because there were no
16       other teething remedies available at the store, not because of advertising.  Nigh
17       Depo., at Appx 3053:3-11.

18       **C.    Named Plaintiffs And Proposed Class Counsel Do Not Adequately**
19              **Represent The Interests Of The Class**

20       Neither Plaintiffs, nor proposed class counsel, will adequately protect the
21   interests of the class, which is fatal to their certification attempt.

22              **1.    The Class Representatives Are Not Adequate**

23       A class representative is inadequate if the named plaintiff is unable to
24   vigorously prosecute the action on behalf of the entire class.  *Ellis v. Costco*
25   *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler*
26   *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).[16]  A class representative should be

27   ───────────────────────
28   [16]Contrary to Plaintiffs' assertion, Plaintiffs bear the burden of establishing that
     they are adequate representatives of the class. *Berger*, 257 F.3d at 481.  Applying a
     presumption of adequacy "effectively abdicates – to a self-interested party – the

familiar with the litigation issues and logistics and not a mere strawman for his counsel.  *See, e.g. Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001); *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) ("The class is entitled to a representative who is more than 'a key to the courthouse door dispensable once entry has been effected.'").

Each Plaintiff in this action was solicited by counsel via a website advertising an ongoing investigation into homeopathic products, and in some instances, attracting consumers seeking refunds or rebates for purchases of homeopathic products.[17]  Most of the Plaintiffs indicated that they did not review or verify any of the allegations in the complaint prior to filing.  *See, e.g.,* Smith Depo., at Appx 3086:7-10 (first saw the SAC two and a half weeks before deposition); Xenos Depo., at Appx 3029:16-3030:3 (first meaningful review of the complaint was a few days before deposition).Mr. Xu stated that he had not even seen the CLRA notice letter setting forth his claims until just before his deposition.  Xu Depo., at Appx 3091:24-3092:13.  In fact, most of the Plaintiffs were not contacted until after Defendants filed their motion to dismiss Plaintiff Allen's original complaint.[18]  These facts show that the named Plaintiffs are mere strawmen, acting at the direction of their counsel, and cannot serve as adequate class representatives.

## 2.    Class Counsel Are Not Protecting The Class

Adequate representation also requires that class counsel be competent and without conflicts of interest with the purported class members.  *See Falcon*, 457

---

court's duty to ensure that the due process rights of the absent class members are safeguarded." *Id.* at 482.

[17]Allen Depo., at Appx 2981:6-24; Xenos Depo., at Appx 3025:5-3026:3; Hutchinson Depo., at Appx 3045:21-25; Nigh Depo., at Appx 3062:12-3064:22; Smith Depo., at Appx 3082:20-3083:5; Xu Depo., at Appx 3112:23-3115:3; Sisti Depo., at Appx 3126:2-21; Rodriguez Depo., at Appx 3159:15-20.

[18]Nigh Depo., at Appx 3062:12-20 (first contacted in late April 2012); Smith Depo., at Appx 3082:20-3083:5 (first contacted around mid-May 2012); Xu Depo., at Appx 3112:11-19 (first contacted in April or May 2012); Sisti Depo., at Appx 3129:7-21 (first contacted in April 2012).

U.S. at 157 n.13.  In this regard, "courts may take into account any prior failure to proceed in the best interests of the putative class."  *Sullivan v. Chase Investment Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978); *see also In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 728 (3d. Cir. 2001).

There is an inherent conflict between any class counsel and the interests of the class when it comes to earning a fee.  But the circumstances suggest that the conflict has become disabling in this case.  All Plaintiffs have confirmed that they did not approach Mr. Marron because they wanted to file a lawsuit, but instead were solicited to be plaintiffs after being lured in by a website advertisement that some initially believed would provide a rebate or refund for purchasing homeopathic products.  *See* n.16.  Even after they agreed to serve as class representatives, it does not appear that Plaintiffs' counsel investigated their individual facts, as evidenced by the significant erroneous factual statements in the SAC that were easily revealed by questioning the individual Plaintiffs.

