**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE REALIN (263639)
*maggie@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**KREINDLER & KREINDLER, LLP**
GRETCHEN M. NELSON (112566)
*gnelson@kreindler.com*
STUART R. FRAENKEL (173991)
*sfraenkel@kreindler.com*
GABRIEL S. BARENFELD (224146)
*gbarenfeld@kreindler.com*
JACOB H. MENSCH (268006)
*jmensch@kreindler.com*
ANDREW L. CIGANEK (266701)
*aciganek@kreindler.com*
707 Wilshire Boulevard, Suite 4100
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019
*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KIM ALLEN, DANIELE XENOS, ROGER HUTCHINSON, MELISSA NIGH, SHERRELL SMITH, YUANKE XU, DIANA SISTI, and NANCY RODRIGUEZ on behalf of themselves, all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> HYLAND'S, INC., a California corporation; and STANDARD HOMEOPATHIC COMPANY, <br><br> Defendants. | CASE NO. 2:12-CV-1150 (MANx) <br> CLASS ACTION <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** <br><br> Judge:      Hon. Dolly M. Gee <br> Date:       July 13, 2012 <br> Time:       9:30 a.m. <br> Location:   Courtroom 7 |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     DEFENDANTS OVERSTATE THE IMPACT OF PLAINTIFFS'
        TESTIMONY ............................................................................................ 2

        A.    Xenos' Calms Forté and Teething Tablets Claims Are Not Time-Barred .... 2

        B.    Plaintiffs Can Represent the Class As to All Products they  Purchased,
              Even if Purchased Outside the Limitations Period ......................................... 3

        C.    Plaintiffs May Represent the Class As to All Products They Purchased ........ 4

III.    PLAINTIFFS HAVE MET THEIR BURDEN OF PROOF AS
        TO THE REQUIREMENTS FOR CLASS CERTIFICATION ............................... 4

IV.     CALIFORNIA LAW SHOULD BE APPLIED TO A
        NATIONWIDE OR MULTI-STATE CLASS ........................................................ 8

        A.    *Mazza* does not Preclude Applying
              California Law to a Nationwide Class .......................................................... 8

        B.    Once Plaintiffs Show the Application of
              California Law to a Nationwide Class is Constitutional,
              the Burden Shifts to Defendants to Show Otherwise ................................... 9

        C.    Defendants Did Not Conduct The Required Choice Of Law Analysis ....... 11

V.      THE RULE 23(a) FACTORS ARE SATISFIED ................................................ 12

        A.    Plaintiffs Have Met Rule 23(a)'s Commonality Requirement ................... 12

        B.    The Class Plaintiffs' Claims Are Typical of the Absent Class Members .... 16

        C.    Plaintiffs have Amply Demonstrated Their Adequacy ............................... 18

VI.     THE RULE 23(b) FACTORS ARE SATISFIED ................................................ 22

        A.    Common Issues Predominate ........................................................................ 22

              1.    Plaintiffs' Legal and Factual Theories of Recovery Depend
                    on Uniform Principles, Applicable to Each of the Products ............... 22

              2.    Variances in State Law do not Predominate ...................................... 24

        B.    Class Treatment is Superior to Other Alternatives ....................................... 26

              1.    This case presents essentially one factual issue –
                    is Defendants' advertising false and/or deceptive ............................. 27

              2.    Defendants' complaint system is not superior to a class action .......... 28

        C.    The Requirements of Rule 23(b)(2) are Satisfied ....................................... 30

i

1          1.   The Complaint Primarily Seeks Injunctive Relief ..............................29

2          2.   Preemption is Not an Issue in this Case ............................................31

3              a.   The FTC oversees false or deceptive advertising of OTC products, not the FDA ..........................................................31

4              b.   The FDCA's regulation of homeopathic drugs is minimal............31

5              c.   Regulation of OTC homeopathic drugs is entirely different from OTC non-homeopathic drugs ...............................32

6

7              d.   Section 379r of the FDCA does not preempt Plaintiffs' claims ....33

8          3.   Primary Jurisdiction and Abstention Do Not Apply Here.........................................................................37

9   VII.   CONCLUSION .........................................................................................38

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*In re THQ, Inc. Sec. Litig.,*
   No. 00-1783, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002).....................23
*Aaronson v. Vital Pharm., Inc.,*
   2010 WL 625337 (S.D. Cal. Feb. 17, 2010) ..............................34, 36
*Agostini v. Felton,*
   521 U.S. 2003 (1997) ......................................................6
*Allen v. Hyland's, Inc.,*
   2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012)..........................8, 9
*Allison v. Citgo Petroleum Corp.,*
   151 F.3d 402 (5th Cir. 1998) .............................................30
*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.,*
   No. 05CV1100 IG, 2009 WL 249888 (S.D. Cal. Feb. 2, 2009).................5
*Archila v. KFC U.S. Props., Inc.,*
   420 Fed. Appx. 667 (9th Cir. 2011) .......................................5
*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) .............................................5
*Baby Neal for & by Kanter v. Casey,*
   43 F.3d 48 (3d Cir. 1994) .............................................11, 12
*Badella v. Deniro Marketing, LLC,*
   2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011).........................24
*Barton v. U.S. District Court,*
   410 F.3d 1104 (9th Cir. 2005) ...........................................19
*Bates v. State Bar of Ariz.,*
   434 U.S. 881 (1977) .....................................................19
*Bell v. Addus Healthcare, Inc.,*
   C06-5188RJB, 2007 WL 3012507 (W.D. Wash. Oct. 12, 2007) ...............7
*Blackie v. Barrack,*
   524 F. 2d 891 (9th Cir. 1975) ......................................passim
*Borcherding-Dittloff,*
   185 F.R.D. 558 (W.D. Wis. 1999) .........................................21
*Brazil v. Dell, Inc.,*
   No. 07-1700, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010)..................10
*Bruno v. Eckhart Corp.,*
   2012 WL 752090, at *7 (C.D. Cal. Mar. 6, 2012) .....................passim
*Carter v. Novartis Consumer Health, Inc.,*
   582 F. Supp. 2d 1271 (C.D. Cal. 2008) ...................................35

iii

*Connecticut Ret. Plans & Trust Funds v. Amgen, Inc.,*
  660 F.3d 1170 (9th Cir. 2011) ............................................................ 6
*Davis v. Southern Bell Telephone & Telegraph Co.,*
  149 F.R.D. 666 (S.D. Fla. 1993) ........................................................ 21
*Delarosa v. Boiron, Inc.,*
  275 F.R.D. 582 (C.D. Cal. 2011) ...............................................*passim*
*Delarosa v. Boiron, Inc.,*
  818 F. Supp. 2d 1177 (C.D. Cal., July 2011) .............................*passim*
*Dukes v. Wal-Mart Stores, Inc.,*
  603 F.3d 571 (9th Cir. 2010), rev'd *Dukes,* 131 S.Ct. 2541 .......... 6, 13
*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.,*
  657 F.2d 890 (7th Cir. 1981) ............................................................. 20
*Elias v. Ungar's Food Products, Inc.,*
  252 F.R.D. 233 (D.N.J. 2008) ............................................................ 3
*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) ............................................................. 17
*Endo v. Albertine,*
  147 F.R.D. 164 (N.D. Ill. 1993) ......................................................... 3
*Energy Four, Inc. v. Dornier Medical Sys., Inc.,*
  765 F.Supp. 724 (N.D. Ga. 1991) ................................................. 14, 15
*Federal Trade Commission v. Direct Marketing Concepts, Inc.,*
  569 F. Supp. 2d 289 (D. Mass 2008)............................................. 14, 15
*Fitzpatrick v. Gen. Mills,*
  635 F.3d 1279 (11th Cir. Mar. 25, 2011) ..................................... 14, 15
*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
  505 U.S. 88 (1992) ............................................................................ 33
*General Telephone Co. of Southwest v. Falcon,*
  457 U.S. 147 (1982) .......................................................................... 6, 7
*Gianino v. Alacer Corp.,*
  2012 WL 724322 (C.D. Cal. Feb. 27, 2012)...................................... 25
*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011, 1023 (9th Cir. 1998)...........................................*passim*
*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ............................................................ 17
*Henley v. Food & Drug Admin.,*
  77 F.3d 616 (2d Cir. 1996) ............................................................... 33
*Holman v. Experian Information Solutions, Inc.,*
  Case No. C-11-0180 CW, 2010 WL 1496203 (N.D. Cal. 4/27/2012)...................... 12, 13

iv

*Hootkins v. Chertoff,*
  No. 07-5696CAS, 2009 WL 57031 (C.D. Cal. Jan. 6, 2009) ............................................ 5
*In re AM Int'l, Inc. Sec. Litig.,*
  108 F.R.D. 190 (S.D. N.Y. 1985)............................................................................. 23
*In Re Aqua Dots Prods. Liab. Litig.,*
  654 F.3d 748 (7th Cir. 2011)...........................................................................*passim*
*In re Countrywide Secs. Litig.,*
  273 F.R.D. 586 (C.D. Cal. 2009) ......................................................................... 4, 5
*In re Juniper Networks Sec. Litig,*
  264 F.R.D. 584 (N.D. Cal. 2009) .............................................................................. 16
*In re Syncor Erisa Litig.,*
  227 F.R.D. 338 (C.D. Cal. 2005) .............................................................................. 29
*In re THQ, Inc. Sec. Litig,*
  No. 00-1783, 2002 WL 1832145 (C.D. Cal.Mar. 22, 2002)................................22, 23
*In re Unioil Secs. Litig.,*
  107 F.R.D. 615 (C.D. Cal. 1985) ............................................................................... **6**
*Johns v. Bayer Corp.,*
  2012 WL 368032 (S.D. Cal. Feb. 3, 2012) ..........................................................*passim*
*Keegan v. Am. Honda Motor Co., Inc.,*
  No. 10-09508, 2012 WL 2250040 (C.D. Cal. June 12, 2012) ..............................*passim*
*Kowalsky v. Hewlett-Packard Co.,*
  No. 10-cv-2176, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012).................................. 24
*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) .............................................................................*passim*
*McDonough v. Toys R Us, Inc.,*
  638 F.Supp.2d 461 (E.D. Pa. 2009)........................................................................... 18
*Montoya v. Creditors Interchange Receivable Mgmt., LLC,*
  Case No. CV 10-3037 PSG (Ex), 2011 WL 971341 (C.D. Cal. Mar. 16, 2011)............. 5
*Negrete v. Allianz Life Ins. Co.,*
  238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................... 5
*Parkinson v. Hyundai Motor Am.,*
  258 F.R.D. 580 (C.D. Cal. 2008) .......................................................................*passim*
*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) .................................................................................................. 9
*Premo Pharm. Labs., Inc. v. United States,*
  629 F.2d 795 (2d Cir. 1980) ..................................................................................... 33
*Probe v. State Teachers' Retirement Sys.,*
  780 F.2d 776 (9th Cir. 1986) .................................................................................... 29

