**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**KREINDLER & KREINDLER, LLP**
GRETCHEN M. NELSON (SBN 112566)
*gnelson@kreindler.com*
STUART R. FRAENKEL (SBN 173991)
*sfraenkel@kreindler.com*
GABRIEL S. BARENFELD (SBN 224146)
*gbarenfeld@kreindler.com*
707 Wilshire Blvd., Suite 3600
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019
*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KIM ALLEN, et al., on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HYLAND'S, INC., a California Corporation; and STANDARD HOMEOPATHIC COMPANY,<br><br>Defendants. | Case No. 3:12-cv-1150-DMG (MAN)<br>CLASS ACTION<br>Filed: February 9, 2012<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>[FILED CONCURRENTLY WITH DECLARATIONS OF RONALD A. MARRON, JON A. KROSNICK, Ph.D. AND CHARLENE PODLIPNA]<br><br>Judge:      Hon. Dolly M. Gee<br>Courtroom:      7<br>[Briefing submitted per Court's Order, Dkt. No. 282] |

**Table of Contents**

I.  Plaintiffs have Standing Because they Suffered Injury in Fact, as a Result of Defendants' Advertising Practices .............................................. 1

II. Plaintiffs Assert Two Primary Theories of Liability, Only One of Which Involves Premium Pricing .................................................. 2

III. Premium Pricing Is Calculable By Classwide Proof .......................................... 5

i

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## Table of Authorities

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25, 2014) ....... 10

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ................................. 4, 7

*Brazil v. Dole Packaged Foods, LLC*,
  12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ..................... 7, 9

*Comcast v. Behrend*,
  133 S. Ct. 1426 (2013) ................................................................................. 5, 6, 7

*Guido v. L'Oreal, USA, Inc.*,
  No. 11-1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ...................................... 6

*Gutierrez v. Wells Fargo Bank, NA*,
  704 F.3d 712 (9th Cir. 2012) ................................................................................. 2

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................................... 1

*In re Diamond Foods, Inc., Sec. Litig.*,
  No. 11 Civ. 5386, 2013 WL 1891382 (N.D. Cal. May 6, 2013) .............................. 6

*In re POM Wonderful LLC*,
  ML 10-02199 DDP RZX, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................ 4

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ................................................................................ 3

*Jacob v. Duane Reade, Inc.*,
  293 F.R.D. 578 (S.D.N.Y. 2013) ............................................................................ 6

*Jones v. ConAgra Foods, Inc.*,
  C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ...................... 4, 6

*Khoday v. Symantec Corp.*,
  11-180 (JRT/TNL), 2014 U.S. Dist. LEXIS 43315
  (D. Minn. Mar. 31, 2014) ............................................................................ 4, 5, 10

*Lanovaz v. Twinings N. Am., Inc.*,
  C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ...................... 4, 5

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ................................................................................. 7

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Microsoft Corp. v. Motorola, Inc.*,
  904 F. Supp. 2d 1109 (W.D. Wash. 2012) .................................................................. 10

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ........................................................................................ 1

*Werdebaugh v. Blue Diamond Growers*,
  12–CV–2724–LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014) ............................ 7

**Statutes**

Cal. Bus. & Prof. Code § 17204 ..................................................................................... 1

iii

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiffs respectfully submit the following supplemental memorandum in support of their Motion for Class Certification (the "Motion"), Dkt. No. 60, as ordered by the Court, Dkt. No. 282.

## I. Plaintiffs have Standing Because they Suffered Injury in Fact, as a Result of Defendants' Advertising Practices

In its June 20, 2014 Minute Order (Dkt. No. 282), the Court raised issues regarding statutory standing, seeking additional briefing as to whether the named Plaintiffs have suffered an "'injury in fact' under Article III of the Constitution" and whether there is a "causal connection" between Defendants' acts and that injury.[1]

An injury in fact under Article III arises where the named plaintiff loses "money or property;" and a causal connection arises where such loss would not have occurred "but for" defendant's unfair or fraudulent business practices. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (finding standing under § 17204 of UCL is met:

> by alleging ... that he or she would not have bought the product but for the misrepresentation. . . . From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.

---

[1] Plaintiffs submitted argument on Article III standing in their supplemental briefing of August 23, 2013 (Dkt. No. 224). The Court also held that Plaintiffs had Article III standing, in its Order dated May 2, 2012 (Dkt. No. 59 at p. 4). The Court also previously ruled that Plaintiffs had adequately alleged economic injury, at least as to the effectiveness claims. (Dkt. No. 80 at p. 2). The current complaint now includes economic injury as to the "100% natural" claims. *See* citations *supra*.

