JEFFREY B. MARGULIES, BAR NO. 126002
jeff.margulies@nortonrosefulbright.com
STEPHANIE A. STROUP, BAR NO. 235071
stephanie.stroup@nortonrosefulbright.com
MATTHEW M. GURVITZ, BAR NO. 272895
matthew.gurvitz@nortonrosefulbright.com
**FULBRIGHT & JAWORSKI LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

Attorneys for Defendants
STANDARD HOMEOPATHIC COMPANY
and HYLAND'S, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KIM ALLEN, DANIELE XENOS, ROGER HUTCHINSON, MELISSA NIGH, SHERRELL SMITH, YUANKE XU, DIANA SISTI, and NANCY RODRIGUEZ on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HYLAND'S INC., a California Corporation; and STANDARD HOMEOPATHIC COMPANY,<br><br>Defendants. | Case No. 12-CV-1150 DMG (MANx)<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |

DOCUMENT PREPARED ON RECYCLED PAPER

53620214.1

1    Plaintiffs' request for class certification must be denied because they have

2    not proposed **any** method by which a class can be ascertained in this case, an

3    essential element necessary to satisfy Rule 23.

4    In order to certify a class, plaintiffs are required to affirmatively identify how

5    they propose to ascertain class members.  *See, e.g. Mazur v. eBay, Inc.* 257 F.R.D.

6    563, 567 (N.D. Cal. 2009).  Instead of proposing a plan or specifying how class

7    members can be identified in this case, plaintiffs instead conclusorily state that

8    "objective criteria exists because the Class definition is limited to purchasers of

9    identified Products, during a specific time period."  (Plaintiffs' Motion for Class

10   Certification, Dkt. No. 60-1, at p. 8).  Plaintiffs have not shown how the identities

11   of potentially thousands of class members can be ascertained and have not met their

12   burden on this issue.

13   As discussed in the briefing on ascertainability filed in connection with

14   *Forcellati v. Hyland's, Inc.*, Central District of California, Case No. 12-CV-1983-

15   GHK (MRWx), Dkt. Nos. 133 and 137 (which, at the Court's suggestion, is

16   incorporated herein by reference), accurately and fairly identifying class members

17   that purchased Hyland's products is virtually impossible and raises serious due

18   process concerns.  Similar to the class in *Forcellati*, the proposed class in this case

19   comprises all purchasers in the United States of one of several products from

20   February 9, 2008 to the present.  (Plaintiffs' Motion, Dkt. No. 60-1, at p. 3).

21   Without any indication of how plaintiffs propose to identify and ascertain class

22   members, Hyland's can only assume that they intend to ask for some form of self-

23   identification, such as an affidavit or claim form, in order to become part of the

24   class.  However, such forms that are based solely on the memory and "honor" of the

25   class member are likely to be inherently unreliable.  *See, e.g., Hernandez v.*

26   *Chipotle Mexican Grill*, No. CV 12-5543, 2013 WL 6332002, at *2 (C.D. Cal. Dec.

27   2, 2013); *Red v. Kraft*, No. 10-1028, 2012 WL 8019257, at *5 (C.D. Cal. Apr. 12,

28   2012).  This reality is borne out by the discovery in this case, which revealed that

1  not even the named plaintiffs can remember which products they purchased (the
2  pleadings in this case were amended multiple times and one former plaintiff, Roger
3  Hutchinson, had actually never purchased any product in this case) or whether they
4  purchased the products during the class period (several plaintiffs admitted that they
5  had not purchased the products at the times alleged in the complaint).  (Defendants'
6  Opposition to Class Certification, Dkt. No. 74, at pp. 2-5).  For the same reasons as
7  discussed in the *Forcellati* briefing, this type of self-identification is problematic,
8  prejudicial to Defendants, and does not satisfy the ascertainability requirement.

9          Since Hyland's briefed the issue in *Forcellati*, there have been additional
10 decisions finding that similar classes are not sufficiently ascertainable.  *See, e.g.*, *In
11 re Pom Wonderful LLC Marketing and Sales Practices Litig.*, 2014 WL 1225184, at
12 *6 (C.D. Cal. Mar. 25, 2014) (decertifying the class because there was "no way to
13 reliably determine who purchased Defendant's products or when they did so.");
14 *Henson v. Fidelity National Financial Inc.*, 2014 WL 2765136, at * 10 (C.D. Cal.
15 June 18, 2014) ("class treatment is not appropriate if 'the court must determine the
16 merits of an individual claim to determine who is a member of the class.'") (*quoting
17 Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012)); *Jones v. ConAgra
18 Foods, Inc.*, 2014 WL 2702726, at *8-11 (N.D. Cal. June 13, 2014) (holding that
19 self-identification of class membership for a low-cost canned tomato product is not
20 sufficient to satisfy the ascertainability requirement); *Sethavanish v. ZonePerfect
21 Nutrition Co.*, 2014 WL 580696, at * 4-6 (N.D. Cal. Feb. 13, 2014) (following
22 *Carrera* holding that plaintiff failed to present any method for determining class
23 membership for products that are not sold directly to consumers); *Algarin v.
24 Maybelline, LLC*, 2014 WL 1883772, at *6-8 (S.D. Cal. May 12, 2014) ("Though
25 the class may be ascertainable in the sense that there are objective criteria for
26 determining who its members are, it is not in the sense that members could actually
27 ever be determined.").  However, Hyland's would be remiss to not acknowledge
28 that there is a split in authority in the Ninth Circuit, as evidenced by Judge King's

1  decision in *Forcellati*, as well as additional opinions that have come down since his

2  order.  *See, e.g., In re Hulu Privacy Litig.*, 2014 WL 2758598, at *13-16 (N.D. Cal.

3  June 16, 2014) (holding that an affidavit may be sufficient where the claims are

4  small or not amenable to ready verification); *Ortega v. Natural Balance, Inc.*, 2014

5  WL 2782329, at *2 (C.D. Cal. June 19, 2014) (finding the class is ascertainable

6  because it is limited to "purchasers" of the product and identifying the individual

7  class members is irrelevant to the test); *Lanovaz v. Twinings North Am., Inc.*, 2014

8  WL 1652338, at *2-3 (N.D. Cal. Apr. 24, 2014) (following *McCrary* and rejecting

9  *Carerra*); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at * 9-11

10 (N.D. Cal. May 23, 2014) (same); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL

11 2466559, at * 4-6 (N.D. Cal. May 30, 2014) (same).

12      Hyland's respectfully urges the Court that the opinions in line with the

13 *Carrera* decision reach the right result on ascertainability and protecting class

14 action defendants' due process rights, for the reasons addressed in the *Forcellati*

15 briefing.   To that end, Hyland's has petitioned to appeal the *Forcellati* class

16 certification order, in an attempt to have it heard by the Ninth Circuit in order to

17 settle this marked split in authority.  (Exhibit A).

18      At the end of the day, however, the split is of no moment in this case because

19 plaintiffs have not identified ***any*** means by which to ascertain a class and, as such,

20 their class certification briefing is fatally defective.  It is inappropriate for them now

21 to attempt to fix the problems with their class certification briefing when

22 ascertainability of the class should have been contemplated and briefed years ago.

23 Class certification must, therefore, be denied.

24

25

26

27

28

1  Dated:    July 7, 2014                          JEFFREY B. MARGULIES
2                                                  STEPHANIE A. STROUP
                                                   MATTHEW M. GURVITZ
3                                                  **FULBRIGHT & JAWORSKI LLP**

4
                                                   ___/s/ Matthew M. Gurvitz___
5                                                      MATTHEW M. GURVITZ
                                                   Attorneys for Defendants
6                                                  STANDARD HOMEOPATHIC
                                                   COMPANY and HYLAND'S, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

53620214.1                              - 4 -

# EXHIBIT A

**Case No.**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ENZO FORCELLATI and LISA ROEMMICH, on behalf of themselves and all others similarly situated,

Plaintiffs-Respondents,

v.

HYLAND'S, INC., *et al.*,

Defendants-Petitioners.

---

Petition for Review from the United States District Court
for the Central District of California
Case No. 12-CV-1983-GHK (MRWx), Honorable George H. King, United
States District Judge Presiding

---

### DEFENDANTS-PETITIONERS' PETITION PURSUANT TO FED. R. CIV. P. 23(f) FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION

---

Jeffrey B. Margulies (Bar No. 126002)
Stephanie A. Stroup (Bar No. 235071)
Matthew M. Gurvitz (Bar No. 272895)
FULBRIGHT & JAWORSKI LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200

Attorneys for Defendants-Petitioners
Hyland's, Inc., Standard Homeopathic Laboratories, Inc., and Standard
Homeopathic Company

**EXHIBIT A PAGE 5**

## REPRESENTATION STATEMENT
### (Fed. R. App. P. 12(b))

Affected Court Action

The District Court Action from which this petition arises is entitled:

*Forcellati et al. v. Hyland's, Inc. et al*., pending in the United States District Court

for the Central District of California, District Court No. 2:12-cv-01983-GHK-

MRWx, the Honorable George H. King, Chief Judge, presiding.

Defendants and Petitioners

Petitioners are Defendants Hyland's, Inc., Standard Homeopathic Company,

and Standard Homeopathic Laboratories, Inc.  Petitioners are represented by:

Jeffrey B. Margulies (Bar No. 126002)
jeff.margulies@nortonrosefulbright.com
Stephanie Stroup (Bar No. 235071)
stephanie.stroup@nortonrosefulright.com
Matthew M. Gurvitz (Bar No. 272895)
matthew.gurvitz@nortonrosefulright.com
FULBRIGHT & JAWORSKI LLP
550 South Flower Street
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494

**EXHIBIT A PAGE 6**

Plaintiffs and Respondents

Respondents  are  Plaintiffs  Enzo  Forcellati  and  Lisa  Roemmich.

Respondents are represented by:

L. Timothy Fisher (Bar No. 191626)
ltfisher@bursor.com
Annick Persinger (Bar No. 272996)
apersinger@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:  (925) 407-2700

David E. Bower (Bar No. 119546)
dbower@faruqilaw.com
FARUQI & FARUQI, LLP
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone:  (424) 256-2884
Facsimile:  (424) 256-2885

Antonio Vozzolo (*pro hac vice*)
avozzolo@faruqilaw.com
Andrea Clisura (*pro hac vice*)
aclisura@faruqilaw.com
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331

**EXHIBIT A PAGE 7**

## CORPORATE DISCLOSURE STATEMENT
### (Fed. R. App. P. 26.1(a))

Defendants-Petitioners, Standard Homeopathic Company, Hyland's, Inc. and Standard Homeopathic Laboratories, Inc. submit the following statement of their corporate interests and affiliations for the use of the judges of this Court:

1.    Standard Homeopathic Company is a privately held Nevada corporation.    Standard Homeopathic Company is not owned by any parent corporation.  There is no publicly held corporation that owns 10 percent or more of Standard Homeopathic Company's stock.

2.    Hyland's, Inc. is a California corporation.    Hyland's, Inc. is a fully owned subsidiary of Standard Homeopathic Company, a privately held Nevada corporation.  There is no publicly held corporation that owns 10 percent or more of Hyland's, Inc.'s stock.

3.    Standard Homeopathic Laboratories, Inc. is a Nevada corporation. Standard Homeopathic Laboratories, Inc. is a fully owned subsidiary of Standard Homeopathic Company, a privately held Nevada corporation.  There is no publicly held corporation that owns 10 percent or more of Standard Homeopathic Laboratories, Inc.'s stock.

**EXHIBIT A PAGE 8**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ...............................................................................1

QUESTIONS PRESENTED...............................................................2

STATEMENT OF FACTS ................................................................3

RELIEF SOUGHT..............................................................................5

STANDING FOR GRANTING REVIEW ........................................5

REASONS THE PETITION SHOULD BE GRANTED ....................6

    1.    THE COURT ERRED IN CERTIFYING A NATIONWIDE CLASS BASED ON CALIFORNIA LAW ........................................6

        A.    The Order Is Based Upon A Manifest Error Of Law With Regard To Certifying A National Class In The Wake Of Mazza .....................................................................................7

        B.    The Application Of Mazza Represents An Unsettled Issue Of Law Relating To Consumer Class Actions ...............12

    2.    THE COURT SHOULD RESOLVE A SHARP DIVIDE CONCERNING THE ASCERTAINABILITY OF CONSUMER CLASSES WHO CANNOT PROVIDE PROOF OF PURCHASE ...............................................................................13

    3.    THE ORDER IS BASED ON MANIFEST ERRORS OF LAW WITH RESPECT TO THE STANDING TO PURSUE RELIEF ON PRODUCTS NOT PURCHASED ............................................18

CONCLUSION .................................................................................20

**EXHIBIT A PAGE 9**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Hyland's, Inc.*,
2012 WL 1656750 (C.D. Cal. May 2, 2012) ......................................................19

*Anderson v. Jamba Juice Co.*,
888 F. Supp. 2d 1000 (N.D. Cal. 2012) ...........................................................20

*Bates v. U.P.S.*,
511 F.3d 974 (9th Cir. 2007) ..............................................................................18

*BMW of No. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ............................................................................................18

*Bruno v. Eckhart*,
280 F.R.D. 540 (C.D. Cal. 2012) .......................................................................13

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ......................................................19

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3rd Cir. 2013) ...........................................................2, 6, 14, 15

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ...............................................................................5

*Clothesrigger, Inc. v. GTE Corp.*,
191 Cal. App. 3d 605 (1987) ......................................................................10, 11

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000) ........................................................................................17

*E.H. Boly & Son, Inc. v. Schneider*,
525 F.2d 20 (9th Cir. 1975) ................................................................................17

*Gianino v.. Alacer Corp.*,
846 F. Supp. 2d 1096 (C.D. Cal. 2012) .......................................................10, 12

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ............................................................................................13

**EXHIBIT A PAGE 10**

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Granfield v. NVIDIA Corp.*,
   2012 WL 2847575 (N.D. Cal. July 11, 2012) ...................................19

*Hodes v. Van's Int'l Foods*,
   No. 09–1530, 2009 U.S. Dist. LEXIS 72193
   (C.D. Cal. July 23, 2009) ...................................................................16

*Holt v. Globalinx Pet LLC*,
   2013 WL 3947169 (C.D. Cal. 2013) .................................................12

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. Feb. 9, 2010).........................................19

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012)............................................9, 10, 12

*Key v. DSW, Inc.*,
   454 F. Supp. 2d 684 (S.D. Ohio 2006) ..............................................18

*Kowalsky v. Hewlett-Packard Company*,
   2012 WL 892427 (N.D. Cal. 2012) ...................................................12

*Larsen v. Trader Joe's Co.*,
   2012 WL 5458396 (N.D. Cal. June 14, 2012)....................................19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...................................................................18, 20

*Madrid v. Perot Systems, Corp.*,
   130 Cal.4th 440 (2005) .....................................................................17

*Mazur v. eBay*,
   257 F.R.D. 563 (N.D. Cal. 2009).......................................................13

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................*passim*

**EXHIBIT A PAGE 11**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McCrary v. Elations, Co*.,
  2014 U.S. District LEXIS 8443 (C.D. Cal. Jan. 14, 2014)..................................15

*Minkler v. Kramer Labs*., Inc.,
  No. 12-9421, 2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ..............................16

*Moheb v. Nutramax Labs. Inc.*,
  No. 12-3633, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012)..............................16

*O'Shea v. Littleton*,
  414 U.S. 488 (1974).....................................................................................18, 20

*In re Phenylpropanolamine Prod. Liab. Litig.*,
  214 F.R.D. 614 (W.D. Wash. 2003) .................................................................16

*In re Pom Wonderful LLC*,
  2012 WL 4490860 (C.D. Cal., Sept. 28, 2012) .................................................13

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 24, 2014).....................................................16

*Red v. Kraft,*
  2012 WL 8019257, *adopted as final* in 2012 WL 8018618
  (C.D. Cal. Apr. 26, 2012) .................................................................................16

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012).......................................................................16

*Senavanish v. ZonePerfect Nutrition Co.*,
  Case No. 12–2907–SC, 2014 WL 580696 (N.D. Cal. Feb. 13,
  2014) ................................................................................................................15

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)............................................................................................18

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..........................................................................14

**EXHIBIT A PAGE 12**

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

*Skold v. Intel Corp.*,
    2012 WL 1375929 (Cal. Super. 2012)................................................................12

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
    Practices, and Products Liability Litigation*,
    785 F. Supp. 2d 925 (C.D. Cal. 2011) ...............................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)......................................................................................14

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ........................................................................10, 11

*Williams v. Oberon Media, Inc.*,
    No. 10-56255, 2010 WL 8453723 (C.D. Cal. Apr. 10, 2010)...........................16

*Xavier v. Philip Morris USA Inc.*,
    787 F.Supp.2d 1075 (N.D. Cal. 2011)..........................................................15, 16

**Rules and Statutes**

8 U.S.C.A. § 2072(b) ..............................................................................................14

California Consumer Legal Remedies Act
    Cal. Civ. Code §§ 1750 et seq. ...........................................................................3

California False Advertising Law
    Cal. Bus. & Prof. Code §17500 ..........................................................................3

California Unfair Competition Law
    Cal. Bus. & Prof. Code § 17200 .........................................................................3

Fed. Rule Civ. Proc. 23 .............................................................................4, 5, 14, 19, 20

Magnuson Moss Warranty Act
    15 U.S.C. §§ 2301 et seq. ...................................................................................3

Missouri Merchandising Practices Act.
    Mo. Ann. Stat. §§ 407.010 et seq. ......................................................................3

**EXHIBIT A PAGE 13**

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

New Jersey Consumer Fraud Act
N.J.S.A. §§ 58: 8-1 et seq. ....................................................................................3

**EXHIBIT A PAGE 14**

## INTRODUCTION

Defendants Hyland's, Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company manufacture, market and sell over-the-counter homeopathic medications.   The District Court certified a national class of purchasers of six of these products, represented by plaintiffs Forcellati and Roemmich, who allege that the products are not effective in relieving the symptoms for which they are indicated.   The class comprises thousands of purchasers of the products who reside in numerous states (with differing laws), who will be identified simply because they sign an affidavit stating that they purchased one of the products (without any additional verification).

The Court should grant this petition and vacate the District Court's order granting plaintiffs' motion for class certification.  First, the District Court erred by failing to apply the holding in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), ignoring the palpable interest that each state has in applying its own laws to consumer transactions occurring within its borders, and requiring an unnecessarily "rigorous factual analysis" of the last two prongs of the governmental interest test because defendants are headquartered in California.  The District Court, however, is not alone in this error and the issue of how and when to apply *Mazza* is one that has been inconsistently applied by district courts within the Circuit, and should be resolved by this Court.

90208604                                        - 1 -

**EXHIBIT A PAGE 15**

Second, the District Court erred in finding that the class was ascertainable, when it will almost certainly be comprised of unnamed individuals whose claims to membership in the class will never be subject to objective proof other than their own say-so.  The District Court should have applied the reasoning used in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. 2013), and this Court should take the issue on appeal to settle a split in decisions about the propriety of certifying classes whose members cannot be objectively identified.

Finally, the District Court manifestly erred in concluding that plaintiffs have standing to assert claims for products made of different active ingredients that they themselves never purchased.

## <u>QUESTIONS PRESENTED</u>

1. Whether the District Court erred in concluding that California law should apply to a nationwide class of purchasers of a consumer product given the governmental interest of each state in applying its own consumer protection laws and the holding in *Mazza*.

2. Whether the District Court erred in concluding that a class of purchasers of a consumer product is sufficiently ascertainable without objective proof of class membership.

**EXHIBIT A PAGE 16**

3. Whether the District Court erred in concluding that named plaintiffs have standing to pursue relief on behalf of other class members for products made with different active ingredients that the plaintiffs have not themselves purchased.

## STATEMENT OF FACTS

Plaintiffs filed their Consolidated Amended Class Action Complaint on December 7, 2012, alleging that six Hyland's brand homeopathic products - Cold 'n Cough 4 Kids, Cough Syrup with 100% Natural Honey 4 Kids, Sniffles 'n Sneezes 4 Kids, Cold Relief Strips 4 Kids with Zinc, Complete Flu Care 4 Kids, and Nighttime Cold 'n Cough 4 Kids – are falsely advertised as fast, safe and effective relief from cold and flu symptoms.  (Order re Class Certification, Ex. A, at 1-2).  Each of these products has different ingredients and different indications for use.  (Defendants' Opposition to Class Certification, Ex. B, at 7-8).  There is also evidence in the record that a majority of the consumers purchasing these products are satisfied.  (Ex. B at 7).  Plaintiffs claim that defendants' alleged misrepresentations support claims for relief under 1) the Magnuson Moss Warranty Act; 2) unjust enrichment (dismissed); 3) breach of express and implied warranties; 4) the New Jersey Consumer Fraud Act; 6) the California Consumer Legal Remedies Act; 7) the California False Advertising Law; 8) the California Unfair Competition Law; and 9) the Missouri Merchandising Practices Act.  (Ex. A at 1). On April 23, 2012, defendants moved to dismiss various claims based on, among

**EXHIBIT A PAGE 17**

other theories, the fact that named plaintiffs did not have standing to pursue relief for products they did not purchase.  (Order re Motion to Dismiss, Ex. C, at 1).  The District Court denied the motion on this issue, stating that "Defendants' argument is better taken under the lens of typicality or adequacy of representation, rather than standing."  (Ex. C at 5).

Forcellati purchased Cold 'n Cough 4 Kids in New Jersey.  (Ex. C at 1).  He does not have any receipts or documentation proving that he actually purchased this product.  (Ex. B at 14).  Similarly, Roemmich purchased Cold 'n Cough 4 Kids in Missouri and does not remember exactly where she purchased the product or even in what year she purchased the product, nor does she have any documentation confirming her purchase of the product.  (*Id.*)  Neither plaintiff purchased any other product, or are aware of any consumers who are dissatisfied with any of the products.  (*Id.* at 7).

