JEFFREY B. MARGULIES, BAR NO. 126002
jeff.margulies@nortonrosefulbright.com
STEPHANIE A. STROUP, BAR NO. 235071
stephanie.stroup@nortonrosefulbright.com
MATTHEW M. GURVITZ, BAR NO. 272895
matthew.gurvitz@nortonrosefulbright.com
**FULBRIGHT & JAWORSKI LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

Attorneys for Defendants
STANDARD HOMEOPATHIC COMPANY
and HYLAND'S, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| KIM ALLEN, DANIELE XENOS, ROGER HUTCHINSON, MELISSA NIGH, SHERRELL SMITH, YUANKE XU, DIANA SISTI, and NANCY RODRIGUEZ on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HYLAND'S INC., a California Corporation; and STANDARD HOMEOPATHIC COMPANY,<br><br>Defendants. | Case No. 12-CV-1150 DMG (MANx)<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |

## **TABLE OF CONTENTS**

**Page(s)**

I. PLAINTIFFS HAVE FAILED TO ESTABLISH STANDING ...................... 1

II. DAMAGES CANNOT BE ESTABLISHED ON A CLASS-WIDE BASIS .................................................................................................................. 2

    A. Plaintiffs' Full Refund Model Fails to Account for Value Consumers Received ................................................................................ 2

    B. Plaintiffs' Untimely Premium Pricing Model is Fundamentally Flawed And Does Not Satisfy Comcast ................................................. 4

        1. Plaintiffs' Late Expert Testimony Should be Rejected .............. 4

        2. Courts Have Routinely Rejected The Premium Pricing Analysis ....................................................................................... 7

        3. Dr. Krosnick's Premium Price Damages Model is Insufficient .................................................................................. 9

        4. Plaintiffs Fail to Tether Their Damages Model to All Claims Alleged in the Third Amended Complaint .................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re: Asbestos Products Liab. Litig.*,
   289 F.R.D 424 (E.D. Penn. Apr. 3, 2013) .................................................................. 6

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ............................................................ 7, 8

*Beller ex rel. Beller v. United States*,
   221 F.R.D. 696 (D. NM 2003) ................................................................................ 6

*Brazil v. Dole Packaged Foods, LLC*,
   2014 WL 2466559 (N.D. Cal. May 30, 2014) ............................................... 3, 8, 9

*Comcast v. Behrend*,
   133 S. Ct. 1426 (2013) ............................................................................. 1, 4, 6, 10

*Evans v. Linden Research, Inc.*,
   2012 WL 5877579 (N.D. Cal. Nov. 20, 2012) ........................................................ 1

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. July 1, 2013) ........................................................... 8

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ................................................................................... 1

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) .................................................... 3, 7

*Keener v. United States*,
   181 F.R.D. 639 (D. MT 1998) ................................................................................ 6

*Khoday v. Townsend*,
   2014 U.S. Dist. LEXIS 43315 (D. MN. Mar. 31, 2014) ........................................ 3

*Lanovaz v. Twinnings North Am., Inc.*,
   2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ........................................................ 7

*Lujan v. Nat'l Wildlife Fed'n.*,
   497 U.S. 871 (1990) ................................................................................................ 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*,
   145 F.3d 320 (5th Cir. 1998) .................................................................................. 6

*Ojo v. Farmers Group, Inc.*,
   565 F.3d 1175 (9th Cir. 2009) ................................................................................. 6

*In re Pom Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................................... 3, 7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................... 1

**Rules and Statutes**

Rule 26(e) ....................................................................................................................... 6

## I. **PLAINTIFFS HAVE FAILED TO ESTABLISH STANDING.**

Plaintiffs bear the burden of demonstrating Article III standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "To establish standing to seek class-wide relief for fraud-based Unfair Competition Law claims, the named plaintiffs must prove 'actual reliance' on the misleading statements." *Gutierrez v. Wells Fargo Bank, NA,* 704 F.3d 712, 728 (9th Cir. 2012). At the class certification stage, this showing must be made "through evidentiary proof." *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see also Evans v. Linden Research, Inc.*, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) ("Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class].").

