1  **LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (175650)
2  *ron@consumersadvocates.com*
SKYE RESENDES (278511)
3  *skye@consumersadvocates.com*
651 Arroyo Drive
4  San Diego, California 92103
Telephone: (619) 696-9006
5  Facsimile: (619) 564-6665

6  **KREINDLER & KREINDLER, LLP**
GRETCHEN M. NELSON (112566)
7  *gnelson@kreindler.com*
707 Wilshire Boulevard, Suite 3600
8  Los Angeles, California 90017
Telephone: (213) 622-6469
9  Facsimile: (213) 622-6019

10  **GOMEZ TRIAL ATTORNEYS**
JOHN H. GOMEZ (171485)
11  *jgomez@gomeztrialattorneys.com*
DEBORAH S. DIXON (248965)
12  *ddixon@gomeztrialattorneys.com*
655 W. Broadway Suite 1700
13  San Diego, California 92101
Telephone: (619) 237-3490
14  Facsimile: (619) 237-3496

15  *Class Counsel*

16              **UNITED STATES DISTRICT COURT**

17             **CENTRAL DISTRICT OF CALIFORNIA**

18                   **WESTERN DIVISION**

19
KIM ALLEN, et al., on behalf of      Case No: 12-cv-1150-DMG-MAN
20  themselves, all others similarly     CLASS ACTION
situated and the general public,
21                                         **PLAINTIFFS' POST-TRIAL BRIEF**
22          Plaintiffs,                  **REGARDING EQUITABLE CLAIMS**

23      v.                              Judge:     Honorable Dolly M. Gee
24  HYLAND'S, INC., et al.,             Trial Date: September 1, 2015

25          Defendants.

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND OVERVIEW OF ISSUES ..................................... 2

II.    THE JURY'S VERDICT ON THE CLRA AND WARRANTY CLAIMS ... 3

    A.  The Legal Standards as to Mixed Legal and Equitable Claims ............... 3

    B.  Plaintiffs' Warranty and CLRA Claims .................................................... 6

    C.  A Short Primer on Grammar and the Difference Between "Cannot" and "Do Not" ................................................................................................. 9

III.   THIS COURT CAN INDEPENDENTLY DETERMINE WHETHER DEFENDANTS' PRODUCT REPRESENTATIONS VIOLATE THE UCL ................................................................................................ 14

    A.  The Jury's Implicit Factual Findings are not Dispositive of Plaintiffs' UCL and FAL Claims ................................................................................................. 14

    B.  The Seventh Amendment Does Not Preclude a Finding in Plaintiffs' Favor on the UCL and FAL Claims ................................................................. 22

IV.   CONCLUSION ......................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Apodaca v. Costco Wholesale Corp.*
   Case No. 12-cv-5664 DSF 2014 WL 2533427  6
   (C.D. Cal. June 5, 2014)......................................................................24

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*
   472 U.S. 585 (1985) ...........................................................................6

*Beacon Theaters, Inc. v. Westover*
   359 U.S. 500 (1959) ...........................................................................4

*Block v. eBay, Inc.*
   747 F.3d 1135 (9th Cir. 2014)............................................................18

*Bradstreet v. Wong*
   161 Cal.App.4th 1440 (2008).............................................................15

*Brockey v. Moore*
   107 Cal.App.4th 86 (2003).................................................................17

*Calnetics Corp. v. Volkswagen of America, Inc.*
   532 F.2d 674 (9th Cir.) ......................................................................4

*Camacho v. Automobile Club of Southern California*
   142 Cal.App.4th 1394 (2006).............................................................16

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
   20 Cal.4th 163 (1999) ...................................................................15, 16

*Clem v. Comelli*
   556 F.3d 1177 (9th Cir. 2009)............................................................13

*Consumer Union of U.S., Inc. v. Alta-Dena Certified Dairy*
   4 Cal.App.4th 963 (1992)...................................................................17

*Cooper v. City of Fargo*
   184 F3d 994 (8th Cir. 1999)...............................................................3

**TABLE OF AUTHORITIES CON'T**

Page(s)

<u>Cases</u>

*Dairy Queen, Inc. v. Wood*
    369 U.S. 469 (1962) ........................................................................ 4

*Dang v. Cross*
    422 F.3d 800 (9th Cir. 2005) .......................................................... 13

*Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*
    890 F.2d 165 (9th Cir. 1989) ............................................................ 4

*Echostar Satellite Corp. v. NDS Group PLC*
    Case No. SA 03-cv-0950 DOC 2008 WL 4596644  4
    (C.D. Cal. Oct. 15, 2008) ............................................................... 25

*El-Hakem v. BJY, Inc.*
    415 F.3d 1068 (9th Cir. 2005) .......................................................... 5

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*
    742 F3d 377 (9th Cir. 2014) ............................................................. 3

*Ford Motor Co. v. Dallas Power & Light Co.*
    499 F2d 400 (5th Cir. 1974) ............................................................ 13

*Fowler v. Land Management Groupe, Inc.*
    978 F.2d 158 (4th Cir. 1992) ........................................................... 24

*F.T.C. v. Pantron I Corp.*
    33 F.3d 1088 (9th Cir. 1994) ...................................................... 13, 22

*Gregory v. Albertson's, Inc.*
    104 Cal.App.4th 845 (2002) ............................................................ 16

*Harriss v. Pan American World Airways, Inc.*
    74 F.R.D. 24 (N.D. Cal. 1977) ........................................................ 10

# TABLE OF AUTHORITIES CON'T

**Page(s)**

<u>Cases</u>

*Head v. Glacier Northwest, Inc.*
   413 F.3d 1053 (9th Cir. 2005).........................................................................21

*Hodge v. Sup. Ct.*
   145 Cal.App.4th 278 (2006).....................................................................15, 23

*In re Clorox Consumer Litig.*
   894 F.Supp.2d 1224 (N.D. Cal. 2012) .........................................................18

*In re Ferrero Litig.*
   794 F. Supp. 2d 1107 (S.D. Cal. 2011)...................................................17, 22

*In re Genentech, Inc. Sec. Litig.*
   1990 WL 120641  2  (N.D. Cal. June 8, 1990) .............................................10

*In re Lone Star Industries, Inc. Concrete Railroad Cross Ties Litig.*
   882 F.Supp. 482 (1995).................................................................................24

*In re Tobacco II Cases*
   (2009) 46 Cal.4th 298 (2009)..............................................................*passim*

*In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*
   865 F.Supp.2d 1002 (C.D. Cal. 2011) .........................................................22

*Irwin v. Mascott*
   96 F. Supp. 2d 968 (N.D. Cal. 1999) ...........................................................11

*Johns v. Bayer Corp.*
   280 F.R.D. 551 (S.D. Cal. 2012)..................................................................18

*Kasky v. Nike, Inc.*
   27 Cal.4th 939 (2002) ...................................................................................18

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009)......................................................................15

# TABLE OF AUTHORITIES CON'T

Page(s)

## Cases

*L.A. Police Protective League v. Gates*
995 F.2d 1496 (9th Cir. 1993)........................................................................ 4, 23

*Lavie v. Procter & Gamble Co.*
105 Cal.App.4th 496 (2003)............................................................................ 18

*L.G. Electronics U.S.A., Inc. v. Whirlpool Corp.*
790 F.Supp.2d 708 (N.D. Ill. 2011) ................................................................ 5

*Lozano v. AT & T Wireless Servs., Inc.*
504 F.3d 718 (9th Cir. 2007)........................................................................... 17

*McKell v. Washington Mutual, Inc.*
142 Cal.App.4th 1457 (2006)..................................................................... 15, 22

*Miller v. Fairchild Indus.*
885 F.2d 498 (9th Cir. 1989)........................................................................ 4, 23

*Molski v. M.J. Cable, Inc.*
481 F.3d 724 (9th Cir. 2007)............................................................................. 3