Plaintiffs' initial complaint (filed in February 2012) attempted to cover Defendants' entire line of homeopathic remedies, even though the single Plaintiff at that time, Ms. Allen, was alleged to have purchased only Calms Forté.  2/9/12 Compl., ¶ 7.  One month later, on March 7, 2012, Plaintiffs' counsel voluntarily amended the complaint, this time adding an additional Plaintiff, Ms. Xenos.  3/7/12 FAC.  Ms. Xenos allegedly purchased all seven of the products then named in the FAC, although the FAC still sought relief for Defendants' entire line of products. FAC, ¶¶ 9, 19, 26, 32, 38, 44, 50.  On May 14, 2012, after the Court dismissed the claims for products they had not purchased, counsel filed the operative SAC.  The SAC added six more plaintiffs, and five additional products.

However, many of the allegations in the SAC are simply false.  After surface inquiry of Plaintiffs in deposition, it was determined that many of the products had not even been purchased by Plaintiffs, or at least purchased well outside of the statute of limitations period.  Hutchinson Depo., at Appx 3042:3-15, 3048:15-25;

Xenos Depo., at Appx 3000:10-25, 3009:11-18, 3032:16-23; Xu Depo., at Appx 3095:2-21.  This is not surprising, as many Plaintiffs testified they cannot recall seeing or reviewing a copy of the SAC before it was filed, and the majority of Plaintiffs were contacted just prior to the filing of the SAC.  *See* n.17.  It appears as though Plaintiffs' counsel, after this Court's ruling on the motion to dismiss, worked as quickly as they could to assemble claimants to cover the products named in the lawsuit and filed an amended complaint with little to no investigation into the specifics of the claims.

Most telling are the actions of Plaintiffs' counsel, who has been jockeying with counsel from other similar cases for position as the lead counsel.  The intervention motions filed in the several Hyland's cases, which were voluminous, time-consuming, and expensive for all parties, were not for the purpose of protecting the interests of any of the class members; they were an attempt to ensure that Plaintiffs' counsel would have a sufficient piece of the payout, should there be one.  S*ee* Monica Sandoval's Motion to Intervene, Dkt. 12; Declaration of Scott J. Farrell in Support of Motion to Intervene, Dkt. 13; Plaintiffs' Opposition to Motion to Intervene, Dkt. 19.

Defendants do not raise these concerns lightly, as many class actions are in some way lawyer-driven.  But the totality of these circumstances raises a serious question as to whether counsel is laboring under a disabling conflict of interest that would prevent them from adequately fulfilling the fiduciary responsibilities to represent and bind the class representatives and numerous absent class members.

## VI.    PLAINTIFFS HAVE NOT SATISFIED RULE 23(B)

The proposed class must also satisfy at least one of the three requirements listed in Rule 23(b).  *Dukes*, *supra*, at 2548.  Plaintiffs seek certification of a class under both Rule 23(b)(2) and 23(b)(3), but satisfy neither standard.

### A.    Plaintiffs Have Not Met The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires predominance of common questions and that the class

action be superior to other available methods for adjudicating the controversy.  A court may certify such a class only if it first determines that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," an inquiry "far more demanding" than Rule 23(a)'s commonality requirement.  FED. R. CIV. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  The matters pertinent to the Court's superiority analysis include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  FED. R. CIV. P. 23(b)(3); *see also Zinser*, *supra*, at 1190-92.

### 1.     Common Issues Do Not Predominate

As discussed above at Part V(A), there are no common issues in this case, let alone common issues that predominate.  Not only will a single nationwide class require the application of multiple states' laws, but there are multiple factual issues that outweigh any common questions.

### a.     *Common Issues Will Not Predominate for One Nationwide Class*

Under *Mazza*, Plaintiffs cannot certify a nationwide class because common issues will not predominate.  *Mazza* holds that "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Mazza*, 666 F.3d at 596; *see also Pilgrim*, 660 F.3d at 946, 948 ("Because these claims must be adjudicated under the law of so many jurisdictions…a single nationwide class is not manageable.").