v

*Pryor v. Aerotek Scientific, LLC*,
  278 F.R.D. 516 (C.D. Cal. 2011) ............................................................. 19
*Pub. Citizen Health Research Group v. Comm'r, Food & Drug Admin.*,
  740 F.2d 21, 29 (D.C. Cir. 1984) ............................................................. 33
*Ralston v. Mortgage Investors Group*,
  No. 08-cv-536, 2012 WL 1094633 (N.D. Cal. Mar. 30, 2012) ................... 24
*Rikos v. The Procter & Gamble Co.*,
  No. 11-cv-226, 2012 WL 641946, at *2, 5 n.1 (S.D. Ohio, Feb. 28, 2012) ................... 24
*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ............................................................. 12
*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................. 5
*Shalala v. Ill. Council on Long Term Care*,
  529 U.S. 1 (2000) ............................................................. 6
*Smith v. Univ. of Wash. Law Schl.*,
  233 F.3d 1188 (9th Cir. 2000) ............................................................. 29
*Swack v. Credit Suisse First Boston*,
  230 F.R.D. 250 (D. Mass. 2005) ............................................................. 19
*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775, 781 (9th Cir. 2002). ............................................................. 34
*Thompson v. City of Chicago*,
  No. 01 C 6916, 2002 WL 1303138 (N.D. Ill June 12, 2002) ................... 21
*Udall v. Tollman*,
  380 U.S. 1 (1965). ............................................................. 34
*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. Serv. Workers Int'l Union v. ConocoPhillips*,
  593 F.3d 802 (9th Cir. 2010) ............................................................. 5
*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087, 1094 (9th Cir. 2010) (9th Cir. 2010) ................... 16
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .............................................................*passim*
*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ............................................................. 11, 12
*Wang v. OCZ Tech. Grp., Inc.*,
  276 F.R.D. 618 (N.D. Cal. 2011) ............................................................. 10
*Wash. Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ............................................................. 10
*Weinberger v. Bentex Pharms., Inc.*,
  412 U.S. 645 (1973) ............................................................. 33

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
LEAD CLASS COUNSEL

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008)................................................................23
*Wolin v. Jaguar Land Rover North America, LLC,*
   617 F.3d 1168 (9th Cir. 2010)..............................................................12
*Wolph v. Acer Am. Corp.,*
   272 F.R.D. 477 (N.D. Cal. 2011)..........................................................10
*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001).......................................................4, 5, 29

**STATE CASES**

*Alliance Mortgage Co. v. Rothwell,*
   10 Cal.4th 1226 (1995)..........................................................................29
*Brockey v. Moore,*
   107 Cal. App. 4th 86 (2003)..................................................................23
*Clothesrigger, Inc. v. GTE Corp.,*
   191 Cal.App.3d 605 (1987).....................................................................9
*Graciano v. Robinson Ford Sales, Inc.,*
   50 Cal. Rptr. 3d 273 (Cal Ct. App. 2006)..............................................32
*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009)....................................................................passim
*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (2002)....................................................................14, 15
*Kwikset Corp. v. Super. Ct.,*
   51 Cal. 4th 310 (2011)......................................................................8, 23
*Ladd v. Warner Bros. Entm't, Inc.,*
   184 Cal.App.4th 1298 (2010)..................................................................2
*Leoni v. State Bar,*
   39 Cal. 3d 609, 626 (1985)....................................................................27
*Linder v. Thrifty Oil Co.,*
   23 Cal. 4th 429 (2000)....................................................................passim
*Mass. Mut. Life Ins. Co. v. Sup. Ct.,*
   97 Cal.App.4th 1282 (2002)...........................................................15, 23
*McAdams v. Mornier, Inc.,*
   182 Cal.App.4th 174 (2010)..................................................................15
*Morgan v. AT&T Wireless Servs., Inc.,*
   177 Cal. App. 4th 1235 (2009)..............................................................27
*Occidental Land, Inc. v. Super. Ct.,*
   18 Cal.3d 355 (1976)......................................................................23, 31

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
LEAD CLASS COUNSEL

*People v. Toomey.*,
   157 Cal.App.3d 1 (1984) ................................................................ 16
*State of California v. Levi Strauss & Co.*,
   41 Cal. 3d 460 (1986) .................................................................... 28
*Wash. Mut. Bank, FA v. Super. Ct.*,
   24 Cal.4th 906 (2010) .................................................................... 31
*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) ...................................................... 31

**STATUTES**

15 U.S.C. § 52 ...................................................................................... 34
21 U.S.C. § 352(g) ............................................................................... 34
21 U.S.C. § 352(n) ............................................................................... 34
21 U.S.C. § 355 .................................................................................... 33
21 U.S.C. § 379r ................................................................................... 34
Cal. Bus. & Prof. Code § 17200 .......................................................... 8
Cal. Bus. & Prof. Code § 17203 ........................................................ 16
Cal. Bus. & Prof. Code § 17208 .......................................................... 2
Cal. Bus. & Prof. Code § 17500 ................................................... 8, 25
Cal. Bus. & Prof. Code § 17535 ........................................................ 16
Cal. Civ. Code § 3294(a) .................................................................... 30
Cal. Civ. Code § 3343 ......................................................................... 29
Ga. Code Ann. § 10-1-372(b) ............................................................ 31
Pub. L. No. 105-115, 111 Stat. 2296 (Nov. 21, 1997)....................... 33
Pub. L. No. 87-781, 76 Stat. 780, 788-789 (1962) ............................ 31
U.C.C. § 2-711(1) ............................................................................... 30
U.C.C. § 2-714(2) ............................................................................... 29

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 33
Fed. R. Civ. P. 23 ......................................................................... *passim*

**REGULATIONS**

21 C.F.R. § 10.30 ................................................................................ 33
21 C.F.R. § 201.1 ................................................................................ 31
21 C.F.R. § 211.137 ............................................................................ 34
21 C.F.R. §§ 330.1 .............................................................................. 35

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
Plaintiffs' Reply in Support of Motion for Class Certification and Appointment of
Lead Class Counsel

# I.  **INTRODUCTION**

This case arises from false and deceptive advertising where the primary evidence is the advertising.  Plaintiffs' claims derive from two basic legal theories:

- Omissions that consist of the (a) failure to explain the dilution descriptors in terms understandable to any consumer; (b) failure to inform consumers that no regulatory body confirms the efficacy statements on the packaging; (c) the failure to inform consumers that Defendants are free to designate the products for any ailment they wish; and (d) the failure to inform consumers that the FDA does not review their labeling or approve it; and

- Misrepresentations that (a) the Products contain "active ingredients" – when they don't; (b) the Products are effective for their claimed uses – when they are not; and (c) the products are "100% Natural" -- when they are not.

Plaintiffs' factual and legal claims are uniform across the products.  Proof of the truth or falsity of advertising as to one product will necessarily resolve the claims as to the other products.  Here, the standard is whether Defendants' advertising, taken in context and as a whole, is likely to deceive a reasonable consumer, a matter of objective proof.  Class treatment is the superior method for resolving claims like this where the amount spent by each class member may be small but the amount earned by the Defendants from their deceptive advertising is large.

The question today is not whether Defendants' labels are in fact false or deceptive, but whether the alleged deception is to be adjudicated on an individual or class-wide basis.  On this point, the Court should take its cue from the Defendants.  They do not advertise to any specific individual; go door-to-door peddling their wares; call up individual customers, inquire about ailments, and explain how their products can help.  Instead, they design a label, stamp it on thousands of cardboard boxes, and distribute the boxes to stores across the country.  If those labels are false or deceptive, then Defendants' customers have all suffered.  The Court should treat these customers as the Defendants have always treated them—as a group.

1

## II. DEFENDANTS OVERSTATE THE IMPACT OF PLAINTIFFS' TESTIMONY

Defendants argue that as a result of Plaintiffs' depositions, the number of Hyland's products has been reduced from twelve to seven.  Opp'n 2-5; Gurvitz Decl., Ex. L. Defendants' analysis is flawed for three reasons: (1) they misapply the statute of limitations to Plaintiff Xenos' purchase of Calms Forté and Teething Tablets; (2) Plaintiffs may serve as class representatives with respect to all of the products they actually purchased, even if their purchases as to some of the products fell outside the limitations period; and (3) Plaintiffs' depositions revealed purchases of Hyland's products in addition to those alleged in the SAC.  Plaintiffs may represent the class with respect to all twelve products identified in the SAC.  The chart attached as Exhibit A to this brief identifies all of the proposed class representatives for each of the products at issue.

### A. Xenos' Calms Forté and Teething Tablets Claims Are Not Time-Barred

Defendants contend that Plaintiff Xenos cannot represent the proposed class with respect to Calms Forté and Teething Tablets because her last purchase of these products occurred "sometime in 2007 to 2008," outside the four year limitations period.  Opp'n 4; Gurvitz Decl., Ex. L at p. 1, n.1; *see* Bus. & Prof. Code § 17208 (four year statute of limitations under the UCL).  Xenos was named in the First Amended Complaint, filed March 7, 2012.  Dkt No. 17.  Purchases that occurred "sometime in 2007 to 2008" do not necessarily fall outside the four-year period, and thus Defendants have not shown that her claims are time-barred.  *See Ladd v. Warner Bros. Entm't, Inc.*, 184 Cal.App.4th 1298, 1309 (2010) (defendant bears the burden of proving a statute of limitations defense).[1]

---

[1] Xenos purchased Calms Forté after a custody battle with her ex-husband that occurred in 2007 or 2008.  She has confirmed that battle commenced in November 2008.  Marron Decl., Ex. 1 at 75:22-76:11.  Her Calms Forté purchases were within the four year period.

2

## B. Plaintiffs Can Represent the Class As to All Products they Purchased, Even if Purchased Outside the Limitations Period

In several cases, a Plaintiff purchased some of Hyland's products within the four-year period and others outside the period. Xenos purchased Migraine Headache Relief in 2009, (Marron Decl., Ex. 1 at 67:15-68:10), and Defendants concede that she may represent the class with respect to that product. Gurvitz Decl., Ex. L at 1. She also purchased ClearAc in 2005. Marron Decl., Ex. 1 at 45:22-46:14.

Courts have allowed class plaintiffs who have purchased one product to represent purchasers of products the plaintiff *never purchased at all*. In *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233 (D.N.J. 2008), plaintiffs alleged that the defendant had misrepresented the nutritional attributes of its frozen food products. *Id.*, pp. 240-41. Defendant argued that the class could not be certified as to two of the products at issue, because none of the proposed class representatives had purchased those products. *Id.*, p. 243. The court rejected the argument, reasoning that "[t]he fact that a class member may have a claim concerning a product that no named plaintiff purchased does not detract from their ability to fairly represent the interests of the absent class members because they would assert that such products suffer from the identical false representations." *Id.*, p. 244 (citations omitted). And, in *Endo v. Albertine*, 147 F.R.D. 164 (N.D. Ill. 1993), defrauded purchasers of common stock were permitted to represent purchasers of debentures, even though plaintiffs never purchased the debentures. *Id.* at 167.

In these cases, the courts' rulings were based on the fact that the misrepresentations made with respect to the products the proposed class representatives *did* purchase were similar or identical to misrepresentations made with respect the products they *did not* purchase. *Elias*, 252 F.R.D. at 244; *Endo*, 147 F.R.D. at 167.