1

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*See also Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 728 (9th Cir. 2012) (finding that standing under the UCL met when the named plaintiffs relied on the defendant's "misleading marketing materials").

Here, each of the named Plaintiffs lost money based on actual reliance on Defendants' unfair and fraudulent business practices; i.e., "but for" for the representations that the Products were "100% natural" (or "natural") and/or effective, they would not have purchased the Products. Third Am. Compl. (Dkt. No. 198, "TAC") ¶¶ 41-43, 46, 47 & 50 (Calms Forte), 57-59, 64 & 67 (Teething Tablets), 69-71, 74 & 79 (Migraine Headache Relief), 81, 85 & 88 (ClearAc), 90, 94 & 97 (Poison Ivy/Oak Tablets), 99, 103 & 106 (Colic Tablets), 108, 110 & 122 (Leg Cramps with Quinine), 124-125, 129 & 141 (Leg Cramps), 144-145, 147 & 153 (Defend Cold & Cough Night), 156, 158 & 165 (Defend Cold & Cough), 167, 169 & 176 (Hyland's Cough), 178, 180 & 184 (Seasonal Allergy Relief). *See also id.* ¶¶ 195-196, 202, 204-206. The record in this case also establishes that Plaintiffs read the Products' labeling prior to their purchases, and relied on the natural and effectiveness claims on the Products' packaging. *See* Dkt. Nos. 192 at 16:10-21, 17:4-11; 192-16 (excerpts from Plaintiffs' deposition transcripts). Plaintiffs have also testified in their discovery responses that they each relied on the Products' packaging as to the effectiveness claims and the "100% natural" claims. *See* Decl. of Ronald A. Marron filed concurrently herewith, Ex. 1. Defendants can point to no evidence that the named Plaintiffs lack statutory standing under the UCL. The Court should find that standing is satisfied for purposes of the Motion.

**II.  Plaintiffs Assert Two Primary Theories of Liability, Only One of Which Involves Premium Pricing**

The Court in its Minute Order also sought supplemental briefing from Plaintiffs regarding their damages theories. Here, after investigation and discovery,

2

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiffs assert the following fundamental claims: (a) that the Products are not inherently effective for their claimed uses, and under this theory, all the money the class members spent on the Products during the class period should be refunded because the Products are valueless; and (b) that the "100% natural" claims on the Products are false or deceptive, such that any premium price received by Defendants due to this advertising should be restored to the class. *See also* Reply in Supp. of Mot. for Class Cert. (Dkt. No. 98) at p. 1.

Plaintiffs' effectiveness claims invoke a full refund damages model because there is no inherent value to the Products.[2] *See* TAC, Ex. 1 ("Sleep Aid" on Calms Forte, "Relieves Pain and Irritability from Teething" on Teething Tablets, and so on); Dkt. No. 224 (supplemental briefing with evidence of full refund damages model). On the other hand, other allegations in the TAC that do not devolve on effectiveness, but instead concern an ingredient in the Products, such as the "100% natural" claim, invoke a premium pricing model, whereby Plaintiffs will prove the amount of premium price unfairly or fraudulently garnered by Defendants as a result of this type of false or deceptive advertising. Regarding this second damages model, Plaintiffs respectfully submit this briefing and the Declarations of Jon A. Krosnick, Ph.D. and Charlene Podlipna.

---

[2] High level of dilution in the Products is a function of their lack of effectiveness. *See*, *e.g.*, Dkt. No. 197 at p. 4 (Order on Mot. for Judgment on the Pleadings, finding that Plaintiffs' theory of liability is lack of effectiveness, based on high levels of dilution: "They state that there is such a low concentration of active ingredient that the challenged products could not *possibly* work.") (emphasis in original). Thus, while the essential claims can be distilled down to two main theories, other allegations in the TAC color these claims and explain why Defendants' advertising is false or deceptive. Similarly, Plaintiffs' UCL unlawful claims do not involve premium pricing valuation because no consumer would purchase an illegal product, and the total purchase price would need to be refunded. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154-157 (2010) (holding that a plaintiff "does not put valuation at issue when he alleges that he bought a product that was illegal to sell or possess").