Plaintiffs filed a motion for class certification under Rule 23(b)(2) and 23(b)(3), seeking both injunctive and monetary relief, in the form of restitution, on behalf of the class.  (Ex. A at 1-2).  Plaintiffs proposed to ascertain the class by using claim forms, accompanied by either a receipt or a sworn affidavit attesting to a product purchase.  (*See id.* at 5-6).  By order and decision dated April 9, 2014, the District Court granted in part, and denied, in part, plaintiffs' motion for class certification.  The court certified Rule 23(b)(3) nationwide classes of all persons

**EXHIBIT A PAGE 18**

who purchased five of the six products, and a 49-state class of all persons (except for those in California) who purchased Complete Flu Care 4 Kids.  (Ex. A at 15).

## RELIEF SOUGHT

This Court should accept review of the Order regarding Class Certification and, following briefing on the merits, reverse and vacate that Order.

## STANDING FOR GRANTING REVIEW

Fed. Rule Civ. Proc. 23(f) provides that a "court of appeals may permit an appeal from an order granting or denying class-action certification…if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered." A Rule 23(f) petition should be granted where "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review" or the district court's decision is "manifestly erroneous."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Both of these situations are present here.

First, the District Court made a manifest error of law by applying California law to a nationwide class in the wake of *Mazza*.  Just as in *Mazza*, this case involves the consumer protection laws of multiple states; these laws are in actual conflict; and each state has an interest in the implementation of its consumer protection laws.  The District Court held defendants to an inappropriately high

**EXHIBIT A PAGE 19**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 22 of 106   Page ID
#:13689
Case: 14-80058   04/23/2014   ID: 9070478   DktEntry: 1-1   Page: 16 of 98  (16 of 100)

burden to demonstrate the applicability of the different states' laws, in conflict with
*Mazza*.  And, the District Court's order was the latest in a line of cases that have
dueled over the proper interpretation of *Mazza*, indicating that this is an unsettled
area of law that the Court should address.

The District Court's ascertainability determination reflects a misapplication
of the law, caused by a serious division among district courts within the circuit
about the ability to certify classes of consumers without requiring them to prove
purchase.  The District Court rejected the Third Circuit's reasoning in *Carrera*,
asserting that *Carrera* "is not presently the law in the Ninth Circuit." (Ex. A at 6
(citation omitted)).  Other courts in this Circuit have disagreed on similar facts.
The Court should grant this petition and address this issue to settle these disputes.

Finally, the District Court committed manifest error when it ruled that
plaintiffs had standing to bring claims on products made with different ingredients,
that they never purchased, over representations they never relied on.

## REASONS THE PETITION SHOULD BE GRANTED

### 1.  THE COURT ERRED IN CERTIFYING A NATIONWIDE CLASS BASED ON CALIFORNIA LAW

In assessing choice of law, California applies the following governmental
interest inquiry: (1) determine if the laws of other states materially differ from
California law; (2) if the laws materially differ, determine each state's respective
interest in application of its law; and (3) if both states have an interest in litigation,

apply the law of the state whose interest would be more impaired if its law were not applied.  *Mazza*, 666 F.3d at 590.  Here, in applying this test, the District Court reached a decision that was manifestly erroneous ***and*** highlights a split of opinions by district courts within the Ninth Circuit that must be resolved.

### A.   The Order Is Based Upon A Manifest Error Of Law With Regard To Certifying A National Class In The Wake Of *Mazza*

The District Court's holding is a manifest error of law because the court 1) ignored material differences in state consumer laws identified by defendants; and 2) declined to apply *Mazza*'s determination that each of the 50 states have an interest in the application of their own laws, and that the laws of the state where a consumer product is purchased will be the most impaired if they are not applied.

In *Mazza*, defendant appealed an order certifying a nationwide class of Honda purchasers, applying California law to all claims.  *Id*. at 589.  This Court held that the district court erred in finding that the governmental interest test supported application of California law to a nationwide class – notwithstanding the fact that Honda is a California corporation, a fifth of the proposed class members resided in California, and the alleged misrepresentations stemmed from an advertising agency in California.  *Id*. at 595.  In so holding, the Court found that "[e]ach of our states has an interest in balancing the range of products and process offered to consumers with the legal protections afforded to them," and that,

**EXHIBIT A PAGE 21**

because the cars were sold in each of the states (and the alleged misrepresentations were received in the state where the product was sold), "each foreign state has an interest in applying its law to transactions within its borders." *Id*. at 592, 593.

Here, in a virtually identical factual scenario, the District Court held that California law should apply to a nationwide class of individuals represented by plaintiffs who neither resided nor purchased the products in California.  (Ex. A at 4).  The court declined to make any determination as to whether or not Defendants identified material differences in the states' laws.  (*Id.* at 3).  It then ruled that it did not need to follow the determination in *Mazza* that each of the states have an interest in regulating consumer products sold within their borders, or that the states where the transactions took place have an interest in applying its law to those transactions.  (*Id*. at 2-4).  Instead, once the court deemed it constitutional to apply California to the class (based on a very minimal showing of sufficient contacts), it held that the burden shifted to Defendants to present an "analytically rigorous" factual discussion showing why the laws of each of the 49 other states should be applied instead of California law.  The court's determination erects an artificial burden that is inconsistent with *Mazza*, and is almost impossible to overcome.

Defendants identified material differences between the laws of the states at issue in this class action, satisfying the first prong of the governmental interest test. Defendants identified material differences in statutes of limitations, and showed

**EXHIBIT A PAGE 22**

that application of California's law would allow class members like Roemmich to

bring claims that they could not have otherwise brought in their own states.  (Ex. B

at 21-22; *see Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 544 (C.D. Cal.

2012)).  Defendants identified material differences in actual injury requirements,

and showed that application of California law to the class could foreclose claims

that otherwise could have been brought in other states.  (Ex. B at 22).  California

law also requires that plaintiffs demonstrate they relied on the challenged

representations, a material difference from New Jersey and Missouri laws.  *Mazza*,

666 F.3d at 591.  And, there are vast differences in the amount and types of relief

that may be sought in the various states and key differences in the warranty laws of

the various states.  (Ex. B at 23).  Despite this showing, the District Court declined

to rule on whether or not the laws of the states materially differ.  (Ex. A at 3).

    The court also erred by requiring a fact-intensive analysis to determine the

interests of each state in the application of its own consumer protection laws, and

which state's interest would be most impaired if its laws were not applied, because

these questions have been resolved by *Mazza*.  In *Mazza*, this Court held that the

state in which a consumer received a misrepresentation and purchased a product

has a strong interest in setting "the optimal balance between protecting consumers

and attracting foreign businesses…."  *Mazza*, 666 F.3d at 592.  When consumer

products are sold in each of the 50 states, there is no question that each state has an

**EXHIBIT A PAGE 23**

interest in having its own consumer protection laws applied; these are the only facts that *Mazza* relied on and they are present in this case. *Id*.[1]

The District Court similarly grafted a fact-specific analysis requirement onto the determination of whether or not a state's interest would be impaired if its laws were not applied. This is contrary to the holding in *Mazza*, which focused on the broader, non-fact-specific concern that "each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce," noting that the district court's miss of this concept was clear error. *Mazza*, 666 F.3d at 593. *Mazza* confirmed that California considers "'the place of wrong' to be the state where the last event necessary to make the actor liable occurred." *Id*. at 593-594. The District Court declined to follow this holding, stating that "in a false advertising case the state from which the misrepresentation was disseminated often has the predominant interest," citing to *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001) and *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987). (Ex. A at 3-4). However, *Wershba* did not consider the interests of other states, and instead

---

[1] Other courts following *Mazza* have similarly deemed this requirement met without any reference to the individual facts of the case. *See, e.g., Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1102 (C.D. Cal. 2012) ("The consumer protection and fraud law of every state is important."); *Keegan*, 284 F.R.D. at 544-545.

- 10 -

**EXHIBIT A PAGE 24**

"simply assumed that if constitutional Due Process concerns were met, California provided the applicable choice-of-law rule without further inquiry" (*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 785 F. Supp. 2d 925, 934 (C.D. Cal. 2011)), and *Clothesrigger* did not find that California law should apply to a nationwide class, but criticized the lower court for not conducting **any** choice of law analysis. *Clothesrigger*, 191 Cal. App. 4th at 615-616.   Indeed, like *Wershba*, the District Court's analysis was also centered on due process concerns, as it focused on defendants' headquarters in California and that the challenged representations presumably disseminated from California[2] as reasons why California's interests overwhelms that of all other states.   However, the same types of facts were present in *Mazza* ("Honda's headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members" were located in California) and this Court expressly found that California's interest was "attenuated" and did not trump the general rule that California considers the state of purchase to have the countervailing interest. *Mazza*, 666 F.3d at 590, 593-594. The result should have been no different here.

---

[2] It is unclear why the District Court presumed, without any evidence, that the challenged representations emanated from California.  As defendants indicated in their opposition, a number of the marketing decisions for California were not made in California, as the Vice President of Marketing was based in the Washington D.C. area at the time that many of the representations were drafted and approved, and she coordinates with several individuals around the country. (Ex. B at 20, n. 6).

**EXHIBIT A PAGE 25**

B.      The Application Of *Mazza* Represents An Unsettled Issue
         Of Law Relating To Consumer Class Actions

District courts within the Ninth Circuit are split regarding whether *Mazza* definitively determined the second and third prongs of the governmental interest test with respect to claims arising under California consumer protection laws. Here, the District Court cited only its own prior opinion in holding that defendants' burden can only be met "by engaging in an analytically rigorous discussion of each of [the] tests based on the facts and circumstances of *this* case, and [*these*] Plaintiff[s'] allegations."  (Ex. A at 2) (emphasis in original).  Other courts in this circuit have applied *Mazza* in the same fashion that defendants urge must be done here.  For example, in *Keegan*, 284 F.R.D. at 548, the court declined to apply California law to a class of automobile purchasers in three different states, noting that once material differences in state law were identified, "*Mazza* dictates the conclusion" on the next two prongs, highlighting and adopting the policy discussions presented by *Mazza*.  Other courts have followed *Mazza* to limit application of California law to other states, or deny class certification all together, without the rigorous factual discussion that the District Court currently attempts to impose.  *See, e.g., Kowalsky v. Hewlett-Packard Company*, 2012 WL 892427 (N.D. Cal. 2012); *Holt v. Globalinx Pet LLC, et al.*, 2013 WL 3947169 (C.D. Cal. 2013); *Skold v. Intel Corp.*, 2012 WL 1375929 (Cal. Super. 2012);  *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1102-03 (C.D. Cal. 2012).

**EXHIBIT A PAGE 26**

There are, in distinction, other decisions that have applied California law to national classes based on the determination that the defendants did not provide sufficient factual analysis. *See Bruno v. Eckhart*, 280 F.R.D. 540, 546-47 (C.D. Cal. 2012); *see also In re Pom Wonderful LLC*, 2012 WL 4490860, at *4 (C.D. Cal. Sept. 28, 2012). Respectfully, defendants contend that these courts also reached the wrong results and the Court should permit an appeal on this issue to articulate how district courts should implement *Mazza*.

**2.    THE COURT SHOULD RESOLVE A SHARP DIVIDE CONCERNING THE ASCERTAINABILITY OF CONSUMER CLASSES WHO CANNOT PROVIDE PROOF OF PURCHASE**

Courts in this Circuit generally accept that as a threshold matter "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *See, e.g.*, *Mazur v. eBay*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Here, no method exists to identify thousands of class members using objective criteria in an administratively feasible and verifiable manner.

Plaintiffs' proposed method of ascertaining absent class members – using claim forms, accompanied by either a receipt or a sworn affidavit attesting to a product purchase – will not prove a person is in the class or entitled to an award of damages. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). This substantive right

90208604

- 13 -

**EXHIBIT A PAGE 27**

applies equally in class actions: "Rule 23 [cannot] 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011). Rule 23 does not permit dispensing with individual proof of damages. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).

A plaintiff in a non-class action cannot establish an element of a defendant's liability merely by completing an affidavit swearing the element is satisfied, and this rule should be no different in the context of a class action. *See* 8 U.S.C.A. § 2072(b) (stating procedural rules "shall not abridge, enlarge or modify any substantive right").   Under ordinary circumstances, defendants could cross-examine each and every alleged class member regarding his or her memory of purchasing a Hyland's product.   Forcing defendants to accept as true absent persons' declarations that they are class members without the ability to challenge their membership, strips defendants of their due process right to dispute the allegations of individuals who are demanding money from them.

This is precisely the point made in *Carrera v. Bayer Corporation,* where the plaintiff sought to certify a class of consumers who purchased a modestly-priced multivitamin and dietary supplement.   727 F.3d 300, 304 (3d Cir. 2013).   Like defendants, Bayer had no records of individual purchasers because it did not sell directly to consumers, and class members were unlikely to have retained proof of purchase.   *Id.*   In vacating the class certification order, the Court recognized the

- 14 -

**EXHIBIT A PAGE 28**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 31 of 106   Page ID
#:13698
Case: 14-80058    04/23/2014    ID: 9070478    DktEntry: 1-1    Page: 25 of 98   (25 of 100)

resulting unfairness to Bayer if class members were not required to prove their purchases, explaining that a "defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim," and that "[a]scertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership." *Id.* at 307.

The District Court rejected the Third Circuit's reasoning in *Carrera*, asserting that *Carrera* "eviscerates low price consumer class actions" and "it is not presently the law in the Ninth Circuit." (Ex. A at 6 (*citing McCrary v. Elations, Co.*, 2014 U.S. Dist. LEXIS 8443, at *24 (C.D. Cal. Jan. 14, 2014))). Notwithstanding this pronouncement, other courts in this Circuit disagree. For example, in a recent opinion declining to certify a class of consumers who purchased nutrition bars labeled as "all natural," another district court reached the opposite conclusion, finding the reasoning of *Carrera* and *Xavier v. Philip Morris USA Inc.* more persuasive than that of other California cases which certified class actions notwithstanding the inability to identify absent class members through records. *Senavanish v. ZonePerfect Nutrition Co.*, Case No. 12–2907–SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014). In *Xavier*, a district court declined to certify a class of asymptomatic smokers and recent quitters because, "[t]here [was]

**EXHIBIT A PAGE 29**

no reliable way in which smokers themselves could document their long-term smoking histories." 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

Indeed, numerous district courts in this circuit have denied class certification in cases involving low-cost consumer items for which consumers are unlikely to have retained proof of purchase. *See, e.g., Minkler v. Kramer Labs*., Inc., No. 12-9421, 2013 WL 3185552, at *7 (C.D. Cal. Mar. 1, 2013); *Moheb v. Nutramax Labs. Inc.*, No. 12-3633, 2012 WL 6951904, at *8 (C.D. Cal. Sept. 4, 2012); *Red v. Kraft,* 2012 WL 8019257, at *4, *adopted as final* in 2012 WL 8018618 (C.D. Cal. Apr. 26, 2012); *Williams v. Oberon Media, Inc*., No. 10-56255, 2010 WL 8453723, at *3 (C.D. Cal. Apr. 10, 2010); *Hodes v. Van's Int'l Foods*, No. 09–1530, 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23, 2009); *c.f. In re Phenylpropanolamine Prod. Liab. Litig.*, 214 F.R.D. 614, 619 (W.D. Wash. 2003); *In re POM Wonderful LLC*, 2014 WL 1225184, at *6 (C.D. Cal. Mar. 24, 2014). Although the District Court cited *Ries v. Arizona Beverages USA LLC*, as an example of a case where a class of purchasers of a low-cost item (iced tea beverages) was certified (Ex. A at 10, n. 5), the *Ries* court actually ***denied*** class certification for purposes of awarding monetary relief, citing the difficulties in reliably determining who had purchased the beverages and how many such beverages they purchased. 287 F.R.D. 523, 541-42 (N.D. Cal. 2012).

**EXHIBIT A PAGE 30**

Although the District Court acknowledges that defendants "undeniably ha[ve] an interest in not paying excess damages," it assumes that defendants' total liability for damages in this case is fixed by its total sales of the products. (Ex. A at 6). This assumption is incorrect; requiring defendants to disgorge their "total sales" is a non-restitutionary remedy that is barred under California law. *Madrid v. Perot Systems, Corp.*, 130 Cal. 4th 440, 460 (2005) ("nonrestitutionary disgorgement is not an available remedy in a UCL class action"). Under California law, "restitution" is "the return of the excess of what the plaintiff gave the defendant *over the value of what the plaintiff received*." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000) (emphasis added). Since the purpose of restitution is to return class members to the *status quo*, the amount of restitution due must account for the benefits that class members received from the products purchased and used, even if they were not exactly as advertised. *See E.H. Boly & Son, Inc. v. Schneider*, 525 F.2d 20, 24 (9th Cir. 1975) (restitution award must account for amount of benefits received). Defendants have presented evidence that the majority of customers are satisfied with their purchases, suggesting they obtained some benefit from the products. (*See, e.g.,* Ex. B at 14). Even if California law did not bar non-restitutionary disgorgement, awarding all the revenues or profits that defendants earned since March 2008, without an offset for value received by consumers, is a windfall recovery, violating "the Due Process

Clause of the Fourteenth Amendment [that] prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor." *BMW of No. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996).

Given the host of seemingly contradictory opinions in this circuit concerning the ascertainability requirement, the Ninth Circuit should resolve this issue.

**3.      THE ORDER IS BASED ON MANIFEST ERRORS OF LAW WITH RESPECT TO THE STANDING TO PURSUE RELIEF ON PRODUCTS NOT PURCHASED**

Standing is a threshold matter central to subject matter jurisdiction that must be satisfied before proceeding to the merits of a case.  *Bates v. U.P.S.*, 511 F.3d 974, 985 (9th Cir. 2007).  Plaintiffs must show, *inter alia*, "an injury in fact . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-51 (1992).  In class actions, the U.S. Supreme Court has made clear that named plaintiffs who represent a putative class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class …." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal citation and quotation marks omitted); *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974).  If a named plaintiff lacks standing, she may not seek relief on behalf of herself or any other member of the class.  *O'Shea*, 414 U.S. at 494-95; *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 687 (S.D. Ohio 2006).  In a false

**EXHIBIT A PAGE 32**

advertising case, a plaintiff has standing only if the plaintiff experienced injury stemming from the purchase of that product.  *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010); *see also Allen v. Hyland's, Inc.*, 2012 WL 1656750, at * 5 (C.D. Cal. May 2, 2012); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at * 3 (N.D. Cal. Jan. 10, 2011); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012).

Defendants first challenged plaintiffs' standing to pursue claims regarding products they did not purchase on a motion to dismiss, as it was uncontested that both named plaintiffs only purchased one of the six products identified in their complaint, Cold 'n Cough for Kids.  (*See* Ex. C at 5).  However, the District Court did not analyze the issue, indicating that the purchase of the products was not a standing issue, but one of typicality under a Rule 23 analysis.  (*Id.*).  The District Court partially re-addressed the issue of standing on class certification, holding that "[t]he typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members" (Ex. A at 12) (internal citation omitted), but again failing to substantively analyze whether plaintiffs have presented sufficient evidence to establish Article III standing.

Contrary to binding precedent, the District Court manifestly erred in certifying a nationwide class of consumers for all six products because plaintiffs

**EXHIBIT A PAGE 33**

lack standing for products they did not purchase and for which they have not suffered a concrete and particularized injury in fact that is redressable. *Lujan*, 504 U.S. at 560-61; *O'Shea*, 414 U.S. at 494-95.  Because they did not purchase five of the products, plaintiffs did not rely on any misrepresentations or omissions as to any other products, nor have they suffered any injury-in-fact as a result of any conduct by defendants as to the products they did not buy.  Furthermore, unlike the products in *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012), which found standing because all of the challenged products contained the same alleged misrepresentations and same ingredients, plaintiffs' complaint identifies different ingredients and representations for each product that plaintiffs allege are false and misleading.  (*See, e.g.,* Ex. B at 7-8).  Because plaintiffs lack standing to bring claims for products they did not purchase, the court has erred in bypassing this threshold requirement and effectively holding that plaintiffs have standing for these other products by certifying the class.

## CONCLUSION

For the foregoing reasons, Defendants-Petitioners respectfully request that their petition for Rule 23(f) interlocutory appeal be granted.

**EXHIBIT A PAGE 34**

| Dated:  April 23, 2014 | Respectfully submitted,<br><br>s/ Matthew M. Gurvitz<br><br>_____<br>Jeffrey B. Margulies (Bar No. 126002)<br>Stephanie Stroup (Bar No. 235071)<br>Matthew M. Gurvitz (Bar No. 272895)<br>FULBRIGHT & JAWORSKI LLP<br>550 South Flower Street<br>Los Angeles, California  90071<br>Telephone:  (213) 892-9200<br>Facsimile:  (213) 892-9494<br><br>Attorneys for Defendants-Petitioners |

- 21 -

**EXHIBIT A PAGE 35**

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF**

**APPELLATE PROCEDURE 5(c) AND 32**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify the following:

This petition for permission to appeal class certification complies with the page limitation of Rule 5(c) of the Federal Rules of Appellate Procedure because the petition does not exceed 20 pages, exclusive of the disclosure statement, the proof of service, and the accompanying documents required by Rule 5(b)(1)(E).

This petition complies with the type-volume requirements of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and the typeface requirements of Rule 32(a)(5) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font and contains 4,892 total words exclusive of the parts of the petition exempted from Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

| Dated:  April 23, 2014 | s/ Matthew M. Gurvitz<br>_____<br>Jeffrey B. Margulies (Bar No. 126002)<br>Stephanie Stroup (Bar No. 235071)<br>Matthew M. Gurvitz (Bar No. 272895)<br>FULBRIGHT & JAWORSKI L.L.P.<br>550 South Flower Street<br>Los Angeles, California  90071<br>Telephone:  (213) 892-9200<br>Facsimile:  (213) 892-9494 |
| --- | --- |

**EXHIBITS IN SUPPORT OF DEFENDANTS-PETITIONERS' PETITION PURSUANT TO FED. R. CIV. P. 23(F) FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION**

## TABLE OF CONTENTS

| Exhibit | Document |
| --- | --- |
| A. | Civil Minutes – (In Chambers) Order re: Plaintiffs' Motion for Class Certification, Dated April 9, 2014 (Docket No. 144) |
| B. | Defendants' Memorandum of Points and Authorities in Opposition to Motion for Class Certification (Redacted), Dated October 28, 2013 (Docket No. 94) |
| C. | Civil Minutes – (In Chambers) Order re: Motion to Dismiss Complaint, Dated June 1, 2012 (Docket No. 27) |

# EXHIBIT A

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|----------|------------------------|------|---------------|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Plaintiffs' Motion for Class Certification [Dkt. No. 82]

This matter is before us on Plaintiffs' Motion for Class Certification ("Motion"). We have considered the papers filed in support of and in opposition to the Motion, including the Parties' supplemental briefing, and deem this matter appropriate for resolution without oral argument. *See* L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.     Background**

On December 7, 2012, Plaintiffs Enzo Forcellati and Lisa Roemmich ("Plaintiffs") filed their Consolidated Amended Class Action Complaint ("Complaint"), which principally alleges that Defendants uniformly misrepresent that their homeopathic products provide fast, safe, and effective relief from cold and flu symptoms. Alleging "homeopathy is pseudoscience," Plaintiffs contend that the cold and flu products are actually "nothing more than sweetened, flavored water with . . . highly diluted concentrations of the products' so-called 'active ingredients.'" (Compl. ¶¶ 2, 15, 19).