In its June 20, 2014 Order, the Court requested briefing on "whether any of the named plaintiffs actually relied on the allegedly misleading statements at issue in this case." (Dkt. 282 at 2). Plaintiffs do not provide evidence that they actually relied on the alleged misrepresentations, but merely cite to their Third Amended Complaint and Reply in Support of Motion For Leave to File Third Amended Complaint. (Plaintiffs' Supplemental Brief, Dkt. No. 283, at 1-2).[1] The only evidence plaintiffs reference is a handful of deposition citations that arguably establish reliance by some plaintiffs on some of the statements on the product packaging, including that a few (not all) of the products are natural. Indeed, plaintiffs have not introduced any evidence of representations relied on for the following products: Defend Cold & Cough, Leg Cramps with Quinine, Colic

---

[1] Plaintiffs include a footnote identifying prior briefing and rulings on standing – but this also does not satisfy the Court's request for proof of reliance. (Dkt. No. 283, at p. 1, n.1). Plaintiffs' August 2013 briefing on standing relates to Hyland's challenge to plaintiffs' standing to seek injunctive relief, not on the issue of standing to seek class-wide relief for fraud-based claims. (*See* Dkt. Nos. 224 & 229). And the Court's decisions on Hyland's motions to dismiss (Dkt. Nos. 59 & 80) merely stated that the plaintiffs had sufficiently ***alleged*** (not demonstrated) standing and injury. (*See* Dkt. No 59, at 4 and No. 80, at 2).

Tablets, Poison Ivy/Oak Tablets and ClearAc. Moreover, it is unclear from the excerpted testimony which representations plaintiffs relied upon and for which products. For example, Melissa Nigh testifies about her general belief that homeopathic products are natural. (Dkt. No. 192-16, at 80). This limited portion of deposition testimony does not establish that Ms. Nigh relied on the "100% Natural" claims on each of the 12 products at issue in this litigation, particularly for those that she did not purchase. Additionally, plaintiffs cite deposition testimony from Daniele Xenos in which she testified that she primarily relied on recommendations from other moms, not the product packaging, when purchasing Hyland's Teething Tablets. (*Id.* at 46). As outlined more thoroughly in the Chart of Plaintiffs' Evidence of Reliance, attached as Exhibit A to the Declaration of Matthew Gurvitz ("Gurvitz Decl."), the evidence plaintiffs identify as supporting reliance on the challenged representations is slim to non-existent and requires that claims for almost half of the products in this case be dismissed. Therefore, based on the evidence before the Court, plaintiffs have failed their burden to establish standing to pursue class-wide relief under the UCL for the representations alleged in the TAC.

## II.     DAMAGES CANNOT BE ESTABLISHED ON A CLASS-WIDE BASIS.

### A.     Plaintiffs' Full Refund Model Fails to Account for Value Consumers Received.

As discussed in Hyland's previous briefing, plaintiffs' full refund damages model is insufficient because it (1) lacks evidence of the actual price consumers paid for the identified products; (2) impermissibly relies on Hyland's sales figures rather than retail sales; (3) fails to account for units sold to retailers that were not sold to consumers; and (4) inaccurately calculates Hyland's "profits" with respect to the identified products. (Dkt. No. 229, at pp. 6-7).