*Morgan v. AT & T Wireless Servs., Inc.*
177 Cal.App.4th 1235 (2009).......................................................................... 17

*Motors, Inc. v. Times Mirror Co.*
102 Cal.App.3d 735 (1980)............................................................................. 16

*Murphy v. City of Long Beach*
914 F.2d 183 (9th Cir. 1990)............................................................................. 3

*Netlist, Inc. v. Diablo Technologies Inc.*
Case No. 13-cv-5962 YGR, 2015 WL 1887261 3
(N.D. Cal. April 24, 2015)............................................................................... 24

# TABLE OF AUTHORITIES CON'T

**Page(s)**

<u>Cases</u>

*Newell Companies, Inc. v. Kenney Mfg. Co.*
  864 F.2d 757 (Fed. Cir. 1988)..................................................................5

*Parker v. Randolph*
  442 U.S. 62 (1979) ...................................................................................6

*Pastoria v. Nationwide Ins.*
  112 Cal.App.4th 1490 (2003)..................................................................16

*People v. Casa Blanca Convalescent Homes, Inc.*
  159 Cal.App.3d 509 (1984)......................................................................16

*People v. Toomey*
  157 Cal.App.3d 1 (1984).........................................................................23

*Perdoni Brothers, Inc. v. Concrete Systems, Inc.*
  35 F.3d 1 (1994).....................................................................................24

*Porter v. Natsios*
  414 F.3d 13 (D.C. Civ. 2005)....................................................................5

*Resort Car Rental System, Inc. v. Federal Trade Com.*
  518 F.2d 962 (9th Cir. 1975)....................................................................17

*Rosales v. El Rancho Farms, No.*
  2013 WL 1222064  3  (E.D. Cal. Mar. 25, 2013) ....................................11

*Ross v. Bernhard*
  396 U.S. 531 (1970).................................................................................4

*Sanders v. City of Newport*
  657 F.3d 772 (9th Cir. 2011)....................................................................13

*Schnall v. Hertz Corp.*
  78 Cal.App.4th 1144 (2000)....................................................................16

# TABLE OF AUTHORITIES CON'T

**Page(s)**

<u>Cases</u>

*Schulein v. Petroleum Dev. Corp.*
2014 WL 114520 3  (C.D. Cal. Jan. 6, 2014) ............................................... 11

*Shahinian v. Kimberly-Clark Corp.*
Slip Op. Case No. CV14-8390 DMG
2015 U.S. Dist. LEXIS 92782 (C.D. Cal. July 10, 2015)............................... 3

*Simmons v. City of Philadelphia*
947 F.2d 1042 (3rd Cir. 1991) ......................................................................... 4

*Smith v. State Farm Mutual Automobile Ins. Co.*
93 Cal.App.4th 700 (2001)............................................................................ 16

*State Farm Fire & Casualty Co. v. Superior Court*
45 Cal.App.4th 1093 ...................................................................................... 16

*Stearns v. Ticketmaster Corp.*
655 F.3d 1013 (9th Cir. 2011).................................................................. 10, 18

*Toner ex rel. Toner v. Lederle Labs.*
828 F.2d 510 (9th Cir. 1987)........................................................................... 5

*Turyna v. Martam Const. Co. Inc.*
83 F.3d 178 (7th Cir. 1996)............................................................................. 4

*United States v. Calabrese*
Case No. 02-CR-1050-10  2007 WL 3037124  1
(N.D. Ill. Oct. 17, 2007) ................................................................................. 5

*United States v. Etimani*
328 F.3d 493 (9th Cir. 2003)........................................................................... 5

*United States v. First Nat'l Bank of Circle*
652 F.2d 882 (9th Cir. 1981)........................................................................... 6

# TABLE OF AUTHORITIES CON'T

Page(s)

<u>Cases</u>

*Wallace Motor Sales, Inc. v. American Motors Sales Corp.*
 780 F.2d 1049 (1st Cir. 1985) ................................................. 3, 23

*Williams v. Gerber Prods. Co.*
 552 F.3d 934 (9th Cir. 2008) ........................................................ 18

*Wolfe v. State Farm Fire & Casualty Ins. Co.*
 46 Cal.App.4th 554 (1996) .......................................................... 16

*Zhang v. American Gem Seafoods, Inc.*
 339 F.3d 1020 (9th Cir. 2003) ....................................................... 4

*Zivkovic v. So. Cal Edison Co.*
 302 F.3d 1080 (9th Cir. 2002) ....................................................... 6

## <u>Rules and Statutes</u>

U.S. Const. amend. VII ................................................................. 4

15 U.S.C. § 45(n) (Federal Trade Commission Act) ........................ 16, 23

Fed. Rule Civ. Proc. 16(d) ............................................................. 6

Fed. Rule Civ. Proc. 23(a) ........................................................ 10, 11

Fed. Rule Civ. Proc. 50 ................................................................. 3

Fed. Rule Civ. Proc. 59(d) ............................................................. 3

Fed. Rule Civ. Proc. 59(e) ............................................................. 3

California Bus. & Prof. Code § 17200, *et seq.*
(Unfair Competition Law ("UCL")) .......................................... *passim*

California Civ. Code §17500 (False Advertising Law ("FLA")) .......... *passim*

Mass. Gen.Laws Ann. 93A and 93B (Little FTC Act) ........................................... 23

*Kim Allen et al v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
PLAINTIFFS' POST-TRIAL BRIEF REGARDING EQUITABLE CLAIMS

Plaintiffs respectfully submit this Post-Trial Brief with respect to their claims for violation of the Unfair Competition Law (the "UCL"), California Business & Professions Code section 17200, and California's False Advertising Law (the "FAL"), California Business & Professions Code section 17500, which claims are to be decided by the Court.[1]

Plaintiffs are filing concurrently herewith their [Proposed] Findings of Fact and Conclusion of Law in which they identify the facts and supporting evidence that demonstrate that Plaintiffs have established by a preponderance of the evidence that Defendants' product statements are false, misleading, deceptive and/or unfair and violate the UCL and FAL.

## I.    INTRODUCTION AND OVERVIEW OF ISSUES

As this Court is well aware, the jury decided the Consumer Legal Remedies Act ("CLRA"), Breach of Express Warranty and Magnuson Moss Warranty Act ("MMWA") claims.  The issue to now be decided is whether Plaintiffs met their burden of presenting evidence that shows by a preponderance of the evidence that Defendants' conduct breached the UCL and FAL.

Plaintiffs show below that the Court can and should find for Plaintiffs on the UCL and FAL claims for, at least, the following reasons:

*First,* this Court is not bound by the factual findings implicit in the jury's verdict because Plaintiffs' UCL and FAL claims are materially different and the Court's factual findings necessary to support those claims do not conflict with the jury's finding;

*Second,* unlike the contested instruction given to the jury that imposed on Plaintiffs the burden of proving that Defendants' products "cannot" work, this

---

[1] Plaintiffs took note of the Court's suggestion that the parties undertake efforts to resolve the case prior to this Court's ruling.  Efforts to engage in settlement discussions were unsuccessful.

2

*Kim Allen et al. v. Hyland's, Inc. et al.*, Case No. 12-cv-1150
PLAINTIFFS' POST-TRIAL BRIEF REGARDING EQUITABLE CLAIMS

1    Court is not required to determine the products "cannot" work in deciding the UCL

2    and FAL claims;

3         *Third,* the evidence adduced at trial is more than sufficient to meet Plaintiffs'

4    burden of proving that Defendants violated the UCL and FAL by engaging in

5    conduct that was actually false or unfair and deceptive; and

6         *Fourth* as an issue of first impression, this Court can determine that a

7    decision as to the UCL and FAL claims can be made independent of any factual

8    finding by the jury, see, e.g., *Wallace Motor Sales, Inc. v. American Motors Sales*

9    *Corp.,* 780 F.2d 1049, 1066-67 (1st Cir. 1985).