In the few months since *Mazza*, district courts have applied *Mazza* to deny certification of nationwide classes under California's consumer protection laws.  *See, e.g., Kowalsky v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 34597 (N.D.

Cal. Mar. 14, 2012); *Rikos v. Procter & Gamble Co.*, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012); *Gianino*, 2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012); *Ralston v. Mortgage Investors Group, Inc.*, 2012 U.S. Dist. LEXIS 45545 (N.D. Cal. Mar. 30, 2012).  Here, just as in *Mazza*, variances in state laws overwhelm any common issues and, therefore, requirements for class certification under Rule 23(b)(3) cannot be met.  *Mazza*, 666 F.3d at 596; *Gianino*, 2012 U.S. Dist. LEXIS 32261, at **16-18.

### b.    *Common Issues Do Not Predominate Because There are Numerous Disparate Factual Issues*

Aside from the marked differences in laws, there is also not a predominance of factual issues in this case subject to common proof.  Plaintiffs have filed one lawsuit asserting that 12 different products have been falsely advertised.  Despite their factually unsupported attempt to persuade the Court that common evidence can demonstrate that all products do not work, this is simply not the case:

- There is not a "uniform message conveyed to the entire class" (Motion at 20) by Defendants, as each of the 12 products has a different label and different indications for its use.  Le Decl., at Exs. A-L. Plaintiffs will have to demonstrate that the representations for each different product are false or likely to mislead the reasonable consumer, which will require different proof as it pertains to the uses and efficacy of each product in relieving identified symptoms and consumers' responses to such representations.

- Defendants dispute the unsupported conclusion that, for *all* potential class members, "the 'Uses' are the statements that consumers rely on in purchasing the Products."  (Motion at 20).  As demonstrated in the consumer survey (Cristofaro Decl., Ex. A), there are many reasons, aside from Defendants' advertising and representations, that consumers purchase Defendants' products.  Plaintiffs' depositions further establish that there is not one single reason why people purchase Defendants' products.  *See* n.9.

- Each of the products has a different level of dilution.   Though Plaintiffs conclude that all products have "very little, if any, of the advertised 'active ingredients'," due to dilution (Motion at 2), the levels of dilution of each of the products are actually very different.  *See* Bell Decl., at ¶¶ 10-20.  In fact, for each of the products, there are detectable levels of active ingredients.  *Id.* at ¶ 10.  A blanket demonstration that the products are diluted to the extremes erroneously alleged by Plaintiffs is, therefore, impossible.  Fisher Decl., at ¶ 24.
- There is no common injury in the class.   Plaintiffs assume, without any evidence, that because Defendants' products are homeopathic remedies, they do not work for ***any*** of the class members.  However, the evidence demonstrates that many consumers using Defendants' products have experienced benefits.  *See* Johnson Decl., at ¶ 6; Rowe Decl., at ¶ 7; Merizalde Decl., at ¶ 15; Punzo Decl., at ¶ 11; Cristofaro Decl., at ¶ 15; Gurvitz Decl., Exs. O-X.  Experiences with the products clearly differ by user, therefore, any injuries experienced by potential class members are not subject to common proof.

### 2.    A Class Action Is Not Superior

One important factor identified under Rule 23(b)(3) that is pertinent to a court's determination of superiority is the existence of any management difficulties the class action is likely to present.  FED. R. CIV. P. 23(b)(3); *see, e.g.*, *Zinser* 253 F.3d at 1190-92.  Here, because of varied factual issues and the application of the laws of multiple states, Plaintiffs' proposed class (even with the sub-classing alternative) is unmanageable and, therefore, not superior.  Moreover, Defendants' already-existing system to field and respond to complaints is a superior way to address any of the putative class members' efficacy concerns.