In this case, as in *Elias* and *Endo*, Defendants' misrepresentations and omissions are similar or identical with respect to all products, in that all ingredient quantities claimed as

"active ingredients" are marked with an "X"; Defendants do not disclose homeopathic dilution levels in language understandable to the consumer; Defendants do not disclose that the FDA does not review the products for effectiveness; and that Defendants are free to claim that the products work for any ailment without proof of effectiveness by any regulatory body. Plaintiffs should be allowed to represent the Class as to products they actually purchased—even purchases outside the limitations period.[2]

### C. Plaintiffs May Represent the Class As to All Products They Purchased.

Plaintiffs Nigh, Rodriguez, Allen, Sisti and Xenos each testified they purchased the products identified in the SAC. They also identified additional Hyland's products not identified in the SAC as purchases they made. For example, Plaintiff Sisti was alleged to have purchased Defend Cold & Cough Night, SAC ¶ 87, but she testified she also purchased Defend Cold & Cough. Marron Decl., Ex. 2 at 29:22-24 and 46:25-47:2.

In some cases, the absence of allegations in the SAC was because Plaintiffs had not realized the additional products were part of the lawsuit. *See*, *e.g.*, *id.*, Ex. 3 at 77:15-78:4. In others, it was because the products identified in the SAC had similar names to others, such as "Leg Cramps with Quinine PM" vs. "Leg Cramps." *Id.*, Ex. 1 at 114:9-115:2.

The mere fact that not all Plaintiffs' purchases are identified in the SAC does not disable them from representing the class as to all products they purchased. Plaintiffs are not seeking to increase the number of Hyland's products at issue. Rather, the purchases in question were products already identified in the SAC. *See* Exhibit A hereto.

### III.   PLAINTIFFS HAVE MET THEIR BURDEN OF PROOF AS TO THE REQUIREMENTS FOR CLASS CERTIFICATION

A court exercises "broad discretion to certify a class" within Rule 23's framework. *In re Countrywide Secs. Litig.*, 273 F.R.D. 586, 595 (C.D. Cal. 2009); *Zinser v. Accufix*

---

[2] This would not run afoul of the Court's ruling that Plaintiffs lack standing to represent the class with respect to products they never purchased (Dkt No. 59 at p. 7) because the products at issue are ones Plaintiffs *did* purchase, albeit outside the statute of limitations.

4

*Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), *as amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001). Class certification motions often require "some degree of speculation" due to the "uncertain state of the record" before the record's development at summary judgment or trial. *In re Countrywide Secs. Litig., supra,* 273 F.R.D. at 595 (citing *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975)). The rule permits the alteration or amendment of the certification order before final judgment. Fed. R. Civ. P. 23(c)(1)(C); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 966 (9th Cir. 2009); *Armstrong v. Davis,* 275 F.3d 849, 871, n. 28 (9th Cir. 2001).[3]

Defendants argue that Plaintiffs' motion fails, as a matter of law, because Plaintiffs purportedly did not present any "evidence or factual support satisfying Rule 23 requirements." Opp'n at 7. There are two flaws in this argument. First, Plaintiffs presented evidence confirming facts as to Rule 23's requirements. Dkt. No. 60-3, Exs. 1-6. Second, Defendants' contention that the proponent of class certification must present evidence outside of the complaint on all Rule 23 requirements is wrong.

The question on class certification "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. Serv. Workers Int'l Union v. ConocoPhillips,* 593 F.3d 802, 808 (9th Cir. 2010). The court determines whether plaintiffs have shown that there are plausible class-wide methods of proof available to prove their claims. *Hootkins v. Chertoff,* No. 07-5696CAS, 2009 WL 57031, at **7, 9 (C.D. Cal. Jan. 6, 2009); *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.,* No. 05CV1100 IG, 2009 WL 249888, at *7 (S.D. Cal. Feb. 2, 2009); *Negrete v. Allianz Life Ins. Co.,* 238 F.R.D. 482, 489 (C.D. Cal. 2006).

---

[3] Rule 23 requires the filing of the motion "at an early practicable time." Fed.R.Civ.P. 23(c)(1). But, Local Rule 23-3 requires the filing of the motion within 90 days of service of the complaint. Failure to timely file a class certification motion has caused the dismissal of class claims. *Archila v. KFC U.S. Props., Inc.,* 420 Fed.Appx. 667 (9th Cir. 2011); *Montoya v. Creditors Interchange Receivable Mgmt., LLC,* Case No. CV 10-3037 PSG (Ex), 2011 WL 971341 (C.D. Cal. Mar. 16, 2011).

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

In reaching that decision, the court must "analyze[] the allegations of the complaint and the other material before [the court] (material sufficient to form a reasonable judgment on each requirement), [and] consider[] the nature and range of proof necessary to establish those allegations. . . ." *Blackie*, 524 F.2d at 900-01.  And, while "[t]he Court is at liberty to consider evidence which goes to the requirements of Rule 23" (*In re Unioil Secs. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985)), there is no mandate that the moving party present evidence to support all or even some of the requirements.  *Blackie*, 524 F.2d at 901 (in ruling on class certification "[a]n extensive evidentiary showing of the sort requested by defendants is not required.  So long as [the court] has sufficient material before him to determine the nature of the allegations, and rule on compliance with the Rule's requirements, and he bases his ruling on that material, his approach cannot be faulted because plaintiffs' proof may fail at trial").[4]

Defendants challenge the ongoing vitality of *Blackie*, arguing it pre-dates the decision in *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"), 131 S. Ct. 2541 (2011).[5] Defendants essentially claim that *Dukes* imposed a new requirement that the moving party make an initial affirmative evidentiary showing as to all Rule 23 requirements.  Defendants are wrong.  The Supreme Court in *Gen. Tel Co. of Southwest v. Falcon*, 457 U.S. 147 (1982),

---

[4]  The *Blackie* court stated that although "the court may not put the plaintiff to preliminary proof of his claim, it does require sufficient information to form a reasonable judgment. Lacking that, the court may request the parties to supplement the pleadings with sufficient material to allow an informed judgment on each of the Rule's requirements." 524 F.2d at 901, n.17.  To the extent there is any deficiency in the material submitted on certification, the court should have the parties supplement their submissions.

[5]  The Supreme Court in *Dukes* did not overrule or even cite *Blackie* though the Ninth Circuit relied heavily on the case.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 583, 584, 586, 589, 590, 598 (9th Cir. 2010), *rev'd Dukes*, 131 S.Ct. 2541.  The Supreme Court has cautioned against lower courts concluding that its decisions have implicitly overruled earlier precedent.  *Agostini v. Felton*, 521 U.S. 2003, 237 (1997) (lower courts may not "conclude our more recent cases have, by implication, overruled an earlier precedent" and must "leav[e] to this Court the prerogative of overruling its own decisions"); *Shalala v. Ill. Cn'l on Long Term Care*, 529 U.S. 1, 18 (2000) ( "[t]his Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*").  Courts, post-*Dukes*, continue to rely on *Blackie*.  *See Connecticut Ret. Plans & Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011); *Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012).

recognized that certification can occur in cases where the issues are apparent from the pleadings. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.*, 160.

The *Dukes* court relied on *Falcon* in reaching its conclusion that a rigorous analysis of evidence was necessary in *Dukes* because proof of commonality overlapped with the merits of whether the defendant, Wal-Mart, had engaged in a pattern or practice of discrimination. *Dukes*, 131 S.Ct. at 2551-52. Nowhere did *Dukes* hold that in all class actions, certification can only be achieved through evidence outside the pleadings.

Courts have certified classes without even considering expert declarations submitted in support of or in opposition to the motion. *See, e.g., Delarosa v. Boiron, Inc.* ("*Delarosa I*"), 275 F.R.D. 582, 584 (C.D. Cal. 2011) (certifying a consumer class post-*Dukes*, without considering expert declarations as to efficacy claims regarding defendant's homeopathic product). *See also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008) ("[u]nlike a summary judgment motion under Fed.R.Civ.P. 56, a motion for class certification is not dispositive and need not be supported by admissible evidence"); *Bell v. Addus Healthcare, Inc.*, C06-5188RJB, 2007 WL 3012507, *4 (W.D. Wash. Oct. 12, 2007) ("plaintiff need not make an extensive evidentiary showing so long as the court is provided enough information to form a reasonable judgment on each certification requirement" (citing *Blackie*, 524 F.2d at 901)).

Defendants' argument that Plaintiffs have shifted the focus of their claims in an attempt to avoid a lack of proof is completely misguided. Opp'n 8. Plaintiffs' claims that Defendants (i) fail to explain the dilution levels of their products in a manner that results in deception to consumers, (ii) position their products on store shelves in a manner that is deceptive, and (iii) lack regulatory oversight as to their efficacy statements, form a critical

7

component of the allegations and claims in the SAC. SAC ¶¶ 116, 119, 136, Ex. 3.

Plaintiffs' labeling claims stand independent of the efficacy issues raised by the Defendants. And, contrary to Defendants' view, consumers can be misled by dilution levels even if the Product is thought to be effective by the consumer. This is demonstrated by the testimony of Plaintiffs Sisti and Allen (Marron Decl., Ex. 2 at 66, Ex. 4 at 89, 98), and confirmed by *Kwikset Corp. v. Sup. Ct.* ["*Kwikset*"], 51 Cal.4th 310 (2011). There, the court held that even though the products (locksets) functioned in the manner expected by the consumer, selling the locksets with a designation "Made in U.S.A.," when they were not, was sufficient to state a claim for deception under the Unfair Competition Law (Bus. & Prof. Code § 17200, "UCL") and False Advertising Law (Bus. & Prof. Code § 17500, "FAL"). *Kwikset*, 51 Cal.4th at 888-93. *See also In re Tobacco II Cases* ("*Tobacco II*"), 46 Cal.4th 298, 312 (2009) (the UCL and FAL only require a showing that "members of the public are likely to be deceived").[6]

## IV.   CALIFORNIA LAW SHOULD BE APPLIED TO A NATIONWIDE OR MULTI-STATE CLASS

### A. *Mazza* does not Preclude Applying California Law to a Nationwide Class

This Court has stated: "*Mazza* did *not* hold [] that where an out-of-state plaintiff claims to have been deceived or harmed as a result of misrepresentations or omissions received outside of California, that plaintiff's consumer protection claims must be brought under that plaintiff's own state laws. [] In other words, *Mazza* merely precludes application of California law to class members from states whose consumer protection laws differ *materially* from California's. It does not categorically rule out application of California law to out-of-state class members." *Allen v. Hyland's, Inc.*, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th

---

[6] Defendants also claim they are not involved in placement of their products on retailers' shelves and cannot be liable for deceiving the public by such placement. Le Decl., ¶ 8. That statement is at odds with Plaintiffs' evidence. Dkt. No. 60-3, Ex. 6. Whether Defendants were involved or not can be decided by common sources of proof.

Cir. 2012)).