3

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

The cases identified by the Court in its Minute Order concerned products for which class members received something that had some value, but for which a premium price may have been involved. *See*, *e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, C-12-02646-RMW, 2014 WL 1652338, at *7 (N.D. Cal. Apr. 24, 2014) (concerning "antioxidant" labeling on teas and ruling that "[w]ithout a regression analysis, plaintiffs do not present any damages model capable of estimating the price premium attributable to Twinings' antioxidant labels"); *In re POM Wonderful LLC*, ML 10-02199 DDP RZX, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (regarding health claims on fruit drink and holding that a "Full Refund model is invalid because it fails to account for any value consumers received"); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2014 WL 60097, at *1 (N.D. Cal. Jan. 7, 2014) (regarding "all natural" ice cream for which consumers arguably received some value).

Here, the over-the-counter Products sold by Hylands had one intended use – to help with a sickness. For this reason, the products have no inherent value if they are not effective for their advertised uses. *See Khoday v. Symantec Corp.*, 11-180 (JRT/TNL), 2014 U.S. Dist. LEXIS 43315, at *103 (D. Minn. Mar. 31, 2014) (ruling that "the full value of" a force downloaded insurance product was an accurate damage measurement because "[t]his measure of damages would likely be appropriate here, where the products in question have no intrinsic value other than the advertised use"). In contrast, in *Jones v. ConAgra Foods, Inc.*, C 12-01633 CRB, 2014 WL 2702726, at *2-3 (N.D. Cal. June 13, 2014), the named plaintiffs alleged that various food products were not "100% natural," as labeled, but did not otherwise contend that they received worthless products. *Id.* at *20 (noting that plaintiff's expert admitted the mislabeled products were "not economically worthless"). The court observed that "[r]eturn of the full retail or wholesale prices is not a proper

4

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

measure of restitution, as it fails to take into account the value class members received by purchasing the products." *Id.* at *19. *See also Lanovaz*, 2014 WL 1652338, at *6 ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received.") As noted above, there is no value to a drug that lacks all effectiveness. *See Khoday*, 2014 U.S. Dist. LEXIS 43315, at *103.

In its Minute Order, the Court recognized that to the extent Plaintiffs assert the products are nothing more than placebos and therefore ineffective, cases challenging damages models that fail to consider that the product has some value are factual distinguishable. Minute Order, Dkt 282, p. 3. Therefore, the remainder of this brief will only focus on Plaintiffs' second damages model, relating to premium pricing and the "100% natural" and related claims.[3]

### III. Premium Pricing Is Calculable By Classwide Proof

In *Comcast v. Behrend*, 133 S. Ct. 1426, 1433 (2013), the Supreme Court ruled that parties seeking class certification must "establish that damages could be measured on a classwide basis" in order to establish predominance. "Calculations need not be exact, . . . but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case, . . .'" *Id.* (citation omitted). Moreover, a party seeking class certification should meet this burden of proof with evidence. *See Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 WL 3353857, at *15 (C.D. Cal. July 1, 2013) ("Under *Comcast*, courts can only

---

[3] The "100% natural" allegations embrace claims that Defendants failed to disclose the truth about an ingredient in the Product. For example, the TAC alleges Defendants added synthetic isopropyl alcohol in Teething Tablets without informing consumers. On investigation and discovery, isopropyl alcohol is not natural; thus Plaintiffs challenge the inclusion of a synthetic in a Product that purports to be "100% natural," not simply the failure to disclose. *See* Natural Claims Chart, attached as Exhibit 1 to Marron Decl., produced by Plaintiffs to Defendants in discovery.

certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability.")

In *Guido*, the court denied certification without prejudice because the plaintiffs submitted no expert testimony supporting their contention that the difference between what consumers paid for a beauty serum and the true value of the product without its false advertising could be calculated. *See id.* at *16 ("Consequently, without evidence affirmatively demonstrating that the true market price of Serum can be calculated on a classwide basis, plaintiffs' claim that there is a classwide method of granting relief is factually unsupported."). Here, Plaintiffs are submitting expert testimony that demonstrates Plaintiffs can and will present evidence of the measure of damage to Plaintiffs and class members flowing from Defendants' false advertising regarding claims that the Products are "100% natural." *See* Decls. of Krosnick & Podlipna filed concurrently herewith.