Based on these allegations, Plaintiffs asserted the following claims: (1) violation of Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*; (2) unjust enrichment; (3) breach of express warranty; (4) breach of implied warranty; (5) violation of the New Jersey Consumer Fraud Act ("NJCFA"), § 58:8-1, *et seq.*; (6) violation of California's Consumer Legal Remedies Act ("CLRA"); (7) violation of California's False Advertising Law ("FAL"); (8) violation of California's Unfair Competition Law ("UCL"); and (9) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. §§ 407.010, *et seq.* On June 1, 2012, we dismissed Plaintiffs' unjust enrichment claim. [Dkt. No. 27].

Plaintiffs now seek to certify a class for the remaining claims. The proposed nationwide class would consist of "all persons in the United States who purchased any of six Hyland's children's cold and flu products": (1) Cold 'n Cough 4 Kids, (2) Cough Syrup with 100% Natural Honey 4 Kids, (3) Sniffles 'n Sneezes 4 Kids, (4) Cold Relief Strips 4 Kids with Zinc, (5) Complete Flu Care 4 Kids,[1] and

_____

[1] To prevent any overlap with the claims certified in the California state court action *Acuna v. Hyland's, Inc., et al.*, Case No. CIVDS1110816 (San Bernardino County), Plaintiffs have excluded from the putative class California purchasers of Complete Flu Care 4 Kids.

**EXHIBIT A PAGE 39**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

(6) Nighttime Cold 'n Cough 4 Kids.  (Compl. ¶¶ 1, 82).  In addition, Plaintiff Forcellati seeks to represent a New Jersey-only NJCFA subclass, and Roemmich seeks to represent a Missouri-only MMPA subclass.  Plaintiffs seek certification under both Rule 23(b)(2) and (b)(3).

**II.      Discussion**

      **A.      Choice of Law**

      In a CAFA diversity action, we apply California's choice of law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538 n.7 (C.D. Cal. 2011) ("*Bruno I*").  "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (citations omitted).  "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims."  *Id.* at 590.

      Given that Defendants are headquartered in California, we have already held that application of California law "poses no constitutional concerns" in this case.  *Forcellati v. Hylands, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).  Defendants do not present any new evidence that disturbs our prior conclusion that "California has a constitutionally significant aggregation of contacts to the claims of each putative class member in this case."  *Mazza*, 666 F.3d at 591.  Accordingly, the burden is on Defendants to defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law under the applicable choice-of-law analysis.  *See Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 731 (1972).

      Defendants must make this showing under California's three-step governmental interest test.  *Mazza*, 666 F.3d at 590.  First, they must show that the relevant laws of the affected jurisdictions are materially different.  *Id.*  Then, Defendants must show that the foreign jurisdictions have an "interest in the application of [their] own law under the circumstances of the particular case" such that "a true conflict exists."  *Id.*  Finally, if they can show that there is a true conflict, Defendants must engage in a comparative impairment analysis and demonstrate that the foreign states' interests in this matter are stronger than California's such that the foreign states "would be more impaired if [their] law[s] were not applied."  *Id.*  As we expressly instructed in our June 1, 2012 Order, Defendants can only meet their burden under this test "by engaging in an analytically rigorous discussion of each prong of [the] test based on the facts and circumstances of *this* case, and [*these*] Plaintiff[s'] allegations."  *Forcellati*, 876 F. Supp. 2d at 1161.  Defendants' briefing here falls far short of this standard.  Rather than attempt to make a showing based on the particulars of this case, Defendants have opted to rely on conclusory assertions and citations to cases in which defendants met their burdens in different factual circumstances.  As we held in our last Order, "[m]erely citing other courts' choice-of-law analysis, based on the facts before those courts, fails to discharge Defendants' burden of showing a 'compelling

**EXHIBIT A PAGE 40**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

reason' justifying the displacement of California law on Plaintiff[s'] claims." *Id.*

Defendants do identify several differences in the various states' consumer protection statutes and requirements for proving breach of warranty. However, identifying differences in state law is but the first step in an analysis under the first prong of the governmental interest analysis test. The only differences that are relevant to the conflict-of-laws analysis are those that are material *in this litigation*. *Mazza*, 666 F.3d at 590. Here, Defendants' fact-specific materiality analysis ranges from sparse to non-existent.

The deficiencies in Defendants' analysis become even more glaring in the second and third prong of the test. "The second step of the governmental interest analysis requires us to examine each jurisdiction's interest in the application of its own law in the circumstances of the particular case to determine whether a true conflict exists." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91 (2010). Here, the full extent of Defendants' analysis is a citation to *Mazza* and the broad statement that "each of the 50 states has an interest in setting the balance between protecting its consumers and setting limits on when businesses may be sued for the purchase of their products." (Opp. 24). This is not enough for Defendants to satisfy their burden of demonstrating the existence of a "true conflict." Given that California law requires a case-specific analysis to demonstrate a true conflict, Defendants' conclusory reliance on *Mazza* does not satisfy their burden under the second prong of the governmental interest analysis test. *See In re POM Wonderful*, 2012 WL 4490860, at *4 (C.D. Cal. Sept. 28, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) ("*Bruno II*") ("*Mazza* did not and could not have changed state law requiring the defendant to analyze various states' laws under the circumstances of the particular case and given the particular legal issue in question.").

Defendants also fail to demonstrate the degree to which other states' interests would be impaired by the application of California law. "Under the comparative impairment analysis, we must carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 48 Cal. 4th at 96-97 (internal quotations and alterations omitted). This analysis "does not weigh the conflicting governmental interests in the sense of determining which conflicting law manifested the better or the worthier social policy on the specific issue." *Id.* Instead, our task is "to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *Id.* Here, Defendants once again expect a citation to *Mazza* to be sufficient to carry their burden. (Opp. 24-25). Rather than consider the facts of this case, Defendants simply state that "controlling law dictates that the interests of each of the consumers' home states are most impaired by the application of California law." (*Id.*) As support for this proposition, Defendants rely on *Mazza*'s conclusion that "California considers the 'place of wrong' to be the state where the last event necessary to make the actor liable occurred." (*Id.*) However, while California recognizes that "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders," *McCann*, 48 Cal. 4th at 97-98, in a false advertising case the state from which the misrepresentation was

**EXHIBIT A PAGE 41**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

disseminated often has the predominant interest.[2]  *See, e.g., Wershba*, 91 Cal. App. 4th at 243 ("[A] California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987) ("California's more favorable laws may properly apply to nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.").  Defendants have provided no substantive, fact-specific analysis as to whether California—where Defendants are headquartered and presumably disseminated a good portion of the allegedly false advertising—or the states where the sales occurred have the predominant interest here.  As such, Defendants' analysis under the comparative impairment prong of the governmental interest analysis test is insufficient to carry their burden.

    In sum, Defendants—as the party bearing the burden of demonstrating "that foreign law, rather than California law, should apply to class claims," *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)—have failed to satisfy their burden under California's governmental interest analysis test.  Given that *Mazza* did not "categorically rule out application of California law to out-of-state class members," simply citing *Mazza* in no way relieves Defendants of their burden.  *See Allen v. Hylands, Inc.*, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012); *see also Mazza*, 666 F.3d at 594 (stating that its holding was reached "[u]nder the facts and circumstances of [that] case").  Accordingly, because Plaintiffs have made a sufficient initial showing for application of California law, and Defendants have failed to show otherwise, California law applies to Plaintiffs' proposed nationwide class.  *See Bruno II*, 280 F.R.D. at 550 ("[T]he California Supreme Court requires that Defendants analyze various states' laws under the circumstances of the particular case and given the particular legal issue in question" before they can "deprive consumers in several states who were exposed to misrepresentations of the most efficient vehicle for adjudication of their injury: a nationwide class action.").

    **B.     Class Certification Standard**

    A motion for class certification is governed by the requirements of Federal Rule of Civil Procedure 23, and the party seeking certification bears the burden of affirmatively demonstrating that the Rule 23 requirements have been met.  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Plaintiffs seek to certify a Rule 23(b)(2) and (b)(3) class.  In addition to bearing the burden of establishing the requirements of (b)(2) and (b)(3), Plaintiffs must prove the following Rule 23(a) prerequisites:

    (1)  "the class is so numerous that joinder of all members is impracticable";
    (2)  "there are questions of law or fact common to the class";

---

    [2] While it is true that the relevant economic injury occurred at the point of purchase for purposes of standing, this does not necessarily mean that the predominant interest for the purposes of the choice-of-law analysis is in the state of the point of purchase.  *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001).

**EXHIBIT A PAGE 42**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

    (3)  "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

    (4)  "the representative parties will fairly and adequately protect the interests of the class."

In addition, although not specifically mentioned in Rule 23(a), ascertainability is a threshold prerequisite to class certification.  *See Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002).

    Before certifying Plaintiffs' class, we must conduct a "rigorous analysis" to ensure Plaintiffs have met the prerequisites of Rule 23.  *Zinser*, 253 F.3d at 1186.  While we may generally accept the allegations in the complaint as true in determining class certification, we must consider the merits of the claims to the extent they overlap with the Rule 23 requirements, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011), as "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).

    1.    **23(a) Requirements**

        a.    **Ascertainability**

    "The requirement of an ascertainable class is met as long as the class can be defined through objective criteria."  *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013).  A class is sufficiently ascertainable if "the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover."  *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008).

    Here, Plaintiffs have precisely defined their class based on an objective criteria:  purchase of Defendants' children's cold or flu products within a prescribed time frame.  This is enough to satisfy Rule 23(a)'s implied ascertainability requirement.  *See McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. Jan. 13, 2014) (holding that class was sufficiently ascertainable because "the class definition clearly define[d] the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase"); *L'Oreal*, 2013 WL 3353857, at *18 (holding that class was sufficiently ascertainable where "the requirement for membership in the class [was] whether a consumer purchased a product after a particular date").

    Defendants argue that Plaintiffs' proposed class is insufficiently ascertainable because, although they know how many sales they have made, there are no records that could confirm class membership: purchasers likely have not retained proof of purchase for such low-cost products, and Defendants do not have any records identifying the consumers who purchased their products via retail intermediaries. Relying primarily on the Third Circuit's reasoning in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir.

**EXHIBIT A PAGE 43**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

2013), Defendants contend that this inability to feasibly ascertain the identity (not the existence) of class members should preclude class certification because: (i) a self-identified class deprives Defendants of their due process rights to challenge individual members' claims; (ii) the finality of any judgment would be undermined because class members could later assert that fraudulent claims diluted their recovery; and (iii) the challenges in confirming class membership make a class action an inferior method of adjudicating this controversy. We disagree. Given that facilitating small claims is "[t]he policy at the very core of the class action mechanism," *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 617 (1997), we decline to follow *Carrera*. *See McCrary*, 2014 U.S. Dist. LEXIS 8443, at *24 ("*Carrera* eviscerates low price consumer class actions in the Third Circuit . . . . While this may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit.").

> **i.      Defendants Have No Due Process Interest in How Damages Are Distributed**

While a defendant undeniably has an interest in not paying excess damages, this interest would only be implicated if (i) its aggregate liability could not be reliably determined; or (ii) the defendant is entitled to unclaimed portions of the judgment. Neither of these scenarios is at play here. First, Defendants have no cognizable interest in challenging class membership because its aggregate liability is tied to a concrete, objective set of facts—its total sales—that will remain the same no matter how many claims are submitted. *Cf. Marcus v. BMW of North America LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012) (class was unascertainable because there were no records as to how many individuals fit the class definition); *Williams v. Oberon Media, Inc.*, 2010 WL 8453723, at *3 (C.D. Cal. Apr. 10, 2010) (same). Second, any unclaimed funds would likely be distributed pursuant to *cy pres* standards; in light of the relevant statutes' deterrence goals, such funds would not be returned to Defendants. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990) (reversion of funds to defendant is only appropriate "when deterrence is not a goal of the statute").

In short, because Defendants' liability will be determined in the aggregate, and they will have no claim to any leftover damages, whether any given individual is or is not a rightful class member is entirely immaterial to Defendants' monetary liability in this case. *See id.* at 1307 ("Where the only question is how to distribute the damages, the interests affected are not the defendant's."); *see also* 3 Conte & Newberg, Newberg on Class Actions § 10:5 (2002) ("Aggregate computation of class monetary relief is lawful and proper. . . . Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process rights or jury rights to contest each member's claim individually will not withstand analysis."). Accordingly, Defendants have no due process interest in challenging class membership that stands in the way of certification. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (noting that a defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards").

> **ii.      Class Members Would Be Bound by Final Judgment**

In *Carrera*, the Third Circuit held that a defendant "has an interest in ensuring it pays only

---

**EXHIBIT A PAGE 44**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

legitimate claims" even when its total liability will not increase or decrease based on the number of claims submitted: "If fraudulent or inaccurate claims materially reduce true class members' relief, these class members could argue the named plaintiff did not adequately represent them because he proceeded with the understanding that absent members may get less than full relief . . . . [Defendant] has a substantial interest in ensuring this does not happen." 727 F.3d at 310. This is not a legitimate concern.

First, as a practical matter, even if we assume that some inaccurate or fraudulent claims will inevitably get past the claims administrator's screening mechanisms, it is highly unlikely that any true class member's recovery would, in fact, be diluted. The reality is the number of class members who actually file claims is relatively low. "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Ferrington v. McAfee, Inc.*, 2012 U.S. Dist. LEXIS 49160, at *13 (N.D. Cal. Apr. 6, 2012). In all likelihood, then, any fraudulent or inaccurate claimants would merely be standing in the stead of legitimate ones, and no material dilution would occur.

Second, even if we assume that some pro rata dilution might occur, there is no case law suggesting that such dilution would threaten to de-legitimize the adequacy of the class representatives and undermine our ability to issue a final judgment by which class members would be bound. Defendants have been unable to find a single case where a class member has challenged the adequacy of a named plaintiff "because he proceeded with the understanding that absent class members may get less than full relief." *Carrera*, 727 F.3d at 310. In fact, "broad collateral review of the adequacy of representation (or the other due process requirements for binding absent class members) is not available." *Epstein v. MCA, Inc.*, 179 F.3d 641, 649 (9th Cir. 1999). Collateral review would only be permissible if this Court were to altogether fail to make explicit findings as to adequacy of representation before certifying the class or approving a settlement. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010). "Simply put, the absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal." *Epstein*, 179 F.3d at 997.

Moreover, even if collateral review were available, a court would have no sound basis for finding that the representatives are inadequate in this case. "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Hesse*, 598 F.3d at 589. "Proceed[ing] with the understanding that absent class members may get less than full relief," *Carrera*, 727 F.3d at 310, in no way implicates either of these grounds for finding inadequacy.[2] Nothing suggests that Plaintiffs here will not vigorously prosecute this action on behalf of the entire class. Nor can Defendants credibly charge that Plaintiffs have a conflict of interest with absent class members. To the extent that fraudulent and inaccurate claims might reduce true class members' recovery, Plaintiffs' recovery would be diluted to the same extent. They therefore share absent class members' interest in

_____

[2] Notably, the Third Circuit itself "express[ed] no opinion on whether absent class members would be successful in arguing they were not adequately represented on this ground." 727 F.3d at 310 n. 7.

**EXHIBIT A PAGE 45**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

screening out potential bad claims.  And they propose to do so by subjecting claims to "a thorough and detailed fraud analysis during the claims administration process."  (Jt. Br. 8).[3]  Finally, "[t]he due process touchstone of adequacy and fairness of representation must be judged in light of" the alternatives to class treatment.  *See Blackie v. Barrack*, 524 F. 2d 891, 910 (9th Cir. 1975).  Here, with so little money at stake, class members lack any incentive to pursue claims individually.  Accordingly, even though some inaccurate or fraudulent claims may go undetected, a diluted recovery is surely preferable to absent class members' only realistic alternative: no recovery at all.  *See Weiner*, 255 F.R.D. at 672.

> iii.     **Confirming Class Membership Is Not Overly Burdensome and Does Not Render Class Action an Inferior Method of Adjudicating This Controversy**

That Plaintiffs' class definition may include "individuals that have inadequate proof to go forward with the class" is "not fatal to class certification and may be addressed later in the litigation." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *16 (C.D. Cal. Oct. 25, 2011).  However, to the extent that determining individuals' entitlement to relief during the claims administration process creates manageability problems, these ascertainability issues must be addressed pursuant to Rule 23(b)(3).  *See Red v. Kraft Foods*, 2012 WL 8019257, at *6 (C.D. Cal. April 12, 2012).

Generally, potential manageability problems during the damages phase of a class action do not defeat certification.  *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[T]here is a big difference from the standpoint of manageability between the liability and remedy phases of a class action."); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 550 (C.D. Cal. 2012) (certifying class even though there was "no practicable way" to identify the class members entitled to payment).  In light of Plaintiffs' proposed claims administration procedure, we are confident that confirming individuals' class membership does not pose overwhelming manageability hurdles in this case.  Moreover, should screening out fraudulent or inaccurate claims "prove unmanageable—something [we] do[] not anticipate—[we] 'retain[] the flexibility to address problems with a certified class as they arise, including the ability to decertify.'" *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wa. 2012) (quoting *United Steel Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010)).

---

[3] This process would screen out, *inter alia*: (i) any claim form that stated that a product was purchased from a retailer that does not sell the product (by cross-checking them with records showing which retailers sold which products in which locations); (ii) any claim form that cannot properly identify the images featured on the product packaging; (iii) any claim form that misidentifies whether the particular product was in pill, liquid, or strip form; (iv) duplicate claims; and (v) known frequent fraudulent filers.  Defendants' records could also be used to screen out any consumers who have already received refunds pursuant to Defendants' refund program.  *See Wiener v. Dannon*, 255 F.R.D. 658, 670 (C.D. Cal. 2009).  Finally, claimants will be required to affirm their statements under penalty of perjury.

**EXHIBIT A PAGE 46**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|----------|----------------------|------|---------------|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Finally, the possibility that class members' individual recoveries will be diluted by inaccurate or fraudulent claims does not automatically make class treatment unwarranted. Given that class members have no other realistic way to pursue such low-value claims, class treatment cannot fairly be construed as an inferior method of adjudication here. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (holding that where an individual action's "litigation costs would dwarf potential recovery," a "fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure"). Accordingly, neither manageability concerns nor the potential for diluted recovery defeat class certification because "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie*, 376 F.3d at 661.

In sum, Defendants present no persuasive arguments as to why an inability to absolutely confirm class members' identities should act as an independent bar to class certification. While it is undeniable that there is no surefire method to confirm on a class-wide basis whether class members actually purchased one of Defendants' products, this ascertainability problem is of no material relevance to Defendants, as it does not affect their bottom-line in any cognizable way, and there is no reason it should inure to Defendants' benefit. *See Six (6) Mexican Workers*, 904 F.2d at 1306-07; *Wiener*, 255 F.R.D. at 672 ("[T]he Ninth Circuit has minimized the weight to be placed on the existence of unknown class members.").

Accordingly, we view this class as sufficiently ascertainable because "it can be identified through reference to objective criteria." *L'Oreal*, 2013 WL 3353857, at *18; *see also Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. July 30, 2013); *Agne*, 286 F.R.D. at 566; *Keilholtz v. Lennox Hearth Products, Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 594 (C.D. Cal. 2008).[4] Under this definition of ascertainability (which comports with the rule's historic "liberal construction"), that class members' identities are unknown is insufficient to defeat class certification on its own. *See Wright & Miller, 7A Federal Practice and Procedure (3d ed., 2013) § 1760;*

_____

[4] Defendants cite several cases from this Circuit in which courts have denied certification on ascertainability grounds. However, by and large, these cases are readily distinguishable, as they involve: (i) an unknown number of total class members, and/or (ii) class definitions based on imprecise, non-objective, or complex criteria such that people could not easily determine whether or not they were members. *See Astiana v. Ben & Jerry's Homemade*, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) (no records of how many purchases fell within class definition, and class definition was too complex to allow for self-identification); *Hernandez v. Chipotle Mexican Grill*, 2013 WL 6332002, at *1-2 (C.D. Cal. Dec. 2, 2013) (same); *In re Phenylpropanolamine Prod. Liab. Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (same); *Rowden v. Pac. Parking Sys.*, 282 F.R.D. 581, 585 (C.D. Cal. 2012) (no records of how many people fell within class definition); *Xavier v. Phillip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089-90 (N.D. Cal. 2011) (same); *Williams v. Oberon Media, Inc.*, 2010 WL 8453723, at *3-4 (C.D. Cal. Apr. 10, 2010) (same).

**EXHIBIT A PAGE 47**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

*see also McCrary*, 2014 U.S. Dist. LEXIS 8443, at \*25-26 ("[T]he fact that particular persons may make false claims of membership does not invalidate the objective criteria used to determine inclusion.").[5]

**b.    Numerosity - 23(a)(1)**

Defendants concede that they have sold millions of units of their children's cold and flu products nationwide.  Accordingly, the numerosity requirement is satisfied here.

**c.    Commonality - 23(a)(2)**

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class."  These common issues must be material to the resolution of the claims asserted and demonstrate that the putative class members "suffered the same injury."  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1992).  After the Supreme Court's decision in *Dukes*, "what matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotations and alterations omitted).