Even assuming plaintiffs establish that the products are no better than placebos, the full refund model fails to account for the benefit that consumers do obtain from the products. (Expert Report of Michael Buchanan ("Buchanan

Report"), ¶¶ 16-19, Ex. B to Gurvitz Decl.). Full refund damages are not awarded when consumers have experienced a benefit from using a product. *See, e.g., In re Pom Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) ("Plaintiffs do not cite, nor is the court aware of, any authority for the proposition that a plaintiff seeking restitution may retain some unexpected boon, yet obtain the windfall of a full refund and profit from a restitutionary award."); *see also Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *19, n.36 (N.D. Cal. June 13, 2014) (a full refund "is not a proper measure of restitution, as it fails to take into account the value class members received by purchasing the products," even though the expert was "operating under the assumption that the misbranded or challenged products are worthless from a legal standpoint."). Even the opinion in *Brazil*, upon which plaintiffs rely, rejects the full purchase price model because "consumers received benefits in the form of calories, nutrition, vitamins, and minerals." *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014).

A majority of Hyland's customers are satisfied with Hyland's products and specifically seek out these products because they are homeopathically prepared. (Buchanan Report, ¶¶ 16-19; *see also* Declaration of Matthew Gurvitz in Support of Opposition to Class Certification, Dkt. No. 78-22, Exs. O-X; Declaration of David Stewart in Support of Opposition to Class Certification, Dkt. No. 78-13). As plaintiffs' experts have acknowledged, the placebo effect is a real phenomenon, resulting in individuals achieving health benefits. (*See, e.g.,* Declaration of Noel Rose, at 6:23-7:5, Ex. D to Gurvitz Decl.). Even crediting plaintiffs' claims that the products are no more effective than placebo, class members who have experienced relief from the medicines received the benefit of the placebo and were not damaged from any alleged misrepresentation. *See Pom Wonderful*, 2014 WL 1225184, at *3; *see also Khoday v. Townsend*, 2014 U.S. Dist. LEXIS 43315, at *104 (D. MN. Mar. 31, 2014) (rejecting full refund model because consumers may have valued piece of mind in purchasing the product).

### B.     **Plaintiffs' Untimely Premium Pricing Model is Fundamentally Flawed And Does Not Satisfy *Comcast*.**

#### 1.     *Plaintiffs' Late Expert Testimony Should be Rejected.*

Plaintiffs designated their damages expert, William Ackerman, on May 5, 2014. Mr. Ackerman's expert report discussed only the proposed full refund model. Now, more than two years after the initial class certification briefing, almost a year after submitting supplemental briefing on *Comcast* and a proposed damages model, and months after the deadline to exchange initial expert and rebuttal expert reports, plaintiffs propose a new premium price damages model.

Under the new premium pricing theory, Dr. Krosnick proposes to conduct a conjoint analysis, which will show two sets of survey participants a single Hyland's product, one with the "100% Natural" claim and one without. (Supp. Memo., at 8-9; Dr. Jon A Krosnick Report, Dkt No. 283-2, ("Krosnick Report"), ¶¶ 38-42). Dr. Krosnick claims that this model compares the Hyland's product to itself in a simulated market condition. (Krosnick Report, ¶¶ 38-43). Dr. Krosnick has failed to identify any of the specific design elements of the survey, making an evaluation very difficult. (Declaration of David Stewart ("Stewart Decl."), ¶ 14). Plaintiffs initially proposed a full refund damages model on August 23, 2013. (Dkt. Nos. 224, & 224-2). They represented this model as the measure of damages in this case, and there was no provision made for any "price premium" paid based on "all natural" representations or other representations not tied to product effectiveness. (*Id.*) A premium pricing analysis was also absent from the damages model plaintiffs proposed during expert discovery,[2] not to mention the fact that Charlene

---

[2] Initial expert disclosure occurred on May 5, 2014. (Gurvitz Decl., at ¶ 6). Plaintiffs designated Dr. Jon Krosnick and Mr. William Ackerman as expert witnesses, producing a second report from Dr. Krosnick and a report from Mr. Ackerman. (*Id.*). Dr. Krosnick's initial expert report focused on a Hyland's survey regarding factors driving purchasing decisions. His second expert report discussed a clinical trial of the efficacy of Hyland's Teething Tablets. Neither Dr. Krosnick nor Mr. Ackerman discussed a premium pricing damages model in their reports. (*Id.*). On June 9, 2014, the parties exchanged rebuttal expert witness designations,