10        Moreover, should the Court should find that the verdict is against the clear

11   weight of the evidence (*Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir.

12   2007)), or that an erroneous jury instruction or failure to adequately instruct the

13   jury led to a verdict that cannot stand, (*Murphy v. City of Long Beach,* 914 F.2d

14   183, 187 (9th Cir. 1990)), this Court may grant a new trial on its own motion.  Fed.

15   Rule Civ. Proc. 59(d); *Copper v. City of Fargo,* 184 F.3d 994, 997 (8th Cir. 1999);

16   *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.,* 742 F.3d 377, 390 (9th

17   Cir. 2014).[2]

18   **II.    THE JURY'S VERDICT ON THE CLRA AND WARRANTY
            CLAIMS**
19
         **A. The Legal Standards As To Mixed Legal and Equitable Claims**
20
         The Seventh Amendment to the U.S. Constitution preserves the right to a
21

22   [2] Notwithstanding, Plaintiffs will be filing a new trial motion.  And, Plaintiffs may
     also seek to amend or alter the judgment (Fed.R.Civ.Proc. 59(e)), in part, based on
23   this Court's recent ruling in *Shahinian v. Kimberly-Clark Corp.*, Slip Op. Case No.
     CV14-8390 DMG, 2015 U.S. Dist. LEXIS 92782 (C.D. Cal. July 10, 2015),
24   wherein the Court found that a plaintiff who established Article III standing could
     also seek injunctive relief on behalf of the class without having to allege that "he
25   will willingly subject himself to future injury or that he will be fooled by false
     advertising he knows to be false." (*Id.*, **8-12.)  This ruling by the Court in
26   *Shahinian* is contrary to the Court's earlier ruling in the present case. (Docket No.
27   59, p. 7.)  Plaintiffs may also seek relief under Fed.R.Civ.P. 50.

28                                        3

1  jury trial for legal but not equitable claims.  U.S. Const. amend. VII; *Dollar*

2  *Systems, Inc. v. Avcar Leasing Systems, Inc.,* 890 F.2d 165, 170 (9th Cir. 1989)

3  (where equitable and legal claims involve common factual issues a party is entitled

4  to a trial by jury as to the legal issues); *Beacon Theatres, Inc. v. Westover,* 359

5  U.S. 500, 510-11 (1959) ("only under the most imperative circumstances ... can the

6  right to a jury trial of legal issues be lost through prior determination of equitable

7  claims"); *Ross v. Bernhard,* 396 U.S. 531, 537–38 (1970).

8       Since Plaintiffs' complaint raised both equitable and legal claims, this Court

9  properly had the jury resolve the legal claims prior to deciding the equitable

10  claims. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 479 (1962).[3]  In resolving

11  equitable issues after a jury trial, the court may not disregard a jury's factual

12  findings without impinging on the Seventh Amendment.  See, e.g., *L.A. Police*

13  *Protective League v. Gates,* 995 F.2d 1469, 1473 (9th Cir. 1993).  But that

14  prohibition only applies where legal and equitable claims are based on the same set

15  of facts.  *Id., citing Miller v. Fairchild Indus.,* 885 F.2d 498, 507 (9th Cir. 1989).[4]

16       In the present case, the form of verdict returned by the jury was a general

17  verdict. *Turyna v. Martam Const. Co., Inc.,*  83 F.3d 178, 181 (7th Cir. 1996)

18  ("General verdicts simply ask the jury to answer the question 'who won,' and if the

19  winning party is entitled to a monetary award, to answer the question 'how

20  much'"); *Simmons v. City of Philadelphia,*  947 F.2d 1042, 1057 (3rd Cir.

21  1991); *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1031 (9th Cir.

22  2003) (jury announces only a finding for a particular party on a particular claim

23

24  [3] A "[p]rior non-jury trial of the equitable claims may infringe the right to jury trial on the legal claims because of the collateral estoppel or *res judicata* effect of a prior judicial determination of issues common to the two sets of claims." *Calnetics Corp. v. Volkswagen of America, Inc.,* 532 F.2d 674, 690 (9th Cir.), *cert. denied,* 429 U.S. 940 (1976).

27  [4] But see, *infra* at pp. 22-25 (discussing authority that permits a court to rule independently on the equitable claims without regard to findings by the jury.)

28

4

1   and may announce damages).

2        The opaque nature of a general verdict makes it difficult to determine the

3   basis for the jury's verdict.  For these reasons, in ruling on subsequent equitable

4   claims, the court need only make factual findings that are consistent with the jury's

5   verdict.  *Porter v. Natsios,* 414 F.3d 13, 21 (D.C. Civ. 2005) ("[during the remedial

6   stage of the proceedings, the district court may make factual findings . . . as long as

7   the findings are consistent with the jury verdict").  Factual findings supported by

8   substantial evidence are those that are to be accepted by the Court.  *Newell*

9   *Companies, Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 765 (Fed. Cir. 1988) ("Judges

10  must accept the factual findings, presumed from a favorable jury verdict, which are

11  supported under the substantial evidence/ reasonable juror standard").

12       In the present case, the jury found for Defendants as to the CLRA, MMWA

13  and breach of express warranty claims.  In determining the factual findings implicit

14  in the jury's verdict the court must construe the verdict in light of the elements of

15  the claims, the instructions considered and the evidence that the parties presented

16  to the jury.  *El-Hakem v. BJY, Inc.,* 415 F.3d 1068, 1074 (9th Cir. 2005) ("[T]he

17  court 'must search for a reasonable way to read the verdicts as expressing a

18  coherent view of the case, and the consistency of the jury verdicts must be

19  considered in light of the judge's instructions to the jury'", quoting *Toner ex rel.*

20  *Toner v. Lederle Labs.,* 828 F.2d 510, 512 (9th Cir. 1987)); *cf United States v.*

21  *Etimani,* 328 F.3d 493, 504 (9th Cir. 2003) ("read together, the verdict and the

22  instructions might have shown what the jury necessarily found"); *L.G. Electronics*

23  *U.S.A. INc. v. Whirlpool Corp.,*790 F.Supp.2d 708, 722 (N.D. Ill. 2011) citing *United*

24  *States v. Calabrese,* Case No. 02-CR-1050-10, 2007 WL 3037124, *1 (N.D. Ill.

25  Oct. 17, 2007) ("[a] jury's verdict should be read in light of the way the case was

26  argued and, although this does not always allow a trial judge to reach a clear

27  conclusion about what the jury did, this reading often allows a reliable judgment

28

5

1  about what the verdict meant").

2       In interpreting jury verdicts, we must assume that the jury followed the

3  trial court's instructions. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472

4  U.S. 585, 604 (1985); *see also Parker v. Randolph,* 442 U.S. 62, 75 n. 7 (1979)

5  ("The 'rule'—indeed, the premise upon which the system of jury trials functions

6  under the American judicial system—is that juries can be trusted to follow the

7  trial court's instructions").

8  **B. Plaintiffs' Warranty and CLRA Claims**

9       The Court in its Final Pre-Trial Conference Order ("FPTO") (Doc. No. 382)

10  identified the elements of Plaintiffs' warranty and CLRA claims.  (Docket No. 382,

11  p. 4.)[5]  Ultimately, at the conclusion of the trial, the Court effectively modified the

12  FPTO by instructing the jury as follows on the elements of the warranty claim:

13       Plaintiffs claim that they were harmed by Defendants'

14       homeopathic products because Defendants represented that the

15       products relieve symptoms, but the products were not as represented.