### a.    *Individualized Factual Issues Render the Proposed Class Unmanageable*

Manageability encompasses the entire range of practical problems that may render a class action inappropriate to adjudicate a particular issue and, when these

problems outweigh the benefits of one common class, certification is not "superior."  *See Andres v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996); *Zinser,* 253 F.3d at 1192 (citations omitted).  The myriad factual issues in this case, makes the class entirely unmanageable, and, therefore, not superior.  Further, as evidenced by the declarations from doctors, the favorable comments on the internet, the high levels of customer satisfaction in the survey, and the lack of complaints regarding efficacy of these products, there are many members of the putative class for whom these products ***do work***.  *See* Johnson Decl., at ¶ 6; Rowe Decl., at ¶ 7; Merizalde Decl., at ¶ 15; Punzo Decl., at ¶ 11; Cristofaro Decl., at ¶ 15; Gurvitz Decl., Exs. O-X; Krombach Decl., at ¶¶ 4-6.  Thus, a jury could not determine a single class member's claim without resort to his or her individual circumstances.  Accordingly, because adjudication of the disparate factual issues varying from plaintiff to plaintiff renders the proposed class unmanageable, the Court should find that a class action is not a superior form of adjudication.

## b. *The Class Cannot be Certified Because the Laws of Multiple States Must be Applied*

Both of Plaintiffs' proposals for the definition of the putative class render the case unmanageable, making class action not a superior means of adjudication.  First, as discussed above under *Mazza*, because the application of one state's law to all 50 states is improper, certification of one nationwide class would require application of the laws of all 50 states.[19]

---

[19]The trial of a nationwide class "would devolve quickly into an unmanageable morass of divergent legal issues.  Certain evidence would be admissible for some class members but not others.   Fifty different sets of jury instructions and verdict forms would have to be crafted . . . .  Needless to say, the trial would be incredibly time-consuming, unnecessarily disjointed, hopelessly confusing, and unfairly prejudicial to [defendant] and many, if not all, members of the class.   Justice demands that this case not be adjudicated as a class action." *Gianino*, 2012 U.S. Dist. LEXIS 32261, at **17-**18.

Plaintiffs' alternative proposal that three sub-classes for all products[20] be certified under California, Georgia and Florida law, is similarly unmanageable because of the variations in the consumer laws of these three states: (1) **Statutes of Limitations**: Two different limitations periods apply: 3 years under California's CLRA and FAL; and 4 years under California's UCL, Florida's Deceptive and Unfair Trade Practices Act, and Georgia's Uniform Deceptive Trade Practices Act;[21] (2) **Actual Injury**: California and Florida require actual injury; Georgia only requires that a plaintiff is "likely to be damaged;"[22] (3) **Reliance**: California's consumer protection laws require plaintiffs to establish reliance; Florida and Georgia laws do not;[23] (4) **Remedies/Damages**: Under the CLRA, a plaintiff can recover actual damages, an injunction, restitution, punitive damages and "any other relief that the court deems proper."[24] The UCL and FAL limit the available remedies to equitable and restitutionary relief, as does Georgia's Uniform Deceptive Trade Practices act.[25] Florida's Deceptive and Unfair Trade Practices Act only allows recovery of actual damages and equitable relief.[26] It is easy to imagine the difficulties a jury would face if forced to apply the laws of three different states to different claims for different products and different plaintiffs. The alternative of sub-classing into three different classes under California, Georgia and Florida law does not create a manageable class.

---

[20] As explained above in Part II, Plaintiffs do not even have standing to certify classes of all products in each of the three different states, and it has been revealed through depositions that many of the sub-class claims are invalid.

[21] FLA. STAT. ANN. § 95.11(3)(f); GA. CODE. ANN. § 9-3-31.

[22] GA. CODE ANN. § 10-1-373.

[23] *See, e.g., Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Ct. App. 2000) ("members of a class proceeding under [Florida's] Deceptive and Unfair Trade Practices Act need not prove individual reliance on the alleged representation"); GA. CODE ANN. § 10-1-372(b) ("In order to prevail in an action under [Georgia's Uniform Deceptive Trade Practices Act], a complainant need not prove competition between the parties or actual confusion or misunderstanding.").