Here, the Court can certify a nationwide class applying California law to the entire class because (i) Defendants' contacts within the state are substantial (location of Defendants' headquarters, state of Hyland's incorporation, and site of all advertising and marketing decisions), (ii) a significant percentage of the Class resides here (Dkt. No. 78-5, p. 31 [9% of Hyland's survey respondents from California, 33% more than the next highest state, Florida, at 6%]), and (iii) the misrepresentations and omissions emanate from California. *Parkinson,* 258 F.R.D. at 598 ("sufficient state contacts" exist for applying California law to nonresident class members "where defendant did business in California, had its principal offices in California, a significant number of plaintiffs resided in California, and defendants' agents who prepared advertising and other misrepresentations at issue in the litigation were located in the state"" (citing *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal.App.3d 605, 612-13 (1987)); Mot. 3:9-5:7.[7]

Defendants do not dispute that all advertising decisions are made here.   *See Parkinson,* 258 F.R.D. at 589; Dkt. No. 78-5 at p. 31; Dkt. No. 76 at 2:7-21, 6:10-7:7.

**B.   Once Plaintiffs Show the Application of California Law to A Nationwide Class is Constitutional, the Burden Shifts to Defendants to Show Otherwise**

Application of California's consumer protection statutes to a nationwide class is constitutionally permissible even after *Mazza,* when a defendant fails to meet its burden of proving that the laws of another state should apply.   *Bruno v. Eckhart Corp.*, 2012 WL 752090, at *7 (C.D. Cal. Mar. 6, 2012).   Plaintiffs have shown that the class claims have significant contact or significant aggregation of contacts with California, such that the application of California law to the entire class does not violate Due Process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); Mot. 3-7.

---

[7] Alternatively, the Court can certify a multi-state class of purchasers from California, Georgia, and Florida and apply California law, because California law does not materially differ from those state's laws. *See Allen,* 2012 WL 1656750, at *2; Mot. 5:8-7:13.

---

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

In *Keegan v. Am. Honda Motor Co., Inc.,* No. 10-09508, 2012 WL 2250040, at *29 (C.D. Cal. June 12, 2012), the defendant conducted a substantial amount of business in California, ran its nationwide operations from California and had customer service and technical personnel in California. Those connections were sufficient for the court to find that defendants' decisions regarding the cars at issue were at least partially made in California. *Id.* The court thus concluded that plaintiffs established that the application of California law to out-of-state residents was constitutional. *Id.* at *30. *See also Wang v. OCZ Tech. Grp., Inc.,* 276 F.R.D. 618, 630 (N.D. Cal. 2011) (applying California law where misleading marketing, advertising, and product information were conceived, reviewed, approved or controlled from defendant's California headquarters).

Here, Defendants' contacts with California are even stronger than in *Keegan.* Hyland's is incorporated in California, both Defendants have their main offices in Los Angeles and all important documents and witnesses are located in California. Mot. 4-5. California is the center of Defendants' operations, and they identify Los Angeles as their location on each Product package. *Id.* Clearly Defendants' advertising decisions are made here. Since the conduct complained of emanates from California, the application of California law to a nationwide class would not offend any class members' due process rights. *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 485 (N.D. Cal. 2011) (applying California law to nationwide class was not arbitrary or unfair where defendant was incorporated in California, and had its principal place of business and headquarters in California because "consumers who purchase an Acer notebook would have some expectation that California law would apply to any claims arising from alleged defects"); *Brazil v. Dell, Inc.,* No. 07-1700, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010).

Once Plaintiffs make this showing, the burden *shifts to Defendants* to demonstrate that another state(s) laws should apply. *Wash. Mut. Bank, FA v. Super. Ct.,* 24 Cal.4th 906, 921 (2001); *Bruno v. Eckhart Corp., supra,* 2012 WL 752090, at *4 (California's

10

governmental interest test places the burden on the *defendant* to show that another state's law should apply; *Mazza* did not and could not re-assign this burden to the plaintiffs).

### C. Defendants Did Not Conduct The Required Choice-Of-Law Analysis

Defendants were required to conduct a three-prong governmental interest test to show: (1) whether the relevant law of each of the potentially affected jurisdictions as to the particular issue in question is the same or different; (2) each jurisdiction's interest in the application of its own law under the circumstances of this case so as to determine whether a true conflict exists; and (3) the nature and strength of the interest of each jurisdiction in applying its own law to assess which state's interest would be more impaired if subordinated to the other. *Mazza,* 666 F.3d at 590.

Defendants failed to meet their burden. Instead of discussing how various consumer protections laws, (including California, Georgia and Florida) allegedly differ, Defendants simply submit a chart of consumer laws of 50 states and then recite *Mazza*'s list of elements of consumer protection laws that are allegedly different. Opp'n 10. Defendants cannot "substitute *Mazza*'s holding in lieu of Defendants' own careful analysis of choice of law rules as applied to [this] case." *Bruno v. Eckhart*, 2012 WL 752090, at *6.

Defendants then simply argue in one paragraph that the state where a purchase was made has an interest in setting a balance between protecting consumers and attracting foreign businesses. Opp'n 10. And, Defendants cite *Mazza* for the proposition that the claims must be brought under the laws of the state where class members purchased the products. Opp'n 10-11. Because Hyland's has failed to meet its choice-of-law burden, California law must prevail. *Keegan*, 2012 WL 2250040, at *29, n. 121.

Defendants argue that *Mazza* is "factually indistinguishable from the present case." Opp'n 11. Not so. In *Mazza*, the court found that vehicle misrepresentations and omissions were made in a limited advertising campaign that many class members never saw. *Mazza*, 666 F.3d at 596. In contrast here, the products' packaging is standardized

1 | across the United States and every consumer who purchased a product was exposed to the
2 | same misrepresentations and omissions.

## V. <u>THE RULE 23(a) FACTORS ARE SATISFIED</u>

### A. Plaintiffs Have Met Rule 23(a)'s Commonality Requirement

Rule 23(a)'s commonality requirement serves two purposes: "(1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno,* 145 F.3d 1032, 1045 (9th Cir.1998). The commonality requirement is less rigorous than the requirements of 23(b)(3). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). The requirement is construed permissively and "all questions of fact and law need not be common to satisfy the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "The commonality requirement will be satisfied if the named plaintiffs share at least *one* question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994) (emphasis added).

Courts have found the commonality requirement satisfied in an array of cases raising a welter of claims. Commonality was found in a class of minivan owners alleging defectively designed rear liftgate latches over an eleven year period (*Hanlon, supra,* 150 F.3d at 1019-20); a class of undocumented immigrants detained during immigration proceedings for more than six months without a bond hearing even though they were each detained for different reasons and under different statutory authority (*Rodriguez v. Hayes,* 591 F.3d 1105, 1122-23 (9th Cir. 2010)); a class of auto owners alleging that vehicles suffered from an alignment geometry defect that caused tires to wear prematurely even though defendant argued the reasons for tire wear differed for each class member (*Wolin v. Jaguar Land Rover N.Am., LLC,* 617 F.3d 1168, 1172 (9th Cir. 2010)); a class of consumers who purchased over-the-counter homeopathic cold medicine for children

challenging the efficacy of the product (*Delarosa I*, 275 F.R.D. at 588-89); a class of consumers challenging defendants' representations regarding prostate health benefits of a multivitamin (*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012)); and a class of individuals stating claims against a credit reporting agency for disclosing credit reports in violation of the Fair Credit Reporting Act (*Holman v. Experian Info. Solutions, Inc.*, Case No. C-11-0180 CW, 2012 WL 1496203 at **9-10 (N. D. Cal. April 27, 2012)).

Here, the class claims all arise out of the labeling and marketing of Defendants' products which Plaintiffs allege are deceptive for at least three reasons: (1) Defendants fail to explain the dilution levels; (2) Defendants fail to inform consumers that the efficacy statements made on their labels are not approved by any regulatory body but rather are simply Defendants' creation; (3) Defendants' products are sold in over-the-counter aisles next to other non-homeopathic medicines subject to regulatory oversight thus misleading. Mot. 1-2. Each of these issues is capable of class-wide resolution and the truth or falsity "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes, supra*, 131 S.Ct. at 2551.

Whether Defendants fail to explain the dilution levels can be made based on a review of the product packaging. And, whether the failure to explain the dilution levels is deceptive is subject to class-wide proof because it will turn on an answer to the objective test of whether members of the public are likely to be deceived by the information (or lack of information) on the packaging. *Tobacco II*, 46 Cal. 4th at 312.[8] The other claims follow suit. Resolution of the question of whether Defendants' efforts to insure product placement next to non-homeopathic medicines caused consumers to be deceived as to the actual nature of the product and whether consumers have been deceived by the failure to inform them that the efficacy statements are merely the product of creative writing by

---

[8] As described in the Krosnick Declaration, filed concurrently, proper surveys can be conducted to assess the impact of labeling information on consumers. Krosnick Decl., ¶¶ 14-30, 86.

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

Defendants' marketing staff, are questions susceptible to class-wide proof.

Defendants claim, incorrectly, that there is not a single question capable of one answer for the entire class. Defts' Mem., p. 12. They argue that the 12 sets of ingredients, 12 different labels and 12 sets of symptoms create issues incapable of being answered by single answer. Defendants are wrong. The trier of fact can decide whether the failure to explain the dilution levels on any of the products (which all use the same nomenclature for the alleged strength of the "active ingredients") is deceptive no matter which ingredient, product or symptom is at issue. And deceiving consumers into purchasing a product based on its shelf placement does not differ by label, product or symptom, nor does resolution of Defendants' failure to disclose the lack of any regulatory oversight of their representations regarding the products' efficacy.

Rather than confront these common factual issues, or the shared legal issues that derive from the statutory and warranty claims, Defendants argue that Plaintiffs' claims are solely predicated on a determination of whether the products are efficacious. Opp'n 13-16. From that flawed presumption, they leap to a lengthy discussion of the testimony of various naturopathic physicians and medical doctors who employ homeopathic practices. Defendants' intent in presenting this testimony is to show that this case will devolve into a multitude of individual issues. However, if anything, the testimony demonstrates the opposite. Each expert testifies that homeopathic treatments are efficacious and certain claim they recommend Defendants' products to their patients. Johnson Decl., ¶ 6; Merizalde Decl., ¶¶ 6-14; Punzo Decl., ¶¶ 7-10; Rowe Decl., ¶ 7. One of Defendants' purported experts presents detailed testimony on the nature of homeopathic products and testifies as to the efficacy of the products based on an analysis of the dilution levels. Bell Decl., ¶¶ 9-21. Another, testifies as to the nature of homeopathic products and the underlying chemical processes that purportedly render the products effective, and he concludes his declaration by conceding that the efficacy of the products is susceptible to

14

common proof.  Fisher Decl., ¶24 ("[i]n order to determine whether, for example, Hyland's Calms Forté has been falsely or misleadingly represented to provide temporary relief of simple nervous tension and sleeplessness, one needs to evaluate the ingredients in that product, and whether there is evidence to demonstrate that the ingredients do not provide such relief").  Dr. Fisher's testimony is precisely the type of expert evidence presented in claims brought by the Federal Trade Commission arising from false advertising.  See, e.g., *Fed. Trade Commission v. Direct Mktg. Concepts, Inc.*, 569 F.Supp.2d 289, 298-304 (D. Mass. 2008) (experts presented by the FTC and defendant to show the lack of and the existence of substantiation as to the health claims regarding herbal dietary supplements relied on by the court to resolve the false advertising claims).