Damages need not be calculated at the class certification stage – the party seeking to certify a class need only show that their theories of relief are tethered to workable methods of assessing classwide damages. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 582 (S.D.N.Y. 2013) (

> [I]n *In re Diamond Foods, Inc., Sec. Litig.*, No. 11 Civ. 5386, 2013 WL 1891382 (N.D. Cal. May 6, 2013), the court held that Rule 23(b)(3) class certification was proper, despite *Comcast*, . . . . '[w]hether [a] plaintiff will ultimately prevail in proving damages is not necessary to determine at [the certification] stage.' *Id.* at *12. By contrast, the question at the class certification stage, in light of *Comcast*, was only 'whether [a] plaintiff has met its burden of establishing that damages can be proven on a classwide basis.).

*See also Jones*, 2014 WL 2702726, at *19 ("At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.").

6

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

The Ninth Circuit has reiterated *Comcast*'s rule that a workable method of proving damages must be tendered at class certification, but damages themselves need not be calculated at this stage, and has even supported certification of classes where individual damages predominate. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (noting that Rule 23(b)(3) itself contemplates individual damages). *Comcast* merely requires that the named plaintiff translate "the legal theory of the harmful event into an analysis of the economic impact of that event." *Id.* (citing *Comcast*, 133 S. Ct. at 1435). To the extent any of the decisions cited by the Court counter this rule, they conflict with the Ninth Circuit's decision in *Leyva*. *See*, *e.g.*, *Astiana*, 2014 WL 60097, at *12 (purporting to require expert to determine at class certification that premium was indeed paid and the amount of that premium).

In *Astiana*, the court ruled that the plaintiff had to show that there was a price premium in place at class certification. *See* 2014 WL 60097, at *12 ("plaintiff has not offered any expert testimony demonstrating a gap between the market price of Ben & Jerry's 'all natural' ice cream and the price it purportedly should have sold for if it had not been labeled 'all natural'"). But this overreaches the real question, which is whether the named plaintiff has presented "a damages methodology that *can determine* the price premium attributable to [the defendant's] use of 'All Natural'" labeling, and not whether it has been determined. *Brazil v. Dole Packaged Foods, LLC*, 12-CV-01831-LHK, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014); *see also Werdebaugh v. Blue Diamond Growers*, 12–CV–2724–LHK, 2014 WL 2191901, at *25 (N.D. Cal. May 23, 2014) ("*Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage, . . . ."). After all, if no price premium has been paid, it resolves the issue on a classwide basis, albeit it for the defendant. *See id.* At this stage of the proceedings, the court need only determine whether a "workable" methodology has been proposed.

*Werdebaugh*, 2014 WL 2191901, at *25.  In this case, Plaintiffs have presented a workable methodology.[4]  *See* Krosnick & Podlipna Decls.  An analysis of premium pricing will likely apply to all of Plaintiffs' claims other than effectiveness, such as Plaintiffs' "100% natural" claims.[5]

Accordingly, Plaintiffs are tethering their two damages models to their two different theories of liability:  The first based on a complete lack of effectiveness of the Products, for which briefing and expert testimony has already been submitted (the Full Refund model; *see* Dkt. No. 224); and the second model being submitted herewith, based on premium pricing for the false and deceptive "100% natural" claims (Premium Pricing model).  Plaintiffs' Premium Pricing model is sound and puts forth a workable model tethered to this legal theory of harm.

Dr. Krosnick proposes a special form of conjoint analysis for the Premium Pricing model, which will show two sets of survey participants a single Hyland's Product, next to its competitors on a store shelf.  One-half of the participants will view the Product with its "100% natural" claim; the other half of the participants will view the Product without its "100% natural" claim.  Krosnick Decl. ¶¶ 38-42.  In *Jones*, the plaintiffs' expert created a damages model that relied on one comparator in the marketplace, which the court criticized.  *See Jones*, 2014 WL 2702726, at (20

---

[4]  Defendants may challenge Plaintiffs' damages model by arguing Plaintiffs are required at this stage to present actual damages in light of the Court's prior scheduling order.  However, Plaintiffs have addressed the scheduling issues with the Court and respectfully submit that a ruling on class certification is integral to determining the scope of any damage.  Plaintiffs seek certification of a nationwide class as to twelve products but have also in the alternative requested certification of specified state classes.  The resolution of the scope of the class is necessary to insure that the damage calculation correlates with the certified class.

[5] The cases noted by the Court relating to premium pricing, however, do not affect Plaintiffs' prior damages calculations based on the separate theory that the Products are not inherently effective and therefore provide no value to the class.  See Minute Order, Dkt 282, p. 3; Dkt. No. 224.