Here, all of Plaintiffs' claims share the same fundamental premise:  Defendants misrepresent that their products safely and effectively treat flu and cold symptoms when, in fact, they have no medicinal value whatsoever.  If Plaintiffs can prove that homeopathy is a "pseudoscience," as they claim, and that Defendants' products therefore uniformly do not perform as advertised, then the putative class will be entitled to relief under Plaintiffs' warranty and false advertising claims.  "Because a determination of the truth or falsity of Defendant[s'] representation of [the products'] efficacy will resolve an issue that is central to the validity of each one of the claims in one stroke," and the products' efficacy can be established on a class-wide basis through clinical studies and expert testimony, Plaintiffs have sufficiently shown commonality.  *See Delarosa*, 275 F.R.D. at 589.

Defendants contend that commonality cannot be established here because: (i) each product uses different ingredients and treats different symptoms; (ii) whether the products' labels are misleading to consumers cannot be established on a classwide basis; and (iii) some consumers were satisfied with Defendants' products.  These arguments do not withstand scrutiny.  First, it is immaterial that

_____

[5] In this Circuit, classes that are objectively defined by the purchase of a low-cost product during a prescribed timeframe are routinely certified.  *See, e.g., McCrary*, 2014 U.S. Dist. LEXIS 8443, at \*20 (joint supplements); *Kashi Co.*, 291 F.R.D. at 500 (snack products); *In re POM Wonderful*, 2012 WL 4490860 (C.D. Cal. 2012) (juice products); *L'Oreal*, 2013 WL 3353857, at \*18 (hair products); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) (multivitamins); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. Nov. 27, 2012) (tea products); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 595 (C.D. Cal. 2011) (homeopathic products); *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) (yogurt products); *Zeisel v. Diamond Foods, Inc.*, 2011 U.S. Dist. LEXIS 60608, at \*19-\*21 (N.D. Cal. 2011) (walnuts); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (soda products).

**EXHIBIT A PAGE 48**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Defendants' products contain different ingredients because Plaintiffs are challenging the products' common homeopathic preparation.  The efficacy of homeopathy is a question that will "generate common answers apt to drive the resolution of the litigation."  131 S. Ct. at 2551.

Defendants' second argument also fails.  For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable.  *See Delarosa*, 275 F.R.D. at 589 n. 3; *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011).  Each statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation.  *Bruno*, 280 F.R.D. at 534; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010).  As such, whether or not Defendants' claims are misleading is an objective, classwide inquiry for purposes of the UCL, FAL and the CLRA.  It is simply a matter of common sense that consumers who purchased Defendants' products did so in reliance on Defendants' claims that the products provided effective relief from cold and flu symptoms.  *See Delarosa*, 275 F.R.D. at 586 ("The Court has no trouble finding that a 'reasonable man' would attach importance to a statement that a product, which appears to have no purpose other than to remedy colds, does, in fact, relieve the symptoms of a cold.").

Finally, Defendants' argument that any satisfied customers would not be entitled to restitution is without merit.  Plaintiffs allege that Defendants' products are placebos, and that the products' "effectiveness arises solely as a result of the placebo effect."  *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994).  If Plaintiffs' allegations are proven true, Defendants' representations about the products' effectiveness would constitute false advertising "even though some consumers may experience positive results."  *Id.*  The efficacy claims would still be misleading because the products are "not *inherently* effective," their results instead "being attributable to the psychosomatic effect produced by the advertising and marketing of the product[s]."  *Id.* (quotation marks and citation omitted).

Accordingly, because Plaintiffs' central theory of the case is susceptible to class-wide proof, Plaintiffs have satisfied the commonality requirement.

### d.      Typicality - 23(a)(3)

A class representative must "possess the same interest and suffer the same injury" as the class members.  *Gen. Tel. Co.*, 457 U.S. at 156 (internal quotation marks omitted).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Defendants argue that Plaintiffs' claims are atypical because their children differ from the "average child taking the products."  (Opp. at 12.)  This argument fundamentally misunderstands the typicality inquiry, which turns on Plaintiffs' legal theory, not the "specific facts from which it arose."

**EXHIBIT A PAGE 49**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

*See Hanon*, 976 F.2d at 508.  Here, Plaintiffs' theory of the case is that Defendants' products are uniformly ineffective because of their homeopathic preparation.  Because the extent to which Plaintiffs' children differ from absent class members is immaterial to Plaintiffs' ability to prove the general inefficacy of homeopathy, any such differences are irrelevant for purposes of assessing the typicality of Plaintiffs' claims.

Defendants also argue that Plaintiffs' claims are atypical because absent putative class members have purchased different products, and these different products "have different ingredients to treat different symptoms and are advertised differently."  (Opp. at 12).  This argument was unpersuasive in the commonality context, and it fares no better here.  "The typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010).  Here, Plaintiffs allege that the same homeopathic preparation renders all of Defendants' products ineffective, and that misrepresentations about the products' efficacy are uniformly made across Defendants' product line. *See Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *6-7 (C.D. Cal. Nov. 13, 2008).  Accordingly, the "various products purchased . . . do not negate a finding of typicality" because Plaintiffs allege that the class members' injuries "arise[] from a common wrong."  *See Pecover v. Electronic Arts Inc.*, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010).  Plaintiffs' claims are therefore "reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020; *see also, e.g.*, *Galluci v. Boiron, Inc.*, 2012 WL 5359485, at *3 (S.D. Cal. Oct. 31, 2012); *Chavez*, 268 F.R.D. at 378; *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 244 (D.N.J. 2008) ("[T]he fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality.").

e.    **Adequacy - 23(a)(4)**

Two questions determine whether the adequacy requirement is satisfied:  "(1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Defendants do not raise any adequacy arguments that are divorced from their ascertainability concerns.  Based on Plaintiffs' showing, we conclude that the named Plaintiffs and their counsel "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

2.    **23(b)(3) Requirements**

a.    **Predominance**

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  It focuses on the relationship between the common and individual issues, requiring that the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. *See Hanlon,* 150

**EXHIBIT A PAGE 50**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

F.3d at 1022. The predominance standard is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem*, 521 U.S. at 623-24. Where dissimilarities among class members do not impede the generation of common answers, the post-*Dukes* predominance inquiry requires us to consider whether other issues unique to individual class members are likely to render adjudication by representation impractical. *See* 131 S. Ct. 2541 at 2256.

In the predominance section of their brief, Defendants reassert the arguments they raised concerning commonality: (i) each product uses different ingredients and treats different symptoms; (ii) consumers purchase Defendants' products for many different reasons apart from the representations made on the packaging; and (iii) some consumers were satisfied with Defendants' products. The individual questions associated with these three issues do not overwhelm the far more substantial common questions that drive Plaintiffs' theory of the case.

First, the focus of Plaintiffs' case is the products' homeopathic preparation and lack of scientific testing, not their individual ingredients. The crux of Plaintiffs' allegations is that Defendants' products "contain no active ingredients at all" because of their common homeopathic dilution. (Reply at 3.) As a result, the products' unique ingredients are relatively unimportant and do not threaten to predominate.

Second, that a large number of factors may have gone into each consumer's decision to purchase Defendants' products is immaterial here given the objective materiality of the alleged misrepresentations. *See, e.g.*, *Stearns v. Ticketmaster*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002). "Defendant[s] cannot reasonably argue that a putative class member would purchase a product that does not work." *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *44. Accordingly, the particular circumstances under which each individual purchase was made cannot "transform the common question" of whether the alleged misrepresentations were objectively material "into a multitude of individual ones." *Mass. Mut. Life Ins.*, 97 Cal. App. 4th at 1292.

Finally, Defendants' argument that the products "worked for some individual class members goes to the proof of the merits of Plaintiff[s'] claim." *Delarosa*, 275 F.R.D. at 594. Such an argument that challenges the merits of Plaintiffs' allegation about the uniform inefficacy of the products has no bearing on the Rule 23 predominance inquiry. *See id*; *see also Blackie*, 524 F.2d at 901. Accordingly, Plaintiffs have sufficiently shown that "common questions present a significant aspect of the case" to satisfy the predominance requirement. *Hanlon*, 150 F.3d at 1022.

      **b.**    **Superiority**

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* at 1023.

Aside from the ascertainability arguments addressed in Section II.B.1.a.iii, *supra*, Defendants

**EXHIBIT A PAGE 51**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 54 of 106   Page ID
#:13721
Case: 14-80058     04/23/2014     ID: 9070478     DktEntry: 1-1     Page: 48 of 98  (48 of 100)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | | Date | April 9, 2014 |
|---|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | | |

also argue that a class action is not superior here because Defendants have a refund program in place that would serve the needs of dissatisfied customers "without needless judicial intervention, lawyer's fees, or delay."  (Opp. at 18 (quoting *In re Aqua Dots Prods. Lit.*, 270 F.R.D. 377, 385 (N.D. Ill. 2010))).  This argument exclusively relies on a Northern District of Illinois case that was later overturned by the Seventh Circuit.  We decline to take this approach, as it does not comport with the plain language of Rule 23, which directs courts to consider other available methods of *adjudication*.  *See In re Aqua Dots Products Liability Litig.*, 654 F.3d 748, 751-52 (7th Cir. 2011) ("[T]he advisory committee's notes demonstrate that Rule 23(b)(3) was drafted with the legal understanding of 'adjudication' in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits.").  We are foreclosed from "disregard[ing] the text of Rule 23" simply because we think we have "a better idea."  *Id.* at 751.  Accordingly, Defendants' refund program does not defeat superiority.

Based on the foregoing, all of the Rule 23(a) and (b)(3) requirements are satisfied.  Accordingly, we **GRANT** Plaintiffs' motion to certify a (b)(3) class.

### 3.     23(b)(2) Requirements

To certify a (b)(2) class, we must find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Defendants argue that Plaintiffs cannot represent a (b)(2) class because they lack Article III standing to seek injunctive relief.  We agree.  A plaintiff only has standing to sue for injunctive relief if "there is a real and immediate threat of repeated injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1982).  No such realistic threat exists here because Plaintiffs have no reason to re-purchase cold and flu products that they consider to be completely worthless and ineffectual.

Plaintiffs do not suggest that they are likely to purchase Defendants' products in the future.  Instead, they contend that the Article III standing requirement for injunctive relief does not apply in the consumer protection context.  Some district courts in this Circuit have taken this approach, holding that a plaintiff in a false advertising case retains standing to pursue injunctive relief so long as the products continue to be deceptively marketed and sold by the defendant.  *See, e.g.*, *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011).  These courts have reasoned that to hold otherwise would severely undermine the efficacy of California's consumer protection laws.  *Id.* at *7.  We decline to adopt this approach.  We find more persuasive the courts that have insisted that it is improper "to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws."  *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013); *see also Delarosa v. Boiron, Inc.*, 2012 WL 8716658, at *4-5 (C.D. Cal. Dec. 28, 2012) ("To the extent that *Henderson* and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate").  Accordingly,

**EXHIBIT A PAGE 52**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
| --- | --- | --- | --- |
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Plaintiffs lack Article III standing to pursue injunctive relief, and their motion to certify a (b)(2) class is **DENIED**.

**III.      Conclusion**

Based on the foregoing, Plaintiffs' Motion is **GRANTED in part and DENIED in part**:

(1) We hereby **GRANT** Plaintiffs' Motion to certify the following Rule 23(b)(3) classes for monetary relief with respect to Claims 1, 3, 4, 6, 7, and 8:

(a) A nationwide class of all persons in the United States who purchased the following Hyland's products on or after March 8, 2008: (i) Cold 'n Cough 4 Kids, (ii) Cough Syrup with 100% Natural Honey 4 Kids, (iii) Sniffles 'n Sneezes 4 Kids, (iv) Cold Relief Strips 4 Kids with Zinc, and (v) Nighttime Cold 'n Cough 4 Kids.

(b) A 49-state class of all persons in the United States except for those in California who purchased Hyland's Complete Flu Care 4 Kids on or after March 8, 2008.

(2) Pursuant to Rule 23(g), we appoint the law firms of Bursor & Fisher, P.A., and Faruqi & Faruqi, LLP as class counsel.

(3) We appoint Plaintiffs Enzo Forcellati and Lisa Roemmich as class representatives.

(4) We **DENY** Plaintiffs' request to certify a Rule 23(b)(2) class for injunctive relief.

(5) Finally, because Plaintiffs have provided no reason for seeking alternative relief under the NJCFA and MMPA, we **DENY** certification of Plaintiffs' proposed New Jersey and Missouri subclasses.

**Within thirty (30) days hereof**, class counsel **SHALL** meet and confer with defense counsel regarding the proposed method and form of class notice.  Any agreed-upon notice shall be presented to the Court for approval **within fourteen (14) days thereafter**.  In the event the Parties cannot agree upon the form of the notice, each side shall file its proposal **within sixty (60) days** of this Order.

**IT IS SO ORDERED.**

| | -- | : | -- |
| --- | --- | --- | --- |
| Initials of Deputy Clerk | | Bea | |

**EXHIBIT A PAGE 53**

# EXHIBIT B



1   JEFFREY MARGULIES, BAR NO. 126002
    jeff.margulies@nortonrosefulbright.com
2   STEPHANIE STROUP, BAR NO. 235071
    stephanie.stroup@nortonrosefulbright.com
3   MATTHEW M. GURVITZ, BAR NO. 272895
    matthew.gurvitz@nortonrosefulbright.com
4   **FULBRIGHT & JAWORSKI LLP**
    555 South Flower Street
5   Forty-First Floor
    Los Angeles, California  90071
6   Telephone:  (213) 892-9200
    Facsimile:   (213) 892-9494
7
    Attorneys for Defendants
8   STANDARD HOMEOPATHIC COMPANY,
    HYLAND'S, INC. and STANDARD
9   HOMEOPATHIC LABORATORIES, INC.

10
                    IN THE UNITED STATES DISTRICT COURT
11
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
                            WESTERN DIVISION
13

14
    ENZO FORCELLATI and LISA          Case No. 12-CV-1983-GHK (MEWx)
15  ROEMMICH, on behalf of themselves
    and all others similarly situated,   **CLASS ACTION**
16
                        Plaintiff,        **DEFENDANTS' MEMORANDUM
17                                        OF POINTS AND AUTHORITIES IN
            v.                            OPPOSITION TO MOTION FOR
18                                        CLASS CERTIFICATION**
    HYLAND'S, INC.; STANDARD
19  HOMEOPATHIC LABORATORIES,         **REDACTED**
    INC.; and STANDARD
20  HOMEOPATHIC COMPANY,              Hearing:
                                      Date:    November 25, 2013
21                      Defendants.    Time:    9:30 a.m.
                                      Ctrm:    650
22                                    Judge:   Hon. George H. King

23

24

25

26

27

28

DOCUMENT PREPARED     53002717.3
ON RECYCLED PAPER
                  DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**EXHIBIT A PAGE 55**

**TABLE OF CONTENTS**

                                                                          **Page**

I.     INTRODUCTION.................................................................................. 1

II.    PLAINTIFFS HAVE NOT SATISFIED THE RULE 23(A)
       FACTORS .......................................................................................... 3

       A.   There Are No Questions Common To The Class ................................ 4

            1.   Efficacy Of Any One of the Products Cannot Be
                 Challenged on a Classwide Basis .............................................. 4

            2.   Whether Defendants' Representations Are Misleading to
                 Consumers Cannot Be Established on a Classwide Basis.......... 8

            3.   There Is No "Common" Basis for Monetary Relief.................. 9

       B.   The Class Representatives' Claims Are Not Typical ........................ 11

       C.   The Class Is Not Ascertainable ....................................................... 12

III.   PLAINTIFFS HAVE NOT SATISFIED RULE 23(B) ............................... 14

       A.   Plaintiffs Have Not Met The Requirements of Rule 23(b)(3) ........... 14

            1.   Common Issues Do Not Predominate ..................................... 15

                 a.   Common Issues Will Not Predominate for One
                      Nationwide Class ........................................................ 15

                 b.   Common Issues Do Not Predominate Because
                      There are Numerous Disparate Factual Issues .............. 16

            2.   A Class Action Is Not Superior .............................................. 16

                 a.   Individualized Factual Issues Render the Proposed
                      Class Unmanageable .................................................. 17

                 b.   The Proposed Class Cannot be Certified Because
                      the Laws of Multiple States Must be Applied............... 17

                 c.   Defendants Already Have A Complaint System
                      That Addresses Grievances of any Putative Class
                      Members ..................................................................... 18

       B.   Plaintiffs Have No Basis for Certification Under Rule 23(b)(2)........ 19

            1.   Plaintiffs Do Not Have Standing To Seek Injunctive
                 Relief...................................................................................... 19

            2.   The Rule 23(b)(2) Relief Is Not Primarily Injunctive.............. 19

IV.    IT IS INAPPROPRIATE TO APPLY CALIFORNIA LAW TO A
       NATIONAL CLASS .......................................................................... 19

       A.   The Laws Of All 50 States Materially Differ ................................... 21

       B.   Individual States Have An Interest In Protecting Their Own
            Consumers...................................................................................... 24

       C.   The Laws Of Each Class Member's Home State Are Most
            Impaired ........................................................................................ 24

DOCUMENT PREPARED
ON RECYCLED PAPER

**EXHIBIT A PAGE 56**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
(continued)

**Page**

V.    CONCLUSION ............................................................................................25

53002717.3

- ii -

TABLE OF CONTENTS

DOCUMENT PREPARED
ON RECYCLED PAPER

**EXHIBIT A PAGE 57**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 60 of 106   Page ID #:13727
Case: 14-80058    04/23/2014    ID: 9070478    DktEntry: 1-1    Page: 54 of 98  (54 of 100)

Case 2:12-cv-01983-GHK-MRW   Document 94   Filed 10/28/13   Page 4 of 32   Page ID #:795

1
2

## **TABLE OF AUTHORITIES**

3                                                                                                        **Page(s)**

**CASES**

4
5

*Allen v. Similasan,*
   2013 WL 2120825 (S.D. Cal. May 13, 2013) ................................................... 10

6
7

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................ 15

8
9

*Andres v. AT&T,*
   95 F.3d 1014 (11th Cir. 1996) ......................................................................... 17

10
11

*In re Aqua Dots Prods. Liab. Lit.,*
   270 F.R.D. 377 (N.D. Ill. 2010) ...................................................................... 18

12
13

*Beck-Ellman v. Kaz USA, Inc.,*
   283 F.R.D. 558 (S.D. Cal. 2012) ................................................................ 11, 12

14
15

*Carrera v. Bayer Corp.,*
   727 F.3d 300 (3rd Cir. August 21, 2013) ................................................ 2, 13, 14

16
17

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007) .............................................................. 10

*Cholakyan v. Mercedes-Benz, USA, LLC,*
   281 F.R.D. 534 (C.D. Cal. 2012) ..................................................................... 11

18
19

*Comcast v. Behrend,*
   133 S. Ct. 1426 (2013) ...................................................................................... 9

20
21

*Davis v. Powertel, Inc.,*
   776 So. 2d 971 (Fla. Ct. App. 2000) ................................................................ 22

22
23

*Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.,*
   839 A.2d 942 (N.J. Ch. 2003) .......................................................................... 23

24
25

*Delarosa v. Boiron, Inc.,*
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) .................................................. 10

26
27

*Feldman v. Mercedes-Benz USA, LLC,*
   2012 WL 6596830 (D.N.J. Dec. 18, 2012) ...................................................... 23

28

53002717.3                                     - i -
                              TABLE OF AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gennari v. Weichert Co. Realtors,*
    691 A.2d 350 (N.J. 1997) ................................................................ 22

*Gest v. Bradbury,*
    443 F.3d 1177 (9th Cir. 2006) ........................................................ 10

*Gianino v. Alacer Corp.,*
    2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) .......... 15, 18, 21, 22, 24

*Gotthelf v. Toyota Motor Sales, USA, Inc.,*
    2012 WL 1574301 (D.N.J. May 3, 2012) ...................................... 23

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) .......................................................... 11

*In re Hitachi Tele. Optical Block Cases,*
    2011 U.S. Dist. LEXIS 135 (S.D. Cal. Jan. 3, 2011) .................... 21

*In re Hydrogen Peroxide Antitrust Litig.,*
    552 F.3d 305 (3d Cir. 2008) ............................................................. 4

*Int' Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.,*
    2005 WL 2205341 (N.J. Super. Ct. Law Div. July 29, 2005) ........... 23

*Jovel v. Boiron, Inc.,* No. 2:11-cv-10803-SVW-SH, Dkt. 78 at 7-10 (C.D.
    Cal. August 16, 2013) .................................................................... 10

*Keegan v. Amer. Honda Motor Co., Inc.,*
    284 F.R.D. 504 (C.D. Cal. 2012) .................................................. 23

*Kennedy v. Axa Equitable Life Ins. Co.,*
    2007 WL 2688881 (D.N.J. Sept. 11, 2007)................................... 21

*Kwikset Corp. v. Sup. Ct.,*
    51 Cal.4th 310 (2011) ...................................................................... 1

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................ 10

*Maniscalco v. Brother Int'l Corp.,*
    793 F. Supp. 2d 696 (D.N.J. 2011)................................................ 23

53002717.3

- ii -

TABLE OF AUTHORITIES

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Mason v. Nature's Innovation,*
    2013 WL 1969957 (S.D. Cal. May 13, 2013) .................................................... 10

*Mass. Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002) ............................................................................ 1

*Mazur v. eBay, Inc.,*
    257 F.R.D. 563 (N.D. Cal. 2009) ....................................................................... 12

*Mazza v. Amer. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ........................................ 3, 4, 15, 19, 20, 21, 22, 24

*Medrazo v. Honda of N. Hollywood,*
    166 Cal. App. 4th 89 (2008) ........................................................................ 11, 12

*Montich v. Miele USA, Inc.,*
    849 F. Supp. 2d 439 (D.N.J. 2012) .................................................................... 23

*Norwest Mortgage Inc. v. Superior Court,*
    72 Cal. App. 4th 214 (1999) .............................................................................. 20

*Pilgrim v. Universal Health Card, LLC,*
    660 F.3d 943 (6th Cir. 2011) ............................................................................. 15

*Rikos v. Procter & Gamble Company,*
    2012 WL 641946 (S.D. Ohio 2012) ........................................................ 20, 23, 24

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) ........................................................................... 10

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
    546 F.3d 196 (2d Cir. 2008) ................................................................................ 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    267 F.R.D. 291 (N.D. Cal. 2010) ....................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2010) ...................................................................... 4, 9, 14, 19

*Wang v. OCZ Technology Group, Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011) ....................................................................... 10

53002717.3

- iii -

TABLE OF AUTHORITIES

DOCUMENT PREPARED
ON RECYCLED PAPER

1

*Wiener v. Dannon Co., Inc.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ........................................................................ 11

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..................................................... 4, 15, 17, 19, 24

**RULES AND STATUTES**

Cal. Bus. & Prof. Code §§ 17203, 17206 ............................................................... 22

Cal. Bus. & Prof. Code § 17204 .............................................................................. 22

Cal. Bus. & Prof. Code § 17208 .............................................................................. 21

Ca. Civ. Code § 1780 ............................................................................................... 22

Cal. Civ. Code § 1783 .............................................................................................. 21

Fed. R. Civ. Proc. 23 .............................................................................................. 3, 4

Fed. R. Civ. Proc. 23(a) ..................................................................................... 3, 4, 15

Fed. R. Civ. Proc. 23(b) ................................................................. 3, 14, 15, 16, 17, 19

Ga. Code Ann. § 10-1-372(b) .................................................................................. 22

Mo. Ann. Stat. § 407.025.1 ...................................................................................... 22

Mo. Ann. Stat. § 407.1107 ....................................................................................... 21

N.J. Stat. Ann. § 2A:14-1 ........................................................................................ 21

N.J. Stat. Ann. § 56:8-2 ........................................................................................... 22

N.J. Stat. Ann. § 56:8-19 ......................................................................................... 22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

53002717.3

- iv -
TABLE OF AUTHORITIES

DOCUMENT PREPARED
ON RECYCLED PAPER

**EXHIBIT A PAGE 61**

1  I.     **INTRODUCTION**

2        Defendants Hyland's, Inc., Standard Homeopathic Company and Standard

3  Homeopathic Laboratories, Inc. oppose Plaintiffs' Enzo Forcellati and Lisa

4  Roemmich Motion for Class Certification.

5        Plaintiffs claim that the one time they each purchased Hyland's Cold 'n

6  Cough 4 Kids, the product did not relieve their children's symptoms.  Based on

7  these incidents and the argument that the theories underlying homeopathic

8  medications are "pseudo-science," they attempt to represent a national class

9  asserting consumer protection and related claims over Hyland's Cold 'n Cough 4

10 Kids and *five additional products* made with different ingredients.  Plaintiffs argue

11 that, because there is no "clinical evidence" to show that homeopathic remedies can

12 treat illness, that all Defendants' products are, *de facto*, ineffective, and that this is a

13 common question, susceptible to common proof, that predominates over individual

14 questions.