Podlipna was never disclosed as an expert. (*See* Expert Report of William Ackerman, Ex. C to Gurvitz Decl.). In response to discovery specifically directed at plaintiffs' proposed damages model, plaintiffs simply cited their supplemental memorandum of points and authorities in support of motion for class certification, which only raised a full purchase price model. (Gurvitz Decl., Ex. E, at Special Interrogatory No. 184). Plaintiffs never addressed this damages analysis until the Court asked them to identify a damages theory that applies to claims not relating to effectiveness. Moreover, the Krosnick and Podlipna reports don't even provide a damages calculation (as does Ackerman's report suggesting the full refund model); they simply propose a method by which they assert that damages ***may*** be measured. They have not performed this analysis, and have no idea whether it would actually demonstrate that consumers paid a premium because of the "all natural" or other representations.

      Plaintiffs assert that they don't need to calculate damages at the class certification stage (Supp. Memo., at 6), but this case is far past the class certification stage. Experts have been disclosed, and the only outstanding question is whether, and to what extent, the Court's ruling on class certification will render any of the proposed expert testimony unnecessary. There is simply no order in this case allowing any party to reserve designating experts and producing their reports until after the court rules on class certification. The need for an expert to support all of plaintiffs' damages theories should not have come as a surprise; plaintiffs have claimed that Hyland's products are falsely labeled as "100% Natural" since they filed their second amended complaint more than two years ago. (*See, e.g.,*

---

in which plaintiffs produced a Third Report from Dr. Krosnick. (*Id.* at ¶ 7). While this report discusses a study proposal to determine the definition of the term "natural," the report is clear that the study is intended to determine whether variations in information that influence consumers' purchase decisions and it is not connected with, nor does it propose, any damages model. (*Id.*).

Plaintiffs' Reply in Support of Motion for Leave to File Third Amended Complaint, Dkt. No. 192, at pp. 16-17). Plaintiffs submitted their "Natural Claims Chart" as evidence in support of this supplemental briefing (Dkt. No. 283-1); a chart that was originally produced on **February 22, 2013**. And the parties specifically briefed damages in light of *Comcast* in their supplemental briefing on class certification.

Because plaintiffs have never introduced this theory of damages before, the court has the discretion to disregard late-filed factual matters. *See Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 894-895 (1990). It is well established that it is "generally improper for the moving party to . . . introduce new facts or different legal arguments in the reply brief [beyond] . . . [that which were] presented in the moving papers." *Ojo v. Farmers Group, Inc.*, 565 F.3d 1175, 1186, n. 12 (9th Cir. 2009), quoting Federal Civil Procedure Before Trial § 12:107 (The Rutter Group 2005). A party may also not designate a new expert or supplement an expert report with new opinions after the disclosure deadline. *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998); *see also Keener v. United States*, 181 F.R.D. 639, 642 (D. MT 1998). A supplemental expert report is limited to correcting inaccuracies or adding information that was unavailable to the expert at the time of the initial report, not to deepen or strengthen existing opinions. *In re: Asbestos Products Liab. Litig.*, 289 F.R.D 424, 425 (E.D. Penn. Apr. 3, 2013); *see also Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701–702 (D. NM 2003) (Rule 26(e) does not give license to "sandbag" an opponent with claims and issues that should have been included in the original expert report).

Dr. Krosnick's now ***fourth*** report submitted in connection with this latest briefing is an impermissible "supplemental" expert report produced after expert disclosures that raises a new theory of damages. Dr. Krosnick's report does not correct inaccuracies in any of his first three reports nor does it discuss information that was unavailable to him at the time of his initial report. *See In re: Asbestos Products Liab. Litig.*, 289 F.R.D at 425. Dr. Krosnick's "fourth" expert report was

created solely because the Court identified the fact that plaintiffs' damages theory was insufficient, and has now introduced an untested theory of recovery that has never been disclosed by plaintiffs. This report does not qualify as a proper supplemental expert report and should not be considered in connection with plaintiffs' motion for class certification.