16       To establish this claim, Plaintiffs must prove by a

17       preponderance of the evidence the following:

18       1. Plaintiffs purchased homeopathic products manufactured by Defendants;

19       2. Defendants through their packaging made representations to Plaintiffs

20          that Defendants' homeopathic products would relieve certain symptoms;

21       3. Defendants' homeopathic products did not perform as promised because

22          they cannot perform as promised;

23       4. Plaintiffs were harmed; and

24  [5] The FPTO supersedes the pleadings and controls the course of the litigation

25  unless modified for good cause shown.  Fed.R.Civ.P. 16(d); *Zivkovic v. So. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (citation omitted).  A party may

26  not "offer evidence or advance theories at the trial which are not included in the order or which contradict its terms."  *United States v. First Nat'l Bank of*

27  *Circle,* 652 F.2d 882, 886 (9th Cir.1981) (footnote reference omitted).

28

5. The failure of Defendants' products to perform as represented was a substantial factor in causing Plaintiffs' harm.

(Docket No. 425, p. 35; 09/17/2015 Trial Tr. 19:6-24.)[6]

And, as to the CLRA claim the Court instructed the jury as follows:

Plaintiffs allege Defendants violated provisions of California's Consumer Legal Remedies Act.

To establish this claim, Plaintiffs must prove by a preponderance of the evidence the following:

1. Defendants made representations about benefits of the products on the packaging;

2. The representations were false because the products at issue cannot relieve symptoms as represented;

3. Defendants' representations were material to the reasonable consumer; and

4. Defendants' representations were a substantial factor in causing Plaintiffs' harm.

(Docket No. 425, p. 31; 09/17/2015 Trial Tr. Morning Session, 18:1-12.)

In reaching a determination as to the factual findings implicit in the jury's general verdict, it cannot be credibly disputed that the jury had to find that Plaintiffs purchased Defendants' products and that Defendants made representations through their packaging about the benefits of Defendants' homeopathic products, or that Defendants made representations that the products would relieve certain symptoms. Not only was there no evidence to dispute these facts but, in arguing the case, Defendants made no claim to the contrary. And, as

_____

[6] Although Plaintiffs asserted claims under the MMWA and breach of express warranty, the Court, with the agreement of the parties, combined the instructions into a single instruction and identified them as "Breach of Express Warranty." (09/15/2015 Trial Tr. Morning Session, 165:8-166:3; Docket. No. 425, p. 35.) Further it should be noted that the transcript for 9/17/2015 is inadvertently identified as 9/16/2015. We refer to the correct date for the transcript in this brief.

7

to the instruction that the jury find harm, materiality or causation, Defendants did
not dispute that Plaintiffs paid money for the products nor did Defendants argue
that Plaintiffs individually did not suffer economic harm or that, if there was a
finding of fraud, that the representations were not a substantial causal factor.
(09/17/2015 Trial Tr. Morning Session, 63:9-18; 68:23-69:12.)[7] Rather, the focus
of Defendants' argument was the elevated burden of proof requiring Plaintiffs to
prove the products "cannot" work and whether Defendants committed fraud by
representing that the products were effective.  One need only review, Defendants'
closing argument for clear confirmation of this point:

> The case is very simple. . . . There is really one very important issue
> in this case, and a very simple issue.
>
> Judge Gee instructed you on the law, and in order to find on
> behalf of the plaintiffs, you have to find that the representations on the
> product packaging were false because they cannot – the products
> cannot relieve symptoms.  The products didn't perform as promised
> because they cannot perform as promised.
>
> So your job is to sift through the evidence, the witnesses you've
> heard [] from, the exhibits you've seen, the arguments you've heard
> about and figure out does it answer that question?
>
> ***
>
> And, it's not about whether Hyland's has to prove to you that
> the products work.  That's what they want you to believe, that we
> need to come in and prove the products work.
>
> The law says we don't.  But we dragged in a lot of experts and

---

[7] See also, Docket No. 80 [6/28/2012 Order Denying Defendants' Motion to
Dismiss], p. 2 [holding that a showing of injury was not dependent on a finding
that the products did not alleviate symptoms but rather "Plaintiffs need only show
*economic* injury resulting from Defendants' allegedly false or misleading
advertising"].

8

1    put you through lot of days of testimony. So you say, Why did we do

2    that if we didn't have to prove to you that the products work?

3         We did it to you to show you what the state of the art was in the

4    science, out of respect for you, so that you knew that Hyland's stands

5    by its products and believes in them, and does not believe that selling

6    placebos to injure consumers. Did it out of respect to our customers,

7    because we don't buy into the story that Mr. Gomez told you that

8    we're misleading them.

9         Hyland's stands by its products. That's why we brought all the

10   science in for you. We don't have to prove that homeopathy works.

11   They have to prove the products can't work.

12   (09/17/2015 Trial Tr. Morning Session, 63:9-18; 68:22-69:12.) The sheer weight

13   of the evidence, the argument presented, and the instructions provided confirm that

14   the only factual finding implicit in the jury's verdict is whether the products cannot

15   perform as promised. On that point the jury found in Defendants' favor.

16        As to the issues now before this Court, the sole question to be resolved is

17   whether that factual finding resolves Plaintiffs' UCL and FAL claims. And the

18   answer to that question is a resounding "No."

19   **C. A Short Primer on Grammar and The Difference Between "Cannot" and "Do Not."**

20   Before turning to why the jury's finding as to the CLRA and warranty

21   claims is not dispositive of Plaintiffs' UCL and FAL claims, we first address a

22   grammatical issue that no doubt affected the jury's verdict. This Court will recall

23   that, over Plaintiffs' objection, the Court instructed the jury that a decision as to

24   whether Defendants breached their warranty was dependent on a finding that

25   "Defendants' homeopathic products . . . cannot perform as promised."

26   (09/15/2015 Trial Tr. Morning Session 157:2-162:16; 09/16/2015 Trial Tr.

27   Morning Session, 18:1-12.) In the CLRA instruction, the Court similarly tied the

28                                          9

1  violation of that statute on a finding that "the products at issue cannot relieve

2  symptoms as represented." (*Ibid.*)[8]

3       The Court determined that it would instruct the jury using the term "cannot"

4  based on its belief that it was constrained as a result of its ruling on class

5  certification. (09/15/2015 Trial Tr. 157:2-162:16.)  However, a decision as to

6  whether to certify a class is not a ruling on substantive claims, but is procedural in

7  nature. *In re Genentech, Inc. Sec. Litig.,* 1990 WL 120641, at *2 (N.D. Cal. June

8  8, 1990); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 37 (N.D.

9  Cal. 1977) (a class certification under Rule 23 "is essentially a procedural order").

10       Moreover, in certifying the class the Court actually utilized the phrase "do

11  not work" along with "cannot work:"

12       If Plaintiffs' theory of the case is correct—i.e., Defendants made

13       material misrepresentations about products which do not work and

14       cannot possibly work as  a matter of scientific principle, given the

15       level of dilution of their active ingredients—then consideration of

16       individual users' symptoms and the distinct active ingredients in each

17       product is unnecessary.  Moreover, if Plaintiffs' theory is correct, the

18       belief of some users that the products are effective would necessarily

19       be attributable to the placebo effect.

20  (Docket No. 291, p. 20.)[9]  In earlier rulings the Court similarly recognized

21  that Plaintiffs' alleged that the products "do not" or "did not" work.  See,

22  [8]  Plaintiffs are unaware of any other class action case in a state or district court

23  within the Ninth Circuit where Plaintiffs were required to demonstrate a product

24  "cannot" work to meet their burden of proof on either a cause of action under
    CLRA or breach of warranty.