[24] CAL. CIV. CODE § 1780.

[25] GA. CODE ANN. § 10-1-373.

[26] FLA. STAT. ANN. § 501.211.

**c.** ***Defendants Already have a Complaint System That Addresses Grievances of any Putative Class Members***

A class action is also not superior because Defendants already have a system in place to address Plaintiffs' concerns.  Out-of-court refund programs have been found superior to class actions because "[w]here available refunds afford class members a comparable or even better remedy than they could hope to achieve in court, a class action would merely divert a substantial percentage of the refunds' aggregate value to the class lawyers."  *In re Aqua Dots Prods. Liab. Lit.*, 270 F.R.D. 377, 383 (N.D. Ill. 2010). If "defendants will provide a refund – without needless judicial intervention, lawyer's fees, or delay – to any purchaser who asks for one, there is no realistic sense in which putative class members would be better off coming to court."  *Id.* at 385.

Here, Defendants have a comprehensive system to respond to customer complaints.  Krombach Decl., at ¶¶ 2-3.  As part of this complaint system, dissatisfied customers are given refunds upon request, and this has always been Hyland's policy, in its 109 years of operation.  *Id.* at ¶ 7  Plaintiffs were explicitly informed of this in response to their CLRA notice letters.  Gurvitz Decl., Ex. M. However, none of the Plaintiffs even attempted to contact Defendants for refunds, instead opting to file lawsuits.  Because Defendants' money-back-guarantee would refund the money Plaintiffs claim they spent on allegedly useless products in a relatively simple manner, without incurring costly legal bills, the Court should find that a class action is not a superior method for adjudicating these claims.

**B.**  **Plaintiffs Have No Basis for Certification Under Rule 23(b)(2)**

In addition to pursuing monetary relief, Plaintiffs seek an order enjoining Defendants to revise their labeling and urge the Court to alternatively certify the class under Rule 23(b)(2) based on the injunction they seek.  To certify a class under Rule 23(b)(2), Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

### 1.     The Rule 23(b)(2) Relief Is Not Primarily Injunctive

Application of Rule 23(b)(2) is inappropriate because the primary relief Plaintiffs request is monetary.   "Class certification under Rule 23(b)(2) is appropriate *only where the primary relief* sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195 (emphasis added).  Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557-58.

In this case, a simple review of the Complaint reveals that the main component of the relief sought by Plaintiffs is monetary.  In the Prayer for Relief, Plaintiffs seek monetary damages, restitution and disgorgement of Defendants' revenues from the products, attorneys' fees and costs, and punitive damages.  SAC at 42.  Though the prayer also seeks declaratory and injunctive relief and requests that Defendants engage in a corrective advertising campaign, this is not the central component of Plaintiffs' requested relief.  Tellingly, in their Motion, while detailing the injunctive relief they seek, even Plaintiffs do not make the representation that injunctive relief is the *primary* relief sought in this action.  *See* Motion at 22-23.

### 2.     Congress Has Committed Homeopathic Labeling Decisions to the FDA

Moreover, injunctive relief in this case is inappropriate because imposing new labeling requirements on homeopathic remedies is preempted due to conflicts with established federal law.  Congress has committed decisions regarding the intricate and intertwined issues that go into health product labeling to the FDA, which has both the expertise and the ability to implement uniform labeling requirements nationwide.  *See, e.g., Weinberger v. Bentex Pharm., Inc.*, 412 U.S. 645, 654 (1973); *Henley v. FDA*, 77 F.3d 616, 621 (2d Cir. 1996); *Public Citizen Health Research Group v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 29 (D.C.

Cir. 1984); *cf. Premo Pharm. Lab., Inc. v. United States*, 629 F.2d 795, 803 (2d Cir. 1980) (Whether a drug is safe and effective "is to be determined by the FDA which, as distinguished from a court, possesses superior expertise, usually of a complex scientific nature, for resolving the issue.").