Defendants also argue that reliance defeats certification.  Opp'n 16-17.  Their argument fails on many fronts.  First, as to the UCL and FAL claims, Plaintiffs need only present evidence as to the named Plaintiffs' reliance thus eliminating the need to prove reliance as to absent class members.  *Tobacco II,* 46 Cal.4th at 306.[9]  Second, "to state a claim under either the UCL or [FAL], based on false advertising or promotional practices, 'it is necessary only to show that "members of the public are likely to be deceived,"'" *Kasky v.  Nike, Inc.*, 27 Cal.4th 939, 951 (2002), eliminating any need to prove reliance.  Third, there is a presumption of reliance under a CLRA claim where, as here, there have been material misrepresentations or omissions.  *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal.App.4th 1282, 1292-93 (2002); *McAdams v. Mornier, Inc.*, 182 Cal.App.4th 174, 183-84 (2010).  And, fourth, reliance is not an element of any of Plaintiffs' warranty claims.[10]

[9]   Claims under Georgia and Florida law do not require a showing of reliance.  *See, e.g., Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) ("a plaintiff need not allege reliance on an allegedly false statement to recover damages under [Florida's Deceptive & Unfair Trade Practices Act]); *Energy Four, Inc. v. Dornier Medical Sys., Inc.,* 765 F.Supp. 724, 730 (N.D. Ga. 1991) ("A party need not demonstrate actual confusion or misunderstanding to prevail under" Georgia's consumer protection statute).

[10]   Defendants' effort to bolster their reliance argument on a flawed survey they conducted in April 2012 is misplaced.  Opp'n 16-17.  As explained in the Krosnick Declaration, Defendants' survey fails on many fronts to conform with best practices in the design and

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

Defendants' arguments that Plaintiffs cannot state a "common" basis for monetary relief are entirely lacking in merit. Obtuse though their argument be, it appears to be predicated on Defendants' claim that differences in the price that class members paid for the products will necessarily devolve into individual issues of damages. Opp'n 18-19. But, differences in the amount that a class member paid do not create insurmountable hurdles that warrant denial of class certification. *Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1094 (9th Cir. 2010) ("'[t]he amount of damages is invariably an individual question and does not defeat class action treatment,'" citing *Blackie, supra,* 524 F.2d 905). Further, both the UCL and the FAL authorize restitution of monies gained through practices that violate these statutes. Bus. & Prof. Code §§ 17203 and 17535. Neither statute requires proof of reliance as a prerequisite to restitution. *People v. Toomey,*157 Cal.App.3d 1, 25-26 (1984). Thus, if Plaintiffs prove that Defendants' conduct violate the UCL or FAL, the Court could order class-wide restitution as to Defendants' products. This is the common basis for relief that Defendants incorrectly claim is lacking.

## B. The Class Plaintiffs' Claims Are Typical of the Absent Class Members

The typicality requirement is a "permissive standard." *In re Juniper Networks Sec. Litig,* 264 F.R.D. 584, 589 (N.D. Cal. 2009). The class representatives' claims need not be "substantially identical" to the claims of the absent class members, but merely "reasonably co-extensive." *Hanlon, supra,* 150 F.3d at 1020.

In challenging Plaintiffs' typicality, Defendants focus largely on differences in the medical conditions that led Plaintiffs to seek relief. Opp'n 20-21. Naturally, Plaintiffs' medical conditions were not identical. But for typicality purposes, the important point is

implementation of a valid survey and is unreliable. And, Defendants' attack on Plaintiffs' reasons for purchasing the products is equally flawed. Plaintiffs each testified that they purchased the products based on a review of the labels. Marron Decl., Ex. 1 at 53:4-5, Ex. 2 at 41:10 to 42:9, Ex. 3 at 31:3-11, 40:6-8 (online representations), 51:18-23 (Defend Cold & Cough), 52:8-16, 51:21-23, 68:9-20 (Migraine Relief), 86:1-2, 88:15-22 (Calms Forte), Ex. 4 at 51:24 to 52:1, 60:9-25, 79:18-22, Ex. 5 at 61:9-22, 63:2-4, 69:8-25, Ex. 6 at 42:9-13, 55:9 to 56:18, Ex. 7 at 30:19 to 31:24. A showing that the labels omit and/or misrepresent material facts is sufficient to prove deception.

16

that Plaintiffs each believed, based on the labels, that the products would be effective in treating the conditions for which they were sold.  Marron Decl., Ex. 3 (Rodriguez) at 51:18-23 ("Q.  Why was it that you picked the Defend Cough and Cold product…as opposed to anything else that was on the shelf?  A. The labeling had the ingredients and the description of fixing my symptoms at that time."), Ex. 5 (Nigh) at 70:14-19 ("Now "Teething Tablets," what about that affected your decision to buy this product?  A. Teething Tablets is something to relieve teething of children.  So that statement right there, "Teething Tablets," I bought them based on the packaging."), Ex. 6 (Smith) at 31:18-21 ("Q.  Can you tell us what prompted you to get the 'Leg Cramps' product?  A.  I saw the box in the store and read that it would relax the leg cramps, relax the muscles."), Ex. 7 (Xu) at 61:18-23 ("Yeah, the box said allergy relief, I believe, and I believe I had something similar to allergies, some kind of allergy symptoms.  I read it on the box and I bought it."), Ex. 2 (Sisti) at 41:22-42:1 ("when you're looking at a package you first see that it's homeopathic.  Then you look to see what remedies or symptoms that particular product is going to help."), Ex. 1 (Xenos) at 53:2-7 ("Q.  How did you decide to purchase the four [products] that you did purchase?  A. Well, the titles are pretty self-explanatory or the labels.  So, you know, if it's called teething tablets, it's something I'm going to use for teething or migraine I would use it for that."), Ex. 4 (Allen) at 78:25-79:5 (based on "what is said on the package," "[Calms Forté] seemed to be a product that would work – would work for us for calming us down, helping us sleep.")

Plaintiffs' claims are typical because they are "based on conduct which is not unique to the named plaintiffs," namely, the manner in which Defendants' marketed their products to the public. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Typicality might be undermined if there were a "unique defense"—applicable only to one or more of the Plaintiffs—that threatened to become the focus of the litigation. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  However, Defendants

17

do not even suggest the existence of a "unique defense" here.  Opp'n 20-21.  To the extent Defendants press a statute of limitations defense as to particular Plaintiffs, the defense is unlikely to become the focus of the litigation.  *McDonough v. Toys R Us, Inc.*, 638 F.Supp.2d 461, 476 (E.D. Pa. 2009) ("While the statute of limitations defense may ultimately affect an individual's right to recover, it does not affect the presentation of the liability issues and there is no reason to believe that any of the named plaintiffs will be distracted by this relatively unique personal defense." [internal citations omitted].)  Since Plaintiffs' claims are similar, if not identical, to the class, and no "unique defense" exists, the typicality requirement is satisfied.

## C. Plaintiffs have Amply Demonstrated Their Adequacy

Defendants challenge the adequacy requirement on two fronts.  First they argue the class representatives are inadequate because they are "mere strawmen, acting at the direction of their counsel."  Opp'n 22.  Defendants then contest counsels' adequacy claiming there is an alleged inherent conflict between counsel and the class "when it comes to earning a fee." *Id.* 23.  Both challenges lack merit, factually and legally.

Adequacy of representation involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Keegan supra*, 2012 WL 2250040 at *14 (citing *Hanlon v. Chrysler Corp.*, *supra*, 150 F.3d at 1020).  Defendants' objections to Plaintiffs' adequacy are based on their claim that (i) Plaintiffs were "solicited by counsel;" (ii) certain Plaintiffs thought they were seeking a rebate for products; and (iii) certain Plaintiffs allegedly did not review or verify the complaint before filing.  Opp'n 22.

Defendants' argument that Plaintiffs were allegedly "solicited by counsel" is simply wrong.  Each Plaintiff testified that they or their spouse in the course of on-line research located a website that provides updates on class action litigation.  Marron Decl., Ex. 1 at

85:1-86:17 (Xenos), Ex. 2 at 74:13-75:24, 79:7 (Sisti), Ex. 3 at 75:16-25 (Rodriguez), Ex. 4 at 102:23-107:15 (Allen), Ex. 5 at 90:4-92:17 (Nigh), Ex. 6 at 69:20-72:8 (Smith), Ex. 7 at 68:11-73:8 (Xu).    Plaintiffs each independently submitted an inquiry online to obtain further information from an attorney and were then contacted by Plaintiffs' counsel. *Id.* There is nothing untoward about their inquiries.[11]   Defendants' only other argument is that certain Plaintiffs purportedly did not review the complaint prior to it being filed.   But, as long as the individual understands the nature of the claims, is aware of his or her duties as a class representative, and has no disabling conflicts, the courts have found them to be adequate.    *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 530 (C.D. Cal. 2011) (plaintiff found adequate even though she first met personally with her attorneys the day before her deposition because she had communications with counsel prior to complaint being filed, she participated in a lengthy deposition, during which she demonstrated familiarity with the issues in the case).[12]

What is patently clear from Defendants' opposition is that despite cross-examining Plaintiffs at length, Defendants were unable to elicit any evidence of a conflict between any Plaintiff and the Class.   Moreover, Defendants cannot point to any evidence that Plaintiffs are disengaged from this litigation, or unwilling to prosecute the claims, or that they will not act in the classes' best interests.   Plaintiffs have each demonstrated a keen

---

[11] There is no prohibition against attorney advertising. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977).   Individuals who respond to a law firm's on-line questionnaire regarding potential class actions are prospective clients seeking information about their rights. *Barton v. U.S. District Court*, 410 F.3d 1104 (9th Cir. 2005).   Defendants' claim that Plaintiffs thought they were seeking a rebate is a mischaracterization of their testimony.   Marron Decl., Ex. 1 at 85:1-86:17 (Xenos), Ex. 2 at 74:13-75:24, 79:7 (Sisti), Ex. 3 at 73:16-25 (Rodriguez), Ex. 4 at 102:23-107:15 (Allen), Ex. 5 at 90:4-92:17 (Nigh), Ex. 6 at 69:20-72:8 (Smith), Ex. 7 at 68:11-73:8 (Xu).

[12] Defendants' argument that certain plaintiffs are inadequate because they were not contacted until after Defendants filed their motion to dismiss makes little sense.   Opp'n 22. These Plaintiffs were added in the SAC, after the Court ruled on the motion to dismiss. Opp'n 23.   Minor errors in the SAC as to the exact products Plaintiffs purchased do not render them inadequate. *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 266 (D. Mass. 2005) (inconsistencies as to dates of stock purchases in complaint and deposition attributed to memory lapses were insufficient to render plaintiff inadequate).

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

interest in acting as class representatives by, among other things, taking time off from work and families and driving or flying many hours and long distances to have their depositions taken by the Defendants.[13]  Plaintiffs understand that they are acting on behalf of a class, and understand the nature of the claims.[14]  And, they voluntarily undertook this litigation to remedy what they describe as deception by the Defendants.[15]

Defendants' complaints as to Plaintiffs' alleged inadequacies are make weight and call to mind the Seventh Circuit's comments in *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 895 (7th Cir. 1981): "It is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." (Internal citation omitted.)