8

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

("It is inadequate to identify a single comparator, . . ."). By contrast, here Dr. Krosnick will be comparing Hyland's to *itself*, with and without the "100% natural" advertising on the packaging, and will do so in simulated marketplace conditions, by having the Hyland's product next to other comparators, as it would appear on store shelves. Krosnick Decl. ¶¶ 38-43.

Dr. Krosnick's proposed study is a "special form of an incredibly widely used research technique called conjoint analysis." Krosnick Decl. ¶ 48. Accordingly, Dr. Krosnick's study "will be able to assess the increase in the proportion of people who purchase the Hyland's product due to making the claim," which he opines will be "extremely solid evidence of the causal impact of the '100% natural' claim." *Id.* at ¶¶ 43-44. *See also id.* ¶ 45 (opining that his survey will yield:

> (1) the proportion of people who would purchase the Hyland's product when presented with the addition of the '100% natural' claim who would not have purchased the product in the absence of that claim, and (2) the demand curve for the product with and without the '100% natural' claim, which can be used to gauge how much more money consumers were willing to pay for the product as the result of seeing the '100% natural' claim.

Moreover, because the Hyland's products will be shown alongside their competitors, as they appear in the marketplace, both with and without the "100% natural" packaging claim, the study will be evaluating the Hyland's package with the "100% natural" claim against the same Hyland's package without the "100% natural" claim. *See id.* ¶¶ 38-45. Accordingly, the study has both internal and external validity and relies on no false comparisons which have plagued studies in other class certification decisions. *See id.* ¶ 44.

Indeed, Dr. Krosnick's proposed study is like the regression model approved by the court in *Brazil*, because it tests the product against itself, and not against comparators. *See Brazil*, 2014 WL 2466559, at *19 ("[T]he Regression Model

9

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1 compares data on identical Dole products—the product before the label statement was introduced, and the same product after its label included the alleged misrepresentation."). The percentage of change in consumer behavior based on the removed claim will then be given to Plaintiffs' accounting expert, who will be able to apply the percentage of market impact to the actual sales and unit figures Plaintiffs possess for the Products. *See* Podlipna Decl. ¶¶ 11-13.

Other courts have approved the use of conjoint studies, such as that proposed by Dr. Krosnick. *See*, *e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 24506, at *60-76 (N.D. Cal. Feb. 25, 2014) (upholding conjoint study as being strongly supported by peer review and other *Daubert* factors); *Khoday*, 2014 U.S. Dist. LEXIS 43315, at *105 (ruling that "conjoint analysis" was appropriate evidence for a "means to isolate the value for specific" features of a good; and that "disputes about the precision of the particular model . . . do not indicate that damages will not be measurable on a classwide basis"); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (ruling that conjoint analysis to "determine what value a customer places on a particular feature of a product" was based on sufficiently sound evidence to survive *Daubert* challenge). Conjoint analysis tests a consumer's "willingness to pay" and is the appropriate methodology for assessing classwide damages for the "100% natural" claims at issue in this case. *See Apple, Inc.*, 2014 U.S. Dist. LEXIS 24506, at *64.

Plaintiffs respectfully submit that they can and will present evidence as to damages that conforms with *Comcast* that is tethered to Plaintiffs' theories of liability. For these and all of the reasons stated in Plaintiffs' prior briefing and documents in support of certification, Plaintiffs respectfully request that the Court grant their motion and certify a class in this case.

10

*Allen v. Hyland's, Inc.*, Case No. 12-cv-1150
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

| | |
|---|---|
| Dated: July 7, 2014 | Respectfully submitted, |
| | */s/ Ronald A. Marron*<br>RONALD A. MARRON<br>**LAW OFFICES OF RONALD A. MARRON, APLC**<br>SKYE RESENDES<br>ALEXIS M. WOOD<br>651 Arroyo Drive<br>San Diego, California 92103<br>Telephone: (619) 696-9006<br>Facsimile: (619) 564-6665 |
| | **KREINDLER & KREINDLER, LLP**<br>GRETCHEN M. NELSON<br>STUART R. FRAENKEL<br>GABRIEL S. BARENFELD<br>707 Wilshire Blvd., Suite 3600<br>Los Angeles, California 90017<br>Telephone: (213) 622-6469<br>Facsimile: (213) 622-6019 |
| | ***Attorneys for Plaintiffs and the Proposed Class*** |