15       Plaintiffs' over-simplified view does not support class certification.  First,

16 Plaintiffs' anecdotal experiences with one product prove nothing.  Unlike a lock

17 that is either "Made in the USA" or not, *see Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th

18 310  (2011) (Mot. at 6), or a representation regarding an insurance product that is

19 either false or misleading, or not, *see Mass. Mutual Life Ins. Co. v. Superior Court*,

20 97 Cal. App. 4th 1282, 1286 (2002) (Mot. at 17), a representation that an over-the-

21 counter ("OTC") drug relieves symptoms is not false or misleading simply because

22 one individual claims that it did not work in one instance.  No drug is 100%

23 effective.  If Plaintiffs' claims were correct, then *every drug on the market would

24 be unlawfully marketed*.  Indeed, evidence presented by Defendants demonstrates

25 that many physicians and consumers have positive experiences with their products.

26 The question of effectiveness in providing the relief claimed in product labeling

27 needs to be subjected to more rigorous scrutiny than the anecdotal, self-serving

28 testimony of Plaintiffs.

**EXHIBIT A PAGE 62**

1       Second, even as to Hyland's Cold 'n Cough 4 Kids, the one product Plaintiffs

2   purchased, their proposed proof of liability is not a common question that will

3   generate a common answer for all class members.  Plaintiffs' theory is that the

4   common question is the lack of scientific support for homeopathy.  Yet their own

5   expert clinical pharmacologist agrees that establishing that homeopathy is not

6   scientifically proven will **not** prove Hyland's Cold 'n Cough 4 Kids is ineffective.

7   Rather, to find a product ineffective, one needs to either assess each ingredient, or

8   the combination product.  Deposition of Arthur P. Grollman, at 94:5-21, Ex. A to

9   Declaration of Matthew M. Gurvitz.  And, because the other five products contain

10  different ingredients, with different product claims, the question of whether

11  Hyland's Cold 'n Cough 4 Kids is effective is not common with the question of

12  whether any of the other products, or individual active ingredients, are effective in

13  providing the relief claimed on their labeling.

14      Aside from these central flaws, there are also multiple problems with

15  Plaintiffs' motion that prevent class certification.  There is no common injury for

16  the proposed class.  Many members are satisfied with Defendants' products; thus

17  the proposed common question of the validity of homeopathy is not truly common

18  to all class members.  Further, injunctive relief is unavailable because Plaintiffs

19  admit they will never purchase Defendants' products again.  Plaintiffs' claims in

20  this case are also not typical, nor is their proposed class ascertainable.   It is

21  undisputed that, of the six products at issue in this action, Plaintiffs have only

22  purchased **one**, making their claims as to the other five products – manufactured

23  with different ingredients and recommended for different uses – not typical of other

24  class members.  Moreover, the facts surrounding each Plaintiffs' use of Cold 'n

25  Cough 4 Kids sets them apart from the class.  Regarding ascertainability, Plaintiffs

26  have proposed no mechanism by which the Court can accurately determine who

27  should be a part of the class.  As the Third Circuit recently held in *Carrera v. Bayer*

28  *Corp.*, 727 F.3d 300 (3rd Cir. August 21, 2013), a class is not certifiable without a

**EXHIBIT A PAGE 63**

1   showing that the class members can be identified readily and accurately, which is
2   not satisfied by mere conclusory assertions that all purchasers who can self-identify
3   are entitled to relief.

4        Plaintiffs also fail to satisfy Rule 23(b)(3).  Even if they could show common
5   issues, those issues do not predominate.  Individualized issues regarding the six
6   separate products, their different ingredients, labeling, packaging, methods of
7   manufacturing, manner in which they are taken, and differences in effectiveness for
8   different individuals all overpower any common issues proposed by Plaintiffs.
9   Further, a class action is not superior because Plaintiffs propose combining the laws
10  of several states into a multistate class – a nationwide class, requiring consideration
11  of the laws of 50 states, and the subclasses of two states' laws.  Such an action
12  cannot be effectively managed.  The class vehicle is also inferior because
13  Defendants have a complaint and refund mechanism in place that would fully
14  compensate Plaintiffs, had they only asked, as well as other dissatisfied customers.

15       Plaintiffs similarly fail to satisfy Rule 23(b)(2), which requires that the
16  primary relief sought be injunctive in order to certify a class.  Putting aside
17  Plaintiffs' lack of standing to pursue injunctive relief because they will never
18  purchase Defendants' products again, the primary relief sought is ***not*** injunctive,
19  but individualized monetary relief.

20       Finally, Plaintiffs ask that the Court apply California law to a nationwide
21  class, yet fail to address the choice of law analysis presented by *Mazza v. Amer.*
22  *Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  This case, and its progeny,
23  demonstrates that consumer protection claims must be brought under the laws of
24  the state where the purchase was made and that applying the laws of the 50 states to
25  Plaintiffs' claims renders the putative class unworkable and uncertifiable.

26  **II.   PLAINTIFFS HAVE NOT SATISFIED THE RULE 23(A) FACTORS**

27       Plaintiffs must affirmatively demonstrate that the class meets the
28  requirements of Fed. R. Civ. Proc. 23, and their showing is subject to a rigorous

**EXHIBIT A PAGE 64**

1  analysis by the Court.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551
2  (2010); *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001).
3  Plaintiffs must prove the Rule 23 factors by a preponderance of the evidence.  *See*
4  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196,
5  202 (2d Cir. 2008); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d
6  Cir. 2008).

7  **A.    There Are No Questions Common To The Class**

8      Rule 23(a) requires that Plaintiffs demonstrate there are questions of fact or
9  law common to the class.  *Mazza*, 666 F.3d at 595-596.  Common questions mean
10  common answers, such that the determination of a question's "truth or falsity will
11  resolve an issue that is central to the validity of each one of the claims in one
12  stroke."  *Dukes*, 131 S. Ct. at 2551.  "Dissimilarities within the proposed class are
13  what have the potential to impede the generation of common answers."  *Id*.

14      Here, there are no questions capable of generating one answer for the entire
15  class of purchasers of six different products.  The alleged common question is
16  whether the products are effective, which Plaintiffs claim can be answered by a
17  determination that homeopathy is not a valid scientific theory, and the absence of
18  any studies showing that the individual products or their ingredients are effective.
19  When examined, however, this conclusion does not pass muster.  First, even
20  assuming that Plaintiffs can establish homeopathy is not a "scientific" theory or that
21  there are no studies showing that Hyland's Cold 'n Cough 4 Kids and its
22  ingredients are effective, such evidence does not prove the product is ineffective;
23  thus Plaintiffs' proposed manner of proving the common question does not give rise
24  to common answers.  Second, whether Hyland's Cold 'n Cough 4 Kids is effective
25  does not establish that any of the other five products are not effective.

26  **1.    Efficacy Of Any One of the Products Cannot Be Challenged**
27  **on a Classwide Basis**

28      Plaintiffs' "evidence" of common proof for effectiveness is limited to the

EXHIBIT A PAGE 65

1   Declaration of Dr. Grollman, a medical doctor who has not spent any significant

2   time studying homeopathy or its principles.   Dr. Grollman concludes that

3   "[h]omeopathy is an irrational belief system" that cannot be effective in treating

4   patients because "[t]here is no credible scientific evidence that relief of symptoms

5   by homeopathic remedies results in anything more than a placebo effect."

6   Grollman Decl., ¶¶ 36, 41.[1]  Yet, contravening the arguments in Plaintiffs' brief,

7   Dr. Grollman **admits** that the only way to prove that a product is not effective is to

8   independently test the effectiveness of each of the ingredients in each product, or to

9   test each product as formulated, which he has not done.  Grollman Depo. at 27:9-

10  17; 87:3-8; 94:5-21.

11        Moreover, Defendants have introduced significant evidence demonstrating

12  the effectiveness of the remedies and refuting the contention that homeopathic

13  remedies are capable of one common "ineffective" designation by virtue of their

14  preparation.  As discussed in the declarations of Dr. Peter Fisher and Dr. Iris Bell,

15  the extreme dilution of homeopathic remedies does not mean they are ineffective.

16  Declaration of Dr. Iris Bell, at ¶¶ 8-9; Declaration of Dr. Peter A.G. Fisher, at ¶¶ 8-

17  22.   Though some advocates (such as Dr. Grollman) dispute the efficacy of

18  homeopathic treatments, a variety of clinical trials show that homeopathic

19  medicines can produce real and measurable effects.  Bell Decl., at ¶¶ 7-9; Fisher

20  Decl., at ¶¶ 11-25.

21        Plaintiffs will be unable to make a common determination as to the

22  effectiveness of Cold 'n Cough 4 Kids, let alone the five other products they did not

23  buy.   Each of the active ingredients in Cold 'n Cough 4 Kids has a different

---

[1] Dr. Grollman's opinion is based on his review of general homeopathic articles and studies; during his deposition he could not recall or identify much of the literature that he had reviewed.  *Id*. at 40:3-11.  He also is not aware of any of the latest research into homeopathy or its principles, and cited a text from the late 1980s as a "more up to date" view of "modern" homeopathy.  Grollman Depo., at 32:23-33:14. He has conducted no experiments nor testing of his own on any of the products (or any homeopathic product or ingredient) *Id*. at 27:9-17; 87:3-8.

1   indication for use: allium cepa for "watery runny nose, cold, hacking cough, painful

2   throat"; hepar sulph calc for "cold, sneezing"; natrum muriaticum for "dry cough,

3   sore throat"; phosphorus for "hoarse/dry cough, nasal congestion, chest

4   congestion"; pulsatilla for "moist cough, cold, nasal congestion"; sulphur for "chest

5   congestion, nasal congestion, sneezing, runny nose"; and hydrastis for

6   "rattling/tickling cough, sinus congestion, dry/raw/sore throat."  Bell Decl., ¶ 12.

7   As indicated in the Declarations of Drs. Bell and Punzo, each of the active

8   ingredients in this product is known to treat the symptoms it is advertised as

9   relieving.  Bell Decl., at ¶¶ 10-11; Declaration of Amalia Punzo, M.D., at ¶¶ 8 &

10   10.  Defendants confirmed as much when they assembled the Proof of Claims for

11   Hyland's Cold & Cough for Kids (a collection of the HPUS excerpts and Materia

12   Medica for each ingredient in the product, which supports the indications for usage

13   on Defendants' packaging).  Declaration of Thao Minh Le, Exs. G-L.[2]  In order to

14   dispel the efficacy of Cold 'n Cough 4 Kids, Plaintiffs must challenge the literature

15   and studies for each of the active ingredients – a point with which their own expert

16   agrees.  Grollman Depo. at 94:5-21.  This is not a common question.  Determining

17   the effectiveness of this one product for any particular consumer will vary

18   depending on for which symptom(s) a consumer bought it.  To determine whether

19   or not Cold 'n Cough 4 Kids is effective for individuals taking it, an analysis must

20   be made regarding the symptoms of each individual class member (i.e., were they

21   _____

22   [2] Plaintiffs claim that because Defendants rely on the traditional Homeopathic
    literature ("Materia Medica") to meet the regulatory conditions of the FDA's

23   Compliance Policy Guideline establishing the proper support to market
    homeopathic medications, this establishes that "common evidence" can be used to

24   demonstrate effectiveness.  Motion at 8-9.  This argument is a non sequitur.
    Although the homeopathic "provings" of ingredients are collected in the same

25   Materia Medica texts, this does not mean that the evidence of the effectiveness for

26   individual ingredients is "common."  This is akin to arguing that whether
    conventional medicines used to treat ear infections and high cholesterol are

27   effective is a common question simply because both are discussed in the same

28   medical text.  Plaintiffs' logic does not survive scrutiny.

53002717.3                                - 6 -

**EXHIBIT A PAGE 67**

1  taking the correct remedy for the correct symptom), how long the symptom(s)

2  persisted, whether the product was taken correctly, any underlying ailments the user

3  may have had, and other health conditions, to name but a few of the considerations.

4      Contrary to Plaintiffs' assertions, Defendants' homeopathic products,

5  including Cold 'n Cough 4 Kids, *are* effective for many – if not most. *See* Punzo

6  Decl., ¶¶ 8-11; Bell Decl. ¶¶ 8-17; Fisher Decl. ¶¶ 23-26; Declaration of David

7  Cristofaro, ¶ 15 (94% satisfaction rate with Defendants' products).  As medical

8  professionals recognize, and common sense dictates, no medicine (whether

9  conventional or homeopathic) is effective 100% of the time.  Punzo Decl., ¶ 11;

10  Bell Decl., ¶ 17.  Indeed, Plaintiffs themselves were unaware of other individuals

11  for whom the products did not work.  Deposition of Enzo Forcellati, Ex. C to

12  Gurvitz Decl., at 55:7-10; Deposition of Lisa Roemmich, Ex. D to Gurvitz Decl., at

13  52:20-53:1.  Plaintiffs also said they have taken other conventional over-the-counter

14  remedies in the past that did not work in isolated incidences.  Forcellati Depo. at

15  65:25-66:16; Roemmich Depo. at 51:9-17 (acknowledging that she could not

16  conclude that because a product did not work for her, it would not work for others).

17  That Cold 'n Cough 4 Kids may not have worked for Plaintiffs' children, and that

18  Dr. Grollman does not believe homeopathy is effective, does not mean it does not

19  work for everyone (or any particular individual).  In fact, Defendants have received

20  very few complaints from consumers about Cold 'n Cough 4 Kids having no effect.

21  Declaration of Daniel M. Krombach, at ¶¶ 2-6.  This is supported by testimonials

22  on consumer websites from satisfied purchasers of Cold 'n Cough 4 Kids.  Gurvitz

23  Decl., Exs. E-L.

24      Because they have not shown how evidence that purportedly establishes that

25  homeopathy is not effective shows that Hyland's Cold 'n Cough 4 Kids is

26  ineffective, Plaintiffs have not established that the question of efficacy of this

27  product is common and susceptible to generating common answers as to all of the

28  consumers in the proposed class who purchased it.  Stretching the class definition to

**EXHIBIT A PAGE 68**

1   include purchasers of the five other products that Plaintiffs did not purchase does

2   nothing but increase the number of non-common questions five-fold.  Determining

3   the effectiveness for six products in one class is not common, but requires an

4   individual assessment of the effectiveness of each of the products.  This inquiry

5   necessarily means looking at four additional different sets of ingredients,[3] five

6   additional different labels, and five additional different sets of symptoms that the

7   other products relieve.  And, as with Hyland's Cough & Cold 4 Kids, these other

8   five products are effective and work for many consumers.  *See generally* Punzo

9   Decl., ¶¶ 7-10; Bell Decl., ¶¶ 10-17; Fisher Decl., ¶¶ 23-26; Le Decl., Exs. G-L;

10  Gurvitz Decl., Exs. E-L; Krombach Decl., ¶¶ 2-6; Cristofaro Decl.,¶ 15.  Plaintiffs'

11  claim that liability for these five other products is common to the questions relating

12  to Hyland's Cold 'n Cough 4 Kids is solely premised on the fact that all six of the

13  products are homeopathic cold and flu products marketed for children.  Yet, as Dr.

14  Grollman concedes, each product and its ingredients need to be separately assessed

15  to determine effectiveness.  Plaintiffs' theory of commonality does not survive

16  scrutiny.

17          **2.    Whether Defendants' Representations Are Misleading to**

18                  **Consumers Cannot Be Established on a Classwide Basis**

19          The majority of Plaintiffs' claims require either proof that the labeling is

20  likely to deceive the average consumer, or that consumers rely on the alleged

21  misrepresentations in purchasing the products.  These claims are not susceptible to

22  common proof.

23          Plaintiffs cite the Declaration of Dr. Elizabeth Howlett to establish that

24  consumers rely on the labeling of over-the-counter products when making

25  purchasing decisions.  Dr. Howlett's declaration focuses on general trends for OTC

26

27  [3] The products Hyland's Cold Relief Strips 4 Kids with Zinc (no longer being sold)
    and Hyland's Sniffles 'n Sneezes 4 Kids (neither of which were purchased by
28  Plaintiffs), have the same ingredients, although one product delivers the medicine in
    a strip form, and the other in a tablet form.

53002717.3                        - 8 -

**EXHIBIT A PAGE 69**

1  products, not on whether or how these trends apply with respect to homeopathic

2  remedies generally, or as to those involved in this case.  The evidence before the

3  Court, however, shows that her analysis does not apply to the packaging and

4  labeling for the products at issue in this case.  In March 2012, Defendants

5  commissioned the "Hyland's Advertising Awareness Study" to assess what

6  information consumers rely on when they decide to purchase Hyland's

7  homeopathic products.  Cristofaro Decl., at ¶ 5.  The survey found that packaging

8  and advertising, the source of the alleged misrepresentations that Plaintiffs assert ***all***

9  class members relied on, are two of the ***least likely*** sources of information that

10  purchasers of Hyland's products rely upon when making a purchasing decision.  *Id.*

11  at ¶ 12; *see also* Declaration of David Stewart, Ph.D., at ¶ 11.  Roughly 73% of

12  consumer purchasing decisions were made without reference to any advertising or

13  product packaging and were based on past positive experiences and referrals from

14  other satisfied individuals.  Cristofaro Decl., at ¶ 13.  Product packaging and

15  advertising accounted for only 9% and 6%, respectively, of customers' purchasing

16  decisions.  *Id.* at ¶ 12.  Given this evidentiary record, Plaintiffs cannot establish on

17  a classwide basis that, for Hyland's products, the statements made on the packaging

18  or labeling were either reasonably likely to deceive, or were material to, the average

19  consumer.

20        **3.    There Is No "Common" Basis for Monetary Relief**

21        Under Rule 23(a), Plaintiffs must demonstrate that class members have

22  suffered the same injury and that damages resulting from that injury can be

23  measured on a class-wide basis with a common methodology.  *See Dukes*, 131

24  S. Ct. at 2551; *see also Comcast v. Behrend*, 133 S. Ct. 1426, 1430 (2013).

25  Plaintiffs claim that: (1) all class members purchased a worthless product; and (2)

26  entitlement to injunctive relief can be proven on a class-wide basis.  *See* Motion at

27  9.  Thus, Plaintiffs conclude that a class-wide damages calculation is simple

28  because all that is required is multiplying the average retail price by the total units

**EXHIBIT A PAGE 70**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 73 of 106   Page ID #:13740
Case: 14-80058    04/23/2014    ID: 9070478    DktEntry: 1-1    Page: 67 of 98  (67 of 100)

Case 2:12-cv-01983-GHK-MRW   Document 94   Filed 10/28/13   Page 17 of 32   Page ID #:808

1  sold for each product.  *Id.* at 9-10.

2       In reality, actual harm will vary by individual class member.  Many

3  consumers were perfectly satisfied with Defendants' products, *see* Cristofaro Decl.,

4  at ¶ 15 (94% of the respondents were satisfied with Defendants' products), which

5  raises the question of whether the majority of class members even suffered an

6  injury.  *See, e.g.,  Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir.

7  2011) (upholding denial of certification where overbroad class likely included

8  persons who were not misled into joining fee-based rewards program).

9       Second, Plaintiffs lack standing to seek injunctive relief on a class-wide

10  basis.  A plaintiff does not have Article III standing unless the following is shown:

11  (1) "injury in fact – an invasion of a legally protected interest which is (a) concrete

12  and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2)

13  a causal connection between the injury and the challenged conduct; and (3)

14  redressability.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

15  To pursue injunctive relief, Plaintiffs must show that they are "realistically

16  threatened by a repetition of the violation."  *Gest v. Bradbury*, 443 F.3d 1177, 1181

17  (9th Cir. 2006).  In false advertising cases, the injury necessary to establish standing

18  for injunctive relief is based on the intent to purchase the product again.[4]  Because

19  both Plaintiffs have unequivocally stated they will never purchase Defendants'

20

21  _____

     [4] *See, e.g., Wang v. OCZ Technology Group, Inc.,* 276 F.R.D. 618, 626 (N.D. Cal.