### 2. Courts Have Routinely Rejected The Premium Pricing Analysis

Even if plaintiffs' belated premium pricing damages model is admissible, it is substantially similar to the models rejected in the cases cited by the Court and must be rejected. Each of the cases cited by the Court (and plaintiffs) reject the proposed premium price damages model, including rejection of conjoint analyses comparing different product attributes. *See, e.g., In re Pom Wonderful LLC*, 2014 WL 1225184, at *5 ("expert did not answer the critical question why that price difference existed, or to what extent it was a result of Pom's actions."); *Jones*, 2014 WL 2702726, at *21 (rejected the proposed premium price model because plaintiffs could "point to no accurate way to determine what class members actually paid"); *Lanovaz v. Twinings North Am., Inc.*, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) (damages model requires the production of evidence that attaches a dollar value to the consumer impact or advantage cause by the unlawful business practices). Indeed, plaintiffs have not provided a single citation supporting the use of the premium pricing damage model they now propose.

In *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014), the court rejected plaintiff's premium price model because plaintiff was required to present evidence showing how much higher the price of the product would be with the alleged misrepresentation compared to the price without the misrepresentation. *Id.* at *12. Plaintiffs did not present any evidence demonstrating that consumers would be willing to pay a premium for "all natural" ice cream. *Id.* Because defendants do not sell their products at retail,

"[e]stablishing a higher price for a comparable product would be difficult because prices in the retail market differ and are affected by the nature and location of the outlet in which they are sold." *Id.*

In *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857 (C.D. Cal. July 1, 2013), the court rejected the proposed premium price model because "evidence of impact on the consumer market is needed to satisfy plaintiffs' burden of demonstrating the predominance of common questions." *Id.* at * 16. "Without any evidence affirmatively demonstrating that the true market price of [the product] can be calculated on a classwide basis, plaintiffs' claim that there is a classwide method of granting relief is factually unsupported." *Id.* In *Brazil*, 2014 WL 2466559, the court rejected the model because plaintiff's own deposition testimony cast doubt on the premium pricing model, as he attributed several factors other than deceptive label statements, such as brand loyalty or quality differences between brand and generic products, to the higher prices of the identified Dole products. *Id.* at *16. Brazil also acknowledged that he had brand loyalty to Dole, that he still might buy Dole products even after discovering the alleged misrepresentations, and that, for him, price was not an important factor. *Id.* The court ultimately did adopt a proposed regression model, based on the fact that it compared sales data from identical products, one set before the representation was added to the product labeling and one set after the alleged misrepresentation was added, but rejected the premium pricing model. *Id.* at *17.

Plaintiffs argue that their late-filed premium pricing model is similar to the regression model approved in *Brazil*. However, the *Brazil* regression model is quite different because it examined "sales of the identified product before and after [the defendant] placed the alleged misrepresentations on its product labels," using historical sales information, and then controlled for other facts using the model. *Brazil*, 2014 WL 2466559, at *17. Unlike in *Brazil*, Dr. Krosnick attempts to compare the identified products to hypothetical products that were never sold, and

does not rely upon actual data such as the historical sales data that led the *Brazil* court to accept the regression model. Plaintiffs' premium pricing model is more similar to the premium price model rejected in *Brazil*, as the price differential it proposes to identify (based on hypothetical data that is not verified in a real world setting) is assumed to be 100% attributable to the difference in labeling products natural vs. non-natural, as opposed to taking into account other variables, or even examining historic sales figures of the same products to see what impact the challenged representations made when added. *See id*. at *16-17. On this basis, Dr. Krosnick's model must similarly be rejected.