25  [9]  The issues presented in certifying a class as to the CLRA and warranty claims are

26  different from those presented in certifying a class under the UCL or FAL.  The
    UCL or FAL do not require a finding of reliance by individual class members nor

27  do they require individualized proof of deception or injury.  *In re Tobacco II
    Cases,* 46 Cal.4th 298, 320 (2009); *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013,

28  1020 (9th Cir. 2011).  Nor is the certification of a class as to those equitable claims

                                        10

1  e.g. Docket No. 197 [4/11/2015 Order re Defendants' Motion for Judgment

2  on the Pleadings], p. 5 ["Defendants argue that Plaintiffs' allegations simply

3  amount to conclusory statements that Defendants 'knew or should have

4  known' that their products did not work, …"] and p. 7 ["Plaintiffs claim both

5  that the products do not work and that there simply *is* no active ingredient in

6  Defendants' product"]; Docket No. 80 [6/28/2012 Order Denying Motion to

7  Dismiss], p. 2 ["Plaintiffs allege exactly what Defendants argue they must:

8  that the products at issue 'have no effect on ailments and symptoms they are

9  advertised for, and in fact did not alleviate the ailments or symptoms for

10  which Plaintiffs purchased them'"].

11      In arguing against the instruction, Plaintiffs' counsel pointed out that the

12  term "cannot" improperly invites speculation by the jury:

13      [B]ecause we've had all kinds of experts by the defense talking about

14      what we don't know how it really works, but may be it can work this

15      way or maybe it can work this away. And so, I think it invites

16      speculation.

17      The question is, whether the representations are false or not.  And so,

18      if they do not provide relief as represented, . . . I think we've met our

19      burden.  To say they cannot provide relief, I think just grammatically

20      is a more difficult burden that invites speculation.

21  (09/15/2015 Trial Tr. 158:15-23.)  Plaintiffs' counsel argued that the appropriate

22  _____

23  (which permit injunctive relief and restitution) undermined by a finding that the product may work for some and not others since any such alleged individualized issues would not defeat certification.  "The fact that there is some factual variation

24  among the class … will not defeat a class action...." *Irwin v. Mascott,* 96 F. Supp. 2d 968, 973 (N.D. Cal. 1999); *Rosales v. El Rancho Farms, No.*, 2013 WL

25  1222064, at *3 (E.D. Cal. Mar. 25, 2013) ("As previously stated, when a common

26  policy can be established, some individual variation will not defeat class certification"); *Schulein v. Petroleum Dev. Corp., No.* 2014 WL 114520, at *3

27  (C.D. Cal. Jan. 6, 2014) (But even if some evidence will not be common to all class members, that does not defeat class certification under Rule 23(a)").

28

11

1   term for the instruction should have been "do not" or "does not." (*Id.*, p. 160-161.)
2   We show below why in the context of the issues presented in this case, the
3   distinction between "cannot" and "do not" is critical.

4   The verb "do" can be a *transitive* verb (i.e. one that has an object as in "I do
5   homework" [I = subject, do = verb, homework = object]) as well as an *intransitive*
6   verb (one without an object).  However, in the context of the phrase "do not
7   relieve" the word "do" acts as an *auxiliary* or *helping* verb.  It is called a *helping*
8   verb because it accompanies another verb.  Auxiliary verbs are the
9   verbs *be, do, have, will* when they are followed by another verb (the *full verb*) in
10  order to form a question, a negative sentence, a compound tense or the passive.

11  To imply a negative you need to add an auxiliary verb.  For example, if you
12  want to imply the negative of "ghosts exist" you have to say "ghosts do not
13  exist."  Grammatically there is no other way to convey this meaning.

14  The word "can" in the context of the Court's instruction also acts as an
15  auxiliary verb, but "can" is a special type of auxiliary verb that is called a *modal*
16  *auxiliary*. *Modal auxiliary* verbs are like regular auxiliary verbs in that they have
17  to accompany another verb.  But the modal auxiliary verb is used to indicate four
18  things:  (1) Theoretical possibility (*i.e.* "the American dream can come true if you
19  work hard enough"); (2) Ability (*i.e.* "I can run ten miles"); (3) Permission (*i.e.*
20  "can you help me with my homework?"); or (4) Obligation.[10]

21  The instruction "[t]he representations were false because the products at
22  issue cannot relieve symptoms as represented," is inherently ambiguous because it
23  is unclear whether it is intended to express possibility or ability.  In the context of

24
25  _____
    [10] Although some modal auxiliary verbs like "must" can convey obligation, the
    word "can" cannot.  An example of an obligation sentence with a modal auxiliary
26  verb is: "She must go to school".  In the present case, the phrase "cannot relieve" is
    not about permission or obligation.  Rather it can only be intended to convey
27  ability or theoretical possibility.

28                                           12

1  this litigation, "cannot" must be intended to equate to ability and not theoretically

2  possibility because it is irrelevant whether it is theoretically possible that simple

3  table salt prepared homeopathically can cure depression.  (09/14/2015 Trial Tr.

4  Afternoon Session, 46:13-18; 09/15/2015 Trial Tr. Morning Session 157:23-

5  160:20.)   Ability, on the other hand, is proven empirically.  For example, if one

6  were to say "I can run ten miles" without having tried, the term "can" is expressing

7  merely a theoretical possibility because the speaker may be full of irrational

8  optimism.  But, once that same speaker has run 10 miles there is proof that

9  supports the statement and the verb used in that context expresses ability.

10       This inherent ambiguity in "cannot" is eliminated by using the phrase "do

11  not" instead of "cannot" because the issue is whether or not the products relieve

12  symptoms, not whether or not they can *theoretically* relieve symptoms.  And,

13  employing "do not" instead of "cannot" would have thus eliminated the risk of a

14  finding that symptomatic relief through the placebo effect was sufficient to defeat

15  Plaintiffs' claims of false product packaging statements.[11]

16       Further, any ambiguity as to whether the instruction resulted in a finding of

17

18  [11] Plaintiffs sought an instruction that the jury could not take the placebo effect into
19  consideration in deciding whether Defendants' products provide relief. (Docket
    No. 408, p. 2.) The proposed instruction was consistent with the certification
20  decision that Defendants cannot rely on the placebo effect to support product
    efficacy.  (Docket No. 291, p. 40, n. 26.)  *See also F.T.C. v. Pantron I Corp.*, 33
21  F.3d 1088, 1100 (9th Cir. 1994) ("Where, as here, a product's effectiveness arises
    solely as a result of the placebo effect, a representation that the product is effective
22  constitutes a 'false advertisement' even though some consumers may experience
    positive results.")  The Court declined to issue the instruction.  (09/16/2015 Trial
23  Tr. Afternoon Session, 18:10-19:9.)  An instruction that is in proper form and is
    supported by the evidence should be granted to avoid depriving the propounding
24  party of an opportunity to have the jury consider a basic theory of his or her case.
    *Dang v. Cross*, 422 F.3d 800, 810-811 (9th Cir. 2005); *Ford Motor Co. v. Dallas
25  Power & Light Co.*, 499 F.2d 400, 412 (5th Cir. 1974).  Where an extra element to
    plaintiff's burden of proof is added, "it is 'unlikely that the error w[ill] be
26  harmless.'"  *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011) quoting
27  *Clem v. Comelli*, 556 F.3d 1177, 1182 (9th Cir. 2009).

28

13

theoretical possibility or ability would have been eliminated had the instruction not shifted from the past to the present tense: "The representations **were** false [past tense] because the products at issue **cannot** relieve [present tense] symptoms as represented." To remain tense consistent, the sentence should have stated: "The representations were false because the products at issue **could not** relieve symptoms as represented."

The error in shifting tenses is revealed by reference to our earlier discussion of *modal auxiliary verbs* which accomplish four things: theoretical possibility; ability; permission; and obligation. The word "can" signals only three of those (theoretical possibility, ability and permission). The term "could" when used in the past tense, can only express ability or permission (permission, of course, being irrelevant in this case).[12] Thus, had the instruction not shifted from past tense to present tense, the jury would have been left with only one option "ability" and theoretical possibility would have been eliminated.[13]

## III.   THIS COURT CAN INDEPENDENTLY DETERMINE WHETHER DEFENDANTS' PRODUCT REPRESENTATIONS VIOLATE THE UCL

### A.   The Jury's Implicit Factual Findings are not Dispositive of Plaintiffs' UCL and FAL Claims

The UCL prohibits as unfair competition "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Cal. Bus. & Prof. Code, § 17200.) "The scope of the UCL is quite broad. [Citations.] Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition.