The FDA's authority over product labeling is extensive, and Plaintiffs have recourse available through the FDA.  Citizens can petition the FDA through a Citizen Petition procedure to consider and order labeling changes.  In fact, at least one group has already done so in the context of homeopathic products, and the FDA has the matter under advisement.  *See* Citizen Petition to Require All OTC Homeopathic Drugs to be Tested for Effectiveness and Labeled Accurately, FDA-2011-P-0642 (RJN, Ex. B); *see also* Ltr. from FDA to Petitioner in Docket No. FDA-2011-P-0642 (RJN, Ex. C).   In the Citizen Petition, the Petitioner acknowledges the FDA's "broad authority over the labeling of drugs."  RJN, Ex. B at 2 .  The FDA in its interim response acknowledges that these labeling questions "raise[] complex issues requiring extensive review and analysis by ***Agency*** officials." RJN, Ex. D (emphasis added). Preemption in this regard bears on the issue of class certification because the relief that Plaintiffs invoke in order to justify a Rule 23(b)(2) class is not available as a matter of law.  Thus, the Court cannot certify a class under this alternative because the remedy necessary to justify its application is legally barred.

Congress and the FDA have promulgated extensive guidance governing the labeling of homeopathic drugs.  In 1938, when Congress enacted the FDCA, it adopted the *Homeopathic Pharmacopoeia of the United States* ("HPUS"),[27]

---

[27]The HPUS includes a compilation of standards for source, composition, and preparation of homeopathic drugs.  The entity that publishes the HPUS, the Homeopathic Pharmacopoeia Convention, is a non-governmental, non-profit scientific organization composed of experts (who work closely with the FDA) in the fields of medicine, biology, botany, chemistry, and pharmacy.  This agency determines which homeopathic drugs should be listed in the HPUS based on evidence of the substances' prior or known uses as homeopathic remedies.  *See generally, Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1341 (2003).

DOCUMENT PREPARED
ON RECYCLED PAPER

characterizing it as an "official" compendium, with the "articles" listed in the HPUS as "drugs" subject to FDA regulation.  21 U.S.C. § 321(g)(1).

Since the enactment of the FDCA, the FDA has adopted further guidance on the sale of homeopathic drugs via its Compliance Policy Guide ("CPG"), setting forth requirements for the marketing of homeopathic products, to which Defendants in this case have adhered.  *See* FDA Compliance Policy Guide 400.400, "Conditions Under Which Homeopathic Drugs May Be Marketed" (Gurvitz Decl., Ex. N).  The FDA also has numerous federal regulations governing the labeling of all over-the-counter drugs, including homeopathic drugs.[28]

Plaintiffs do not allege that Defendants' advertising or labeling fails to comply with these federal requirements.  Instead, they seek to impose additional and different requirements on the labeling of the homeopathic drugs and consequently the injunction is preempted.

        a.    ***Plaintiffs' Requested Injunction Impermissibly Invade the FDA's Labeling Authority***

Plaintiffs' injunction claims are expressly preempted because their attempt to impose new and different labeling requirements on homeopathic remedies conflicts with established federal law.  Section 379r of Title 21 of the U.S. Code provides that a state may not "establish or continue in effect any requirement (1) that relates to the regulation of a[n OTC] drug . . . and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under" the FDCA.  For those OTC drugs that have not been approved under a new drug application, or a final regulation establishing conditions under which they are considered safe and

---

[28] *See* 21 C.F.R. § 201.5 (2011) ("adequate directions of use"); 21 C.F.R. § 201.6 (2011) (misleading statements in labeling); 21 C.F.R. § 201.10 (2011) ("statement of the ingredients"); 21 C.F.R. § 201.60 (2011) (required location and size of a principal display panel); 21 C.F.R. § 201.62 (2011) (the dilution); and 21 C.F.R. § 201.66 (2011) ("format and content for over-the-counter labeling"—an OTC drug container or wrapper must contain the heading an indication for use statement on the label and "the general pharmacological category(ies) or the principal intended action(s) of the drug or . . . each active ingredient").