Defendants' objections as to Plaintiffs' counsel are founded on speculation and innuendo and are lacking in merit.  Defendants' initial objection turns on the unfounded argument, addressed above, that Plaintiffs' counsel purportedly solicited Plaintiffs. Defendants then maintain that counsel failed to adequately investigate facts because, as to certain Plaintiffs, the complaint does not identify all products they purchased.  But, these discrepancies are readily explained by memory lapses and recall after seeing additional

---

[13]  The distances and times Plaintiffs expended in making themselves available on short notice for their depositions are compelling, including 4 hour drives, flights from Georgia to Florida and from San Jose to Los Angeles.  Marron Decl., ¶ 13.

[14]  Marron Decl., Ex. 1 at 91:13-25, Ex. 2 at 42:10-23; Ex.3 at 80:23-81:14, 93:2-5; Ex. 4 101:4-9, 103:17-105:12, 105:21-107:21, 108:19-111:8, 112:3-5; Ex. 5 89:12-91:25, Ex. 6 66:16-68:3, Ex. 7 64:22-65:7, 68:11-73:22.

[15]  *See* n. 14, *supra.*

20

product labels.[16]  Marron Decl., Ex. 2 at 46:10-47:6

Courts are unwilling to brand an attorney inadequate simply because she may have an interest in recovering a fee.  *Borcherding-Dittloff*, 185 F.R.D. 558, 564 (W.D. Wis. 1999) ("that counsel may be using the act as a fee generating mechanism does not reflect on his ability to adequately represent the interests of the entire class"); *Thompson v. City of Chicago*, No. 01 C 6916, 2002 WL 1303138, at *6 (N.D. Ill June 12, 2002) ("[t]he mere fact that the lawyer representing the class expects to be paid if his clients are ultimately victorious does not establish a conflict between the lawyer and the class").  *See also Davis v. So. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 678-79 (S.D. Fla. 1993).[17]

## VI.   THE RULE 23(b) FACTORS ARE SATISFIED

### A. Common Issues Predominate

The predominance inquiry looks to the cohesiveness of the class – whether common legal and factual questions appear more significant than individual questions.  *Hanlon*, 150 F.3d at 1022.  Plaintiffs' claims are cohesive with the class because the central legal and factual issues are common to all.  Defendants challenge predominance on two grounds: disparate factual issues and conflict of laws.  Both challenges are easily dispelled.

### 1. Plaintiffs' Legal and Factual Theories of Recovery Depend on Uniform Principles, Applicable to Each of the Products

Plaintiffs allege, among other things, omissions of material fact:  (i) every label claims the Product contains "active ingredients," but the dilution level of those ingredients is so severe, that there are no "active ingredients"; (ii) Defendants purportedly identify the quantity of each ingredient by the incomprehensible dilution designator, "X," but they

---

[16]  There is only one plaintiff who did not purchase the product identified in the SAC. Hutchinson (who has since been withdrawn) purchased the child's formula ("Nighttime Cold & Cough 4 Kids") and not the adult ("Defend Cold & Cough") identified in the SAC. His confusion because of the name similarity was evident during his deposition and explains the error.  Marron Decl., Ex 8. 26:9-27:13; 34:14-35:15.

[17]  Defendants make no credible challenge to numerosity which is clearly satisfied here.

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

never explain what "X" means; (iii) Defendants do not disclose the absence of any regulatory body reviewing or approving the product labels or that Defendants are unilaterally free to designate a product for any ailment; and (iv) Defendants do not disclose that the FDA does not review the products for effectiveness or safety.[18]  Plaintiffs also allege that Defendants place their Products on store shelves next to other OTC products that *do* bear FDA-approved labels thus adding to consumer deception.  These factual allegations and the underlying legal theories are cohesive amongst the class and products and different proof is not necessary for each product or class member.

Defendants argue otherwise relying on a survey conducted by Actionable Research ("AR Survey").  The AR Survey does not affect predominance because (i) there is no requirement that the labeling statements be the sole, or even primary choice for why a consumer purchase a product; and (ii) the survey is flawed and unreliable.  *See* Krosnick Decl., ¶ 34 ( "the design and implementation and interpretation of [the AR Survey] do not conform to best practices for this type of research and therefore should not be considered reliable in these proceedings").  Moreover, Dr. Krosnick explains that the AR Survey is of no probative value because people are generally unable to identify a "primary" reason for their actions. *Id.,* ¶¶ 38-56.[19]

Also, Defendants misstate the law—there does not need to be a single reason why consumers purchase Defendants' products.  "The fact that a purchaser …considered a number of other factors in making this decision to purchase does not render him subject to a unique defense, so long as he substantially or significantly relied upon…the challenged statements…"  *In re THQ, Inc. Sec. Litig.*, No. 00-1783, 2002 WL 1832145 at *4 (C.D.

---

[18]  The FDA disclaims any knowledge of scientific evidence supporting homeopathy as effective.  RJN, Ex. 1.

[19]  The AR Survey "violate[d] basic principles of optimal design," by using non-mutually exclusive answers and industry jargon.  The survey lack of adequate sampling, suffered from a poor 1% response rate, made inferences unsupported by the responses, and identified a primary reason of "prior positive experience" when less than one-third of respondents selected that reason.  Krosnick Decl., ¶¶ 57-68.

Cal. Mar. 22, 2002) (citing *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 195 (S.D. N.Y. 1985)).   Here, even if the Plaintiffs were influenced by other factors, Defendants' advertising and packaging were a substantial reason for Plaintiffs purchases.

Common evidence also predominates because "advertisements [are] either misleading or not." *Johns v. Bayer Corp.*, supra, 280 F.R.D. 551.[20]  And, "the primary evidence in a false advertising case is the advertising itself." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (quoting *Brockey v. Moore*, 107 Cal.App.4th 86, 100 (2003).  For example, Plaintiffs claim that the "X" dilution marker is deceptive, and every Product contains such designation.  Whether the X relates to a dilution level of 3, 6, 9, etc., is irrelevant because the X itself is deceptive.  Plaintiffs Sisti and Allen both testified that they thought "X" on the Product packaging meant the ingredient was intensified in the Product, not more diluted.  Marron Decl., Ex. 2 at 66, Ex. 4 at 94:22-95:10; 101:4-9.

Each member of the Class, by definition, has suffered a common injury (lost purchase price).  *See* Dkt. No. 80, (finding the named Plaintiffs adequately alleged "economic injury resulting from Defendants' allegedly false or misleading advertising") (citing *Kwikset, supra,* 51 Cal. 4th at 323)).  And, reliance and causation do not pose predominance problems for the CLRA claim because causation is shown through the materiality of the misrepresentations.  If materiality exists, reliance and causation may be presumed for the entire Class. *See Parkinson*, 258 F.R.D. at 566 (citing *Mass. Mut. Life Ins. Co. v. Super. Ct., supra,* 97 Cal.App.4th at 1292); *Occidental Land, Inc. v. Super. Ct.*, 18 Cal.3d 355, 363 (1976).  Further, violations of the UCL may be demonstrated without individualized proof of reliance, causation or deception; Plaintiffs merely need to show that members of the public are likely to be deceived, an objective standard subject to common proof. *Tobacco II*, *supra,* 46 Cal.4th at 312.

---

[20] The internal page citations for the *Johns* case are not yet available on Westlaw.

23

## 2. Variances in State Law do not Predominate

Defendants cite *four* post-*Mazza* cases in which certification of nationwide classes under California's consumer protection laws was denied.  Opp'n 25-26.  These cases are factually distinguishable.  In *Ralston v. Mortgage Investors Group*, the court held that the UCL could not be applied to out-of-state class members, because almost half of the loans were obtained outside of California.  No. 08-cv-536, 2012 WL 1094633, at *3-4 (N.D. Cal. Mar. 30, 2012).  Just like *Mazza*, the *Ralston* court's decision was *only* based on the *facts before it*.  *Ralston*, 2012 WL 1094633, at *4.  Here, this case involves deceptive advertising that was created in and disseminated from California.  Nearly three quarters of Plaintiffs' purchases were made in California and a significant number of the class members reside here.  *Badella v. Deniro Marketing, LLC*, 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011) ("proof that the alleged misrepresentations emanated from California," such as "the businesses are run out of California . . . marketing policies and decisions regarding the alleged misrepresentations emanated from the California;" led to a finding that "extraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California"); *Parkinson*, 258 F.R.D. at 598 (same).  Moreover, there is a vast difference between the home loans in *Ralston* and Defendants' products.[21]

Defendants reliance on *Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-2176, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012), is misplaced. There was no California plaintiff in *Kowalsky*, (*id.*, *5), the plaintiff never disputed *Mazza's* application but conceded that it was controlling.  *Id.* at *7.  And, in *Rikos v. The Procter & Gamble Co.*, 11-cv-226, 2012 WL 641946, (S.D. Ohio, Feb. 28, 2012), the court held that CLRA and UCL claims could not be applied to a nationwide class because a binding Sixth Circuit decision mandated otherwise.  Further, the defendant in *Rikos* was headquartered and did business in Ohio and the plaintiff "ma[de] no allegations that any of the relevant marketing, packaging, or

---

[21] Moreover, the court in *Ralston* did certify a class of California mortgage purchasers. See, e.g. U.S. District Court Northern District of Cal. Case No. 08-cv-536, Dkt. No. 368).

1    product development decisions about [defendants' product] were made in California." *Id.*

2    at *4. In *Gianino v. Alacer Corp.*, 2012 WL 724322 (C.D. Cal. Feb. 27, 2012), defendants

3    conducted the necessary analysis of the consumer protection laws of all U.S. jurisdictions

4    to confirm the disabling conflicts in that case. *Id.* at *8; *see also* Marron Decl., Ex. 9, at

5    34-37 (Alacer's Opp'n to Mot. for Class Cert., comparing the states' consumer protection

6    laws element by element). Here, Defendants did not analyze the consumer protection laws

7    of any state *as applied to the facts of this case. See supra*, 10-12. *Bruno v. Eckhart Corp.*,

8    *supra,* 2012 WL 752090, at *6. For these and the reasons stated above, choice of law

9    issues do not negate a finding that common issues of fact and law predominate here.[22]

10

11   **B. Class Treatment is Superior to Other Alternatives**

12       Rule 23(b)(3)'s superiority inquiry involves deciding whether the objective of the

13   class action procedure will be achieved in the particular case, and a comparison of

14   alternative mechanisms for dispute resolution.    *Hanlon, supra,* 150 F.3d at 1023.

15   Defendants argue that class treatment is not superior because (i) a "myriad of [individual]

16   factual issues" exist; (ii) "the laws of multiple states must be applied;" and (iii)

17   Defendants' existing "complaint system" is superior to the class action device. Opp'n 27-

18   30. We show below why Defendants are wrong.

19

20

21

22   [22]    The FAL makes unlawful the sale of personal property, "with intent directly or
23   indirectly . . . to make or disseminate or cause to be made or disseminated *from this state*
     *before the public in any state*, in any . . . advertising device, . . . any statement . . . which
24   is untrue or misleading."    Bus. & Prof. Code § 17500 (emphasis added).    The UCL
     incorporates the FAL's unlawful acts. Bus. & Prof. Code § 17200 ("unfair competition
25   shall mean and include any unlawful, unfair or fraudulent business act or practice and
     unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1
26   (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions
     Code").    The FAL prohibits dissemination to the public, through any means whatsoever,
27   including *the Internet*, of false or misleading statements in order to induce sales of
     personal property. Bus. & Prof. § 17500. Defendants' use of the Internet clearly reaches
28   past California's borders.