22  2011) (motion to dismiss granted when no allegation of a likelihood that plaintiff
     would again purchase an allegedly mislabeled product); *Cattie v. Wal-Mart Stores,*

23  *Inc.,* 504 F. Supp. 2d 939, 951-952 (S.D. Cal. 2007) (dismissing injunctive relief
     claim when plaintiff was "fully aware" of alleged falsity and there were "no

24  allegations suggesting she intends to buy linens from Wal-Mart.com in the

25  future."); *Mason v. Nature's Innovation,* 2013 WL 1969957, at *2-5 (S.D. Cal. May
     13, 2013) (dismissing injunctive relief claim in homeopathic drug litigation); *Allen*

26  *v. Similasan,* 2013 WL 2120825 at *4 (S.D. Cal. May 13, 2013) (same);  *Delarosa*
     *v. Boiron, Inc.,* 2012 WL 8716658 at *4 (C.D. Cal. Dec. 28, 2012) (same); *Jovel v.*

27  *Boiron, Inc.,* et al., No. 2:11-cv-10803-SVW-SH, Dkt. 78 at 7-10 (C.D. Cal. August

28  16, 2013) (same), Gurvitz Decl., Ex. M.

**EXHIBIT A PAGE 71**

1    products in the future, *see* Forcellati Depo. at 44:20-25; Roemmich Depo. at 66:24-

2    67:4, Plaintiffs do not have standing to pursue injunctive relief.

3         **B.    The Class Representatives' Claims Are Not Typical**

4         "The test of typicality 'is whether other members have the same or similar

5    injury, whether the action is based on conduct which is not unique to the named

6    plaintiffs and whether other class members have been injured by the same course of

7    conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

8         First, Plaintiffs' claims are not typical of all class members because, other

9    than Hyland's Cold 'n Cough 4 Kids, ***they have not purchased any of the products***.

10   *See* Forcellati Depo. at 53:16-54:18; Roemmich Depo. at 47:7-49:6; *see also*

11   *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009) (denying class

12   certification where the products not purchased by the named plaintiffs targeted

13   consumers with different health issues, different studies substantiated their health

14   benefits, and had different advertising and marketing); *Cholakyan v. Mercedes-*

15   *Benz, USA, LLC*, 281 F.R.D. 534, 538, 557-558 (C.D. Cal. 2012) ("the evidence of

16   variation among class vehicles indicates that [Plaintiff's] ownership of one type of

17   class vehicle does not necessarily render his claims typical of the class as a whole.")

18        It is undisputed that Hyland's Cold 'n Cough 4 Kids has different ingredients

19   than the five other products that are part of this suit, has different packaging and

20   labeling, and relieves different sets of symptoms.  *See* Gurvitz Decl., Ex. B.  The

21   different ingredients in each of the products requires separate analysis of the

22   effectiveness of each product, Grollman Depo. at 94:5-21, only highlighting the

23   impropriety of Plaintiffs' attempt to claim that they are typical of the consumers of

24   the unpurchased products.

25        The cases cited by Plaintiffs in support of typicality are distinguishable from

26   the facts of this case.  Plaintiff cites *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558

27   (S.D. Cal. 2012), and *Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89

28   (2008), both of which involve products as opposed to medicines (defective heating

1    pads and hanger tags on motorcycles disclosing dealer-added costs, respectively).

2    In both of these cases, the defects were the same across the span of different

3    products.  In *Beck-Ellman*, the plaintiff had alleged that there were common defects

4    across a variety of heating pads and that the retailers had failed to include the same

5    types of representations on the packaging informing of these defects.  *Beck-Ellman*,

6    at 565-566.  Similarly, in *Medrazo*, the issue was that the same type of label failing

7    to explain added charges was not attached to various kinds of motorcycles at the

8    point of purchase.  *Medrazo*, at 92.  In contrast, Plaintiffs attempt to group together

9    six medicines that have different ingredients to treat different symptoms and are

10   advertised differently, solely because they are homeopathic medications that are

11   made by the same company and are intended for children's cold and flu symptoms.

12        Moreover, Plaintiffs are not, in fact, typical of putative class members:

13   •    

14

15

16

17

18

19

20

21   •    Mr. Forcellati son's cold symptoms persisted for more than seven days, yet he

22        failed to consult a doctor as instructed on the packaging of the Cold 'n Cough 4

23        Kids product.  Forcellati Depo. at 41:10-43:24.

24        **C.    The Class Is Not Ascertainable**

25        A class must be sufficiently ascertainable, meaning that its members must be

26   identifiable "by reference to objective criteria."  *In re TFT-LCD (Flat Panel)*

27   *Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010).  Plaintiffs are required to

28   introduce affirmative evidence of ascertainability.  *See, e.g., Mazur v. eBay, Inc.*,

**EXHIBIT A PAGE 73**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 76 of 106   Page ID
#:13743
Case: 14-80058    04/23/2014    ID: 9070478    DktEntry: 1-1    Page: 70 of 98   (70 of 100)

1   257 F.R.D. 563, 567 (N.D. Cal. 2009).  In this case, Plaintiffs briefly mention their

2   ability to identify the class by simply determining which consumers purchased the

3   products within the class period (Motion at 13, fn. 17), but have not proposed ***any***

4   means to ascertain class members.

5        A recent Third Circuit decision demonstrates why the proposed class in this

6   action is not ascertainable, creating significant due process issues for both the

7   defendants and the putative class members.  In *Carrera v. Bayer Corp.*, 727 F.3d

8   300 (3rd Cir. August 21, 2013), the plaintiff sought to certify a class of purchasers

9   of an over-the-counter supplement that plaintiff alleged was falsely advertised.  The

10   court noted that the ascertainability requirement serves "several important

11   objectives," including "protect[ing] defendants by ensuring that those persons who

12   will be bound by the final judgment are clearly identifiable."  *Id*. at 306.  The court

13   held that plaintiff had failed to demonstrate ascertainability, where he claimed that

14   the class members could be identified through value cards from retailers that

15   purportedly track consumer identities, and/or affidavits from class members

16   attesting to their purchase of the product.  *Id*. at 308.  The court found both of these

17   methods inadequate.  There was no evidence that all class members used loyalty

18   cards.  Furthermore, the affidavits, without accompanying receipts, were inherently

19   unreliable and subject to fraudulent claims.  *Id*. at 308-309.  The court noted that

20   this imprecise means of determining the identity of class members hurts class

21   members and the defendant, as "[i]t is unfair to absent class members if there is a

22   significant likelihood their recovery will be diluted by fraudulent or inaccurate

23   claims," and class members who felt their claims were not adequately represented

24   (by the resulting diluted recovery), could potentially bring new actions against

25   defendant.  *Id*. at 310.  The court rejected plaintiff's argument that affidavits were

26   sufficient because class members were unlikely to retain receipts for the small

27   purchases, because "it does not address a core concern of ascertainability: that a

28   ***defendant must be able to challenge class membership***."  *Id*. at 309 (emphasis

1    added).

2         As in *Carrera*, in this case, there is no evidence to show a reliable method to

3    identify class members.  Individuals are unlikely to remember exactly when they

4    purchased Defendants' products, and even less likely to retain a receipt.  Indeed,

5    neither of the named Plaintiffs in this action have a receipt for their purchase of

6    Cold 'n Cough 4 Kids (Forcellati Depo. at 13:11-15; Roemmich Depo. at 63:24-

7    64:1), and Plaintiff Roemmich cannot even remember when or exactly where she

8    purchased Cold 'n Cough 4 Kids.   Roemmich Depo. at 27:14-28:7; 37:7-20.

9    Defendants, who primarily sell their products to retailers, who then sell the products

10   to consumers, do not have records of the identities of consumers who purchase the

11   products.  Declaration of Daniel Krombach, ¶ 8.  And, though Plaintiffs state that

12   they can "gather sales data from third parties, such as SPINS LLC, IRI of the

13   retailers of the Products," (Motion at 9, fn. 16), this data does not identify the

14   consumers who purchased the products.   Krombach Decl., ¶ 8.  Perhaps most

15   importantly, the broad class of purchasers Plaintiffs propose will include many

16   consumers who are ***satisfied*** with the products, as demonstrated by the evidence

17   submitted by Defendants.  *See* Punzo Decl., at ¶¶ 8-11; Cristofaro Decl., at ¶ 15;

18   Gurvitz Decl., Exs. E-L.  Assuming Plaintiffs would have the class members self-

19   certify through a claim form procedure, there would be no way for Defendants to

20   challenge whether any individual class member in fact purchased a product, or

21   whether the product worked for him or her, absent a mini-trial on liability.

22   Plaintiffs' failure to demonstrate ascertainability is fatal to their motion.

23   **III.   PLAINTIFFS HAVE NOT SATISFIED RULE 23(B)**

24        The proposed class must also satisfy at least one of the three requirements

25   listed in Rule 23(b).  *Dukes*, *supra*, at 2548.  Plaintiffs seek certification of a class

26   under both Rule 23(b)(2) and 23(b)(3), but satisfy neither standard.

27        **A.   Plaintiffs Have Not Met The Requirements Of Rule 23(b)(3)**

28        Rule 23(b)(3) requires predominance of common questions and that the class

EXHIBIT A PAGE 75

1   action be superior to other available methods for adjudicating the controversy.  A

2   court may certify such a class only if it first determines that "the questions of law or

3   fact common to the members of the class predominate over any questions affecting

4   only individual members," an inquiry "far more demanding" than Rule 23(a)'s

5   commonality requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24

6   (1997).  The matters pertinent to the Court's superiority analysis include: (A) the

7   class members' interests in individually controlling the prosecution or defense of

8   separate actions; (B) the extent and nature of any litigation concerning the

9   controversy already begun by or against class members; (C) the desirability or

10  undesirability of concentrating the litigation of the claims in the particular forum;

11  and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3);

12  *see also Zinser*, *supra*, at 1190-92.

13          **1.      Common Issues Do Not Predominate**

14                  **a.      *Common Issues Will Not Predominate for One***

15                          ***Nationwide Class***

16          Under  *Mazza v. Amer. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012),

17  Plaintiffs cannot certify a nationwide class because common issues will not

18  predominate.  *Mazza* holds that "variances in state law overwhelm common issues

19  and preclude predominance for a single nationwide class."  *Id*. at 596; *see also*

20  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011)

21  ("Because these claims must be adjudicated under the law of so many

22  jurisdictions…a single nationwide class is not manageable.").  Variances in state

23  laws overwhelm any common issues and, therefore, requirements for class

24  certification under Rule 23(b)(3) cannot be met.  *Mazza*, 666 F.3d at 596; *Gianino*

25  *v. Alacer Corp.*, 2012 U.S. Dist. LEXIS 32261, at *16-18 (C.D. Cal. Feb. 27,

26  2012).  And, even under any one state's laws, common issues do not predominate.

27

28

**EXHIBIT A PAGE 76**

1    **b.**    ***Common Issues Do Not Predominate Because There are***
2         ***Numerous Disparate Factual Issues***

3         Plaintiffs have filed one lawsuit asserting that six different products have
4    been falsely advertised, the core of their claims being that the products do not work
5    because homeopathic products generally ***cannot*** work.  Despite their attempt to
6    persuade the Court that common evidence can demonstrate that all products do not
7    work, this is simply not the case.

8    •   The class members' claims do not "arise from the same misrepresentations
9        about the efficacy of the Products." Motion at 14.  The products have different
10       labels and different ingredients that are recommended to relieve different types
11       of symptoms.  Le Decl., at Exs. A-F. To demonstrate that the representations
12       for each different product are false or likely to mislead the reasonable
13       consumer will require different proof as it pertains to the effectiveness of each
14       product in relieving each identified symptom and consumers' responses to
15       such representations.  Grollman Depo. at 94:5-21.

16   •   Representations on the labeling and packaging are not the primary drivers of
17       purchasing decisions for the products; there are many reasons that consumers
18       purchase Defendants' products.  Cristofaro Decl., Ex. A.

19   •   There is no common injury in the class.  Plaintiffs assume, without any
20       evidence specific to the actual ingredients, that because Defendants' products
21       are homeopathic remedies, they do not work for ***any*** of the class members.
22       However, the evidence demonstrates that many consumers using Defendants'
23       products have experienced benefits.  *See* Punzo Decl., at ¶¶ 8-11; Bell Decl., ¶
24       17; Cristofaro Decl., at ¶ 15; Gurvitz Decl., Exs. E-L.  Experiences with the
25       products clearly differ by user, therefore, any injuries experienced by potential
26       class members are not subject to common proof.

27        **2.    A Class Action Is Not Superior**

28        One important factor identified under Rule 23(b)(3) that is pertinent to a

**EXHIBIT A PAGE 77**

1    court's determination of superiority is the existence of any management difficulties

2    the class action is likely to present. Fed. R. Civ. P. 23(b)(3); *see, e.g.*, *Zinser* 253

3    F.3d at 1190-92.

4              a.    *Individualized Factual Issues Render the Proposed*

5                    *Class Unmanageable*

6           Manageability encompasses the entire range of practical problems that may

7    render a class action inappropriate to adjudicate a particular issue and, when these

8    problems outweigh the benefits of one common class, certification is not

9    "superior." *See Andres v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996); *Zinser,* 253

10   F.3d at 1192 (citations omitted). The myriad of factual issues in this case make the

11   class unmanageable. Further, as evidenced by the declaration of Dr. Punzo, the

12   favorable comments on the internet, the high levels of customer satisfaction in the

13   survey, and the lack of complaints regarding efficacy of these products, there are

14   many members of the putative class for whom these products ***do work***. *See* Punzo

15   Decl., at ¶ 11; Cristofaro Decl., at ¶ 15; Gurvitz Decl., Exs. E-L; Krombach Decl.,

16   at ¶¶ 4-6. Thus, a jury could not determine a single class member's claim without

17   resort to his or her individual circumstances, rendering the proposed class

18   unmanageable.

19             b.    *The Proposed Class Cannot be Certified Because the*

20                   *Laws of Multiple States Must be Applied*

21          Plaintiffs' proposal for a nationwide class and, simultaneously, two sub-

22   classes under New Jersey and Missouri law, also render the case unmanageable.

23   First, as discussed below, because the application of one state's law to all 50 states

24   is improper, certification of one nationwide class would require application of the

25   laws of all 50 states.[5]

26   _____

27   [5]The trial of a nationwide class "would devolve quickly into an unmanageable
     morass of divergent legal issues. Certain evidence would be admissible for some

28   class members but not others. Fifty different sets of jury instructions and verdict
     forms would have to be crafted . . . . Needless to say, the trial would be incredibly

1   Plaintiffs' proposal that two sub-classes for the products be certified under

2   New Jersey and Missouri law alongside the nationwide class claims is similarly

3   unmanageable (even if California law were applied to the national class) because of

4   the variations in the consumer laws of these states.  It is easy to imagine the

5   difficulties a jury would face if forced to apply the laws of three different states to

6   different claims for different plaintiffs.

7          **c.   *Defendants Already Have A Complaint System That***

8               ***Addresses Grievances of any Putative Class Members***

9          A class action is also not superior because Defendants already have a system

10  in place to address Plaintiffs' concerns.  Out-of-court refund programs have been

11  found superior to class actions because "[w]here available refunds afford class

12  members a comparable or even better remedy than they could hope to achieve in

13  court, a class action would merely divert a substantial percentage of the refunds'

14  aggregate value to the class lawyers."  *In re Aqua Dots Prods. Liab. Lit.*, 270

15  F.R.D. 377, 383 (N.D. Ill. 2010).  If "defendants will provide a refund – without

16  needless judicial intervention, lawyer's fees, or delay – to any purchaser who asks

17  for one, there is no realistic sense in which putative class members would be better

18  off coming to court."  *Id.* at 385.

19         Here, Defendants have a comprehensive system to respond to customer

20  complaints.  Krombach Decl., at ¶¶ 2-3.  Dissatisfied customers are given refunds

21  upon request, and this has always been Hyland's policy in its 110 years of

22  operation.  *Id.* at ¶ 7.  Plaintiffs were explicitly informed of this in response to their

23  CLRA notice letters.  Gurvitz Decl., Exs. N-O.  However, neither of the Plaintiffs

24  even attempted to contact Defendants for refunds, instead opting to file lawsuits.

25  Because Defendants would have refunded the money any class member spent on a

26  ────────────────────────────────────

27  time-consuming, unnecessarily disjointed, hopelessly confusing, and unfairly
    prejudicial to [defendant] and many, if not all, members of the class.  Justice

28  demands that this case not be adjudicated as a class action."  *Gianino*, 2012 U.S.
    Dist. LEXIS 32261, at *17-*18.

**EXHIBIT A PAGE 79**

Case 2:12-cv-01983-GHK-MRW   Document 94   Filed 10/28/13   Page 26 of 32   Page ID #:817

1    product she felt was not effective, without incurring costly legal bills or tying up

2    the parties and Court in needless litigation, the Court should find that a class action

3    is not a superior method for adjudicating these claims.

4          **B.    Plaintiffs Have No Basis for Certification Under Rule 23(b)(2)**

5          To certify a class under Rule 23(b)(2), Plaintiffs must show that "the party

6    opposing the class has acted or refused to act on grounds that apply generally to the

7    class, so that final injunctive relief or corresponding declaratory relief is appropriate

8    respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

9          **1.    Plaintiffs Do Not Have Standing To Seek Injunctive Relief**

10         As discussed above, injunctive relief is unavailable because Plaintiffs stated

11   they will not purchase any of Defendants' products again.  Without standing to

12   pursue injunctive relief, certification of a Rule 23(b)(2) class is impossible.

13         **2.    The Rule 23(b)(2) Relief Is Not Primarily Injunctive**

14         "Class certification under Rule 23(b)(2) is appropriate **only where the**

15   **primary relief** sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195

16   (emphasis added).  Rule 23(b)(2) "does not authorize class certification when each

17   class member would be entitled to an individualized award of monetary damages."

18   *Dukes*, 131 S. Ct. at 2557-58.

19         In this case, the Complaint reveals that the primary relief sought by Plaintiffs

20   is monetary, including compensatory and punitive damages, in addition to

21   attorneys' fees and costs.  Compl. at 42-43.  Plaintiffs also do not contend that

22   injunctive relief is the **primary** relief sought in this action, only summarily

23   concluding that injunctive relief is appropriate.  *See* Motion at 25.  Plaintiffs have

24   not shown that certification of a class under Rule 23(b)(2) is appropriate.

25   **IV.   IT IS INAPPROPRIATE TO APPLY CALIFORNIA LAW TO A**

26         **NATIONAL CLASS**

27         Despite the Court's urging to Plaintiffs that "given *Mazza*, [Plaintiffs] may

28   need to seriously consider whether [they] can maintain a nationwide class on all of

DOCUMENT PREPARED
ON RECYCLED PAPER

53002717.3                              - 19 -

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**EXHIBIT A PAGE 80**

1   [their] claims throughout this litigation," (6/1/12 Order on Motion to Dismiss, Dkt.

2   No. 27) Plaintiffs' argument that California law should apply to a nationwide class

3   is devoid of any discussion of the implication of *Mazza*, or the line of cases that

4   have applied its ruling.  Instead, Plaintiffs' motion focuses solely on the issue of

5   whether application of California's law violates due process concerns and ignores

6   the central choice of law question.  Defendants do not concede that application of

7   California law is constitutional.[6]   However, there is no need to address the

8   constitutional issue, given that choice of law analysis leads to the conclusion that

9   applying California law to a nationwide class is not appropriate.

10       California applies this governmental interest inquiry: (1) determine if the

11   laws of other states materially differ from California law; (2) if the laws materially

12   differ, determine each state's respective interest in application of its law; and (3) if

13   both states have an interest in litigation, apply the law of the state whose interest

14   would be more impaired if its law were not applied.  *Mazza*, at 590.  Applying this

15   test to California's UCL, False Advertising, and CLRA claims (the same statutes

16   that Plaintiffs in this case seek to apply to a nationwide class), the *Mazza* court held

17   that a class member's consumer protection claims must be brought under the laws

18   _____

    [6] Plaintiffs argue that because Defendants have "substantial contacts" with

19   California, this alone establishes that application of California law is constitutional.

20   *See* Motion at 11:3-12:3.  Contrary to Plaintiffs' claims, a number of marketing
    decisions for the products were not made in California (indeed, the Vice President

21   of Marketing was previously based in Washington D.C., and coordinates with
    several individuals around the country).  While the fact that a defendant is

22   incorporated and conducts business in California may provide sufficient contacts to

23   establish personal jurisdiction, this does not sufficiently alleviate due process
    concerns.  *Norwest Mortgage Inc. v. Superior Court*, 72 Cal. App. 4th 214, 226

24   (1999) ("the existence of personal jurisdiction over the defendant does not alone
    permit application of forum law to the claims of nonresident plaintiffs.").  Applying

25   California's false advertising laws to class members that do not live and did not

26   purchase the products in California raises constitutional issues.  *See Rikos v.
    Procter & Gamble Co.*, 2012 WL 641946 (S.D. Ohio 2012) ("CLRA and the UCL

27   cannot be constitutionally applied to the claims of class members who neither

28   reside in California nor purchased the product there.").

**EXHIBIT A PAGE 81**

1   of the state where the consumer received the alleged misrepresentations or
2   omissions that resulted in the transaction at issue.  *Id*. at 594.

3       **A.    The Laws Of All 50 States Materially Differ**

4           There is an actual conflict in the consumer protection laws of the various
5   states.  These conflicts extend to issues relating to: (1) scienter; (2) reliance; and (3)
6   remedies.  *Mazza*, at 591.  Many courts following *Mazza* recognize these material
7   variations in consumer protection statutes in the various states.  *See, e.g., In re*
8   *Hitachi Tele. Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *6 (S.D. Cal.
9   Jan. 3, 2011); *see also Gianino v. Alacer Corp.*, 2012 U.S. Dist. LEXIS 32261, at
10  *6-9 (C.D. Cal. Feb. 27, 2012).[7] *Mazza* and *Gianino* both recognized that these
11  differences are ***not*** trivial.  *Mazza*, 666 F.3d at 591; *Gianino*, 2012 U.S. Dist.
12  LEXIS 32261, at *11.