### 3. Dr. Krosnick's Premium Price Damages Model is Insufficient

The methodology proposed by Dr. Krosnick is unsound and will not determine whether there is a premium attached to Hyland's "100% Natural" claims, or what the value of any premium is. In theory, a conjoint analysis can be used to determine the relative value of a product attribute or feature. (Stewart Decl., ¶ 15). Conjoint results are very sensitive to context and can widely vary depending on which features are included, which competitive alternatives are used and how those features and alternatives are defined. (Stewart Decl., ¶ 17-18). Leaving out one very important characteristic is sufficient to invalidate the results. (Stewart Decl., ¶ 17). Conjoint can be very useful in reducing a set of large alternatives to a small number of "better" alternatives, but it is not a very accurate forecasting and has been widely criticized when used to establish price points. (Stewart Decl., ¶ 15).

Dr. Krosnick proposes to evaluate consumers' preference to "natural" versus "artificial, chemical." Since there is no accepted definition for "natural" ingredients in drugs, consumers differ on how they interpret the term, and that interpretation is independent of information on the product packaging. (Stewart Decl., ¶ 19). For example, if a consumer assumes that the absence of a natural claim on a product implies artificial or chemical ingredients, the importance of the term "natural" would likely be inflated. (Stewart Decl., ¶ 19). As in *Brazil*, the method also fails

to account for other reasons consumers purchase Hyland's products, such as brand loyalty, consumers that specifically seek out homeopathic products, or consumers that are not willing to pay more for a pharmaceutical or prescription drug. (Stewart Decl., ¶ 17; *see also* Hyland's Brand Awareness Study, Dkt. No. 78-5). Finally, even if Dr. Krosnick were able to obtain statistically significant results, it is not evidence of practical significance. (Stewart Decl., ¶ 23). Dr. Krosnick's Premium Pricing Model is, therefore, not sufficient to determine the premium consumers would pay for the "100% Natural" claims. (Stewart Decl., ¶ 25).

### 4. *Plaintiffs Fail to Tether Their Damages Model to All Claims Alleged in the Third Amended Complaint*

Plaintiffs focus on Hyland's "100% Natural" claims because that is the specific example the Court identified. However, *Comcast* requires that a damages model be tethered to all theories of liability. 133 S. Ct. at 1432-33. Putting aside the question of their sufficiency, while plaintiffs have tethered their damages models to Hyland's efficacy claims (full refund model) and "100% Natural" claims (premium price model), they have failed to address how these models apply to their other theories of liability. For example, plaintiffs allege that: (1) Hyland's products violate Federal Food and Drug Administration regulations regarding Good Manufacturing Practices (TAC, at ¶ 194); (2) Hyland's products are misbranded under Federal and California law (*Id.* at ¶ 198); (3) Hyland's products are unsafe (*see, e.g., id.* at ¶ 263(e) (identifying "safe for adults and children" as false and misleading) or toxic (plaintiffs' Natural Claims Chart, Dkt. No. 283-1, at p. 10 (claiming glonoinum is toxic)); and (4) the representation "Quick Dissolving Tablets" is false and misleading (*See, e.g.,* TAC, at ¶ 73). None of these claims have anything to do with efficacy or naturalness. Plaintiffs have not shown how they proposed to demonstrate class-wide damages on any of these theories of liability. They have, accordingly, failed to meet their burden under *Comcast* to demonstrate that a class may be certified on any of these claims.

| | | |
|---|---|---|
| 1 | Dated: July 21, 2014 | JEFFREY B. MARGULIES |
| 2 | | STEPHANIE A. STROUP |
| | | MATTHEW M. GURVITZ |
| 3 | | **FULBRIGHT & JAWORSKI LLP** |

                          /s/ Matthew M. Gurvitz
                          MATTHEW M. GURVITZ
                          Attorneys for Defendants
                          STANDARD HOMEOPATHIC
                          COMPANY and HYLAND'S, INC.