[12] Although the word "could" can express possibility, it can only do so in the present tense (*i.e.* "We could play baseball today"). Since the instruction ("the representations were false because the products at issue …") is in the past tense, the expression of possibility is simply not possible.

[13] See, by way of example, the "Uses of Can and Could" at http://grammar.ccc. commnet.edu/grammar/auxiliary.htm.

14

1  [Citation.]" *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1471

2  (2006); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009) ("each

3  prong of the UCL is a separate and distinct theory of liability, thus the "unfair"

4  practices prong offers an independent basis for relief").

5      Plaintiffs proceeded to trial on all three prongs of the UCL, i.e., that

6  Defendants' conduct was unlawful, unfair, and/or fraudulent within the meaning of

7  the UCL.  Because a UCL claim is equitable in nature, the Court, and not the jury,

8  must decide whether Defendants engaged in such acts or practices. *Hodge v. Sup.*

9  *Ct.,* 145 Cal.App.4th 278, 284 (2006) (a party seeking relief under the UCL is not

10  entitled to a jury trial because "the UCL provides only for equitable remedies.

11  'Prevailing plaintiffs are generally limited to injunctive relief and restitution.'

12  Damages are not available. . . . the UCL is not simply a legislative conversion of a

13  legal right into an equitable one. It is a separate equitable cause of action" citations

14  omitted)); *Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1458 (2008).

15      An unlawful business practice under the UCL is "anything that can properly

16  be called a business practice and that at the same time is forbidden by law." *Cel-*

17  *Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163,

18  180 (1999).  And, a fraudulent business practice is one in which "members of the

19  public are likely to be 'deceived.'" *In re Tobacco II Cases* (2009) 46 Cal.4th 298,

20  312 (2009).

21      The "unfair" prong of the UCL is broader than the "unlawful" prong.  And

22  even absent a violation of law, a plaintiff may prevail on a UCL claim if the

23  defendant engaged in unfair practices.  See, e.g., *Cel-Tech,* 20 Cal.4th at 186-87.

24  However, the definition of an unfair business practice in the context of a consumer

25  action is less settled.  Certain California courts have held that "an 'unfair' business

26  practice occurs when it offends an established public policy or when the practice is

27  immoral, unethical, oppressive, unscrupulous or substantially injurious to

28

1   consumers" (*People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal.App.3d

2   509, 530 (1984); accord, *Wolfe v. State Farm Fire & Casualty Ins. Co.,* 46

3   Cal.App.4th 554, 560 (1996), while others hold the determination of whether a

4   practice is unfair "involves an examination of [that practice's] impact on its alleged

5   victim, balanced against the reasons, justifications and motives of the alleged

6   wrongdoer" (*Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735, 740 (1980);

7   accord, *State Farm Fire & Casualty Co. v. Superior Court,* 45 Cal.App.4th 1093,

8   1103–1104 (1996).  The California Supreme Court has defined "unfair" in the

9   context of a UCL action by one competitor against a direct competitor, stating that

10  "any finding of unfairness to competitors under [the UCL must] be tethered to

11  some legislatively declared policy or proof of some actual or threatened impact on

12  competition." *Cel–Tech, supra,* 20 Cal.4th at pp. 186–187.  But in doing so the

13  Court made clear its discussion about "unfair" practices was limited to actions

14  between competitors alleging anticompetitive practices, and did not relate to

15  consumer claims, such as those presented here. *Id.* at p. 187, fn. 12.

16       Despite this, certain courts have applied the *Cel–Tech* definition of "unfair"

17  to consumer actions (see, e.g., *Gregory v. Albertson's, Inc.,* 104 Cal.App.4th 845,

18  854 (2002); *Schnall v. Hertz Corp.,* 78 Cal.App.4th 1144, 1166 (2000), and others

19  have applied pre-*Cel-Tech* definitions (see, e.g., *Pastoria v. Nationwide Ins.,* 112

20  Cal.App.4th 1490 (2003); *Smith v. State Farm Mutual Automobile Ins. Co.,* 93

21  Cal.App.4th 700, 718 (2001).  In *Camacho v. Automobile Club of Southern*

22  *California,* 142 Cal.App.4th 1394 (2006), the court rejected both definitions and

23  instead applied a definition based upon section 5 of the Federal Trade Commission

24  Act (15 U.S.C. § 45(n)).  In *Camacho,* the court held a practice is unfair if (1) the

25  consumer injury is substantial, (2) the injury is not outweighed by any counter-

26  vailing benefits to consumers or competition, and (3) the injury is one that

27

28

16

*Kim Allen et al. v. Hyland's, Inc. et al.,* Case No. 12-cv-1150
PLAINTIFFS' POST-TRIAL BRIEF REGARDING EQUITABLE CLAIMS

1   consumers themselves could not reasonably have avoided.  *Camacho, supra,* 142

2   Cal.App.4th at p. 1403.

3         Federal courts in analyzing the unfair prong of the UCL have held that

4   "California courts define an unfair business practice as either a practice that

5   undermines a legislatively declared policy or threatens competition, or a practice

6   that has an impact on its alleged victim that outweighs the reasons, justifications,

7   and motives of the alleged wrongdoer. . . . Defendant's practices may be

8   considered unfair if the utility of its conduct is outweighed by the gravity of the

9   harm that Plaintiffs allegedly suffered." *In re Ferrero Litig.,* 794 F. Supp. 2d

10   1107, 1117 (S.D. Cal. 2011), citing *Lozano v. AT & T Wireless Servs., Inc.,* 504

11   F.3d 718, 736 (9th Cir. 2007).)

12         As to the FAL claims, "[t]he substantive right extended to the public by the

13   UCL is the right to protection from fraud, deceit and unlawful conduct." *In re*

14   *Tobacco II Cases,* 46 Cal. 4th 298, 324 (2009) (quotations and citations omitted).

15   A violation of UCL is also a violation of the FAL.  *In re Tobacco II,* 46 Cal. 4th at

16   312, n.8.  "The primary evidence in a false advertising case is the advertising

17   itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003); *see Resort Car Rental*

18   *System, Inc. v. Federal Trade Com.,* 518 F.2d 962, 964 (9th Cir. 1975).  Plaintiffs

19   can demonstrate a violation of FAL through Defendants' false statements or the

20   failure to provide material information on their advertisements. *Morgan v. AT&T*

21   *Wireless Servs., Inc.,* 177 Cal. App. 4th 1235, 1255 (2009) ("A perfectly true

22   statement couched in such a manner that it is likely to mislead or deceive the

23   consumer, such as by failure to disclose other relevant information, is actionable

24   under the UCL.") (internal quotations omitted). "[T]he primary purpose of the

25   unfair competition law ... is to protect the public from unscrupulous business

26   practices." *Consumers Union of U.S., Inc. v. Alta–Dena Certified Dairy,* 4

27   Cal.App.4th 963, 975, 6 Cal.Rptr.2d 193 (1992). Advertising is broadly defined to

28

17

1    include virtually any statement made in connection with the sale of goods or

2    services, including statements and pictures on labels. *See, e.g., Williams v. Gerber*

3    *Prods. Co.,* 552 F.3d 934, 939 (9th Cir.2008). Advertising that is likely to deceive

4    the ***reasonable consumer*** violates the false advertising law. *Id.* at 938; *Johns v.*

5    *Bayer Corp.,* 280 F.R.D. 551, 556 (S.D. Cal. 2012); *Kasky v. Nike, Inc.,* 27 Cal.4th

6    939, 951 (2002) (under the FAL a defendant is liable for "not only advertising

7    which is false, but also advertising which[,] although true, is either actually

8    misleading or which has a capacity, likelihood or tendency to deceive or confuse

9    the public"); *see also In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1231-32

10    (N.D. Cal. 2012).