1    effective and not misbranded, the preemption provision "shall apply only with

2    respect to a requirement of a State . . . that relates to the same subject as, but is

3    different from or in addition to, or that is otherwise not identical with (A) a

4    regulation in effect with respect to the drug . . . ." 21 U.S.C. § 379r(d)(1).

5          The relief Plaintiffs seek by way of their proposed injunction directly invades

6    the regulatory scheme governing homeopathic product labeling.    As a result,

7    Plaintiffs' requested injunctive relief is preempted by federal law.

8          **b.    *The FDA Has Primary Jurisdiction Over This Matter***

9          Alternatively, the Court should refer the claims for injunctive relief in the

10   form of labeling revisions to the FDA.  Under the doctrine of primary jurisdiction,

11   the FDA—as the agency entrusted by Congress to regulate homeopathic drugs—is

12   uniquely qualified and empowered to make decisions about homeopathic product

13   labeling.  *See Far East Conference v. United States*, 342 U.S. 570, 574 (1952).

14   Primary jurisdiction has been used to defer to FDA decisions regarding the complex

15   subject matter of regulating the marketing of drugs and medical devices.  *See

16   Gordon v. Church & Dwight Co.*, 2010 U.S. Dist. LEXIS 32777, at *1 (N.D. Cal.

17   Apr. 2, 2010); *cf. Aaronson v. Vital Pharms., Inc.*, 2010 U.S. Dist. LEXIS 14160, at

18   *2 (S.D. Cal. Feb. 17, 2010); *Bernhardt v. Pfizer, Inc.*, 2000 U.S. Dist. LEXIS

19   16963, at *2-3 (S.D.N.Y. 2000).

20         The Court should abstain from exercising jurisdiction in this case.  As

21   explained above in Part VI(B)(2), the FDA, through its adoption of guidelines and

22   regulations regarding the marketing and labeling of homeopathic drugs, is the

23   agency that has the most breadth of knowledge regarding these issues.  As was

24   explained in S. Rep. No. 105-43 (1997), "[i]t is important that any State or local

25   requirements imposed on industry relating to the advertising of nonprescription

26   drugs or cosmetics, or to any other form of public notification or communication

27   relating to these products and their constituents, be identical with FDA

28   requirements for the label and labeling of these products. . . . All forms of State

requirements that affect these products are included within the general rule of national uniformity, whether they are specifically denominated as applying to nonprescription drugs and cosmetics or more broadly apply to unfair competition or to all chemicals, ingredients, or contaminants to which consumers and other members of the public are exposed." *Id.* at 66. "A plain reading of 21 U.S.C. § 379r shows a clear intent to override any State labeling requirements." *Green v. BDI Pharms.*, 803 So. 2d 68, 74 (La. Ct. App. 2001).

Making individual courts the arbiters of labeling challenges that are uniquely within the expertise of the FDA threatens to create a piecemeal system of determining drug labeling never intended by the federal government. This problem is compounded when considering that Plaintiffs' claims are grounded in state law, and as demonstrated above in Part IV, will be governed by the laws of multiple states. Thus, this Court's decision on injunctive relief would likely vary by state, which is the antithesis of the national uniformity for homeopathic products that was desired and mandated by Congress. As such, the Court should abstain from hearing Plaintiffs' injunction claims in favor of the FDA. Certification pursuant to Rule 23(b)(2) is inappropriate.

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion, and decline to certify a class in this action.

Dated:   June 15, 2012

JEFFREY B. MARGULIES
JOSEPH H. PARK
STEPHANIE A. STROUP
MATTHEW M. GURVITZ
**FULBRIGHT & JAWORSKI L.L.P.**

_____/s/ Stephanie A. Stroup_____
STEPHANIE A. STROUP
Attorneys for Defendants HYLAND'S, INC. and
STANDARD HOMEOPATHIC COMPANY