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL

1. **This case presents essentially one factual issue – is Defendants' advertising false and/or deceptive**

The fundamental inquiry here is whether certain or all aspects of Defendants' labeling is false or deceptive. "[T]hese predominant questions are binary -- advertisements [are] either misleading or not, and [d]efendant's [] claim is either true or false." *Johns v. Bayer Corp.*, *supra*, 280 F.R.D. 551. Each member of the class purchased the products for the same underlying reason, to alleviate a health issue. There can be no dispute as to this since there is no other reason to buy the product. Plaintiffs' primary theories of relief do not depend on which product was purchased since all of the products claim to have active ingredients; bear the confusing dilution denominator of "X"; are shelved next to OTC products bearing FDA-approved monographs; and omit the same material facts (what "X" means in homeopathic products, that the products have not been evaluated by the FDA for efficacy, or that the labeling has not been approved). Thus, Plaintiffs can prove class-wide deception. *See, e.g.,* Krosnick Decl., ¶¶ 70-86.

Defendants attempt to refute the foregoing by arguing that hearsay statements from the Amazon.com website and declarations of homeopathic doctors (many of who admit they never prescribe Defendants' products to their patients), demonstrate that "there are many members of the putative class for whom these products do work." Opp'n 28. Defendants' argument misses the point. The question today is not whether Defendants' products work or don't work nor is it whether the label is deceptive or not. The question is whether Plaintiffs' claims can be resolved through common sources of proof.

Here, Defendants' own experts and Plaintiffs' rebuttal expert, Noel R. Rose, M.D., Ph.D., confirm that issues of effectiveness can be resolved class wide.[23] And, issues as to

---

[23] Defendants' experts cite to studies demonstrating the effectiveness of homeopathic products. Bell Decl., ¶ 9; Fisher Decl., ¶¶ 11-23. In contrast, Dr. Rose in rebuttal cites to studies that report that homeopathic products are not effective and any claimed effectiveness is simply a "placebo effect." Rose Decl., ¶¶ 10-14. If the trier of fact decides based on the testimony of dueling experts that the products are nothing but placebos, Plaintiffs will have advanced their deceptive advertising or labeling claims since nowhere on the products do Defendants represent that they are nothing more than

26

deceptive labeling or marketing (i.e. the failure to disclose dilution levels, failure to disclose the lack of regulatory oversight, misrepresentations as to active ingredients) also can be resolved class wide. Krosnick Decl., ¶¶ 70-86.[24]

The application of California law to a national class, which we submit is appropriate here, will obviate any issues regarding alleged conflicts in varying state laws. Alternatively, if the Court determines to only certify classes for California, Georgia and Florida, since the legal elements of these state's laws are the same, there are no conflicts. Common legal and factual questions are present and predominate under either scenario.

## 2. Defendants' complaint system is not superior to a class action

Defendants argue they have an adequate system in place for refunding dissatisfied consumers. But, Defendants do not have a "complaint system." Opp'n 30:1. Despite, their representation that there is a "money-back-guarantee" on the Products' packaging, *id.* 30:19, there is no such guarantee. Resendes Decl. (Dkt. No. 60-3), Ex. 4. And, there are no instructions on Defendants' web site as to how to lodge a complaint or request a refund. Marron Decl., Ex. 10. There simply is no complaint system.

In deciding whether class treatment is superior, courts can consider whether there are alternative procedures for handling a controversy, if the alternative is superior to class treatment. *Hanlon*, 150 F.3d at 1023; *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 435, 445-46 (2000). But, non-adjudicatory alternatives are not a viable alternative. *In Re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 749-750 (7th Cir. 2011). Further, the benefits are "not measured by reference to individual recoveries alone;" courts also consider (i) "the therapeutic effect upon those sellers who indulge in fraudulent practices," (ii) curtailing

---

placebos. The effect of the failure to disclose such information can be assessed through a properly conducted survey. Krosnick Decl., ¶¶ 70-86.

[24] Actual falsity is not a necessary element of Plaintiffs' claims. Rather, Plaintiffs need only prove that the advertising, even if true, is likely to deceive an average consumer. *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009).

27

1  unfair business competition that results from misrepresentations, and (iii) reducing

2  multiple litigation. *Linder*, 23 Cal.4th at 445.

3      But, even if non-adjudicatory alternatives should be considered, which they should

4  not be, in the present case there is no alternative that is superior to this class action.

5  Compensation under Defendants' system is apparently only provided if consumers take the

6  time to write and request a refund.  Opp'n 30:15 (refunds are only given "upon request").

7  Since, among other things, Plaintiffs allege that Defendants knowingly engage in

8  deceptive advertising and consumers are unaware of the deception, the likelihood of

9  seeking a refund is significantly diminished.

10     The only other alternative is for consumers to sue individually.  But the limited

11 monetary amount at issue effectively eliminates this option.  Thus, absent classwide relief,

12 the deception will continue. *Linder*, 23 Cal. 4th at 446 ("we have affirmed the principle

13 that defendants should not profit from their wrongdoing 'simply because their conduct

14 harmed large numbers of people in small amounts instead of small numbers of people in

15 large amounts'") (citing *State of Cal. v. Levi Strauss & Co.*, 41 Cal. 3d 460, 472 (1986)).

16

17     Defendants' reliance on *In re Aqua Dots Prods. Liab. Lit.*, 270 F.R.D. 377 (N.D. Ill.

18 2010) is misplaced.  There, the court held that, among other things, the existence of a

19 recall campaign for one million defective children's bead kits that caused serious injuries

20 was sufficient to defeat certification of a nationwide class and fourteen different subclasses

21 from various states. *Id.*, at 384-85.  On appeal, the Seventh Circuit criticized the district

22 court's ruling holding that a "recall campaign is not a form of 'adjudication,'" as that term

23 is used in Rule 23(b)(3).  *In Re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir.

24 2011).  Rather, as the court explained under Rule 23(b)(3), "adjudication" is not any

25 informal means of redressing an injury, but requires analysis of "whether a single suit

26 would handle the dispute better than multiple suits." *Id.*, 750-51.[25]

27

28 _____

[25] Although the appellate court affirmed the denial of certification in *Aqua Dots*, it did so on grounds of manageability and adequacy and not on the claimed existence of a superior

**C. The Requirements of Rule 23(b)(2) are Satisfied**

Plaintiffs also seek certification under Rule 23(b)(2) as an alternative or in addition Rule 23(b)(3). In this circuit, a class may be certified under both 23(b)(2) and 23(b)(3). *Smith v. Univ. of Wash. Law Schl.*, 233 F.3d 1188, 1196 (9th Cir. 2000).

**1. The Complaint Primarily Seeks Injunctive Relief**

"A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). "Damages are 'incidental' when they are secondary to injunctive relief - i.e. when the plaintiff's primary goal was to gain an injunction, with a secondary goal of monetary damages." *In re Syncor Erisa Litig.*, 227 F.R.D. 338, 347 (C.D. Cal. 2005).

Here, Plaintiffs' actual damages are "incidental" to injunctive relief because, among other things, Plaintiffs are limited under their UCL claim to seeking restitution, an equitable remedy. "In California, a defrauded party is ordinarily limited to recovering his out-of pocket loss." *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1240-1241 (1995) (internal quotation and citation omitted). "In fraud cases involving the 'purchase, sale or exchange of property,' the [California] Legislature has expressly provided that the 'out-of-pocket' rather than the 'benefit-of-the-bargain' measure of damages should apply." *Id.* (citing Cal. Civ. Code §§ 3343(a), (b)(1)). Thus, Plaintiffs are limited to "[a]mounts actually and reasonably expended in reliance upon the fraud." *Id.*; Civ. Code § 3343(a)(1).

While ordinarily a breach of warranty claim provides for benefit of the bargain damages (*see* U.C.C. § 2-714(2)), the benefit of the bargain here would be restitution since Plaintiffs seek recovery of their purchase price. Further, a buyer may elect to receive the price paid in lieu of benefit of the bargain damages, which translates to out-of-pocket cost.

alternative through a voluntary recall. *Id.*, 654 F.3d at 752-53.

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

U.C.C. § 2-711(1).   Thus, Plaintiffs' actual damages are limited to what they spent purchasing the products, a remedy that is effectively restitutionary.

No additional facts or individualized hearings are necessary to determine the amount of recovery for each class member, because proof of purchase, i.e. proof of harm, would entitle each class member to the same restitution, differing only by the number of packages purchased.[26]

Defendants cite *Dukes*, which held that Rule 23(b)(2) was inappropriate "when each class member would be entitled to an individualized award of monetary damages." 131 S. Ct. at 2557. *Dukes*, however, concerned discriminatory practices which, if proven, would have permitted each class member to obtain damages in the form of past wages. *Id.*  This action, in contrast, involves non-individualized damages in the form of the small purchase price for the Products.   Rule 23(b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class," thereby benefitting each Class member equally. *Dukes*, 131 S.Ct. at 2557. Here, the injunctive relief requested, in the form of disclaimers to consumers and a corrective advertising campaign, would afford relief to each member of the Class and benefit the Class and future consumers equally.

Plaintiffs' claims for restitution are also incidental because the compensation flows directly from Defendants' misrepresentations or omissions. *See Dukes*, 131 S. Ct. at 2559 (commenting favorably on *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) finding damages are incidental when they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief"). Plaintiffs seek disclaimers on the Products and a corrective advertising campaign.   This relief flows

---

[26] Punitive damages are also "incidental" to injunctive relief because they are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations." *Alliance Mortgage Co., supra,* 10 Cal.4th at 1241. Plaintiffs must first establish that Defendants are "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  A finding that Defendants knew the package labels were false will permit the finder of fact to grant not only injunctive relief but punitive damages. Punitive damages are thus incidental to the injunctive relief sought. *Delarosa I, supra,* 275 F.R.D. at 592.

1  directly from Defendants' false and deceptive advertising.

2  ## 2. Preemption is Not an Issue in this Case

3  Preemption does not apply here. *Delarosa v. Boiron, Inc.* ("*Delarosa II*"), 818

4  F.Supp.2d 1177, 1189-1190 (C.D. Cal., 2011) ("Plaintiff's claims [regarding false and

5  deceptive advertising of homeopathic products], if proven to be true, would simply require

6  [d]efendant to truthfully state its efficacy or not sell its products; such relief would not

7  impose a state requirement that is different from or in addition to, or that is otherwise not

8  identical with that of the FDCA.") (internal quotations and citations omitted).

9  ### a. The FTC oversees false or deceptive advertising of OTC products, not

10     the FDA

11  Defendants incorrectly claim that the FDA has authority over their products. But

12  the FTC is in charge of deceptive advertising for non-prescription OTC drugs. RJN, Ex. 2

13  ("The FDA does *not* oversee the advertising of [OTC] drugs. The [FTC] is responsible for

14  regulating OTC drug ads. The FDA regulates advertising only for prescription drugs.")