13          The differences between the laws of the three states most directly involved in
14  this case (California, New Jersey and Missouri) demonstrate the material conflicts
15  relevant to the claims in this case.  (1) **Statutes of Limitations**:  Four different
16  limitation periods are at play in these statutes: six years under the New Jersey
17  Consumer Fraud Act ("NJCFA"); four years under California's UCL; three years
18  under California's CLRA and FAL; and two years under Missouri's Merchandising
19  Practices Act ("MMPA").[8]  Application of California law to the entire class allows
20  Ms. Roemmich, a Missouri resident who purchased Cold 'n Cough 4 Kids in
21  Missouri, to bring a claim on behalf of the nationwide class that she is incapable of
22  bringing in her own state.  *See* Roemmich Depo., at 27:23-28:1 (witness could only

23  _____

24  [7] For the Court's convenience and reference, the nationwide analysis of the
    variations in the states' consumer protection laws on which Judge Carnac's opinion
25  is based has been submitted as Exhibit A to Defendants' Request for Judicial
    Notice.
26  [8] Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208; Mo. Ann. Stat. §
27  407.1107; *Kennedy v. Axa Equitable Life Ins. Co.*, 2007 WL 2688881, at *2 (D.N.J.
    Sept. 11, 2007) (New Jersey's 6-year statute of limitations covers insurance
28  contracts and claims under the CFA); *see also* N.J. Stat. Ann. § 2A:14-1.

1    confirm that the product had been purchased within the last four years).  (2) **Actual**

2    **Injury**: California and Missouri require actual injury;[9] New Jersey allows false

3    advertising claims to be brought "whether or not any person has in fact been misled,

4    deceived or damaged thereby…."[10]  (3) **Reliance**: California's consumer protection

5    laws require plaintiffs to establish reliance; New Jersey and Missouri laws do not.[11]

6    (4) **Remedies/Damages**:  Under the CLRA, a plaintiff can recover actual damages,

7    an injunction, restitution, punitive damages and "any other relief that the court

8    deems proper."[12]  The UCL and FAL limit the available remedies to equitable and

9    restitutionary relief and do not allow for compensatory or punitive damages.[13]  The

10   MMPA specifically provides for actual damages, equitable relief, and attorney's

11   fees, as well as punitive damages in appropriate cases.[14]  The NJCFA includes

12   treble damages and attorney fees as its penalties for a violation.[15]  Punitive damages

13   are not expressly provided for by the NJCFA and are only allowed in cases of

14   common law fraud.[16]  In addition to the *Mazza* and *Gianino* decisions, which

15   unequivocally hold that the consumer laws of the 50 states are materially different,

16   a number of cases in New Jersey find that there are material conflicts between the

17

18

19

---

20   [9] Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780; Mo. Ann. Stat. § 407.025.1.

21   [10] N.J. Stat. Ann. § 56:8-2.

22   [11] *See, e.g., Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Ct. App. 2000)
("members of a class proceeding under [Florida's] Deceptive and Unfair Trade

23   Practices Act need not prove individual reliance on the alleged representation");
Ga. Code Ann. § 10-1-372(b) ("In order to prevail in an action under [Georgia's]

24   Uniform Deceptive Trade Practices Act], a complainant need not prove competition

25   between the parties or actual confusion or misunderstanding.").

26   [12] Ca. Civ. Code § 1780.

27   [13] Cal. Bus. & Prof. Code §§ 17203, 17206.
[14] Mo. Ann. Stat. § 407.025.1.

28   [15] N.J. Stat. Ann. § 56:8-19.
[16] *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 368 (N.J. 1997).

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 86 of 106   Page ID
#:13753
Case: 14-80058    04/23/2014    ID: 9070478   DktEntry: 1-1    Page: 80 of 98   (80 of 100)

1   NJCFA and California's consumer laws.[17]  Plaintiffs also seek to have California

2   common law causes of action for breach of express and implied warranties applied

3   to a national class.   These laws also materially differ between the 50 states,

4   cautioning against application of California's law to a nationwide class.[18]

5

6   [17] *See Gotthelf v. Toyota Motor Sales, USA, Inc.*, 2012 WL 1574301, at *13 (D.N.J.

7   May 3, 2012) (comparing the NJCFA to the CLRA); *Feldman v. Mercedes-Benz

8   USA, LLC*, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012) ("the NJCFA

    materially conflicts with the consumer protection statutes of California, the CLRA

9   and UCL."); *Maniscalco v. Brother Int'l Corp.*, 793 F. Supp. 2d 696, 704 (D.N.J.

10  2011) (finding a material difference between the NJCFA and the CLRA because the

    CLRA only provides relief for a consumer who has purchased goods primarily for

11  personal, family or household purposes); *Montich v. Miele USA, Inc.*, 849 F. Supp.

12  2d 439, 446 (D.N.J. 2012) (UCL requires the element of actual reliance, whereas

    the NJCFA does not); *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 839 A.2d

13  942, 978-79 (N.J. Ch. 2003) (NJCFA requires proof of both knowledge and intent,

14  while California requires proof of justifiable reliance by the plaintiff on defendant's

    deceptive acts); *Int' Union of Operating Eng'rs Local No. 68 Welfare Fund v.

15  Merck & Co.*, 2005 WL 2205341, at *17 (N.J. Super. Ct. Law Div. July 29, 2005)

16  (UCL and CLRA provide varied remedies from the NJCFA and that this difference,

    along with the varied other differences as related to other states, was material and

17  met the first prong of New Jersey's governmental-interest analysis).

18  [18] The court in *Rikos v. Procter & Gamble Company*, 2012 WL 641946 at *5-6

19  (S.D. Ohio 2012), held that the following material variation in the express warranty

    laws of the 50 states existed: (1) California provides an "exception to the

20  requirement of privity for purchases where the plaintiff relied on the product's

21  labels or advertising, while other states bar claims for breach of express warranty in

    the absence of privity and a third category have no requirement of privity at all;" (2)

22  California holds that "statements of mere 'puffery' do not constitute an express

23  warranty, while other states hold that a warranty is created when the natural

    tendency of the statement is to induce a purchase;" (3) California does not require

24  reliance, while "some states require plaintiff to demonstrate reliance, others apply a

    burden shifting method, and others still presume reliance;" and (4) California

25  requires that notice is given to the manufacture, while other states "require notice

26  only to the seller, and some do not require notice at all."  The court expressly noted

    that "no discovery will change the simple fact that different states have different

27  elements for claims of breach of express warranty, and the Court finds that these

28  variations are material."  *Id.* at *6; *see also, Keegan v. Amer. Honda Motor Co.,
    Inc.*, 284 F.R.D. 504, 540 (C.D. Cal. 2012) (*Mazza*'s "caution against the

1
2

**B.    Individual States Have An Interest In Protecting Their Own Consumers**

3       When it comes to consumer products, the individual states have an interest in
4  protecting their own citizen consumers.  *Mazza* held, as a matter of law, that the
5  state in which a consumer received a misrepresentation and purchased a product has
6  a strong interest in setting "the optimal balance between protecting consumers and
7  attracting foreign businesses…."  *Mazza*, 666 F.3d at 592; *see also Gianino*, 2012
8  U.S. Dist. LEXIS 32261, at *13.  The same applies to warranty law, as "each state
9  has an interest in setting the appropriate level of liability for companies conducting
10 business within its territory."  *Rikos*, 2012 WL 641946, at *6, *citing Zinser v.
11 Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).  The analysis for
12 homeopathic drugs is no different; each of the 50 states has an interest in setting the
13 balance between protecting its consumers and setting limits on when businesses
14 may be sued for the purchase of their products.

15
16

**C.    The Laws Of Each Class Member's Home State Are Most Impaired**

17      In *Mazza*, the court determined that the interests of the consumer's home
18 state are most impaired by the application of one state's law to all jurisdictions at
19 issue because "California considers the 'place of wrong' to be the state where the
20 last event necessary to make the actor liable occurred."  *Mazza*, 666 F.3d at 593-94.
21 This is "the geographic location of the omission or where the misrepresentations
22 were communicated to the consumer as the place of the wrong."  *Gianino*, 2012
23 U.S. Dist. LEXIS 32261, at *15; *Mazza*, 666 F.3d at 593-594.  Here, where
24 Plaintiffs propose to certify a class that is primarily made up of consumers whose
25 only exposure to advertising for the products was on-shelf packaging in their home

26

27  unwarranted extraterritorial application of California law" extended to an implied
28  warranty claim).

**EXHIBIT A PAGE 85**

1  states (Compl. at ¶¶ 76, 78), controlling law dictates that the interests of each of the

2  consumers' home state are most impaired by the application of California law,

3  preventing application of California law to a national class.

4  **V.       CONCLUSION**

5        For the foregoing reasons, Defendants respectfully request that the Court

6  deny Plaintiffs' Motion for Class Certification.

7  Dated:    October 28, 2013              JEFFREY MARGULIES
                                            STEPHANIE A. STROUP
8                                           MATTHEW M. GURVITZ
                                            **FULBRIGHT & JAWORSKI LLP**
9

10                                           /S/ Stephanie A. Stroup
                                            STEPHANIE A. STROUP
11                                          Attorneys for Defendants
                                            STANDARD HOMEOPATHIC
12                                          COMPANY, STANDARD
                                            HOMEOPATHIC LABORATORIES,
13                                          INC. and HYLAND'S, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A PAGE 86**

# EXHIBIT C

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | | Date | June 1, 2012 |
|---|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | | |

| Presiding: The Honorable | **GEORGE H. KING, U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**      **(In Chambers) Order re**: Motion to Dismiss Complaint; **[8]**

This matter is before us on Defendants Hyland's, Inc. ("Hyland's"), Standard Homeopathic Laboratories, Inc., and Standard Homeopathic Company's (collectively, "Defendants") Motion to Dismiss Complaint ("Motion"). We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.      Background**

On a motion to dismiss, we accept the allegations of the Complaint as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Plaintiff Enzo Forcellati ("Plaintiff"), a New Jersey resident, states that Defendants "represent[] that [their] homeopathic Cold and Flu Remedies offer children 'Fast acting,' 'Safe & Effective,' 'Multi-symptom' relief from cold and flu symptoms, including runny noses, sore throats, coughs, headaches, body aches, flu and congestion." (Class Action Complaint ("CAC") ¶ 2). Plaintiff asserts, however, that Defendants' products are "nothing more than sweetened, flavored water with only highly diluted concentrations of the products' so-called 'active ingredients.'" (*Id.*). On the basis of these allegations, Plaintiff asserts the following claims: (1) Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.*; (2) Unjust Enrichment; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 58:8-1, *et seq.* ("NJCFA claim"); (6) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA claim"); (7) Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL claim"); and (8) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code 17200, *et seq.* ("UCL claim"). Plaintiff brings the first, second, third, and fourth claims individually and on behalf of a nationwide class and New Jersey sub-class; the fifth claim on behalf of a New Jersey sub-class; and the sixth, seventh, and eighth claims on behalf of a nationwide class.

**EXHIBIT A PAGE 88**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 91 of 106   Page ID
#:13758
Case: 14-80058      04/23/2014      ID: 9070478      DktEntry: 1-1      Page: 85 of 98 (85 of 100)

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|----------|----------------------|------|-------------|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

  Defendants move to dismiss the CAC for the following reasons: First, Defendants argue that based on the Ninth Circuit's opinion in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), Plaintiff "lacks standing to assert claims under California's consumer protection laws, for himself or on behalf of a putative nationwide class." (Mot. 1). Second, Defendants argue, also pursuant to *Mazza*, that "Plaintiff cannot certify a nationwide class for alleged violations of consumer protection laws." (*Id.* at 2). Third, Defendants argue that Plaintiff lacks standing to assert claims regarding any products that he did not use.[1] Fourth, Defendants argue that Plaintiff's warranty claims fail because "Plaintiff has not alleged any statements that create any actionable express or implied warranties." (*Id.* at 1-2). Defendants further argue that Plaintiff's Magnuson-Moss Act claim fails because their over-the-counter medications are not "consumer products" within the meaning of Magnuson-Moss. Fifth, Defendants argue that Plaintiff's purported unjust enrichment claim fails because unjust enrichment is a remedy, rather than a claim.[2] Sixth, Defendants argue that Plaintiff's NJCFA claim is deficient because he does not allege that Defendants engaged in any unlawful conduct or that Plaintiff suffered an ascertainable loss.

**II.  Legal Standard for Motion to Dismiss**

  In order to survive dismissal for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Additionally, Plaintiff's fraud-based claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. *See Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake." This means that Plaintiff must allege the "who, what**,** when, where and how" supporting his fraud-based allegations made in the Complaint. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Although we must accept the allegations of the Complaint as true and construe them in the light most favorable to Plaintiff in resolving this Motion, we need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

---

  [1] Plaintiff purchased only Hyland's Cold 'n Cough, yet he asserts claims on behalf of individuals who purchased other products that are part of Hyland's line of Cold and Flu Remedies.

  [2] In their Reply, Defendants additionally argue that Plaintiff is precluded from asserting an unjust enrichment claim because he asserts contract-based claims (warranty claims). As this argument was asserted for the first time in Defendants' Reply, we decline to consider it. *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

**EXHIBIT A PAGE 89**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

**III.    Discussion**

**A.    *Plaintiff's Nationwide Class Claims***

Defendants argue that under the Ninth Circuit's decision in *Mazza*, 666 F.3d 581, "the variances in state laws overwhelm any common issues and, as a result, neither the predominance of common issues nor the superiority requirements for class certification under F.R.C.P. 23(b)(3) can be met." (Mot. 22).  We find Defendants' argument to be unripe at this stage of litigation.  *Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis.  Indeed, the court made clear that its holding was cabined to the facts before it, holding: "Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.  Importantly, *Mazza* (and nearly every other case cited by Defendants) undertook a class-wide choice-of-law analysis at the class certification stage, rather than the pleading stage at which we find ourselves.  Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case.  *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (noting that California's choice-of-law rules require courts to find that there is a "material difference" between the laws of different states on the basis of the facts presented in each case).

Additionally, once the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial.  Moreover, should choice-of-law analysis appear to pose problems at the class certification stage, Plaintiff could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with consumer protection laws that are not materially different.

Courts rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation.  *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.").  We likewise decline to do so.[3]  Accordingly, Defendants' Motion is **DENIED** inasmuch as it seeks to strike the nationwide class claims.

---

[3] We do not, however, purport to conclude that there are no material differences between the laws of different states or that a nationwide class is certifiable.  Instead, we merely defer this decision until the class certification stage.  We caution Plaintiff that depending on the facts of this case, given *Mazza*, he may need to seriously consider whether he can maintain a nationwide class on all of his claims throughout this litigation.  Given *Mazza*, we also caution the Parties to take their meet-and-confer obligations particularly seriously before filing any future motion addressing this issue.

**EXHIBIT A PAGE 90**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 93 of 106   Page ID
#:13760
Case: 14-80058    04/23/2014    ID: 9070478    DktEntry: 1-1    Page: 87 of 98  (87 of 100)

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

    **B.**    *Plaintiff's Standing to Assert Claims Under California Law*

      Defendants argue that, as a resident of New Jersey, Plaintiff lacks standing to bring consumer protection claims under California law.  Defendants contend that "the Ninth Circuit recently recognized in *Mazza*" that "a plaintiff or class member's consumer protection claims must be brought under the laws of the state where the consumer received alleged misrepresentations or omissions which resulted in the consumer transaction at issue."  (Mot. 5).  Defendants appear to misunderstand the concept of standing.  As noted by the court in *Mazza*, "standing requires that (1) the plaintiff suffered an injury in fact . . . (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision."  666 F.3d at 594-95 (quoting *Bates v. United Parcel Svc., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).  Defendants do not argue that any of the Article III standing requirements are not met.  Instead, Defendants' argument appears to be that choice-of-law analysis precludes Plaintiff from pursuing his claims under California law.   To this extent, Defendants appear to conflate two issues: the extraterritorial application of California consumer protection laws (or the ability of a nonresident plaintiff to assert a claim under California law), and choice-of-law analysis (or a determination that, based on policy reasons, non-forum law should apply).

      Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims.  *See id.* at 589-90 (noting that "[s]uch a showing is necessary to ensure that application of California law is constitutional").  Plaintiff alleges that Defendants are headquartered in Los Angeles, California.  Therefore, application of California law poses no constitutional concerns.  *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California.  With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants.").  Accordingly, Plaintiff certainly *can* assert a claim under California law, and it is *Defendant's* burden to defeat the presumption that California law applies and to "show[] a compelling reason justifying displacement of California law." *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007).

      In arguing that choice-of-law analysis requires "Plaintiff [to] seek relief under his home state's consumer protection laws," Defendants do not even discuss the differences between the consumer protection laws of New Jersey and California, let alone address whether these differences are material based on the facts and circumstances of *this* case.  Instead, Defendants rather generically argue that numerous courts, including the Ninth Circuit in *Mazza*, have applied the governmental interests test in consumer protection actions and concluded that California law could not apply to a nonresident's claims.  In doing so, Defendants characterize *Mazza* as creating a general rule that "where an out-of-state plaintiff claims to have been deceived or harmed as a result of misrepresentations or omissions received outside of California, that plaintiff s consumer protection claims must be brought under that plaintiff's own state laws."  (Mot. 8).  But, as mentioned above, the court in *Mazza* did no such thing.  Instead, it made clear its holding was cabined to "the facts and circumstances of th[at] case."  666 F.3d at 594.  Because Plaintiff is not constitutionally precluded from availing himself of

**EXHIBIT A PAGE 91**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | | Date | June 1, 2012 |
|---|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | | |

California's consumer protection laws, and choice-of-law analyses is a case- and fact-specific inquiry, Defendants cannot meet their burden merely by citing cases in which other defendants have met this burden in factually different circumstances. Defendants can only meet this burden by engaging in an analytically rigorous discussion of each prong of California's "governmental interests" test based on the facts and circumstances of *this* case, and *this* Plaintiff's allegations.

Additionally, Defendants cite numerous cases holding that differences between California consumer protection laws and the consumer protection laws of other states preclude class certification. *See, e.g.*, *Mazza*, 666 F.3d 581; *In re Hitachi Television Optical Block Cases*, No. 08cv1746 DMS (NLS), 2011 WL 9403 (S.D. Cal. Jan. 3, 2011); *Gianino v. Alacer Corp.*, No. SACV 09–01247–CJC(RNBx), 2012 WL 724322 (C.D. Cal. Feb. 27, 2012); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10–cv–02176–LHK, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012). These cases are unhelpful in determining whether Plaintiff as an individual may assert claims against Defendants under California law. *See Speyer v. Avis Rent a Car System, Inc.*, 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) (noting that "courts generally consider only claims of named plaintiffs in ruling on [a] motion to dismiss . . . prior to class certification"). These cases are also unhelpful in determining whether the differences between California consumer protection law and New Jersey consumer protection law, as opposed to other states' consumer protection laws, are material based on the facts of this case.

Defendants' briefing on the issues pertinent to this case – that is, whether Plaintiff's *individual* claims asserted under California law should be dismissed – is therefore inadequate for us to conclude that California law should be displaced on the facts of this case. Merely citing other courts' choice-of-law analyses, based on the facts before those courts, fails to discharge Defendants' burden of showing a "compelling reason" justifying the displacement of California law on Plaintiff's claims. Accordingly, Defendants' Motion is **DENIED** insofar as it seeks dismissal of Plaintiff's claims under California law.

### C.    *Plaintiff's Standing to Assert Claims with Respect to Products He Did Not Use*

Defendants argue that Plaintiff cannot assert claims as to the entire *category* of Defendants' "Cold and Flu Remedies" and instead may only assert these claims with respect to the one product within that category that Plaintiff alleges to have purchased – Defendants' Cold 'n Cough product. We disagree. Although the district courts within this circuit have not been entirely consistent on this issue, we agree with the numerous recent decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation, rather than standing. *See Donohue v. Apple*, No. 11–cv–05337 RMW, 2012 WL 1657119, at *6 (N.D. Cal. May 10, 2012); *Cardenas v. NBTY, Inc.*, No. CIV. S–11–1615 LKK/CKD, 2012 WL 1593196, at *7 (E.D. Cal. May 4, 2012) ("[T]he court determines that Plaintiff has standing to assert her UCL and CLRA claims based on her purchase of Osteo Bi–Flex Regular Strength and the product's more general representations that its line of Osteo Bi–Flex products, which ostensibly share many similarities in ingredients, 'improve mobility,' 'improve joint comfort,' and 'support[ ] renewal of cartilage.' The court will analyze solely under Rule 23 whether Plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo

**EXHIBIT A PAGE 92**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

Bi–Flex products."); *Bruno v. Quten Research Inst., LLC*, No. SACV 11–00173 DOC(Ex), 2011 WL 5592880, at *3 (C.D. Cal. Nov. 14, 2011) ("District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'  Treatises and other circuits reach the same conclusion." (citations omitted)). Accordingly, Defendants' Motion is **DENIED** insofar as it seeks dismissal of Plaintiff's claims for Defendants' Cold and Flu products that he did not use.

> ### D.    *Plaintiff's Warranty Claims*
>
> #### 1.      **Breach of Express Warranty**

Plaintiff alleges that "Defendants expressly warranted that Hyland's Cold and Flu remedies were effective and would provide fast acting, multi-symptom relief for the symptoms of the common cold and flu." (CAC ¶ 104).  These purported express warranties were communicated on the packaging of Defendants' products. (*Id.* ¶¶ 45-50).  Plaintiff alleges that "Defendants breached this warranty because Hyland's Cold and Flu Remedies are neither fast acting nor effective treatments for the cold or flu or any symptoms thereof." (*Id.* ¶ 105).