11      In certifying a class as to the UCL and FAL claims, this Court stated:

12      Because the UCL is intended to deter unfair business practices

13      expeditiously and the scope of remedies under it is limited, "relief

14      under the UCL is available without individualized proof of deception,

15      reliance and injury.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013,

16      1020 (9th Cir. 2011) (quoting and citing *In re Tobacco II Cases*, 46

17      Cal.4th 298).  To state a claim under the UCL based on false

18      advertising or promotional practices, a plaintiff need only "show that

19      members of the public are likely to be deceived" by the defendant's

20      conduct. *In re Tobacco II Cases*, 46 Cal. 4th at 312. "'Likely to

21      deceive' . . . indicates that the ad[vertisement] is such that it is probable

22      that a significant portion of the general consuming public or of targeted

23      consumers, acting reasonably in the circumstances, could be misled."

24      *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508, 129 Cal.

25      Rptr.2d 486 (2003). The FAL uses the same standard as the UCL.

26      *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (citing *In re*

27      *Tobacco II Cases*, 46 Cal. 4th at 312).

    (Docket No. 291, p. 32.)

28

18

Plaintiffs' UCL claim is comprised of distinct elements that are not resolved by the jury's implicit factual finding that the products "can" perform.  The FPTO identified the elements of Plaintiffs' UCL Claim as follows:

1. Defendant made representations that were actually false *or* provided information in a manner that it was likely to mislead or deceive the consumer because the products cannot relieve symptoms as represented;

2. Defendants engaged in business conduct that was unfair by *either* violating an applicable law *or* violating the public policy or spirit of unfair business competition law by engaging in false or misleading advertising;

3. Plaintiffs suffered injury by purchasing products they would not have purchased but for the false or deceptive advertising.

(Docket No. 382, at pp. 4-5, emphasis in original.)[14]

As to the unfair prong of the UCL claim, the Court did not tie that finding to a determination that the products "cannot relieve symptoms."[15]  Therefore, the jury's implicit finding on that issue is not dispositive of a ruling on the unfair prong of the UCL.  This Court can independently determine that Defendants engaged in unfair conduct through false or misleading advertising as to any number of issues presented during the trial including the following: (1) Defendants' failure to inform consumers of the meaning of the dilution levels

---

[14] The elements of the FAL Claim in the FPTO are the following:  "1. Defendants disseminated to the public for the purpose of inducing sales, advertising statements; 2. Defendants' advertising statements were untrue or misleading such that those statements were likely to deceive the reasonable consumer because the products cannot relieve symptoms as represented; 3. Defendants knew, or by the existence of reasonable care should have known, the statements were likely to deceive the reasonable consumer."  (Docket No. 382, p. 5.)

[15] Arguably the Court did not tie the "cannot relieve" language to a finding of actual fraud since the phrase as used in the FPTO could be found to only modify the disjunctive phrase "provided information in a manner that it was likely to mislead or deceive the consumer."  (Docket No. 382, p. 4.)

19

1   (09/08/2015 Trial Tr. Afternoon Session (Le) 77:21-78:9; 78:17-21; 79:6-8); (2)

2   Defendants' identification of product ingredients in Latin which is inherently

3   misleading (i.e. the use of "naturum muriaticum" to identify salt) (09/02/2015 Trial

4   Tr. Afternoon Session, 66:21-67:2); (3) Defendants failure to inform consumers

5   that the FDA does not test the products for efficacy even though certain of

6   Defendants' competitors include such language (Trial Ex. 197; 09/08/2015 Trial

7   Tr. Afternoon Session (Le) 70:5-13; Trial Ex. 296-2); (4) Defendants' failure to

8   inform consumers that randomized clinical tests on two of its products

9   demonstrated the products did no better than, and in one case worse than, a placebo

10  (Taylor Depo, 06/19/2014 at p. 104:8-12; 108:22-109:1, 113:14-24; 09/10/2015

11  Trial video; Trial Ex. 191); (5) that it made no difference how much of the product

12  you used and that it was virtually impossible to overdose on the products

13  (09/2/2015 Trial Tr. Afternoon Session (Borneman), 59:17-20; 61:6-8; 99:24-

14  100:9); (6) that Defendants conduct no tests prior to releasing their products to

15  determine whether they are effective, despite advertising the products as

16  "effective." (09/02/2015 Trial Tr. Afternoon Session (Borneman) 34:22-35:5;

17  09/08/2015 Trial Tr. Afternoon Session (Phillips) 11:5-10.)  These and other

18  factual issues identified in Plaintiffs [Proposed] Findings of Fact were not resolved

19  (implicitly or explicitly) by the jury and, significantly, Defendants' counsel

20  vehemently argued that the foregoing issues were *not* to be decided by the jury.

21  (09/17/2015 Trial Tr. Rep. Trans. 64:4-69:12.)

22       Moreover, Defendants were clearly on notice of these claims.  Allegations in

23  Plaintiffs' Third Amended Complaint informed the Defendants of the foregoing

24  (Docket No. 198, ¶¶ 23, 25, 26, 27, 32, 38, 45, 51, 63, 73, 75, 102, 104, 109, 111,

25  116, 130, 131, 136, 148, 157, 159, 160, 168, 170, 171, 179, 181, 182, 187-191,

26  193); Plaintiffs outlined these factual allegations in their Memorandum of

27  Contentions of Fact and Law (Docket No. 337, pp. 2-5, 9-10); Plaintiffs in their

28

20

1  Trial Brief made clear that their claims were predicated on the fact that defendants'

2  labels are misleading not only because the products are not effective but also

3  because Defendants failed to disclose material information to consumers which has

4  "resulted in consumers' fundamental confusion about the products and reliance on

5  materially false information." (Docket No. 383, p. 8.)  Plaintiffs further made clear

6  that "consistent with the Court's prior rulings, Plaintiffs will prove that

7  'statement[s] on [Defendant's] product packaging . . . in combination with other

8  statements *taken as a whole,* were misleading." (*Id.,* p. 7.)  Moreover, a finding

9  that Defendants violated the UCL and FAL based on the foregoing facts is entirely

10  consistent with the Court's class certification order.  (Docket No. 219, p. 4, n. 5.)

11      But even if the Court were to find that the term "cannot relieve symptoms"

12  is incorporated into the unfair prong of the UCL, the Court could still find against

13  the Defendants on the UCL and FAL claims without contradicting any factual

14  finding of the jury.  This is because the absence of an instruction on the legal

15  impact of the products acting as a placebo precludes any finding that the jury

16  implicitly decided whether the products were or were not acting as a placebo.

17  Here, there was ample evidence that the only conceivable benefit the products

18  provide is as a placebo.  But the jury received no instruction as to the legal import

19  of that evidence and accordingly, cannot be found to have implicitly decided any

20  fact as to the placebo effect. *See, e.g., Head v. Glacier Northwest, Inc.,* 413 F.3d

21  1053, 1065-66 (9th Cir. 2005) (in an ADA claim, court found error in instructing

22  the jury on a sole "because of" motive rather than a "mixed motive" instruction

23  that provided for alternative grounds for hiring where there was evidence to

24  support more than a single reason for firing the plaintiff).

25      This Court can find that the only benefit achieved by the products is through

26  the placebo effect and thus, that Defendants' representations were fraudulent and

27  deceptive and violated the UCL and the FAL. *F.T.C. v. Pantron I Corp.,* 33 F.3d

28  1088, 1100 (9th Cir. 1994) ("It stands to reason that a product that, in effect, has

21

tricked people into thinking that they received a benefit should not be given credit for actually conferring a benefit"); see also, *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation,* 865 F.Supp.2d 1002, 1047(C.D. Cal. 2011) (quoting *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1471 (2006). In *Wellpoint,* the court held that even if the products did provide some placebo benefit, the packaging was still deceptive and misleading because it insinuated that the product and its ingredients are the reason for any benefit, not the placebo effect.