15  (emphasis in original); *see also* Kefauver-Harris Drug Amendments, Pub. L. No. 87-781,

16  76 Stat. 780, 788-789 (1962) (codified, in relevant part, at 21 U.S.C. § 352(n)).

17  ### b. The FDCA's regulation of homeopathic drugs is minimal

18  Very few provisions of the FDCA apply to OTC homeopathic drugs. *See* CPG §

19  400.400 (attached as Ex. N to Gurvitz Decl. (Dkt. No. 78-36), providing approximately 10

20  subsections of the FDCA and its implementing regulations (located at 21 C.F.R. § 201.1,

21  *et seq.*), combined, that apply to OTC homeopathic drugs, out of hundreds of regulations

22  that constitute the FDCA). Confronted with a similar argument, the court in *Delarosa II*,

23  recently referred to the "Quasi-Regulation of Homeopathic Drugs" in denying a motion for

24  judgment on the pleadings as to other homeopathic products, finding that the FDCA did

25  not preempt state law claims of false and deceptive advertising under either express or

26  implied preemption. 818 F.Supp.2d at 1182-1183

31

### c. *Regulation of OTC homeopathic drugs is entirely different from OTC non-homeopathic drugs*

The Homeopathic Pharmacopoeia Convention ("HPC") is not an "agency" (Opp'n 32, n. 27), but a private group that does not conduct public proceedings regarding placement of ingredients into the HPUS. This stands in stark contrast to the regulation of OTC non-homeopathic products, which carry FDA-approved monographs and "Indications of Use," that are determined after public hearings and an opportunity for public comment. *Carter v. Novartis Consumer Health, Inc.*, 582 F.Supp.2d 1271, 1275-1276 (C.D. Cal. 2008) (approved OTC cough and cold monographs were achieved after extensive independent panel review and opportunity for public notice and comment).

Defendants admit the HPUS does not list "Indications of Use" (a FDCA term for the symptoms for which the Product should be used), but instead leaves such representations up to the manufacturer. Opp'n, p. 32, n.27 (the HPUS only lists "source, composition, and preparation" *of single ingredients*, but not the Products, which are made up of multiple ingredients). Even if the Products were listed in the HPUS (which Defendants have not shown), it does not mean the Products are effective or not misbranded. *Delarosa II*, 818 F.Supp.2d at 1183.

Defendants cite to the FDA's Compliance Policy Guide ("CPG") but the CPG is not a rule or a regulation that preempts state claims. Gurvitz Decl., Ex. N. (Dkt. No. 78-36) ("The statements made in the CPG are not intended to create or confer any rights, privileges, or benefit on or for any private person, but are intended for internal guidance"). The CPG warns manufacturers that simply meeting the provisions of the HPUS *"does not establish that [a homeopathic drug] has been shown by appropriate means to be safe, effective, and not misbranded for its intended use." Id.* (emphasis added); *see also Delarosa II*, 818 F.Supp.2d at 1183 (inclusion of ingredients in the HPUS did not create preemption because "[a]lthough the HPUS describes how these ingredients are prepared

32

for homeopathic use, it does not list the drugs as fit to treat specific symptoms, ailments, or conditions. . . . Instead, the HPUS allows the practitioner or manufacturer to set forth the substance's indications for use").[27]

None of Defendants' cases support their claim of preemption because they concern prescription drugs or drug safety, neither of which is at issue here. *See, e.g., Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 647 (1973) (addressed the "grandfather clause" of the Kefauver Amendments, whereby drugs already in circulation did not need to submit a New Drug Application ("NDA") to the FDA in order to obtain premarket approval);[28] *Henley v. Food & Drug Administration*, 77 F.3d 616, 618 (2d Cir. 1996) (involved oral contraceptives, a prescription drug); *Pub. Citizen Health Research Group v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 29 (D.C. Cir. 1984) (concerned *safety* issues as to warnings on aspirin bottles for Reyes Syndrome); *Premo Pharm. Labs., Inc. v. United States*, 629 F.2d 795, 798 (2d Cir. 1980) (considering whether the prescription drug Inulase for diabetes required approval under a NDA or an ANDA (Abbreviated New Drug Application, meaning, a generic prescription drug).

### d. Section 379r of the FDCA does not preempt Plaintiffs' claims

Defendants' reliance on 21 U.S.C § 379r of the FDCA to support their preemption claim is completely misplaced. In passing 21 U.S.C. § 379r, via the Food and Drug Agency Modernization Act (Pub. L. No. 105-115, 111 Stat. 2296 (Nov. 21, 1997), "FDAMA"), Congress expressly intended to preserve state false advertising laws. In a

---

[27] Defendants also argue that a non-profit group has requested that the FDA reconsider efficacy test requirements for homeopathic drugs, and the FDA has it under advisement. Opp'n 32:9-12. These facts are irrelevant because Congress has made it clear that "Little FTC laws" are not preempted by the OTC labeling provisions of the FDCA. *See* Section d. *infra*. And, the ability to submit a citizen petition under 21 C.F.R. § 10.30 is not evidence that the FDCA preempts private causes of action for false advertising or that the FDA even has jurisdiction in this field.

[28] Homeopathic drug manufacturers do not submit NDAs. NDAs are for prescription drugs only, and require proving to the FDA that the drug is safe and effective for its marketed uses *before* the drug is marketed. *See* 21 U.S.C. § 355.

33

*Allen v. Hyland's, et al.*, Case No. 2-12 CV-1150 DMG (MANx)
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL

joint statement by the Senate and House submitted when the FDAMA was passed, the Conference Committee stated; "[t] his provision [sec. 412 of the FDAMA, which created 21 U.S.C. § 379r, et seq.] *is not intended to preempt* the application of these laws [state laws prohibiting false and misleading advertising] . . ." H.R. Rep. No. 105-399, at 91 (1997) (Conf. Rep.), available at 1997 WL 703162, *2893 (emphasis added).[29]

### 3. Primary Jurisdiction and Abstention Do Not Apply Here

Primary jurisdiction exists where resolution of an issue "has been placed by Congress within the jurisdiction of an administrative body having regulatory authority," under a comprehensive statute for a particular industry or activity, and it would require "expertise or uniformity" in administering the statute. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). Abstention is a related doctrine that applies when the judicial branch should exercise restraint from deciding an issue in deference to administrative powers that reside in another governmental branch. *Udall v. Tollman*, 380 U.S. 1, 16 (1965).

The FDA does not have comprehensive regulatory authority over OTC homeopathic drugs; does not have any regulatory authority at all regarding non-prescription drug advertising in interstate commerce (21 U.S.C. § 352(n) [exempting only prescription drugs from FTC regulation, located at 15 U.S.C. § 52]); and has "largely abdicated" any oversight and regulation over OTC homeopathic drug manufacturers. *Delarosa II*, 818 F.Supp.2d at 1191; RJN, Ex. 2. OTC homeopathic products are not expansively regulated because they are exempt from many of the FDCA's regulations that apply to other drugs. 21 C.F.R. § 211.137; CPG § 400.400.

OTC homeopathic drugs are not regulated as other OTC **non**-homeopathic, products are. *Delarosa II*, 818 F.Supp.2d at 1181-82. For example, OTC non-homeopathic

---

[29] *See also Delarosa II*, 818 F.Supp.2d at 1190-91 (FDCA does not preempt false advertising claims); *Aaronson v. Vital Pharm., Inc.*, 2010 WL 625337 at *2, n.2 (S.D. Cal. Feb. 17, 2010) (same).

products that carry approved FDA monographs (labels) are considered by the FDA to be safe, effective and not misbranded when packaged with the preapproved monograph.[30] These approved monographs contain the same headings that Defendants identify (directions for use, statement of ingredients, dilution, and indication for use).  Opp'n 33, n 28.  But, the FDA compiled the headings, with descriptive text, into *approved monographs* for non-homeopathic OTC products, after detailed study and review by an independent panel of experts.  *Carter v. Novartis Cons. Health, Inc.*, 582 F.Supp.2d 1271, 1275-76 (C.D. Cal. 2008) (approved OTC cough and cold monographs were achieved after extensive independent panel review *and opportunity for public notice and comment*).

In contrast, OTC homeopathic drugs are reviewed by a private committee, according to an unknown standard, in non-public meetings, without any opportunity for public notice and comment.  *Delarosa II*, 818 F.Supp.2d at 1181, 1186 (discussing the thorough review standards that apply to **non**-homeopathic OTC products and noting that "the FDA allows a private organization to designate which homeopathic drugs meet certain (and unknown) standards for strength, quality, and purity set forth in the HPUS").  Moreover since the HPC is a private entity, primary jurisdiction just does not apply to it.  *Id.*, at 1191.

Nor do abstention principles apply here because there is no government entity for the Court to defer to: "the FDA explicitly states that it makes no guarantee about the safety or efficacy of homeopathic OTC drugs, even if they meet the unknown standards for inclusion in the HPUS."  *Id.*; *see also* RJN, Ex. 1.  Moreover, issues as to whether the products are effective, or whether the advertising is deceptive, do not require scientific "expertise that is beyond the abilities of the judiciary."  *Delarosa II*, 818 F.Supp.2d at 1191 (rejecting the argument that the court should abstain or that any governmental entity

---

[30] *See* 21 C.F.R. §§ 330.1(c)(1)-(2) (referring to "established" monographs), § 330.1(d) (advertising may not exceed the use in the established monograph) and § 330.10(a) (setting forth procedures for OTC monograph approval, including independent expert review and opportunity for public comment).

had primary jurisdiction over claims against another homeopathic drug manufacturer).[31]

## VII.   **CONCLUSION**

Based on all of the foregoing and the submissions, Plaintiffs respectfully request that the Court grant their motion and certify this case for class treatment and appoint Plaintiffs and the Counsel to represent the Class.

DATED:  June 29, 2012

Respectfully Submitted,

/s/ Gretchen M. Nelson
By: Gretchen M. Nelson

**THE LAW OFFICES OF RONALD A.**
**MARRON, APLC**
RONALD A. MARRON
MAGGIE REALIN
SKYE RESENDES
3636 4th Avenue, Ste. 202
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665

**KREINDLER & KREINDLER, LLP**
GRETCHEN M. NELSON (112566)
gnelson@kreindler.com
STUART R. FRAENKEL (173991)
sfraenkel@kreindler.com
GABRIEL S. BARENFELD (224146)
gbarenfeld@kreindler.com
JACOB H. MENSCH (268006)
jmensch@kreindler.com
ANDREW L. CIGANEK (266701)
aciganek@kreindler.com
707 Wilshire Boulevard, Suite 4100
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

***Attorneys for Plaintiffs and the Proposed***
***Class***

---

[31]  *Aaronson v. Vital Pharmaceuticals, Inc.* is distinguishable because plaintiffs there claimed that defendants' energy drinks were *unsafe and dangerous.*  2010 WL 625337 at *1-2.  In contrast, claims for deceptive advertising as to *effectiveness*, do not require the FDA's expertise, and are within the ordinary understanding of the fact finder.  *Delarosa II,* 818 F.Supp.2d at 1191.

*Allen v. Hyland's, et al.,* Case No. 2-12 CV-1150 DMG (MANx)
Plaintiffs' Reply in Support of Motion for Class Certification and Appointment of
Class Counsel