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (quoting *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985)). Defendants' argument as to why Plaintiff's breach of express warranty fails is not entirely clear.  First, Defendants assert that Plaintiff has failed to identify any false "affirmation of fact or promise." Defendants' argument appears to be that its packaging statements can only be false if they are construed to guarantee that the products "will work without fail for everyone, every time," which is a guarantee that they do not make. (Mot. 10; *see also* Reply 12 ("As the Product does not provide any express or implied warranty that it will work 100% of the time for everyone, Plaintiff's warranty claims fail.")). Defendants appear to misunderstand Plaintiff's claim.  In asserting his breach of express warranty claim, Plaintiff does not complain that Defendants' Cold and Flu Remedies guarantee a 100% success rate but were unsuccessful when he used them.  Instead, Plaintiff complains that Defendants' packaging statements are in fact *false* – that the products *cannot* and *do not* provide fast acting relief, and that they are *never* and *cannot be* effective in treating cold and flu symptoms.  As noted by Judge Dolly Gee in rejecting Defendants' argument in a similar action involving other homeopathic products, "Plaintiff[] allege[s] that Defendants' products will not work at any time for anyone because they either lack ingredients that will produce the advertised relief or contain the ingredients in insufficient quantities to be effective.  If this is true – as the Court must assume on a motion to dismiss – then Defendants' statements about relief and effectiveness are not." *Allen v. Hylands*, No. CV 12-01150 DMG (MANx), 2012 WL 1656750, at *4 (C.D. Cal. May 2, 2012).  We likewise reject Defendants' argument, as it appears to be based on a misunderstanding of Plaintiff's allegations, and conclude that Plaintiff pleads sufficient affirmations of fact or promise to support an express warranty claim under California law.

**EXHIBIT A PAGE 93**

Case 2:12-cv-01150-DMG-MAN   Document 284   Filed 07/07/14   Page 96 of 106   Page ID
#:13763
Case: 14-80058    04/23/2014    ID: 9070478   DktEntry: 1-1    Page: 90 of 98  (90 of 100)

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

Defendants' second argument is even less clear and is based on compliance with regulatory requirements.  Defendants appear to argue that their packaging statements are mere "indication for use statement[s] required under federal law in order for consumers to understand the conditions for which the drug is intended," rather than express promises or guarantees.  (Mot. 11).  Although we do not purport to pass judgment on whether regulatory compliance would immunize Defendants from liability – an argument Defendants do not actually make – we dispute their characterization of the alleged packaging statements as "indication for use statements."  One can indicate "the general pharmacological category(ies) or the principal intended action(s) of [a] drug" as Defendants argue is required by regulations, (*id.*), without stating that the product is "safe and effective," (CAC ¶ 16), "relieves fevers and chills," (*id.* ¶ 48), or "fast acting," (*id.* ¶ 2).  Indeed, one could merely state that its product is "intended for treatment of cold and flu symptoms."  We also reject Defendants' opaque attempt to vaguely reference regulatory compliance without explicitly making any argument on the basis of these federal regulations.

In light of the foregoing, Defendants' Motion is **DENIED** inasmuch as it seeks dismissal of Plaintiff's express warranty claim.

### 2.    Breach of Implied Warranty

To succeed on an implied warranty claim, a plaintiff must demonstrate that the products are not "fit for the ordinary purposes for which such goods are used" or fail to "[c]onform to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1(a)(2), (4).  Plaintiff alleges that Defendants' products are not "merchantable or fit for the purpose they were sold" – the fast and effective treatment of cold and flu remedies.  (*Id.* ¶ 110).  Defendants argue that Plaintiff's implied warranty claim "fails for the same reasons his express warranty claim fails" – the "claim is premised simply on the assertion that the Product did not work for him."  (Mot. 14).  Defendants also argue that their products are intended for use as homeopathic drugs, and  "there are no allegations that the Product is not fit for its intended use . . . as a homeopathic drug."  (*Id.*).

Defendants again appear to misunderstand Plaintiff's claims.  Plaintiff alleges that Defendants' products are not effective *at all*.  The fact that Defendants' products contain the word "homeopathic" on the packaging, along with statements that the products provide safe, effective, and fast-acting relief for cold and flu symptoms, does not immunize Defendants from liability if their products are entirely ineffective in treating cold and flu symptoms, as Plaintiff alleges.  Accordingly, Defendants' Motion is **DENIED** inasmuch as it seeks dismissal of Plaintiff's implied warranty claim.

### 3.    Magnuson-Moss Act Claim

Defendants' argue that Plaintiff's Magnuson-Moss Act claim fails because the Act only applies to "consumer products," and their over-the-counter homeopathic medications are not "consumer products" as defined by the Act.  Defendants acknowledge that Magnuson-Moss does not specifically enumerate what products fall within the definition of "consumer products."  However, they note that the

**EXHIBIT A PAGE 94**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

Consumer Product Safety Act expressly states that "drugs, devices, or cosmetics" as defined in the Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 et seq. ("FDCA") are not "consumer product[s]." Thus, they contend, citing the California Court of Appeal's decision in *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 798 (2002), that a drug regulated by the FDCA (which Defendants' products are) is not a "consumer product" under Magnuson-Moss.[4]

The Magnuson-Moss Act defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1). While the Act does not enumerate any particular "consumer products," numerous courts have discussed FTC regulations articulating such examples as "boats, photographic film and chemicals, clothing, appliances, jewelry, furniture, typewriters, motor homes, automobiles, mobile homes, vehicle parts and accessories, stereos, carpeting, small aircraft, toys, and food." *Kemp v. Pfizer, Inc.*, 835 F. Supp. 1015, 1024 (E.D. Mich. 1993) (quoting Magnuson-Moss Warranty Act: Implementation and Enforcement Policy, 40 Fed. Reg. 25,721, 25,722 (1975)); *accord Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062 n.6 (5th Cir. 1984); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 998 (D. Minn. 2006). Although over-the-counter cold and flu medications are not enumerated in FTC regulation examples, they certainly appear to fit within the broad definition contained in the Magnuson-Moss Act – tangible goods that are "normally used for personal, family, or household purposes."

In *Kanter*, the case cited by Defendants, the plaintiffs sued the manufacturers of an over-the-counter head lice treatment and alleged "that the product labels contain false and misleading statements about the effectiveness of the drugs." 99 Cal. App. 4th at 784. The plaintiffs asserted, *inter alia*, a claim for breach of warranty under the Magnuson-Moss Act. The California Court of Appeal cobbled together three statutes to conclude that the defendants' products were not "consumer products" within the meaning of the Magnuson-Moss Act:

> Magnuson–Moss applies only to "consumer product[s]," defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." The act does not otherwise enumerate products within the scope of the definition. The federal Consumer Product Safety Act, however, expressly states that "drugs, devices, or cosmetics" as defined in the FDCA are not "consumer product[s]." Reading these statutes together, at least two courts have concluded that a medical device regulated by the [FDCA] is not a consumer product within the meaning of Magnuson–Moss. [*Goldsmith v. mentor Corp.*, 913 F. Supp. 56, 63 (D.N.H. 1995); *Kemp v. Pfizer, Inc.*, E.D. Mich. 1993).] By parity of reasoning, a drug regulated by the FDCA is also not a consumer product within the meaning of Magnuson–Moss.

---

[4] Defendants also argue that because Plaintiff's express and implied warranty claims fail under state law, they also fail under Magnuson-Moss. Because we have determined that Plaintiff's state law warranty claims are valid, we likewise reject this argument as to Plaintiff's Magnuson-Moss Act claim.

**EXHIBIT A PAGE 95**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

*Id.* (some citations omitted). We respectfully disagree with the California Court of Appeal that parity of reasoning requires the two statutes, with different definitions, to be interpreted similarly. First, the cases upon which the court relied discussed products that could not reasonably be considered goods that are "normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1). In *Goldsmith*, the court discussed whether a *testicular prosthesis* was a "consumer product" under the Magnuson-Moss Act. 913 F. Supp. at 57. *Goldsmith* relied on *Kemp*, which contemplated whether a *prosthetic heart valve* was a "consumer product" covered by Magnuson-Moss. 835 F. Supp. at 1024. Notably, the court in *Goldsmith* concluded that such a product was not a "consumer product" covered by the Magnuson-Moss Act because it was "not the type of product normally used for consumer purposes by the general public. Goods that are not customarily available to the ordinary person are not consumer products." *Id.* While these courts discussed the FDCA's definition of consumer product, it is difficult to imagine how they possibly could have concluded that medical prostheses could have been covered by the Magnuson-Moss Act irrespective of their express exclusion from the FDCA's definition. As the court noted in *Kemp*, such products are certainly not "normally used" within a household.

Second, we do not consider the FDCA's definition of "consumer product" to be conclusive, or even compelling for determining whether a good is a "consumer product" under Magnuson-Moss. The FDCA defines "consumer product," in pertinent part, as follows:

The term "consumer product" means any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; but such term does not include–

(A) any article which is not customarily produced or distributed for sale to, or use or consumption by, or enjoyment of, a consumer,

(C) motor vehicles or motor vehicle equipment (as defined by section 30102(a)(6) and (7) of Title 49),

(G) boats which could be subjected to safety regulation under chapter 43 of Title 46; vessels, and appurtenances to vessels (other than such boats), which could be subjected to safety regulation under title 52 of the Revised Statutes or other marine safety statutes administered by the department in which the Coast Guard is operating; and equipment (including associated equipment, as defined in section 2101(1) of Title 46) to the extent that a risk of injury associated with the use of such equipment on boats or vessels could be eliminated or reduced by actions taken under any statute referred to in this subparagraph,

(H) drugs, devices, or cosmetics (as such terms are defined in sections 201(g), (h), and (i) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. § 321(g), (h), and (i)]), or

**EXHIBIT A PAGE 96**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

(I) food. The term "food", as used in this subparagraph means all "food", as defined in section 201(f) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. § 321(f)], including poultry and poultry products (as defined in sections 4(e) and (f) of the Poultry Products Inspection Act [21 U.S.C.A. § 453(e) and (f)]), meat, meat food products (as defined in section 1(j) of the Federal Meat Inspection Act [21 U.S.C.A. § 601(j)]), and eggs and egg products (as defined in section 4 of the Egg Products Inspection Act [21 U.S.C.A. § 1033]).

15 U.S.C. § 2052(a)(5). Accordingly, "consumer product" is defined much differently in the FDCA than the Magnuson-Moss Act, and it expressly *excludes* products that clearly fall within Magnuson-Moss. For example, the FDCA excludes food, boats, and motor vehicles – products that are expressly *included* as consumer products in the FTC's regulations interpreting Magnuson-Moss. Therefore, a product's express exclusion from the definition of "consumer product" in the FDCA does not compel a similar interpretation of the Magnuson-Moss Act where the product is otherwise a good "normally used for personal, family, or household purposes."

Third, there may be very good reasons for "consumer product" to be defined differently in Consumer Product Safety Act (as part of the FDCA) and the Magnuson-Moss Act. The Consumer Product Safety Act is primarily concerned with the safety of various products, and thus it may make sense to exclude products whose safety is regulated by agencies other than the Consumer Product Safety Commission – products like vehicles, food, and drugs. This helps to prevent conflicting or inconsistent regulatory requirements. In contrast, Magnuson-Moss is less focused on safety and more focused on ensuring that products do not have misleading claims as to the efficacy of those products. Thus, it may not be a significant concern if goods considered "consumer products" under Magnuson-Moss are regulated by other agencies with regard to those products' safety. This is perhaps evidenced by the FTC's interpretation of Magnuson-Moss as including vehicles and food, even though the safety of those products are regulated by other acts. Accordingly, Defendants have provided no compelling reason for why we should interpret these two different definitions to be co-terminous, and there appear to be very good reasons not to (not the least of which is the fact that FTC regulations expressly include products that are excluded from the definition in the FDCA).

Defendants have not engaged in a sufficiently comprehensive analysis of these two statutes, their interpretive regulations, and the regulatory structure of the agencies governing over-the-counter medications for us to conclude that over-the-counter homeopathic medications are not "consumer products" under Magnuson-Moss. Accordingly, they have not borne their burden at this stage of litigation of demonstrating that Plaintiff's Magnuson-Moss Act claim should be dismissed as a matter of law. We hereby **DENY** Defendants' motion inasmuch as it seeks dismissal of Plaintiff's Magnuson-Moss Act claim.

E.    *Plaintiff's Unjust Enrichment Claim*

**EXHIBIT A PAGE 97**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

Defendants argue that Plaintiff's unjust enrichment claim fails because unjust enrichment is a remedy, rather than a freestanding claim. Although state and federal courts are somewhat inconsistent in their characterization of unjust enrichment under California law, we agree with Defendants that the majority of state and federal district courts in California do not recognize unjust enrichment as a freestanding claim. *See, e.g., Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) ("Although some California courts have suggested the existence of a separate cause of action for unjust enrichment, this court has recently held that '"[t]here is no cause of action in California for unjust enrichment.' Unjust enrichment is synonymous with restitution. Thus, the Levines' unjust enrichment claim does not properly state a cause of action." (citations omitted)); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[T]here is no cause of action in California for unjust enrichment." (alteration in original)); *Williamson v. Reinalt-Thomas Corp.*, No. 5:11–CV–03548–LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) (collecting cases from California state and federal district courts). Unpublished Ninth Circuit cases have held the same. *See, e.g., Smith v. Ford Motor Co.*, No. 10–17321, 2011 WL 6322200, at *4 (9th Cir. Dec. 19, 2011) ("Plaintiffs also appeal the district court's ruling that unjust enrichment is not an independent cause of action in California. This argument has no merit.") (collecting California authorities); *Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010); *Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 815 (9th Cir. 2009) ("In California there is no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and remedies . . . .'" (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003)). Accordingly, we hereby **DISMISS** Plaintiff's purported unjust enrichment claim with prejudice.

### F.    *Plaintiff's NJCFA Claim*

To prevail on his NSCFA claim, Plaintiff must establish "1) unlawful conduct by defendant[s]; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also* N.J.S. 56:8-19 ("Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction."). Unlawful conduct may include an affirmative act, a knowing omission, or a regulatory violation. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Defendants first argue that "Plaintiff has failed to allege any unlawful conduct by Defendants" because he merely complains that the product did not work *for him*, and "no drug, OTC or prescription, can be expected to be effective 100% of the time for everyone." (Mot. 17). As discussed at length above, this argument betrays a misunderstanding of Plaintiff's allegations. Plaintiff does not merely complain that the products did not work for him; he claims that they are entirely ineffective for all consumers because they contain insufficient active ingredients to deliver on Defendants' promises of "fast acting" and "effective" relief. Plaintiff adequately pleads that Defendants made fraudulent representations on the packaging materials of their Cold and Flu Remedies products. This fulfills the "unlawful conduct" requirement for pleading a NJCFA claim. *See Mendez v. Avis Budget Grp., Inc.*, No. 11–6537(JLL),

**EXHIBIT A PAGE 98**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | | Date | June 1, 2012 |
|---|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | | |

2012 WL 1224708, at *13 (D.N.J. Apr. 10, 2012) ("An affirmative act includes unconscionable commercial practices, deception, fraud and misrepresentation.").

Second, Defendants argue that Plaintiff has "failed to adequately plead an ascertainable loss." (Mot. 17). Defendants assert that "Plaintiff merely alleges that he purchased the Product and, without any explanation or details, he makes the conclusory assertion that he 'paid a price premium due to the mislabeling' of the Product." (*Id.*). Defendants argue that this conclusory assertion is insufficient under the heightened pleading standards that apply to this fraud-based claim.

The ascertainable loss element of an NJCFA claim requires that the Plaintiff plead "a loss that is 'quantifiable or measurable[,' not] 'hypothetical or illusory.'" *Lee v. Carter-Reed Co., LLC*, 203 N.J. 496, 522 (2010) (quoting *Thiedemann v. Mercedes–Benz USA, LLC*, 183 N.J. 234, 248 (2005)). The ascertainable loss can be based on one of at least three recognized theories, recently summarized by the District of New Jersey:

> The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as advertized and the merchandise as delivered. Under the third theory, an "ascertainable loss" can include a nominal overcharge for which the plaintiffs have not made a "pre-suit demand for a refund."

*Hammer v. Vital Pharmaceuticals, Inc.*, No. 11–4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012).

Plaintiff clarifies in his Opposition that he relies on the "out-of-pocket" theory, as he claims that Defendants' products are nothing more than "flavored water or sugar tablets." (Opp'n 22-23). Because he is relying on the "out-of-pocket" theory, rather than the "loss-in-value" theory, Plaintiff argues that pleading the loss in purchase price is sufficient to state a claim.

Plaintiff pleads the ascertainable loss element as follows:

> Plaintiff and members of the New Jersey Subclass suffered an ascertainable loss caused by Defendants' misrepresentations because: (a) Plaintiff and the New Jersey Subclass would not have purchased the Hyland's Cold and Flu Remedies on the same terms if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the New Jersey Subclass paid a price premium due to the mislabeling of Hyland's Cold and Flu Remedies; and (c) Hyland's Cold and Flu Remedies did not have the quality, effectiveness or value as promised.

(CAC ¶ 115). If we were construing this paragraph in a vacuum, we would agree with Defendants that Plaintiff appears to rely on the "loss-in-value" theory and thus insufficiently pleads an ascertainable loss under Rule 9(b)'s fraud pleading requirement. However, we construe the CAC's allegations in the light

**EXHIBIT A PAGE 99**

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

most favorable to the Plaintiff.  *See Lockyer*, 568 F.3d at 1067.  Taken as a whole, Plaintiff's CAC alleges that Defendants' homeopathic products are nothing more than "expensive sweetened, flavored water or sugar tablets," (*id.* ¶ 68), which are "ineffective and do not provide relief for any of the[] symptoms" for which they are advertised, (*id.* ¶ 92).  Indeed, Plaintiff alleges that Defendants' products are  "no more effective than placebos."  (*Id.* ¶ 66).  Plaintiff also clearly states that he and the putative class members "seek a refund and/or rescission of the transaction."  (*Id.* ¶ 3).  Plaintiff's NJFCA claim explicitly incorporates all of these paragraphs.  (*Id.* ¶ 112).  Therefore, although the specific assertions made under the heading of the NJFCA claim could be clearer on the ascertainable loss theory upon which Plaintiff relies, the CAC taken as a whole and in the light most favorable to the Plaintiff sufficiently pleads an ascertainable loss under the out-of-pocket theory.  *See Hammer*, 2012 WL 1018842, at * 9 (holding that the plaintiff adequately pled ascertainable loss where he alleged that he "suffered an ascertainable loss of monies, including, but not necessarily limited to the purchase price of the" product he purchased and "contend[ed] that he 'would not have purchased' the product but for Defendant's misrepresentations"); *Nelson v. Xacta 3000 Inc.*, 2010 WL 1931251, at *7 (D.N.J. May 12, 2010) (holding that the plaintiffs sufficiently pled ascertainable loss where they "claim[ed] that the Kinoki Pads 'do not work when consumers apply them while they sleep (or during any other time of the day or night for that matter)'").

In light of the foregoing, we hereby **DENY** Defendants' Motion insofar as it seeks dismissal of Plaintiff's NJCFA claim.

**IV.    Conclusion**

Defendants' Motion is **GRANTED** in part and **DENIED** in part.  Plaintiff's unjust enrichment claim is hereby **DISMISSED with prejudice**.  In all other respects, Defendants' Motion is hereby **DENIED**.  Defendants **SHALL** answer Plaintiff's CAC **within fourteen (14) days hereof**.  Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

| | - | : | - |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |

**EXHIBIT A PAGE 100**

| 9th Circuit Case Number(s) | |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Apr 23, 2014 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

See Attached List of Recipients

Signature (use "s/" format) | s/ Matthew M. Gurvitz

**EXHIBIT A PAGE 101**

CERTIFICATE OF SERVICE

(Electronic Mail Service)

L. Timothy Fisher (Bar No. 191626)
ltfisher@bursor.com
Annick Persinger (Bar No. 272996)
apersinger@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700

David E. Bower (Bar No. 119546)
dbower@faruqilaw.com
FARUQI & FARUQI, LLP
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

Antonio Vozzolo (*pro hac vice*)
avozzolo@faruqilaw.com
Andrea Clisura (*pro hac vice*)
aclisura@faruqilaw.com
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**EXHIBIT A PAGE 102**

8/10/11

# Notice regarding Electronic Case Filing
## U.S. Court of Appeals for the Ninth Circuit

---

The Court is sending you this notice because it appears that you have not registered for the Ninth Circuit's Appellate ECF system.

Effective January 2, 2009, use of the Appellate ECF system is **mandatory** for all attorneys and all court reporters filing in this Court, unless they are granted an exemption from using the Appellate ECF system. Use of the Appellate ECF system is voluntary for all pro se parties proceeding without counsel.

**Note:** If you are an attorney, you do not need to be admitted to the bar of this Court before you register for electronic filing, but you should *concurrently* apply for admission. Information on attorney admission is available under Attorney Admissions at **http://www.ca9.uscourts.gov/attorneys/**

## How to Register

‣ To register, go to Appellate ECF Filer Registration: **http://www.pacer.gov/reg_ap.html**

‣ You must register specifically for the Ninth Circuit, even if you are already registered for PACER, for ECF in other courts, or for electronic noticing in the Ninth Circuit.

‣ You should receive e-mail confirmation of your CM/ECF registration within 10 business days from the PACER service center. Once you receive this confirmation, you will be expected to use the Ninth Circuit's CM/ECF system.

**Once registered, you must use the CM/ECF system to electronically file most documents, and you will also receive electronic notices of docket activity.**

## Questions?

• If you have questions about Appellate ECF Filer Registration, please contact the PACER Service Center at: **pacer@psc.uscourts.gov**

• If you have questions about CM/ECF (including about which documents must be electronically filed) in the Ninth Circuit, please first refer to the Ninth Circuit's website for information about Electronic Filing and the CM/ECF system: **http://www.ca9.uscourts.gov/cmecf**

• Still have questions?  Please contact: **CMECF_ca9help@ca9.uscourts.gov**

**EXHIBIT A PAGE 103**



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

April 23, 2014

---

No.:            14-80058
D.C. No.:       2:12-cv-01983-GHK-MRW
Short Title:    Enzo Forcellati, et al v. Hyland's, Inc., et al

---

Dear Appellant/Counsel

This is to acknowledge receipt of your Petition for Permission to Appeal under 23(f).

All subsequent letters and requests for information regarding this matter will be added to your file to be considered at the same time the cause is brought before the court.

The file number and the title of your case should be shown in the upper right corner of your letter to the clerk's office. All correspondence should be directed to the above address pursuant to Circuit Rule 25-1.