The present case is similar to *Wellpoint* in that Defendants are not advertising or selling a placebo effect but rather advertise and promote Hyland's products as providing effective medical relief.  (09/02/2015 Trial Tr. Morning Session (Borneman) 75:19-22 ["Q: In terms of these products, you're not claiming that you are selling them as a placebo or intended for use as a placebo to customers, correct? A. Certainly not"].)  For all of these reasons, this Court can disregard the placebo benefit in evaluating whether Defendants violated UCL and FAL and find, without contradicting the jury's finding, that Hyland's products do not provide relief other than as a placebo.  (09/4/2015 Trial Tr. Afternoon Session [Rose] 27:1-9, 18-23; 55:20-56:1; 92:18-25.)  And this Court can find, without contradicting the jury's finding, that taken as a whole Defendants' product advertising and packaging is deceptive and misleading and has impacted a huge number of consumers and that utility of Defendants' conduct is outweighed by the gravity of the harm that Plaintiffs suffered.  *In re Ferrero Litig., supra,* 794 F. Supp. 2d at 1117 (defining "unfair" practices under the UCL).

**B.    The Seventh Amendment Does Not Preclude a Finding in Plaintiffs' Favor on the UCL and FAL Claims**

We turn now to discussion of an issue that, we believe, is one of first impression in this circuit.  As discussed above, we recognize the general rule embraced by the Ninth Circuit that the findings of the jury are binding on the trier of equitable claims where legal and equitable claims are tried together.  *Los*

22

1 *Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993);

2 *Miller v. Fairchild Indus.*, 885 F.2d 498, 507 (9th Cir. 1989), *cert denied* 494 U.S.

3 1056 (1990).

4 However, where, as here, Plaintiffs' statutory claims under the UCL and

5 FAL do not provide for a right to a jury trial (see, e.g., *Hodge, supra,* 145

6 Cal.App.4th at 284; *People v. Toomey*, 157 Cal.App.3d 1, 18 (1984)), the Court

7 can independently determine the question of liability and equitable relief without

8 violating the Seventh Amendment by declining to follow factual findings of the

9 jury. In *Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049

10 (1st Cir. 1985), the First Circuit held that the district court did not violate the

11 Seventh Amendment by deciding claims brought under Massachusetts' "little FTC

12 Act" (Mass. Gen.Laws Ann. Ch. 93A and 93B),[16] contrary to the findings of the

13 jury on breach of contract and bad-faith dealership termination.  (780 F.2d at

14 1066.)  The *Wallace* court rejected the argument that allowing the trial court to

15 independently make findings and decisions as to equitable claims that provide no

16 right to a jury trial was contrary to the Supreme Court's holding in *Beacon*

17 *Theatres, supra.*  (780 F.2d at 1065-66.)  And, the court explained that decisions

18 involving Civil Rights statutes and antitrust claims "are fundamentally different

19 from chapter 93A and B" because "inherent in the federal statutes is a right to a

20 trial by jury."  (780 F.2d at 1066.)  The court explained the distinction:

21 > Judge Mazzone's role in the present case was very different.  There

22 > being no right to a jury trial under chapter 93A and B, it was for him

23 > to decide *both* whether the statute had been violated *and* what kind of

24 > relief was warranted.  Wallace Motors' position is also significantly

---

25 [16] Massachusetts "little FTC Act" (Mass.Gen.Laws. Ann. Ch. 93A and 93B) is

26 patterned after the Federal Trade Commission Act (15 U.S.C. 45(a)(1), declaring "unlawful, unfair methods of competition and unfair or deceptive acts or

27 practices." *Wallace Motors Sales, supra*, 780 F.2d at 1064.  The Massachusetts statute is essentially the same as the UCL and FAL.

28

23

1    different from that of a plaintiff who seeks both legal and equitable

2    relief under a statute which provides for both forms of relief.  Such a

3    plaintiff has only one cause of action, the violation of the statute.

4    Wallace Motors, on the other hand, had several separate and distinct

5    cause of action.  Whether the common law and Dealers Act claims

6    had been proven was for the jury to determine; whether the chapter

7    93A and B claims had been proven was for the trial judge.

8                                              ***

9    We hold that joining the Massachusetts 9dA and B claims with jury

10   claims did not convert them into "suits at common law" entitled to a

11   jury trial under the seventh amendment.

12   780 F.2d at 1066 and 1067.  See also *Perdoni Brothers, Inc. v. Concrete Systems,*

13   *Inc.*, 35 F.3d 1, 5 (1994) ("in the Chapter 93A context, the court has recognized

14   that judge and jury, sitting as independent triers of fact, may reach conflicting

15   conclusions"); *In re Lone Star Industries, Inc. Concrete Railroad Cross Ties Litig.*,

16   882 F.Supp. 482 (1995) (court resolving claims under Massachusetts deceptive

17   trade practices statute (Chapter 93A) was not bound by jury determinations on

18   breach of warranty and fraud claims); *accord Fowler v. Land Management*

19   *Groupe, Inc.,* 978 F.2d 158, 163 (4th Cir. 1992) (holding that under the Equal Pay

20   Act, 29 U.S.C. 206(d) that "the Seventh Amendment is not infringed by allowing

21   the trial court to make a factual finding on 'good faith,' even if that finding

22   conflicts with a jury's prior evaluation of an employer's 'willfulness'").[17]

---

23

24   [17] We note that district courts within the Ninth Circuit have accepted the Seventh Amendment's bar against conflicting factual findings where legal claims were

25   combined with UCL claims. See *Netlist, Inc. v. Diablo Technologies Inc.,* Case No. 13-cv-5962 YGR, 2015 WL 1887261 *3 (N.D. Cal. April 24, 2015); *Apodaca*

26   *v. Costco Wholesale Corp.*, Case No. 12-cv-5664 DSF, 2014 WL 2533427 *6-7 (C.D. Cal. June 5, 2014); and *Echostar Satellite Corp v. NDS Group PLC,* Case no.

27   SA 03-cv-0950 DOC, 2008 WL 4596644 **4-6 (C.D. Cal. Oct. 15, 2008).  These decisions do not reflect any consideration of the arguments presented here as to the

28

24

1     For these reasons, the Court can independently decide whether Defendants

2  violated the UCL and FAL without regard to any factual finding by the jury.

3  **CONCLUSION**

4     For all of the foregoing reasons, Plaintiffs respectfully submit that this Court

5  can and should rule in Plaintiffs' favor finding that Defendants' product statements

6  are misleading and constitute violations of the UCL and FAL.

7  Dated: October 6, 2015       **LAW OFFICES OF RONALD A. MARRON**

8

9                      /s/ Skye Resendes
                       RONALD A. MARRON

10                   *ron@consumeradvocates.com*
                       SKYE RESENDES

11                   *skye@consumeradvocates.com*
                       651 Arroyo Drive

12                   San Diego, California 92101

13  Dated: October 6, 2015       **KREINDLER & KREINDLER, LLP**

14                      /s/ Gretchen Nelson
                       GRETCHEN M. NELSON

15                   *gnelson@kreindler.com*
                       GABRIEL S. BARENFELD

16                   *gbarenfeld@kreindler.com*
                       707 Wilshire Boulevard, Suite 3600

17                   Los Angeles, California 90017

18  Dated: October 6, 2015       **GOMEZ TRIAL ATTORNEYS**

19                      /s/ John H. Gomez
                       JOHN H. GOMEZ (171485)

20                   *jgomez@gomeztrialattorneys.com*
                       DEBORAH S. DIXON (248965)

21                   *ddixon@gomeztrialattorneys.com*
                       655 W. Broadway Suite 1700

22                   San Diego, California 92101

23                     *Class Trial Counsel*

24

25

26

27  impact of the Seventh Amendment on purely equitable claims that do not permit

28  trial by jury.  And, decisions by other district courts are not binding on this Court.

25